**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ------------------------------------------------------------ x | : Chapter 11 |
| In re: | : |
|  | : Case No. 22-10263 (KBO) |
| MD HELICOPTERS, INC., *et al.*,[1] | : |
|  | : (Jointly Administered) |
| Debtors. | : |
|  | : |
|  | : |
| ------------------------------------------------------------ x |  |

**DECLARATION OF ADAM B. KEIL IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF (I) AN ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE AGREEMENT, (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

I, Adam B. Keil, make this declaration pursuant to 28 U.S.C. § 1746:

1. I submit this declaration (this "**Declaration**") in support of the above-captioned debtors' (the "**Debtors**") *Motion of Debtors for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and*

---

[1] The two Debtors in these cases are MD Helicopters, Inc. ("**MDHI**") and Monterrey Aerospace, LLC ("**Monterrey**"), and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

*(II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* (the "**Bid Procedures Motion**").[2]

2.   With respect to the Bid Procedures Motion, the Debtors seek entry of an order: (i) approving the Debtors' proposed Bid Procedures; (ii) scheduling an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the sale of the assets; (iii) approving the form and manner of notice of the Auction and the Sale Hearing; (iv) approving that certain Asset Purchase Agreement with MDH Holdco, LLC (the "**Stalking Horse Bidder**"); and (v) approving procedures for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases in connection with the Sale.

3.   Except as otherwise indicated, the statements in this Declaration are based on my direct personal knowledge or views, my opinion based upon experience, or on information that I have obtained from the members of the Debtors' management, Debtors' advisors, my review of relevant documents and/or employees of Moelis & Company LLC ("**Moelis**") working directly with me and under my supervision, direction, or control. I am not being specifically compensated for this testimony other than through payments that Moelis receives in its capacity as a professional that the Debtors are seeking to retain pursuant to an application to be filed with this Court. I am over the age of 18 years and am authorized to submit this declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Motion.

**Background and Qualifications**

4.      I am a Managing Director at Moelis, a global investment banking firm providing financial advisory services, including with respect to mergers and acquisitions, capital raising, and restructuring transactions. Moelis is the proposed financial advisor and investment banker to the Debtors.

5.      I personally have 21 years of experience as an investment banker specializing in recapitalization and restructuring transactions. Throughout my career, I have advised debtors, creditors, equity holders, and other constituents on a wide variety of restructuring transactions across a broad range of industries.

6.      Prior to joining Moelis in 2008, I spent approximately eight years in the Recapitalization and Restructuring Group at Jefferies & Company, Inc. I hold a Bachelor of Science degree in Economics with concentrations in Finance and Entrepreneurial Management from the Wharton School at the University of Pennsylvania.

7.      Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re CBL & Assocs. Properties, Inc.*, No. 20-35226 (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Industries, Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re The Hertz*

*Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. Jul. 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Jun. 14, 2020); *In re The McClatchy Company*, No, 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Internap Technology Solutions, Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Whiting Petroleum Corp.*, No. 20- 32021 (DRJ) (Bankr. S.D. Tex. May 9, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. Jul. 10, 2019); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. Jul. 25, 2019); *In re FTD Cos., Inc.*, No. 19-11240 (LSS) (Bankr. D. Del. Jul. 2, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Parker Drilling Company, Inc.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. Jul. 24, 2018); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018).[3]

**Prepetition Sale and Marketing Process**

8.  In July 2020, the Debtors engaged Moelis to serve as their financial advisor and investment banker in connection with developing, and advising the Debtors with respect to, various strategic alternatives, including a potential sale and chapter 11 sale process.[4] In October 2021,

---

[3] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Declaration. Copies of these orders are available upon request of the Debtors' proposed counsel.

[4] Moelis was previously retained by the Debtors in May 2018 to explore strategic alternatives. The Debtors (under prior leadership) ultimately determined not to pursue a transaction at that time. Moelis was then reengaged by the Director in July 2020.

Moelis, at the direction of and under the supervision of the Director, commenced a process to market the Assets.

9. Throughout the prepetition marketing process, Moelis has worked closely with Debtors' management and other restructuring professionals and has become well-acquainted with the Debtors' capital structure, which is more fully set forth in the *Declaration of Barry Sullivan, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), liquidity needs, and business operations.

10. The Debtors' marketing efforts included targeted e-mailings and calls to both potential strategic and financial entities that the Debtors and their advisors believed might be interested in discussing a potential purchase of the Assets. In certain instances the Debtors also received and responded to inbound inquiry from potential acquirers who had not been contacted in the Debtors' initial outreach efforts. During this process, the Debtors and/or Moelis contacted and sent form non-disclosure agreements to over 170 potential buyers, including 26 strategic buyers. The potential buyers included 19 of the 24 parties that were contacted as part of a prior sale process that had been commenced in 2018.[5] The Debtors invited these potential buyers to execute non-disclosure agreements and submit an initial indication of interest with respect to a sale of the Assets. In response to the initial outreach, the Debtors executed non-disclosure agreements (collectively, the "**NDAs**") with 83 prospective buyers of the Assets, each of which received the same package of marketing materials. Of these parties 21 submitted initial indications of interests.

---

[5] Given the overall deterioration in the financial performance of the Debtors since the 2018 process commenced, there were 5 parties contacted by Moelis in connection with the prior process for whom the Debtors' financial profile no longer fit with the party's investment mandate. As a result, these parties were not contacted in connection with the current process.

11. The Debtors, in consultation with their advisors (including Moelis), invited the 12 potential buyers with the most competitive indications of interest to move to the next phase of the sale process. The Debtors then engaged in further discussions regarding a sale transaction for the Assets with those potential buyers over the following weeks. During this period, each of the potential buyers was granted dataroom access and the Debtors additionally arranged for representatives of each potential buyer to meet with members of the Debtors' management team, either in person at the Debtors' headquarters in Mesa, Arizona or through video conference depending on the preference of the particular potential buyer. Each potential buyer was also given an opportunity to meet with the Debtors' management team to conduct additional financial due diligence and to ask any follow-up diligence questions. Each of the potential bidders were asked to re-affirm or modify their initial indication of interest based on their access to additional information in this phase of the process.

12. On or before December 26, 2021, the Debtors received 9 re-affirmed or revised indications of interest and invited the 2 potential buyers with the highest and best offers to move to the next phase of the sale process. The Debtors engaged in advanced discussions regarding a sale transaction for the Assets with each of those potential buyers over the following 12 weeks leading up to the Petition Date, including engaging in extensive negotiations with each regarding the form of a stalking horse asset purchase agreement.

**Stalking Horse Agreement**

13. On or before March 30, 2022, the Debtors selected the Stalking Horse Bid as the highest and otherwise best offer and the Debtors executed the Stalking Horse Agreement. As more fully described in the Stalking Horse Agreement, the Stalking Horse Bid is comprised of (a) a $150 million credit bid of the Prepetition First Lien Obligations and (b) assumption of up to $60 million

of the DIP Obligations, for a total purchase price of $210 million; provided that the credit bid amount shall be increased by the difference between $60 million and the outstanding DIP Obligations being assumed, up to a maximum increase of $30 million. To date, the Debtors have determined, with the assistance of their advisors, that the Stalking Horse Bid constitutes the highest or otherwise best offer for the Assets reasonably available to the Debtors under the circumstances, recognizing that such bid will be subjected to an open and transparent auction process.

14. The Stalking Horse Bid does not include a break-up fee, expense reimbursement, or any other form of financial bid protection.

15. The Stalking Horse Agreement was the product of arms' length, good faith negotiations among the Debtors and the Stalking Horse Bidder. The negotiation of the Stalking Horse Agreement on behalf of the Debtors was led by the Debtors' management and advisors under the oversight of the Director.

**Bid Procedures**

16. In accordance with the terms of the Stalking Horse Agreement, the Debtors, with the assistance of Moelis, have continued, and will continue, to market the Assets to potential buyers through the Bid Deadline. Upon entry of the Bid Procedures Order, the Debtors, with the assistance of Moelis, will continue discussions with any party that complies with the requirements of the Bid Procedures Order and the Bid Procedures, with the goal of having such parties participate in the Auction.

17. During the six months prior to the Petition Date, the Debtors conducted a robust sale and marketing process that culminated in the execution of the Stalking Horse Agreement. As part of the prepetition marketing process, the Debtors, with the assistance of Moelis, have already contacted the parties that are the most likely bidders for the Assets and all parties that have

submitted a viable indication of interest have, among other diligence, been granted dataroom access and afforded an opportunity to meet with management. Moreover, the prepetition deadline for submitting final indications of interest was December 26, 2021 and, as a result, interested parties that were not selected as the stalking horse have had three months to further consider the opportunity and refine their views on the value of the Assets. For these reasons, I believe that the proposed Bid Procedures and the associated timeline affords potential bidders sufficient time to evaluate the opportunity and to conduct any remaining diligence that would be necessary to submit a Qualified Bid. Additionally, to the extent parties who did not participate in the prepetition process are interested in participating in the Auction, the dataroom has been populated so that such parties will be able to begin conducting diligence immediately following execution of a non-disclosure agreement. In summary, I believe that the time period from the filing of the Bid Procedures Motion to the Bid Deadline provides any interested parties sufficient time to review diligence materials and prepare and submit a bid.

18. Given the scope and duration of the prepetition marketing process, the number of parties that already have executed NDAs and engaged in extensive diligence, and the fact that the Debtors, with the assistance of Moelis, have already marketed the Assets to the most likely bidders for Assets of the type the Debtors are selling, I believe the Bid Procedures are the best option reasonably available under the circumstances to generate the greatest possible level of interest and consideration in purchasing the Assets. The Bid Procedures also provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or otherwise best offer for the Assets available at the time. For those reasons, I believe the Bid Procedures, and the timeline for the postpetition sale process set forth therein, are appropriately designed to promote a competitive and robust sale process for the Assets to achieve the highest or otherwise best value

reasonably and practically available for the Debtors' stakeholders under the circumstances present here.


reasonably and practically available for the Debtors' stakeholders under the circumstances present here.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on March 30, 2022

/s/ Adam B. Keil
Adam B. Keil