# **<u>Exhibit A</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :     Chapter 11
                                                        :
MD HELICOPTERS, INC., et al.,¹                          :     Case No. 22-10263 (KBO)
                                                        :
            Debtors.                                    :     (Jointly Administered)
                                                        :
                                                        :     Re: D.I. 28
------------------------------------------------------- x
```

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE AGREEMENT, (V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an order (this "**Order**") (i) authorizing and approving the Bid Procedures attached hereto as Exhibit 1 (the "**Bid Procedures**") in connection with the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**"), (ii) scheduling an auction and hearing to consider the Sale of the Assets, (iii) approving the form and manner of notice thereof, (iv) authorizing the Debtors to enter into the Stalking Horse Agreement (each as defined below), (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (collectively, the "**Assumed Contracts**"), and (vi) granting

---

[1]  The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215.  The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088.  Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

[2]  Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.  In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

related relief, all as more fully set forth in the Motion; and upon the Declarations and other testimony and evidence submitted by the Debtors in support of the Motion; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish good and sufficient cause for the relief granted in this Order, it is hereby:

**FOUND THAT**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by this Court in connection with the Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    The bases for the relief requested in the Motion are Sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.      Notice of the Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the offices of the attorneys general for the states in which the Debtors operate; (e) those creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (f) counsel to the Stalking Horse Bidder; (g) counsel to Ankura; (h) counsel to PPAS; (i) counsel to the Zohar Lenders; (j) counsel to the Patriarch Lenders; (k) counsel to the DIP Lenders; (l) the offices of the attorneys general for the states in which the Debtors operate; (m) all parties known by the Debtors to assert a lien on any of the Assets; (n) all parties entitled to notice pursuant to Local Rules 2002-1(b).

G.      Notice of the Motion, including the relief sought therein, and the Hearing was good and sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H.      The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Assumed Contracts, including notice of the proposed cure amounts, and (v) authorize the Debtors to enter into a Stalking Horse Agreement, in the exercise of the Debtors' reasonable business judgment.  The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.      The Bid Procedures attached hereto as <u>Exhibit 1</u> are reasonable, appropriate and were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures are

3

reasonably designed to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest.  The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.        The Debtors have demonstrated sound business justifications for entry into, and performance of pre-closing obligations under, that certain Asset Purchase Agreement, a copy of which is attached as Exhibit A to the Motion (the "**Stalking Horse Agreement**") by and among the Debtors and the Stalking Horse Bidder, which represents the highest or otherwise best offer the Debtors have received to date as a result of their efforts to market the Assets for sale.

K.        The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Agreement represents a reasonable exercise of the Debtors' sound business judgment.

L.        The Sale Notice, substantially in the form attached hereto as Exhibit 2, regarding the Sale of the Assets by Auction and Sale Hearing, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the Assets for Sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (vi) a description of the Sale as being free and clear of all liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain Assumed Liabilities disclosed in the Stalking Horse Agreement, and (viii) notice of the proposed assumption and assignment of Assumed Contracts to the Stalking

4

Horse Bidder (or such other Assumed Contracts to another Successful Bidder (as defined in the Bid Procedures) arising from the Auction, if any) and the rights, procedures, and deadlines for objecting thereto. No other or further notice of the Sale shall be required.

M.      The Motion, the Sale Notice, the Assumption Notice, this Order, and the Assumption Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide any Assumed Contract Counterparties with proper notice of the intended assumption and assignment of their Assumed Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

N.      Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtors in accordance therewith shall constitute a Sale of the Assets, which Sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the Hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**A.      The Bid Procedures**

3.      The Bid Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved in their entirety. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order. The Bid Procedures shall also govern

the terms on which the Debtors will proceed with the Auction and/or Sale pursuant to the Stalking

Horse Agreement.

4.     The Stalking Horse Bidder shall be deemed a Qualified Bidder pursuant to the Bid

Procedures for all purposes.  The State of the Netherlands (the "**Netherlands**") shall be deemed a

Qualified Bidder solely for purposes of a credit bid of the Netherland Claim to purchase any

Netherlands First Priority Collateral (as such terms are defined in the final DIP order), which bid

shall be deemed a Qualified Bid.

5.     The following dates and deadlines regarding competitive bidding are hereby

established (subject to modification in accordance with the Bid Procedures):

| Event | Date |
|---|---|
| Assumed Contract Objection Deadline | The deadline by which objections to the proposed assumption and assignment of any Contract, the proposed cure amount, if any, or adequate assurance of future performance by the Stalking Horse Bidder must be filed with the Court is May 11, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Assumed Contract Objection Deadline**"); *provided*, that, to the extent any Contract Counterparty is added to the Assumption Notice after the initial notice is served, such new Contract Counterparty shall have fourteen (14) days from the date of service of the Supplemental Contract Notice to object to the propose cure amount and assignment to the Successful Bidder. |
| Sale Objection Deadline | May 18, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Intention to Submit Qualified Bid Deadline | May 20, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Bid Deadline | June 3, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Auction | June 9, 2022 at 10:00 a.m. (prevailing Eastern Time). |
| Post-Auction Notice Deadline | As soon as reasonably practicable after closing the Auction, if any, and in any event not less than 24 hours after closing the Auction, the Debtors shall file and serve a notice identifying the Successful Bidder and Back-Up Bidder (the "**Post-Auction Notice**"). |
| Post-Auction Objection Deadline | If the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be June |

| | |
|---|---|
| | 13, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Post-Auction Objection Deadline**"). |
| Sale Hearing | If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be June 17, 2022. |
| | If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be May 26, 2022. |

## B.    Entry into Stalking Horse Agreement

6.    The Debtors' entry into, and performance of pre-closing obligations under, the Stalking Horse Agreement is hereby approved.  Upon entry of this Order, the Stalking Horse Agreement shall be binding on the parties thereto in accordance with its terms.

7.    The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; *provided* that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

## C.    The Auction

8.    As further described in the Bid Procedures, if a Qualified Bid, other than the Stalking Horse Agreement, is received by the Bid Deadline, the Debtors will conduct the Auction at **10:00 a.m. (prevailing Eastern Time) on June 9, 2022**, or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.  The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

9.      If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agreement): (i) the Debtors may cancel the Auction, (ii) the Stalking Horse Agreement will be deemed by the Debtors to be the Successful Bid for the Assets, and (iii) the Debtors shall be authorized to seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

10.     Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) shall be entitled to make any Bids at the Auction.

11.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

12.     Each Qualified Bidder (including, for the avoidance of doubt, the Stalking Horse Bidder) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

13.     The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any Deposit other than as contemplated in the Stalking Horse Agreement.  To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the final DIP order solely with respect to any Netherlands First Priority Collateral, unless the Court for cause orders otherwise, the Prepetition First Lien Agent (acting under the Prepetition First Lien Loan Documents or as otherwise ordered by this Court or the Court in the chapter 11 cases of the Zohar Lenders) shall have the right to credit bid (either directly or through

8

one or more acquisition vehicles) up to the full amount of the Prepetition First Lien Obligations and any First Lien Adequate Protection Superpriority Claims in connection with any sale of property of the Debtors that constitutes (i) Prepetition Collateral or (ii) to the extent subject to any First Lien Adequate Protection Liens, DIP Collateral, provided that, subject to the entry of a further order of this Court in accordance with paragraph 37 of the final DIP order, the Prepetition First Lien Agent shall not have the right to credit bid in connection with any sale of the Netherlands First Priority Collateral, provided further, that the DIP Obligations have been, or will be pursuant to the Prepetition First Lien Agent's bid, indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.[3]

14.     To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the final DIP order, unless the Court for cause orders otherwise, the Netherlands shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the value of any Netherlands First Priority Collateral as determined by the Court in accordance with paragraph 37 of the final DIP order in connection with any sale of any Netherlands First Priority Collateral, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

---

[3]    Capitalized terms used in paragraph 13 and paragraph 14 but not otherwise defined shall have the meanings ascribed to them in the DIP Orders.

15.     In the event of a competing Qualified Bid, all Qualified Bidders shall be entitled, but not obligated, to submit Overbids.

16.     Absent further order of this Court, any Potential Bidder shall be precluded from submitting any further bids if such Potential Bidder fails to deliver a Qualified Bid by the Bid Deadline.  Subject to the Debtors' selection of the Successful Bidder at the Auction, if an Auction occurs, upon the closing of the Auction, absent further order of this Court, all non-Successful Bidders shall be precluded from submitting any further bids and shall not have any further access to due diligence information, the members of the Debtors' management team, or the Debtors' employees.  For the avoidance of doubt, the Debtors, in their discretion, may (i) modify or waive the provisions of this paragraph 16, (ii) consider any Qualified Bid submitted after the applicable deadline set forth herein, and (iii) determine that such Qualified Bid is a higher or otherwise better offer for the Assets and declare such Qualified Bidder to be the Successful Bidder.

17.     The Debtors may: (i) determine which Qualified Bid or combination of Qualified Bids (including the Stalking Horse Agreement) is the highest or otherwise best offer; (ii) reject at any time before the entry of the Sale Order any Bid (other than the Stalking Horse Agreement) that, in the discretion of the Debtors, is (a)  inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bid Procedures, or (c) contrary to the best interest of the Debtors, their estates, their creditors, interest holders, or other parties in interest; and (iii) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders (other than the Stalking Horse Bidder) as the Debtors reasonably determine to be in the best interest of the Debtors' estates.

18.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment,

and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

**D.      Assumption and Assignment Notices & Procedures**

19.      The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to Section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to Section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.  These Assumption Procedures shall govern the assumption and assignment of all of the Assumed Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Assumed Contracts.

20.      No later than two business days after entry of this Order, the Debtors shall serve via overnight delivery on all non-Debtor Assumed Contract Counterparties to any Assumed Contract (the "**Assumption Notice Parties**") that may be assumed by the Debtors and assigned to the Stalking Horse Bidder or other Successful Bidder after the results of the Auction, which notice shall be substantially in the form attached hereto as Exhibit 3 (a "**Assumption Notice**").  The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the identity of the Stalking Horse Bidder (as assignee, if applicable), and (v) the Assumed Contract Objection Deadline (as defined below) and Post-Auction Objection Deadline (as defined below).

11

The presence of an Assumed Contract on the Assumption Notice does not constitute an admission that such Assumed Contract is an executory contract or unexpired lease, and the presence of an Assumed Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Assumed Contract any time before such Assumed Contract is actually assumed and assigned pursuant to the Sale Order.

21.     Although the Debtors have informed the Court that they intend to make a good faith effort to identify all Assumed Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts and unexpired leases inadvertently omitted from the list of Assumed Contracts, or Successful Bidders may identify other executory contracts and/or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors have the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed to by the Debtors and the Successful Bidder, at any time after the service of the Assumption Notice and before the closing of a Sale, to (i) supplement the list of Assumed Contracts with previously omitted executory contracts or unexpired leases, (ii) remove Assumed Contracts from the list of executory contracts and unexpired leases ultimately selected as Assumed Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Assumed Contract. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the Assumed Contract Counterparties to such Assumed Contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assumed Contracts that has been previously rejected by the Debtors by order of the Court.

US-DOCS\131368965.5#125520549 v7

Each Supplemental Assumption Notice will include the same information with respect to listed Assumed Contracts as was included in the Assumption Notice.

22.      To the extent any Contract Counterparty is added to the Assumption Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount through service of a Supplemental Assumption Notice, and that party shall have fourteen (14) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

23.      Objections, if any, to (i) the cure amount set forth on the Assumption Notice or (ii) the possible assignment of its executory contract or unexpired lease to the Stalking Horse Bidder including adequate assurance of future performance by the Stalking Horse Bidder (each, an "**Assumed Contract Objection**") **must** (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **May 11, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Assumed Contract Objection Deadline**"): (a) counsel for the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzanne Uhland (suzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel for the Stalking Horse Bidder, (i) Young

13

Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com) and Allurie Kephart (akephart@ycst.com), (ii) Cadwalader Wickersham & Taft LLP, 200 Liberty Street, New York, NY 10281, Attn: Ingrid Bagby (ingrid.bagby@cwt.com), William Mills (william.mills@cwt.com), and Michele C. Maman (michele.maman@cwt.com), and (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Brian Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com); (c) counsel to the Zohar Lenders, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Ryan Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders and PPAS, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Daniel F.X. Geoghan (dgeoghan@coleschotz.com), and Cole Schotz P.C., 500 Delaware Ave, Ste 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com); (e) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (f) counsel to Ankura, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); and (g) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844

King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr.

(joseph.mcmahon@usdoj.gov) (the "**Objection Notice Parties**").

24.     If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction,

then the deadline to object (a "**Post-Auction Objection**") solely to (i) the identity of a Successful

Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future

performance under the Assumed Contract shall be **June 13, 2022 at 4:00 p.m. (prevailing

Eastern Time)**[4] (the "**Post-Auction Objection Deadline**"), provided, however, that the deadline

to object to the proposed cure amount shall not be so extended.

25.     If an Assumed Contract Counterparty does not timely file and serve an Assumed

Contract Objection by the Assumed Contract Objection Deadline or a Post-Auction Objection by

the Post-Auction Objection Deadline, then that party shall be forever barred from objecting to

(i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory

contract or unexpired lease (including the adequate assurance of future performance), (iii) the

related relief requested in the Motion, and (iv) the Sale.  Such party shall be forever barred and

estopped from objecting to the cure amount, the assumption and assignment of that party's

executory contract or unexpired lease (including the adequate assurance of future performance),

the relief requested in the Motion, whether applicable law excuses such counterparty from

accepting performance by, or rendering performance to, the Stalking Horse Bidder or the

Successful Bidder, as applicable, for purposes of Section 365(c)(1) of the Bankruptcy Code and

from asserting any additional cure or other amounts against the Debtors and the Stalking Horse

---

[4]    If the Auction is cancelled, the Debtors will promptly file a Notice of Successful Bidder identifying the
Stalking Horse Bidder as the Successful Bidder.

Bidder or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease.

26.     Where an Assumed Contract Counterparty to an Assumed Contract timely files an (i) Assumed Contract Objection asserting a higher cure amount than the amount listed in the Assumption Notice or (ii) Assumed Contract Objection or Post-Auction Objection, as applicable, objecting to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount (if any) to be paid under Section 365 of the Bankruptcy Code or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing or such later date as fixed by the Court.  To the extent an Assumed Contract Objection or Post-Auction Objection shall be pending as of the date of the closing of any Sale, the Assumed Contract subject to such objection shall be deemed assumed and assigned, as between the Debtors and the Successful Bidder, as of the closing of the Sale until such time as (i) the amount (if any) to be paid under Section 365 of the Bankruptcy Code or (ii) the Debtors' ability to assign the Assumed Contract to the Successful Bidder is determined by the Court.  Upon a determination by the Court (i) of the amount (if any) to be paid under Section 365 of the Bankruptcy Code with respect to any Assumed Contract, the Successful Bidder may elect to (a) pay such amount and have the Assumed Contract assigned to it or (b) remove such Assumed Contract as an Assumed Contract or (ii) that any Assumed Contract is nonassignable, such Assumed Contract shall be removed as an Assumed Contract.  Any Assumed Contract subsequently removed as an Assumed Contract, either in accordance with the preceding sentence or pursuant to an agreement with the contract counterparty, shall no longer be deemed assumed and assigned to the Successful Bidder, as between the Successful Bidder and the Debtors, as of the

date such Assumed Contract is removed as an Assumed Contract.  For the avoidance of doubt, no Government Contract may be assumed and/or assigned without: (i) the express written consent of the Government, (ii) the execution of a novation agreement applicable to the Government Contract, and (iii) the payment of all outstanding obligations and cure amounts arising under or related to such Government Contract.

27.     The payment of the applicable cure amount by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**E.     Notice of the Sale Process**

28.     The Sale Notice and the Assumption Notice in substantially the forms as annexed to this Order as <u>Exhibit 2</u> and <u>Exhibit 3</u>, are hereby approved.

29.     Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov); (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c) counsel to the official committee of unsecured creditors, if one is appointed; (d) counsel to the Stalking Horse Bidder; (e) counsel to Ankura; (f) counsel to PPAS; (g) counsel to the Zohar Lenders; (h) counsel to the Patriarch Lenders; (i) all parties known by the Debtors to assert a lien on any of the Assets; (j) all entities reasonably known to have expressed an interest in a transaction with respect to any of the Assets during the past nine (9) months; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) all state and local taxing authorities with an interest in the Assets; (n) the offices of the attorneys general for the states in which the Debtors operate; (o) all other governmental agencies with an interest in the Sale and transactions

proposed thereunder; (p) the office of the secretary of state in each state in which the Debtors operate or are organized; (q) all environmental authorities having jurisdiction over any of the Assets; (r) all other parties known or reasonably believed to have asserted an interest in the Assets; (s) the counterparties to the Assumed Contracts (the "**Assumed Contract Counterparties**"); (t) the Debtors' insurance carriers; (u) all known creditors of the Debtors; (v) all known holders of equity interests in the Debtors; and (w) any party that has requested notice pursuant to Bankruptcy Rule 2002.

30.    As soon as practicable after the entry of this Order, the Debtors shall publish the Sale Notice, with any modification necessary for ease of publication, in *USA Today*, *The Arizona Republic*, and *Vertical Magazine*.  In addition, as soon as reasonably practicable, but in no event later than one (1) business day after entry of this Order, the Debtors will also post the Sale Notice and this Order on the website maintained by the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), located at https://cases.primeclerk.com/MDHelicopters.  Such publication notice as set forth in the preceding two sentences is reasonably calculated to provide notice of the Sale to interested parties whose identities are unknown to the Debtors.

**F.    The Sale Hearing**

31.    If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be conducted on **June 17, 2022 at 9:00 a.m. (prevailing Eastern Time)**.  If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be **May 26, 2022 at 9:00 a.m. (prevailing Eastern Time)**.  The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the Sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtors are authorized to perform any obligation intended

18

to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

**G.      Objections to the Sale**

32.      Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court no later than **4:00 p.m. (prevailing Eastern Time) on May 18, 2022**; and (iv) be served upon the Objection Notice Parties; *provided* that, if the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be the Post-Auction Objection Deadline.

33.      A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of Section 363(f) of the Bankruptcy Code.

**H.      Other Relief Granted**

34.      If and to the extent any Prepetition First Lien Lender or Ankura confirms in writing acceptable to the Debtors, in their sole discretion, that such Prepetition First Lien Lender or Ankura (as applicable) and their respective affiliates shall irrevocably cease to be a participant in the sale process, including as a participant in the Stalking Horse Bid (as applicable) and the Auction (if

any), and disclaim any right to submit further bids for the Assets, either directly or indirectly, alone or (to the extent authorized by the Bid Procedures) in combination with another bidder, the Debtors shall consult with such Prepetition First Lien Lender, in its capacity as a lender under the Prepetition First Lien Credit Agreement,, or Ankura, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement (as applicable), over the Sale of the Assets, implementation of the Bid Procedures and conduct of the Auction, including, but not limited to, any decisions to deviate from, waive or alter any of the provisions of the Bid Procedures and the selection of the Successful Bidder and Back-Up Bidder.  For the avoidance of doubt, and notwithstanding the preceding sentence, the Debtors reserve their right in their reasonable business judgment to implement the Bid Procedures and conduct the Auction in any manner that will best promote the goals of the sale process.

35.    Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

36.    The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

37.    The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

38.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

39.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

40.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

US-DOCS\131368965.5#125520549 v7

**Exhibit 1 to Bid Procedures Order**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------ x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
MD HELICOPTERS, INC., et al.,¹                         :    Case No. 22-10263 (KBO)
                                                       :
                           Debtors.                    :    (Jointly Administered)
                                                       :
------------------------------------------------------ x
```

## BID PROCEDURES

In the exercise of their good faith reasonable business judgment, the above-captioned debtors and debtors in possession (the "**Debtors**") have executed an Asset Purchase Agreement (the "**Stalking Horse Agreement**") with MDH Holdco LLC or its assignee (the "**Stalking Horse Bidder**"), pursuant to which the Stalking Horse Bidder proposes to (i) purchase, acquire, and take assignment and delivery of the Purchased Assets (as defined in the Stalking Horse Agreement) and (ii) assume certain Assumed Liabilities (as defined in the Stalking Horse Agreement).

On [ ● ], 2022, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order [Docket No. [ ● ]] (the "**Bid Procedures Order**") approving, among other things, these bid procedures (the "**Bid Procedures**").

These Bid Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "**Auction**") for the sale (the "**Sale**") of the Assets. Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Debtors will determine the highest or otherwise best offer for the sale of the Assets.

## I.    Important Dates

| Event | Date |
|---|---|
| Assumed Contract Objection Deadline | Objections to (i) the potential assumption and assignment of any Contract to the Stalking Horse Bidder including the ability of the Stalking Horse Bidder to provide adequate assurance of future performance and (ii) the proposed cure amount to be paid in connection with the assumption and |

---

¹ The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

| | |
|---|---|
| | assignment of any Contract shall be filed and served no later than May 11, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Assumed Contract Objection Deadline**"); *provided* that, to the extent any Contract Counterparty is added to the Assumption Notice after the initial notice is served, such new Contract Counterparty shall have fourteen (14) days from the date of service of the Supplemental Contract Notice to object to the propose cure amount and assignment to the Successful Bidder. |
| Sale Objection Deadline | May 18, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Intention to Submit Qualified Bid Deadline | May 20, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Bid Deadline | June 3, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Auction | June 9, 2022 at 10:00 a.m. (prevailing Eastern Time). |
| Post-Auction Notice Deadline | As soon as reasonably practicable after closing the Auction, if any, and in any event not less than 24 hours after closing the Auction, the Debtors shall file and serve a notice identifying the Successful Bidder and Back-Up Bidder. |
| Post-Auction Objection Deadline | If the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be June 13, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Sale Hearing | If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be June 17, 2022.<br><br>If the Debtors **do not** receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be May 26, 2022 |

## J.    Marketing Process

### 1.    Contact Parties

The Debtors and their advisors have conducted and will continue to conduct an extensive marketing process. Moelis has a list of "Contact Parties" who will receive a copy of the "Information Package." The list of Contact Parties will encompass those parties whom the Debtors believe may be interested in pursuing a Sale, or whom the Debtors reasonably believe may have the financial resources to consummate such a transaction.

The Debtors may distribute to each Contact Party an "**Information Package**," which is comprised of: (a) a cover letter; (b) a copy of these Bid Procedures; and (c) a copy of the Stalking Horse Agreement.

## 2.      Access to Diligence Materials

To receive due diligence information, including full access to the Debtors' electronic data room (the "**Data Room**") and to additional non-public information regarding the Debtors (collectively, the "**Diligence Materials**"), any party interested in submitting a bid, other than the Stalking Horse Bidder (each a "**Potential Bidder**"), must deliver the following documents (collectively, the "**Preliminary Bid Documents**") by email to (a) counsel for the Debtors, Latham & Watkins, LLP, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), and Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com) and (b) Moelis & Company LLC, Attn: Azad Badakhsh (azad.badakhsh@moelis.com) and Adam Keil (adam.keil@moelis.com) (collectively, the "**Bid Recipients**"):

(i)      an executed and signed "**Acceptable Confidentiality Agreement**," which, as defined in the Stalking Horse Agreement, shall mean a confidentiality agreement that contains provisions that are not less favorable in the aggregate to the Debtors than those contained in the confidentiality agreement executed between the Debtors and the Stalking Horse Bidder, to the extent not already executed;

(ii)     identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;

(iii)    evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which shall include financial statements of the Potential Bidder, including current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their reasonable discretion, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder; and

(i)      evidence by the Potential Bidder of its ability to obtain any regulatory approvals and security clearances necessary to consummate a sale of the Assets.

Promptly after a Potential Bidder delivers Preliminary Bid Documents to the Bid Recipients, the Debtors will assess the adequacy of the evidence of its financial capacity and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit an Intention to Submit Qualified Bid, a Bid and participate in the Auction, as applicable. All due diligence requests must be directed to counsel to the Debtors.

3

The Debtors and their advisors will coordinate all reasonable requests from Bidders for additional information and due diligence access. The Debtors may decline to provide such information to Bidders who, in the Debtors' business judgment, have not established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a sale transaction of all or substantially all of the Debtors' Assets (a "**Transaction**").

For any Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors determine are business-sensitive or otherwise not appropriate for disclosure to such Potential Bidder at such time.

No due diligence will continue after the Bid Deadline (defined below). The Debtors shall provide the Stalking Horse Bidder with access to all material due diligence materials, management presentations, on-site inspections, and other information provided to any Potential Bidder or Qualified Bidder that were not previously made available to the Stalking Horse Bidder concurrently with the provision of such information or materials to such Preliminary Interest Investor or Qualified Bidder, as applicable.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated Transaction.

### 3.     Intention to Submit Qualified Bid Deadline

After receipt of the Diligence Materials, each Potential Bidder that intends, in good faith, to submit a Bid that it believes will be a Qualified Bid must submit an indication of interest setting forth its intention to submit a Qualified Bid to the Bid Recipients (an "**Intention to Submit Qualified Bid**") by the Intention to Submit Qualified Bid Deadline. Each Intention to Submit Qualified Bid shall include:

(i)      <u>Purchase Price</u>. Each Intention to Submit Qualified Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction;

(ii)     <u>Financing</u>. Each Intention to Submit Qualified Bid must clearly state whether the Potential Bidder intends to (a) consummate the Transaction set forth in its Intention to Submit Qualified Bid with cash on hand or (b) rely on financing to consummate such Transaction. To the extent that a Potential Bidder intends to consummate such Transaction with cash on hand, evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which shall include financial statements of the Potential Bidder, including current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their

4

reasonable discretion, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder. To the extent that a Potential Bidder intends to consummate such Transaction through financing, each Intention to Submit Qualified Bid must identify the source(s) of potential debt and/or equity funding commitments to satisfy the Potential Bidder's purchase price;

(iii)    <u>Identity</u>. Each Intention to Submit Qualified Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with a potential Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by a potential Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any potential Bid. Each potential Bid must also include contact information for the specific person(s) and counsel the Debtors' advisors should contact regarding such potential Bid;

(iv)    <u>Authorization</u>. Each Intention to Submit Qualified Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) acceptable to the Debtors with respect to the submission of the Intention to Submit Qualified Bid and its potential Bid and the consummation of the Transactions contemplated in such potential Bid;

(v)    <u>Regulatory or Third-Party Approval</u>. Each Intention to Submit Qualified Bid must set forth any regulatory or third-party approval required for the Potential Bidder to consummate the Sale, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals;

(vi)    <u>Due Diligence</u>. Each Intention to Submit Qualified Bid must set forth with specificity any due diligence that must be conducted in order for the Potential Bidder to submit a timely Bid.

(vii)    <u>Substantial Contribution Waiver</u>. Each Intention to Submit Qualified Bid must contain an express waiver, effective upon submission of the Intention to Submit Qualified Bid, of any substantial contribution claims by the Potential Bidder;

(viii)    <u>Expenses; Disclaimer to Fees</u>. Each Intention to Submit Qualified Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder will be permitted to request, or be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, substantial contribution, or any other similar form of compensation, and by submitting an Intention to Submit Qualified Bid any

5

Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under Section 503(b) of the Bankruptcy Code;

(ix)    <u>Consent to Jurisdiction</u>.  Each Intention to Submit Qualified Bid must submit to the exclusive jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the sale, as applicable; and

(x)    <u>Other Information</u>.  Each Intention to Submit Qualified Bid must contain such other information as may be reasonably requested by the Debtors.

Promptly after a Potential Bidder delivers an Intention to Submit Qualified Bid to the Bid Recipients, the Debtors will assess the adequacy of such Intention to Submit Qualified Bid and notify the Potential Bidder whether such Potential Bidder has submitted an acceptable Intention to Submit Qualified Bid so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable.

If no Potential Bidder submits an Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Debtors shall promptly file a Notice of Successful Bidder identifying the Stalking Horse Bidder as the Successful Bidder.  Such notice shall terminate the Bid Deadline, cancel the Auction, and provide notice of the Sale Hearing to be held on May 26, 2022.

**4.    Auction Qualification Process**

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtors to satisfy each of the following conditions:

(i)    <u>Stalking Horse Bidder</u>.  The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and the Stalking Horse Agreement shall be deemed to be a Qualified Bid (the "**<u>Stalking Horse Bid</u>**").

(ii)    <u>Bid Deadline.</u>  The Debtors must receive a Bid in writing, on or before **June 3, 2022 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "**<u>Bid Deadline</u>**").  Bids must be sent to the Bid Recipients by the Bid Deadline to be considered.

(iii)    <u>Form and Contents</u>.  All Bids shall be in the form of an irrevocable offer letter from a person or persons that the Debtors, in their reasonable discretion taking into account its fiduciary duties, deem financially able to consummate the purchase of the Assets, which letter states and includes:

(A)    <u>Marked Agreement</u>.  Each Bid must state the Bidder irrevocably offers to purchase some or all of the Assets upon the terms and conditions set forth in a duly executed non-contingent and attached complete asset purchase agreement, which shall be in substantially the same form as the Stalking

6

Horse Agreement, prepared and executed by the Bidder (an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to price and the time of closing (the "**Proposed Agreement**");

(B)     Assets.  Each Bid must clearly specify the Assets that are included in the Bid (it being understood that while Bids for a portion or subset of the Assets may be permitted, the Debtors may consider whether the combined consideration for the Assets exceeds the Purchase Price of the Stalking Horse Agreement and/or other aspects of the bid in determining whether the Bid is a Qualified Bid);

(C)     Purchase Price.  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction (the "**Purchase Price**");

(D)     Overbid.  Each Bid or combination of Bids (a) must propose a purchase price equal to or greater than the sum of (i) the value of the Stalking Horse Agreement, as determined by the Debtors; and (ii) an initial overbid of at least $1,000,000, and (b) must obligate the Bidder(s) to pay, to the extent provided in the Agreement, all amounts which the Stalking Horse Bidder under the Agreement has agreed to pay, including any assumed liabilities (as set forth in the Stalking Horse Agreement). In calculating an initial overbid, if such bid provides for assumption of all or part of the MD Helicopters, Inc. Cash Balance Pension Plan, the value of such assumed liability shall be considered by the Debtors in the calculation;

(E)     Committed Financing.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Qualified Bid must include evidence of committed financing that demonstrates that the Bidder has received sufficient, non-contingent financing that demonstrates that the Bidder has received sufficient non-contingent and binding debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing acceptable to the Debtors must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

(F)     Contingencies; No Financing or Diligence Outs.  A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, which must be completed before the Bid Deadline, but may be subject to the accuracy

7

at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions;

(G) <u>Identity</u>. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel the Debtors' advisors should contact regarding such Bid;

(H) <u>Authorization</u>. Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) acceptable to the Debtors with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid;

(I) <u>Regulatory or Third-Party Approval</u>. Each Bid must set forth any regulatory or third-party approval required for the Bidder to consummate the Sale, and the time period within which the Bidder expects to receive such regulatory and third-party approvals;

(J) <u>Substantial Contribution Waiver</u>. Each Bid must contain an express waiver, effective upon submission of the Bid, of any substantial contribution claims by the Bidder;

(K) <u>Expenses; Disclaimer to Fees</u>. Each Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder will be permitted to request, or be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, substantial contribution, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under Section 503(b) of the Bankruptcy Code;

(L) <u>Consummation</u>. Each Bid must include a statement or evidence reflecting (i) that the Bidder is prepared to consummate the transaction upon entry of an order of the Bankruptcy Court approving the Sale to the Successful Bidder (the "<u>**Sale Order**</u>") and consummation shall not be contingent on obtaining requisite government, regulatory, or other third-party approvals for novation of the Government Contracts or security clearances, (ii) that the Bidder has made or will make as soon as reasonably practicable all necessary filings with respect to any regulatory, antitrust and other laws and pay the fees associated therewith; and (iii) the Bidder's plan and ability to

8

obtain all requisite governmental, regulatory, or other third-party approvals, including novation of the Government Contracts (as defined below) and obtaining security clearances, and the proposed timing for the Bidder to undertake the actions required to obtain such approvals;

(M)  <u>Irrevocability</u>.  Each Bid must include a statement that, in the event the Bidder becomes the Successful Bidder or the Back-Up Bidder (as defined below), such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the sale of the Assets;

(N)  <u>Actual Value</u>.  The Bid must state the proposed actual value of such Bidder's bid to the Debtors' estate;

(O)  <u>Assumed Contracts and Leases</u>.  Each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Qualified Bidder wishes to be assumed pursuant to a Sale. A Bid must specify that such Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate shall be provided by the Debtors);

(P)  <u>Employees</u>.  Each Bid must detail the treatment of the employees of the Debtors;

(Q)  <u>Damages</u>.  Each Bid must provide that the Debtors have the right to pursue all available damages in the event of the Bidder's breach of, or failure to perform under, the Proposed Agreement;

(R)  <u>Consent to Jurisdiction</u>.  Each Bidder must submit to the exclusive jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the sale, as applicable; and

(S)  <u>Other Information</u>.  Each Bid must contain such other information as may be reasonably requested by the Debtors.

(iv)  <u>Same or Better Terms</u>. Each Bid shall be based on the Stalking Horse Bid and must exceed, either on its own terms or, in the case of a Bid for a portion or subset of the Assets, in combination with another Qualified Bid(s), the Stalking Horse Bid in relation to the Assets by the Minimum Overbid Increment (as that term is defined in the Bid Procedures Order).  Each Bid must be on terms that are not more burdensome than the terms of the Stalking Horse Bid, as determined by the Debtors, and considering, among other factors, the scope and manner of the proposed Transaction.

(v)  <u>Corporate Authority</u>.  Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, if the Bidder is an entity specially formed for the

9

purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the transaction by the equity holder(s) of such Bidder.

(vi)     Adequate Assurance.  All Bids must provide for adequate working capital financing to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Bidder.

(vii)    Back-Up Bidder.  Each Bidder must acknowledge that by submitting a Bid, the Bidder agrees to be a Back-Up Bidder, should the Bid be so selected.

(viii)   Wind-Down Amounts.  The Bid must ensure that the Debtors will retain sufficient cash to fund the orderly wind-down of the Debtors' estates in a manner at least equivalent to the Wind-Down Budget (as defined in the Stalking Horse Agreement).

(ix)     Proof of Financial Ability to Perform.  All Bidders must provide written evidence the Debtors reasonably conclude demonstrates the Bidder has the necessary financial ability to close the Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Transaction. Such information should include, inter alia, the following: (a) contact names and numbers for verification of financing sources; (b) written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction; (c) the Bidder's current financial statements (audited if they exist); (d) a description of the Bidder's pro forma capital structure; and (e) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating such Bidder has the ability to close the transaction.

(x)      As Is, Where Is.  The sale of the Assets shall be on an "as is, where is" and "with all defects" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder.

(xi)     Free and Clear.  Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title, and interest in and to the Assets to be acquired shall be sold free and clear of all liens, claims, charges, security interests, restrictions, and other encumbrances of any kind or nature thereon and there against (collectively, the "Transferred Liens"), with such Transferred Liens to attach to the proceeds of the sale.

(xii)    Good Faith Deposit.  Each Qualified Bid must be accompanied by a cash deposit in the amount of 10% of the total Purchase Price to be held in an escrow account to be identified and established by the Debtors (the "**Deposit**").

(xiii)   Binding Effect.  By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bid Procedures and to refrain

10

from submitting a Qualified Bid or seeking to reopen the Auction after conclusion of the Auction.

(xiv)   <u>Repayment of DIP Obligations</u>.  A Bid by a Bidder must provide for (a) payment, in full, in cash of all DIP Obligations (as defined in the Stalking Horse Agreement) and (b) funding of the carve-out under any financing order(s) entered by the Bankruptcy Court, in each case as of the Closing Date.

(xv)    <u>Time Frame for Closing</u>.  A Bid by a Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors but in no event later than one hundred fifty (150) days following the Petition Date.

A Bid received before the Bid Deadline will be considered a "**Qualified Bid**" and each Bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**" if the Debtors determine that such Bid meets the requirements above for a Bid as set forth in these Bid Procedures.  Notwithstanding anything to the contrary herein, a Bid may be in the form of a plan of reorganization (a "**Restructuring Transaction**"), it being understood that the Debtors reserve the right to modify these procedures, including without limitation, the Qualified Bid requirements, as necessary or appropriate to accommodate the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction; *provided* that (a) in order for a Bid in the form of a Restructuring Transaction to constitute a Qualified Bid, such Bid must be capable of satisfying the requirements of Section 1129 of the Bankruptcy Code and being consummated, as determined by the Debtors, and (b) the failure of any such Bid to satisfy the requirements set forth above in subparagraphs (ii) through (xiv) may be taken into account by the Debtors in evaluating the Bid.

Notwithstanding anything to the contrary herein, the State of the Netherlands (the "**Netherlands**") shall be deemed a Qualified Bidder solely for purposes of a credit bid of the Netherland Claim to purchase any Netherlands First Priority Collateral (as such terms are defined in the final DIP order), which bid shall be deemed a Qualified Bid.

No later than one day prior to the start of the Auction, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide each Qualified Bidder, including the Stalking Horse Bidder, with a copy of each Qualified Bid.

Upon determination that any Bid is not a Qualified Bid, the Debtors shall notify such Bidder of such determination forthwith, but in any event not later than the commencement of the Auction, and shall provide such bidder with the basis for such determination.  In the event that such Bid is determined not to be a Qualified Bid, the Bidder shall have until the commencement of the Auction to modify its Bid to increase the purchase price or otherwise improve the terms of the Bid in order to comply with the requirements for Qualified Bids as set forth herein; *provided* that any Qualified Bid may be improved during the Auction only as set forth in these Bid Procedures.  To the extent there is any dispute regarding whether a Bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.  If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth in these Bid Procedures. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures. The Stalking Horse shall be deemed a Qualified Bidder at all times, and the Stalking Horse Agreement shall be a Qualified Bid.

Prior to the Auction, the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, the highest or otherwise best bid (the "**Baseline Bid**" and the Bidder making such Baseline Bid, the "**Baseline Bidder**"), and shall notify the Stalking Horse Bidder and all Qualifying Bidders with Qualifying Bids of the Baseline Bid no later than the opening of the Auction.

5.    **Credit Bid**[2]

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any Deposit other than as contemplated in the Stalking Horse Agreement. To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the final DIP order solely with respect to any Netherlands First Priority Collateral, unless the Court for cause orders otherwise, the Prepetition First Lien Agent (acting under the Prepetition First Lien Loan Documents or as otherwise ordered by this Court or the Court in the chapter 11 cases of the Zohar Lenders) shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition First Lien Obligations and any First Lien Adequate Protection Superpriority Claims in connection with any sale of property of the Debtors that constitutes (i) Prepetition Collateral or (ii) to the extent subject to any First Lien Adequate Protection Liens, DIP Collateral, provided that, subject to the entry of a further order of this Court in accordance with paragraph 37 of the final DIP order, the Prepetition First Lien Agent shall not have the right to credit bid in connection with any sale of the Netherlands First Priority Collateral, provided further, that the DIP Obligations have been, or will be pursuant to the Prepetition First Lien Agent's bid, indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the final DIP order, unless the Court for cause orders otherwise, the Netherlands shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the value of any Netherlands First Priority Collateral as determined by the Court in accordance with paragraph 37 of the final DIP order in connection with any sale of any Netherlands First

---

[2]    Capitalized terms used in this section J.5 but not otherwise defined shall have the meanings ascribed to them in the DIP Orders.

Priority Collateral, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

**K.    Auction**

If one or more Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Agreement), the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid or combination of Qualified Bids. In determining which Qualified Bid constitutes the highest or otherwise best Qualified Bid or combination of Qualified Bids, the Debtors will consider the value of assumption of the MD Helicopters, Inc. Cash Balance Pension Plan, if applicable.  This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates, including, *inter alia,* the following non-exhaustive factors: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, including the MD Helicopters, Inc. Cash Balance Pension Plan, and/or executory contracts or unexpired leases, if any, and the excluded assets and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified Bidder to close the proposed Transaction and the conditions related thereto, and the timing thereof; (d) whether the Bid is a bulk bid or a partial bid for only some of the Debtors' assets; (e) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (f) any purchase price adjustments; (g) the impact of the transaction on any actual or potential litigation; (h) the net after-tax consideration to be received by the Debtors' estates; (i) the tax consequences of such Qualified Bid; and (j) the consent of the parties in interest and/or the cost and expense to the Debtors of resolving sale issues before Closing (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Agreement may be deemed the Successful Bid, and, subject to the termination rights under the Stalking Horse Agreement, the Debtors will pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Stalking Horse Bidder as soon as practicable.

**Procedures for Auction**

The Auction, if necessary, will take place on **June 9, 2022 at 10:00 a.m. (prevailing Eastern Time)** or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any Bids at the Auction.  The Stalking Horse Bidder and other Qualified Bidders participating at the Auction shall appear, or through a duly authorized representative, who also may appear at the Auction.  Only the Debtors, the Stalking Horse Bidder, the creditors of the Zohar Funds participating in the Stalking Horse Bid, any participating Qualified Bidders, and any creditor of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any of the Debtors' creditors must provide three (3) business days' written notice to counsel to the Debtors of their intent to attend the Auction.

US-DOCS\131368965.5#125520549 v7

1.      **The Debtors Shall Conduct the Auction**

The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.  Prior to the commencement of the Auction, the Debtors shall determine which of the Qualified Bids, at such time, is the highest or otherwise best bid for purposes of constituting the opening bid of the Auction, and shall promptly notify the Stalking Horse Purchaser and all Qualified Bidders with Qualified Bids of such Baseline Bid.  The Baseline Bid may be comprised of any combination of the Assets, and the Debtors may determine that different Baseline Bids exist for different groupings of the Assets.  The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of Debtors' Assets so as to maximize the value of the Assets.

All Bids made after the start of the Auction shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids.  The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid and all Overbids.

2.      **Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

a.      **Minimum Overbid Increment**

Any Overbid after the Baseline Bid shall be made in increments of at least $1,000,000 (the "**Minimum Overbid Increment**").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided*, *however* that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment.

b.      **Overbid Procedures**

Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (the "**Overbid Round Deadline**"), by which time any Overbids must be submitted to the Debtors.

After each Overbid Round Deadline, the Debtors shall determine whether an Overbid is higher or otherwise better than the Baseline Bid (as defined in the Bid Procedures) in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**").  The Debtors shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid.

Any Overbid to a Prevailing Highest Bid by any party must provide more value for the Debtors' estates than any prior bid.

14

### c.    Remaining Terms Are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however*, the Bid Deadline shall not apply and no additional Deposit shall be required beyond the Deposit previously submitted by a Qualified Bidder; *provided* that the Successful Bidder (other than the Stalking Horse Bidder) shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Deposit is equal to the amount of ten percent (10%) of the cash purchase price contained in the Successful Bid.  Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Agreement or a previously submitted Modified Purchase Agreement, in connection therewith (including any changes to the designated assigned contracts and leases and assumed liabilities).  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors) a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the transaction proposed by such Overbid; *provided, however*, this shall not apply to an Overbid by the Stalking Horse Bidder.

### d.    No Collusion; Good-Faith *Bona Fide* Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction (a) it has not engaged in any collusion with respect to the Sale or bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price) and (b) its Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

### e.    Back-Up Bidder

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party(ies) with the second highest or otherwise second best Qualified Bid (or combination of Qualified Bids) at the Auction, as determined by the Debtors, in the exercise of their business judgment, shall be designated by the Debtors as backup bidder (the "**Back-Up Bidder**").  The Back-Up Bidder shall be required to keep its initial Qualified Bid(s) (or if the Back-Up Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "**Back-Up Bid**") open and irrevocable until two (2) business days after the closing of the sale of the Assets (the "**Outside Back-Up Date**").  Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Back-Up Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Successful Bidder's Deposit, if any, shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.  The closing date to consummate the transaction with the Back-Up Bidder shall be no later than the later of (a) twenty five (25) days after the date the Debtors provide notice to the Back-Up Bidder that the

15

Successful Bidder has failed to consummate a sale and the Debtors desire to consummate the transaction with the Back-Up Bidder and (b) five (5) days after necessary regulatory approvals are completed by the Back-Up Bidder and/or the Debtors.  The Deposit, if any, of the Back-Up Bidder shall be held by the Debtors until two (2) business days after the closing of the Sale with the Successful Bidder; *provided*, *however*, in the event the Successful Bidder does not consummate the transaction as described above and the Debtors provide notice to the Back-Up Bidder, the Back-Up Bidder's Deposit shall be held until the closing of the transaction with the Back-Up Bidder.  In the event the Debtors fail to consummate a transaction with the Back-Up Bidder as described above, the Back-Up Bidder's Deposit shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Back-Up Bidder.

### 3.    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders, and all Bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction, or the construction and enforcement of any Transaction Documents.

### 4.    Closing the Auction

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids that the Debtors determine in their reasonable business judgment after consultation with their financial and legal advisors, is the highest or otherwise best Qualified Bid(s) at the Auction (the "**Successful Bid**" and the Bidder(s) submitting such Successful Bid, the "**Successful Bidder**").  In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity, in the Debtors' discretion, to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and Successful Bidder.  The Debtors will file a notice identifying the Successful Bidder and Back-Up Bidder (the "**Post-Auction Notice**") as soon as reasonably practicable after closing the Auction, if any, and in any event not more than 24 hours following closing the Auction.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

**L.** **Procedures for Determining Cure Amounts and Adequate Assurance for Assumed Contract Counterparties to Assumed Contracts**

No later than two business days after entry of the Bid Procedures Order, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease (each an "**Assumed Contract Counterparty**") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such Assumed Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Assumed Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "**Assumption Notice**"), a copy of which is attached to the Bid Procedures Order as Exhibit 3. Any Assumed Contract Counterparty that objects to the cure amount set forth in the Assumption Notice or the possible assignment of its executory contract or unexpired lease to the Stalking Horse Bidder, including the ability of the Stalking Horse Bidder to provide adequate assurance of future performance, must file an objection (an "**Assumed Contract Objection**") on or before **4:00 p.m. prevailing Eastern Time on May 11, 2022**, which Assumed Contract Objection must be served on: (a) counsel for the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel for the Stalking Horse Bidder, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com) and Allurie Kephart (akephart@ycst.com), (ii) Cadwalader Wickersham & Taft LLP, 200 Liberty Street, New York, NY 10281, Attn: Ingrid Bagby (ingrid.bagby@cwt.com), William Mills (william.mills@cwt.com), and Michele C. Maman (michele.maman@cwt.com), and (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Brian Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com); (c) counsel to the Zohar Lenders, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Ryan Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders and PPAS, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Daniel F.X. Geoghan (dgeoghan@coleschotz.com), and Cole Schotz P.C., 500 Delaware Ave, Ste 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com), (e) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (f) counsel to Ankura, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); and (g) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov) (the "**Objection Notice Parties**"), and filed with the Clerk of the

Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.  If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Stalking Horse Bidder.

If the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (a) the identity of a Successful Bidder or (b) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract  (each, a "**Post-Auction Objection**") shall be the Post-Auction Objection Deadline (defined below).  Each Post-Auction Objection must be served on the Objection Notice Parties and filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801, so it is actually received no later than **4:00 p.m. prevailing Eastern Time on June 13, 2022** (the "**Post-Auction Objection Deadline**").  If a Post-Auction Objection is not filed, parties will be forever barred from objecting to the identity of the Successful Bidder or to the assignment of that party's executory contract or unexpired lease to the Successful Bidder.

Where an Assumed Contract Counterparty to an Assumed Contract files a timely Assumed Contract Objection asserting a higher cure amount than the amount listed in the Assumption Notice, or timely files an Assumed Contract Objection or Post-Auction Objection, as applicable, to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease including the Successful Bidder's ability to provide adequate assurance of future performance, and the parties are unable to consensually resolve the dispute, the amount to be paid (if any) under Section 365 of the Bankruptcy Code or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing or at a later date as fixed by the Bankruptcy Court.

## M.    Sale Hearing

If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, a hearing (the "**Sale Hearing**") shall be held on **June 17, 2022, at 9:00 a.m. (prevailing Eastern Time)**, at which hearing the Debtors may, in their discretion, seek approval of the Sale with the Successful Bidder.  If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be **May 26, 2022, at 9:00 a.m. (prevailing Eastern Time)**.  Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (a) be in writing and specify the nature of such objection, (b) comply with the Bankruptcy Rules and the Local Rules, (c) be filed with the Bankruptcy Court no later than **4:00 p.m. (prevailing Eastern Time) on May 18, 2022**, and (d) served on the Objection Notice Parties.

## N.    Return of Good Faith Deposits

The Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Back-Up Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing.  The Deposit of the Back-Up Bidder shall be returned to the Back-Up

Bidder two (2) business days after the closing of the Sale with the Successful Bidder; provided, however, in the event the Successful Bidder does not consummate the transaction as described above and the Debtors provide notice to the Back-Up Bidder, the Back-Up Bidder's Deposit shall be held until the closing of the transaction with the Back-Up Bidder.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Deposit shall be credited towards its purchase price.

**O.      Reservation of Rights**

The Debtors reserve their rights to modify these Bid Procedures in their reasonable business judgment in any manner that will best promote the goals of the bidding process, at or prior to the Auction, subject to the rights of the Stalking Horse Bidder.  Notwithstanding the foregoing and subject in all respects to the Stalking Horse Agreement, the Debtors may not (a) impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Agreement; or (b) modify Section J.4(xiv) without the consent of the Required DIP Lenders (as defined in the DIP Credit Agreement).

US-DOCS\131368965.5#125520549 v7

**Exhibit 2 to Bid Procedures Order**

**Sale Notice**

Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- X
                                                   :
In re:                                             :    Chapter 11
                                                   :
MD HELICOPTERS, INC., et al.,¹                     :    Case No. 22-10263 (KBO)
                                                   :
            Debtors.                               :    (Jointly Administered)
                                                   :
-------------------------------------------------- X
```

**NOTICE OF BID PROCEDURES,
AUCTION, HEARING AND DEADLINES RELATING TO THE SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS**

 **PLEASE TAKE NOTICE** that on March 30, 2022, the above-captioned debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "Bankruptcy Cases"), filed a *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 28] (the "**Bid Procedures and Sale Motion**").[2] The Debtors seek to complete a sale (the "**Sale**") of substantially all their assets (the "**Assets**") to the Stalking Horse Bidder or a prevailing bidder or bidders (the "**Successful Bidder**") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363 of the Bankruptcy Code (the "**Auction**").

 **PLEASE TAKE FURTHER NOTICE** that, on [ ⬤ ], 2022 the Bankruptcy Court entered an order [Docket No. _____] (the "**Bid Procedures Order**") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "**Bid Procedures**"), which set the key dates and times related to the sale of the Debtors' Assets. **All interested bidders should carefully read the Bid Procedures**. To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

---

[1] The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtors must receive an Intention to Submit Qualified Bid from interested bidders in writing on or before **May 20, 2022 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "**Intention to Submit Qualified Bid Deadline**").  To be considered, Intention(s) to Submit Qualified Bid must be sent to the following at or before the Intention to Submit Qualified Bid Deadline: (a) counsel for the Debtors, Latham & Watkins, LLP, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), and Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com) and (b) investment banker to the Debtors, Moelis & Company LLC, Attn: Azad Badakhsh (azad.badakhsh@moelis.com) and Adam Keil (adam.keil@moelis.com) (the "**Bid Recipients**").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtors must receive a Qualified Bid from interested bidders in writing on or before **June 3, 2022 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "**Bid Deadline**").  To be considered, Qualified Bids must be sent to the Bid Recipients on or before the Bid Deadline

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, if the Debtors receive one or more Qualified Bids (other than the Stalking Horse Agreement) by the Bid Deadline, the Auction will be conducted on **June 9, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or at such other place, date and time as may be designated by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, the Debtors have designated certain Assumed Contracts that may be assumed or assumed and assigned to the Successful Bidder.  Within two (2) business days of entry of the Bid Procedures Order, the Debtors shall send a notice to each counterparty to an Assumed Contract setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such Assumed Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "**Assumption Notice**").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Assumption Notice or the possible assignment of their Assumed Contract(s) to the Stalking Horse Bidder must file with the Bankruptcy Court and serve an objection (a "**Assumed Contract Objection**") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on May 11, 2022** (the "**Assumed Contract Objection Deadline**"), by (a) counsel for the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel for the Stalking Horse Bidder, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com) and Allurie Kephart (akephart@ycst.com),

(ii) Cadwalader Wickersham & Taft LLP, 200 Liberty Street, New York, NY 10281, Attn: Ingrid Bagby (ingrid.bagby@cwt.com), William Mills (william.mills@cwt.com), and Michele C. Maman (michele.maman@cwt.com), and (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Brian Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com); (c) counsel to the Zohar Lenders, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Ryan Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders and PPAS, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Daniel F.X. Geoghan (dgeoghan@coleschotz.com), and Cole Schotz P.C., 500 Delaware Ave, Ste 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com), (e) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com), (f) counsel to Ankura, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); and (g) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov) (the "**Objection Notice Parties**"). If a Contract Counterparty does not timely file and serve a Assumed Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Stalking Horse Bidder.

PLEASE TAKE FURTHER NOTICE that if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object (a "**Post-Auction Objection**") solely to (a) the identity of a Successful Bidder or (b) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be **June 13, 2022 at 4:00 p.m.** (prevailing Eastern Time) (the "**Post-Auction Objection Deadline**"), which Post-Auction Objection must be served on the Objection Notice Parties so it is actually received by the Post-Auction Objection Deadline and filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. If a Post-Auction Objection is not filed, parties will be forever barred from objecting to the identity of the Successful Bidder or to the assignment of that party's executory contract or unexpired lease to the Successful Bidder.

PLEASE TAKE FURTHER NOTICE that where a counterparty to an Assumed Contract timely files an (a) Assumed Contract Objection asserting a higher cure amount than the amount listed in the Assumption Notice, or (b) Assumed Contract Objection or Post-Auction Objection, as applicable, to the possible assignment of that counterparty's Assumed Contract, and the parties are unable to consensually resolve the dispute, the amount (if any) to be paid under Section 365 of the Bankruptcy Code or, as the case may be, the Debtors' ability to assign the Assumed Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below) or at a later date as fixed by the Bankruptcy Court. To the extent any Contract Counterparty is added to the

3

Assumption Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount through a supplemental Assumption Notice, and that party shall have fourteen (14) days from the date of such notice to object to the propose cure amount and assignment to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that if the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "**Sale Hearing**") before the Honorable Karen B. Owens, U.S. Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom #3, on **June 17, 2022 at 9:00 a.m. (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be held on **May 26, 2022 at 9:00 a.m. (prevailing Eastern Time)**. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing. Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (a) be in writing and specify the nature of such objection, (b) comply with the Bankruptcy Rules and the Local Rules, (c) be filed with the Court no later than **4:00 p.m. (prevailing Eastern Time) on May 18, 2022** (the "**Sale Objection Deadline**") and (d) be served on the Objection Notice Parties by the Sale Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE OR POST-AUCTION OBJECTION DEADLINE, AS APPLICABLE, IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors are seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures and Bid Procedures Order may be obtained for free by accessing the website of the Debtors' noticing agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), located at https://cases.primeclerk.com/MDHelicopters.

Dated: _____, 2022          Respectfully Submitted,
        Wilmington, Delaware

_____
**TROUTMAN PEPPER HAMILTON SANDERS LLP**

David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
Evelyn J. Meltzer (DE No. 4581)
Kenneth A. Listwak (DE No. 6300)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
Email:   david.stratton@troutman.com
         david.fournier@troutman.com
         evelyn.meltzer@troutman.com
         kenneth.listwak@troutman.com

- and -

**LATHAM & WATKINS LLP**

Suzzanne Uhland (*pro hac vice* admission pending)
Adam S. Ravin (*pro hac vice* admission pending)
Brett M. Neve (*pro hac vice* admission pending)
Tianjiao (TJ) Li (*pro hac vice* admission pending)
Alexandra M. Zablocki (*pro hac vice* admission pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:   suzzanne.uhland@lw.com
         adam.ravin@lw.com
         brett.neve@lw.com
         tj.li@lw.com
         alexandra.zablocki@lw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

5

## **Exhibit 3 to Bid Procedures Order**

**Assumption Notice**

Exhibit 3

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
                                                   :
In re:                                             :    Chapter 11
                                                   :
MD HELICOPTERS, INC., et al.,[1]                   :    Case No. 22-10263 (KBO)
                                                   :
                    Debtors.                       :    (Jointly Administered)
                                                   :
-------------------------------------------------- x
```

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND POSSIBLE ASSIGNMENT TO THE STALKING HORSE BIDDER OR SUCH OTHER SUCCESSFUL BIDDER AT AUCTION**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES MAY BE COUNTERPARTY TO ONE OR MORE EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTORS.[2]**

**PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR LEASE ON APPENDIX I HERETO**

---

**PLEASE TAKE NOTICE** that on March 30, 2022, the above-captioned debtors and debtors in possession (the "**Debtors**") filed a motion (the "**Bid Procedures and Sale Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that on [ ● ], 2022, the Bankruptcy Court entered an order [Docket No. __] (the "**Bid Procedures Order**"), which (a) set key dates, times and procedures related to the Sale (the "**Sale**") of substantially of the Debtors' assets (the "**Assets**") pursuant to an auction (the "**Auction**") overseen by the Bankruptcy Court, which Auction is scheduled to occur on **June 13, 2022 at 10:00 a.m. (prevailing Eastern Time)**, (b) authorized the Debtors to enter into a stalking horse asset purchase agreement (the "**Stalking Horse Agreement**") with MDH Holdco LLC or its assignee (the "**Stalking Horse Bidder**"), (c) established certain

---

[1]    The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215.  The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088.  Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

[2]    This Notice is being sent to counterparties to executory contracts and unexpired leases.  This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

procedures relating to the Debtors' assumption and assignment of executory contracts and unexpired leases in connection with the Sale, and (d) granted related relief.[3] If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, approval of the Sale to the Stalking Horse Bidder or such other "Successful Bidder" (as defined in the Bid Procedures Order) after the results of the Auction and the Debtors' assumption and assignment of any executory contracts and unexpired leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court (the "**Sale Hearing**") at **9:00 a.m. (prevailing Eastern Time) on June 17, 2022**. If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing is scheduled to take place at **9:00 a.m. (prevailing Eastern Time) on May 26, 2022**. The Sale Hearing may be adjourned by the Bankruptcy Court or the Debtors without further notice other than such adjournment announced in open court or a notice of adjournment filed on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order, the Debtors may assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Stalking Horse Bidder or such other Successful Bidder after the outcome of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have conducted a review of their books and records and have determined the cure amount for unpaid monetary obligations under such contract or lease is set forth in the right hand column on Appendix I (the "**Cure Amount**"). If you object to (a) the proposed assumption or disagree with the proposed Cure Amount or (b) object to the possible assignment of such executory contract(s) or unexpired lease(s) to the Stalking Horse Bidder, **you must file an objection with the Bankruptcy Court no later than May 11, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "Assumed Contract Objection Deadline") and serve such objection on the following parties**: (a) counsel for the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzanne Uhland (suzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel for the Stalking Horse Bidder, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com) and Allurie Kephart (akephart@ycst.com), (ii) Cadwalader Wickersham & Taft LLP, 200 Liberty Street, New York, NY 10281, Attn: Ingrid Bagby (ingrid.bagby@cwt.com), William Mills (william.mills@cwt.com), and Michele C. Maman (michele.maman@cwt.com), and (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Brian Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com); (c) counsel to the Zohar Lenders, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Ryan Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders and PPAS, Cole Schotz P.C., 1325

---

[3]    To the extent there are any inconsistencies between the Bid Procedures Order and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

US-DOCS\131368965.5#125520549 v7

Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Daniel F.X. Geoghan (dgeoghan@coleschotz.com), and Cole Schotz P.C., 500 Delaware Ave, Ste 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com); (e) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (f) counsel to Ankura, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); and (g) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov) (the "**Objection Notice Parties**"). If a Contract Counterparty does not timely file and serve a Assumed Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Stalking Horse Bidder.

**PLEASE TAKE FURTHER NOTICE** that if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object (a "**Post-Auction Objection**") solely to (a) the identity of a Successful Bidder or (b) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be **June 13, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Post-Auction Objection Deadline**"), which Post-Auction Objection must be served on the Objection Notice Parties so it is actually received by the Post-Auction Objection Deadline and filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. If a Post-Auction Objection is not filed, parties will be forever barred from objecting to the identity of the Successful Bidder or to the assignment of that party's executory contract or unexpired lease to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Assumed Contract Objection Deadline or Post-Auction Objection Deadline, as applicable, **you will be (a) forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to your contract(s) or lease(s), and the Debtors and the Stalking Horse Bidder or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (b) deemed to have consented to the assumption or assumption and assignment, and (c) forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s).**

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Appendix I and otherwise do not object to the Debtors' assumption or assumption and assignment of your contract(s) and/or lease(s), you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order may be obtained for free by accessing the website of the Debtors' noticing agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), located at https://cases.primeclerk.com/MDHelicopters.

Dated: _____, 2022                   Respectfully Submitted,
      Wilmington, Delaware

                                                _____
**TROUTMAN PEPPER HAMILTON SANDERS LLP**

David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
Evelyn J. Meltzer (DE No. 4581)
Kenneth A. Listwak (DE No. 6300)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
Email:  david.stratton@troutman.com
        david.fournier@troutman.com
        evelyn.meltzer@troutman.com
        kenneth.listwak@troutman.com

- and -

**LATHAM & WATKINS LLP**

Suzanne Uhland (*pro hac vice* admission pending)
Adam S. Ravin (*pro hac vice* admission pending)
Brett M. Neve (*pro hac vice* admission pending)
Tianjiao (TJ) Li (*pro hac vice* admission pending)
Alexandra M. Zablocki (*pro hac vice* admission pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  suzanne.uhland@lw.com
        adam.ravin@lw.com
        brett.neve@lw.com
        tj.li@lw.com
        alexandra.zablocki@lw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

## **APPENDIX I**

| [Counterparty Name] | [Contract/Lease] | [Cure Amount] | [Proposed Assignee (if any)] |
|---|---|---|---|