# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MD Helicopters Inc., *et al.*,[1] | Case No. 22-10263 (KBO) |
| Debtors. | **Ref. Docket No. 20** |

~~INTERIM~~**FINAL** ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND (VI) ~~SCHEDULING~~GRANTING RELATED RELIEF ~~A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF~~

Upon consideration of the motion (the "**Motion**")[2] of the ~~above-captioned~~ debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Cases**") for entry of an interim order (~~this~~the "**Interim Order**") and a final order (~~the~~this "**Final Order**"), pursuant to sections 105, 361, 362, 363, 364, 503, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "**Bankruptcy Code**"), ~~r~~Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and ~~r~~Rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"):

---

[1]  The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215.  The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088.  Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

[2]  Capitalized terms used but not defined herein have the meaning given to such terms in the Motion or the DIP Credit Agreement, as applicable.

  (i) authorizing Debtor MD Helicopters, Inc. ("**MDHI**"), in its capacity as borrower (the "**DIP Borrower**"), to obtain postpetition financing, and for ~~d~~Debtor Monterrey Aerospace, LLC to guarantee unconditionally (the "**DIP Guarantor**"), the DIP Borrower's obligations in connection with a superpriority senior secured credit facility (the "**DIP Facility**") consisting of a $60,000,000 term loan credit facility (the "**DIP Loans**"), of which $12,500,000 ~~will be available~~was initially made available upon entry of the Interim Order and of which the remainder will be made immediately available upon entry of this ~~Interim~~Final Order, in accordance with the terms and conditions set forth in ~~this~~the Interim Order, the DIP Credit Agreement (as defined below), the other DIP Documents (as defined below), and ~~the~~this Final Order;

  (ii) authorizing the Debtors to enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement attached hereto as **Exhibit A** (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**DIP Credit Agreement**," ~~attached hereto as~~ ~~**Exhibit A,**~~ ~~and~~, together with ~~this~~the Interim Order, ~~the~~this Final Order, and all agreements, documents, and instruments delivered or executed in connection therewith, including any fee letters executed by the DIP Borrower in connection with the DIP Facility, and other guarantee and security documentation, collectively, the "**DIP Documents**"), among the DIP Borrower, the DIP Guarantor, the lenders party thereto (collectively in such capacities, the "**DIP Lenders**"), and Acquiom Agency Services LLC, as administrative agent and collateral agent (in such capacities, the "**DIP Agent**~~;~~" and, together with the DIP Lenders, the "**DIP Secured Parties**"), and to perform such other and further acts as may be required in connection with the DIP Documents;

2

(iii)     authorizing the Debtors to use the proceeds of the DIP Loans and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), and the Netherlands Collateral in accordance with the Approved DIP Budget (as defined below) in form and substance acceptable to the required lenders under and pursuant to the DIP Credit Agreement (the "**Required DIP Lenders**") to provide working capital for, and for other general corporate purposes of, the Debtors, including for payment of reasonable and documented transaction costs, fees, and expenses incurred in connection with any transactions to be implemented through the Cases as provided for herein and in the DIP Documents;

(iv)     granting adequate protection to the Prepetition First Lien Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) inof the Prepetition Collateral and to the Netherlands (as defined below) to the extent of any Diminution in Value (as defined below) in the Netherlands Collateral (as defined below) as provided for herein;

(v)     granting valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in substantially all of the property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject only to the (x) Carve Out (as defined below) and (y) liens pPermitted pursuant to the terms ofLiens (as defined in the DIP Credit Agreement and other valid, perfected and unavoidable liens, if any, existing as of the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) ) (other than the Prepetition Liens (as

3

CASE 22-10263-KBO    Doc 187-2    Filed 04/21/22    Page 5 of 83

defined herein))  (collectively, the "**DIP Permitted Encumbrances**"), on the terms and conditions set forth herein and in the DIP Documents;

(vi)    granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Secured Parties with respect to the DIP Obligations (as defined below) over any and all administrative expenses of any kind or nature, subject and subordinate only to the Carve Out on the terms and conditions set forth herein and in the DIP Documents;

(vii)    waiving the rights of the Debtors and their estates to surcharge against the DIP Collateral and, ~~subject to entry of the Final Order and~~ to the extent set forth herein, the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(viii)    ~~subject to entry of the Final Order and~~ to the extent set forth herein, for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral;

(ix)    pursuant to Bankruptcy Rule 4001, holding an interim hearing (the "**Interim Hearing**") on the Motion before this Court to consider entry of ~~this~~the Interim Order, among other things, (1) authorizing the Debtors, on an interim basis, to borrow from the DIP Lenders a principal amount of up to $12,500,000 in DIP Loans, (2) authorizing the DIP Guarantor to guaranty the DIP Obligations, (3) authorizing the Debtors' use of Prepetition Collateral (including Cash Collateral) and the Netherlands Collateral, (4) granting the adequate protection described in this Interim Order, and (5) authorizing the Debtors to execute and deliver the DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

4

(x)     scheduling a final hearing (the "**Final Hearing**") to consider entry of ~~the~~this Final Order, and approving the form of notice with respect to the Final Hearing; and

(xi)     granting related relief.

This Court having considered the Motion, including the exhibits thereto, the *Declaration of Barry Sullivan, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19] (the "**First Day Declaration**"), the *Declaration of Adam B. Keil in Support of Motion of Debtors for Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363 ~~and~~, 364 ~~,~~ 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 2002, 4001 ~~(b)~~, 6003, 6004 and ~~4001(c)~~9014; and (III) Granting Related Relief* [Docket No. 21] (the "**Keil Declaration**"); *Declaration of David Orlofsky in Support of Motion of Debtors for Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014; and (III) Granting Related Relief* [Docket No. 22] (the "**Orlofsky Declaration**"); ~~;~~ *Supplemental Declaration of David Orlofsky in Support of Motion of Debtors for Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense*

5

*Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014; and (III) Granting Related Relief* (the "**Supplemental Orlofsky Declaration**," and, together with the Keil Declaration, the Orlofsky Declaration, and the First Day Declaration, the "**Declarations**"), and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing held pursuant to Bankruptcy Rule 4001(b)(2) on April 1, 2022 and the Final Hearing held on April 25, 2022; and this Court having heard and resolved or overruled any objections, reservations of rights, or other statements with respect to the relief requested in the Motion; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided notice of the Motion and the relief provided for herein as set forth in the Motion, and except as otherwise provided for herein, it appearing that no other or further notice of the Motion and the relief provided for herein need be given under the circumstances; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.      *Petition Date*.  On March 30, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court, thereby commencing these Cases.

B.      *Debtors in Possession*.   The Debtors continue to manage and operate their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court may enter a final order consistent with Article III of the United States Constitution.

D.      *Committee*.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "**Committee**").

E.      *Debtors' Stipulations*.  Without prejudice to the rights of parties in interest other than the Debtors, including any Committee as set forth in this ~~Interim~~Final Order, and subject to the limitations thereon contained in this ~~Interim~~Final Order, the Debtors stipulate and agree that

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

(collectively, paragraphs E(i) through (viii) below are referred to herein as the "**Debtors' Stipulations**"):

        (i)        <u>Prepetition First Lien Loans</u>.

        (a)        *Prepetition First Lien Credit Agreement*.  Under that certain Credit Agreement, dated as of July 8, 2005 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified, the "**Prepetition First Lien Credit Agreement**" and, collectively with all agreements, documents, notes, letters of credit, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including, without limitation, the Security Agreement, the New Agent Order, and the New Agent Agreement (each as defined below), the "**Prepetition First Lien Loan Documents**"), by and among ~~MD Helicopter, Inc.~~MDHI, as borrower (the "**Borrower**"), Monterrey Aerospace, LLC, as guarantor (the "**Guarantor**"), the Lenders (as defined in the Prepetition First Lien Credit Agreement) from time to time party thereto (collectively, the "**Prepetition First Lien Lenders**"), Ankura Trust Company, LLC ("**Ankura**"), as administrative agent for the Zohar Lenders,[4] pursuant to the *Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and The Zohar III Controlling Class And (II) Granting Related Relief* entered in *Zohar III, Corp.*, Case No. 18-10512 (Bankr. D. Del.) at [Docket No.

---

[4]    For purposes of this ~~Interim~~Final Order, the "**Zohar Lenders**" and "**Zohar Noteholders**" shall mean Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited, and Zohar III, Limited, collectively.  It has been represented to this Court that the Zohar Lenders constitute the Required Lenders (as defined in the Prepetition First Lien Credit Agreement) under the Prepetition First Lien Credit Agreement.

709] (the "**New Agent Order**") and the New Agent Agreement (as defined in the New Agent Order), Patriarch Partners Agency Services, LLC ("**PPAS**," and, together with Ankura, the "**Prepetition First Lien Agent**"), as administrative agent for the Patriarch Lenders,[5] and Ankura and PPAS, as collateral agent (together, in such capacity, the "**Prepetition First Lien Collateral Agent**"), the Prepetition First Lien Lenders provided certain loans, advances and other extensions of credit (collectively, the "**Prepetition First Lien Loans**").  The Prepetition First Lien Agent, the Prepetition First Lien Collateral Agent, and the Prepetition First Lien Lenders are collectively referred to herein as the "**Prepetition First Lien Secured Parties**".

   (b) *Prepetition First Lien Obligations*.  All indebtedness, liabilities, and obligations owing from time to time under the Prepetition First Lien Loan Documents, specifically to the extent constituting Obligations (as defined in the Prepetition First Lien Credit Agreement), are collectively referred to herein as "**Prepetition First Lien Obligations**".  As of the Petition Date, the applicable Debtors were indebted and liable under the Prepetition First Lien Loan Documents, without defense, counterclaim, or offset of any kind to the Prepetition First Lien Secured Parties in respect of the Prepetition First Lien Obligations for an aggregate amount of not less than $357 million in respect of the loans made under the Prepetition First Lien Credit Agreement, including outstanding principal and accrued and unpaid interest, fees, costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities and all other unpaid Obligations (as defined in the Prepetition First Lien Credit Agreement) incurred or accrued with respect to the foregoing pursuant to, and in accordance with, the Prepetition First Lien Loan Documents.

---

[5] For purposes of this ~~Interim~~Final Order, the "**Patriarch Lenders**" and "**Patriarch Noteholders**" shall mean Ark Investment Partners II, L.P. and Ark II CLO 2001-1, Ltd.

(ii)    *First Lien Loan Collateral*.  In connection with the Prepetition First Lien Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of July 8, 2005 (as amended, supplemented or otherwise modified from time to time, the "**Security Agreement**"), by and between the Borrower, the other loan parties thereto, and the Prepetition First Lien Agent.  Pursuant to the Security Agreement and the other Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations are secured by legal, valid, binding, perfected, and enforceable first-priority security interests in and liens on (the "**Prepetition First Lien Loan Liens**") the "Collateral" (the "**Prepetition Collateral**"), pursuant to, and as such term is defined in, the Security Agreement, consisting of substantially all of the Debtors' assets, except as set forth in the Security Agreement, subject only to liens (collectively, the "**First Lien Permitted Encumbrances**") senior by operation of law or otherwise permitted by the Prepetition First Lien Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition First Lien Loan Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

(iiii)    *Subordinated Notes*. Under that certain Note Purchase Agreement, dated as of April 17, 2007 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified, the "**Prepetition Note Purchase Agreement**," and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "**Prepetition Note Documents**"), MD Helicopter, Inc.MDHI issued

certain Notes (as defined in the Prepetition Note Purchase Agreement) to the Purchasers (as defined in the Prepetition Note Purchase Agreement).  The holders of the Notes as of the entry of this ~~Interim~~Final Order and their respective successors and assigns are collectively referred to herein as the "**Prepetition Noteholders**".  The Prepetition First Lien Secured Parties and the Prepetition Noteholders are collectively referred to herein as the "**Prepetition Secured Parties**".[6]

(~~iii~~iv)    *Prepetition Note Obligations*.  All indebtedness, liabilities, and obligations owing from time to time under the Prepetition Note Documents are collectively referred to herein as "**Prepetition Note Obligations**".  Prepetition First Lien Obligations and Prepetition Note Obligations are collectively referred to herein as "**Prepetition Secured Obligations**".  As of the Petition Date, except as otherwise set forth herein, the applicable Debtors were indebted and liable under the Prepetition Note Documents, without defense, counterclaim, or offset of any kind, to the Prepetition Noteholders in respect of the Prepetition Note Obligations for an aggregate amount of not less than $60 million, including outstanding principal and accrued and unpaid interest, fees, costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities and all other unpaid obligations under the Prepetition Note Documents.

(~~iii~~v)    *Subordinated Note Collateral*. Pursuant to and as more particularly described in the Prepetition Note Documents, the Prepetition Note Obligations are secured by second priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "**Prepetition Note Liens**~~,~~" and~~,~~ together with the Prepetition First Lien Loan Liens, the "**Prepetition Liens**") the Prepetition Collateral as set forth in the Prepetition Note

---

[6]    It has been represented to this Court that the Zohar Noteholders constitute the Required Holders (as defined in the Prepetition Note Purchase Agreement) under the Prepetition Note Purchase Agreement.

Documents and subject to the terms of the Subordination Agreement (as defined ~~herein~~below),
and~~-~~, as of the Petition Date, such Prepetition Note Liens were senior in priority over any and all
other liens on the Prepetition Collateral, subject only to (a) the Prepetition First Lien Loan Liens
and (b) liens (collectively, the "**Second Lien Permitted Encumbrances**") senior by operation of
law or otherwise permitted by the Prepetition Note Documents (solely to the extent any such
permitted liens were valid, properly perfected, non-avoidable and senior in priority to the
Prepetition Note Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in
existence as of the Petition Date that are perfected after the Petition Date as permitted by section
546(b) of the Bankruptcy Code).

(vi~~v~~)    *Cash Collateral*.  Any and all of the Debtors' cash, including the Debtors'
cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and
any amounts generated by the collection of accounts receivable or other disposition of the
Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing,
is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the
Bankruptcy Code ("**Cash Collateral**").

(~~v~~vii)    *Bank Accounts*.   The Debtors acknowledge and agree that as of the
Petition Date, none of the Debtors has opened or maintains any bank accounts other than the
accounts listed in the exhibit attached to the Debtors' motion filed with this Court for relief to
continue to use the Debtors' existing cash management system.

(~~vi~~viii) *Validity, Perfection, and Priority of Prepetition Liens and Prepetition*
*Secured Obligations*.  Subject to the Challenge Period (as defined below) and paragraph 37 of
this Final Order, each of the Debtors acknowledges and agrees that, in each case as of the
Petition Date:  (A) the Prepetition Liens are legal, valid, binding, enforceable, non-avoidable,

and properly perfected liens on and security interests in the Prepetition Collateral; (B) the Prepetition First Lien Loan Liens are subject and subordinate only to the First Lien Permitted Encumbrances that, in each case, are senior in priority to the Prepetition First Lien Loan Liens, and the Prepetition Note Liens are subject and subordinate only to the Prepetition First Lien Loan Liens and to the Second Lien Permitted Encumbrances that, in each case, are senior in priority to the Prepetition Note Liens; (C) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; and (D) ~~except with respect to the Prepetition Secured Obligations owed to the Patriarch Lenders, the Patriarch Noteholders, and PPAS, solely in its capacity as agent for the Patriarch Lenders (but not for any other Prepetition Secured Parties),~~ (i) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code) arising out of, based upon, or related to the Prepetition Liens or Prepetition Secured Obligations. ~~For the avoidance of doubt,~~

13

notwithstanding anything to the contrary provided for herein, any and all rights of the Debtors, their estates and any third parties to commence and prosecute any and all claims, causes of action and defenses, including claims for recharacterization or equitable subordination, with respect to any Prepetition Secured Obligations owed to the Patriarch Lenders, the Patriarch Noteholders, or PPAS, solely in its capacity as agent for the Patriarch Lenders (but not for any other Prepetition Secured Parties) are expressly preserved.

F.    _Findings Regarding the DIP Facility and Use of Cash Collateral_.

US-DOCS\130906090.5131249657.14#125740274.v5

(i)        The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral (to the extent consistent with the Approved DIP Budget, subject to permitted variances as set forth in this ~~Interim~~Final Order and the DIP Documents) to, among other things, (A) permit the orderly continuation of their business; (B) fund the Adequate Protection Account (as defined below); and (C) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors.  The proceeds of the DIP Facility will provide the Debtors with the ability to fund day-to-day operations, meet administrative obligations during the Cases, and preserve the value of their estates.  The DIP Facility will also reassure the Debtors' customers and employees that the Debtors will have access to additional liquidity to meet their commitments during the Cases.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern values, preservation and maintenance of the value of the ~~Prepetition Collateral~~Debtors' assets, and prospects for a successful reorganization.  The Debtors will not have sufficient sources of working capital and financing to fund the anticipated administrative expenses associated with the Cases, and operate their business in the ordinary course of business throughout the Cases without access to the DIP Facility and authorized use of Cash Collateral.

(ii)        The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without

15

the Debtors granting to the DIP Secured Parties, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Documents.

(iii)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "**DIP Obligations**") shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~Final Order or any provision hereof is reversed or modified on appeal, and any liens or claims granted to, or payments made to, the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such reversal or modification of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(iv)    *No Claims or Causes of Action*.  As of the date hereof, there exist no claims or causes of action against any of the DIP Secured Parties with respect to, in connection with, related to, or arising from the DIP Documents that may be asserted by the Debtors or their estates.

(v)    *Priming of the Prepetition Liens and the Netherlands Liens*.  The priming of the Prepetition Liens and the Netherlands Liens (as defined below) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, will enable the Debtors to obtain the DIP Facility and to continue to operate their business during the pendency of the Cases, to the benefit of their estates and creditors, and the Debtors would not be able to obtain debtor-in-possession financing in a sufficient amount without granting such priming liens.  The priming of the Prepetition Liens and the Netherlands Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, is appropriate because (i) the holders of the Prepetition Liens and the Netherlands Liens have consented to the DIP Liens granted pursuant to this ~~Interim~~Final Order and/or (ii) the terms of the adequate protection arrangements provided for herein are fair and reasonable and otherwise sufficient under the circumstances to adequately protect the Prepetition Secured Parties and the Netherlands against any postpetition diminution in value of the Prepetition Collateral (including Cash Collateral) and the Netherlands First Priority Collateral (if any), respectively, as provided for herein.

(vi)    *Consent to Use of Cash Collateral*.  Prepetition First Lien Lenders constituting Required Lenders under the Prepetition First Lien Credit Agreement (such Prepetition First Lien Lenders, the "**Consenting Prepetition First Lien Lenders**") have delivered written direction to the Prepetition First Lien Agent to consent to the Debtors' use of the Prepetition Collateral (including Cash Collateral) on the terms and conditions set forth in this ~~Interim~~Final Order.[7]  Pursuant and subject to the terms of the Prepetition Note Documents,

---

[7]  ~~Prepetition First Lien Lenders that have not delivered written consent to the Prepetition First Lien Agent, in a form reasonably satisfactory to the Debtors, to the Debtors' use of the Prepetition Collateral and incurrence of the DIP Facility on the terms and conditions set forth herein and in the DIP Documents are referred to herein as "Non-Consenting Prepetition First Lien Lenders".~~

including, without limitation, that certain Subordination Agreement, dated as of April 17, 2007, by and among the Purchasers (as defined in the Prepetition Note Purchase Agreement) and the Prepetition First Lien Agent, and those certain Amended and Restated Subordinated Security Agreements, dated as of May 31, 2011, by and among MDHI, as grantor, and each of the Purchasers (collectively, the "**Subordination Agreement**"), the Prepetition Noteholders are deemed to have consented to the use of the Prepetition Collateral (including Cash Collateral). No other or further consents to the use of the Prepetition Collateral (including Cash Collateral) need be provided.

(vii)    *Adequate Protection for Prepetition First Lien Secured Parties*.  To the extent provided for herein, each of the Prepetition First Lien Secured Parties are entitled, pursuant to sections 105, 361, 362, 363(e), and 364(d) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, for any postpetition diminution in the value thereof.  Based on the DIP Motion, the Declarations, and other evidence filed in support of the DIP Motion, and the record presented to the Court in connection with the Interim Hearing and the Final Hearing, under the circumstances, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) as provided for herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and are otherwise sufficient to adequately protect the Prepetition Secured Parties against any postpetition diminution in value of the Prepetition Collateral (including Cash Collateral) as provided for herein.

(viii)    *Sections 506(c) and 552(b) Waivers*.  In light of the Prepetition Liens being subordinated under thisthe Interim Order and this Final Order to the DIP Obligations and the Carve Out and the Debtors' use of the Prepetition Collateral (including Cash Collateral) as

set forth herein, the Prepetition Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to and upon entry of the Final Order, (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)    *Consent to Incurrence of DIP Facility*.  The Consenting Prepetition First Lien Lenders and the Netherlands have consented to the Debtors' incurrence of the DIP Facility on the terms and conditions set forth in this InterimFinal Order.  Pursuant and subject to the terms of the Prepetition Note Documents, including, without limitation, the Subordination Agreement, the Prepetition Noteholders are deemed to have consented to the Debtors' incurrence of the DIP Facility on the terms and conditions set forth in this InterimFinal Order.  In addition, the Zohar Noteholders, acting as the Required Holders under the Note Purchase Agreement, have consented to the Debtors' incurrence of the DIP Facility on the terms and conditions set forth in this InterimFinal Order.  By virtue of that consent, pursuant and subject to the terms of the Note Purchase Agreement, the Prepetition Noteholders are deemed to have consented to the Debtors' incurrence of the DIP Facility on the terms and conditions set forth in this InterimFinal Order.

G.    *Subordination Agreement*.  Pursuant to section 510 of the Bankruptcy Code, the Subordination Agreement shall (i) remain in full force and effect, (ii) continue to govern the relative obligations, priorities, rights and remedies of the Prepetition First Lien Secured Parties and the Prepetition Noteholders, and (iii) not be deemed to be amended, altered or modified by the terms of this InterimFinal Order or the DIP Documents, in each case, unless expressly set forth herein or therein.

H.    *Good Faith*.  The DIP Lenders, the Consenting Prepetition First LienZohar Lenders, and Ankura , the Patriarch Lenders, PPAS, and the Netherlands have negotiated at

19

arms' length and acted in good faith regarding (a) the Debtors' incurrence of the DIP Facility and use of the Prepetition Collateral (including Cash Collateral) and the Netherlands Collateral, as provided for in this ~~Interim~~Final Order, and (b) the other terms of this ~~Interim~~Final Order, including, without limitation, the terms of the adequate protection provided for herein.

I.    *Good Cause Shown; Best Interest*.  Good cause has been shown for entry of this ~~Interim~~Final Order, and entry of this ~~Interim~~Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.  Absent granting the relief sought by this ~~Interim~~Final Order, the Debtors' estates will be immediately and irreparably harmed.

J.    *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the applicable Local Rules, the Debtors have provided notice of the ~~Interim~~Final Hearing and the ~~emergency~~ relief requested in the Motion ~~has been provided by the Debtors~~.  Under the circumstances, the notice given by the Debtors of the Motion, the relief provided for herein, and the ~~Interim~~Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the applicable Local Rules.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.    <u>DIP Financing Approved</u>.  The Motion is granted ~~on an interim basis~~ as set forth herein.

2.    <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to entry of this ~~Interim~~Final Order, to the extent not withdrawn or resolved, are

overruled on the merits.  This ~~Interim~~Final Order shall become effective immediately upon its entry.

      3.    <u>Authorization of the DIP Facility and the DIP Documents</u>.

      (a)    The Debtors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Documents, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this ~~Interim~~Final Order and the DIP Documents.  ~~The Interim~~This Final Order, the DIP Credit Agreement, and the other DIP Documents shall govern and control the DIP Facility.  Upon execution and delivery thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms and conditions of the DIP Documents and this ~~Interim~~Final Order, the terms and conditions of this ~~Interim~~Final Order shall govern and control.  In all respects, the DIP Documents shall be consistent with this ~~Interim~~Final Order and the DIP Credit Agreement.

      (b)    ~~Upon entry of this Interim Order, t~~The DIP Borrower is hereby authorized to borrow, and the DIP Guarantor is hereby authorized to guaranty, borrowings up to an aggregate principal amount of $~~12,500,000~~60,000,000 of DIP Loans, subject to and in accordance with this ~~Interim~~Final Order, without any further action by the Debtors or any other party.

      (c)    ~~Upon entry of this Interim Order, t~~The Backstop Fee and Exit Fee ~~shall be~~are fully earned and payable pursuant to the terms of the DIP Documents.  The Backstop Fee and Exit Fee shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.  ~~Notwithstanding anything in this Interim Order or the other DIP~~

~~Documents to the contrary, if the Debtors obtain financing under section 364 of the Bankruptcy Code other than the DIP Facility ("Alternative DIP Financing") prior to entry of the Final Order, the Backstop Fee (a) with respect to each Backstop Lender's funded Backstop Commitments shall be payable in an amount of 8.0% of such Backstop Lender's funded Backstop Commitments in cash on closing of the Alternative DIP Financing and (b) with respect to each Backstop Lender's unfunded Backstop Commitments shall be payable in an amount of 8.0% of such Backstop Lender's unfunded Backstop Commitments, in cash or Equity Interests in New MD Helicopter at the Equity Conversion Rate at the sole discretion of the Stalking Horse Bidder, on the closing or consummation of a Stalking Horse Transaction (as defined below) in the event that either (x) the Stalking Horse Bidder is the successful bidder~~ in a sale pursuant to section 363 ~~of the Bankruptcy Code of all or substantially all of the assets of the Loan Parties or (y) the Stalking Horse Bidder is the plan sponsor in a plan of reorganization under Chapter 11 of the Bankruptcy Code (each, a "Stalking Horse Transaction").~~  For the avoidance of doubt, if (i) an ~~Alternative DIP Financing is approved prior to entry of a Final Order and (ii) the Stalking Horse Bidder is not the successful bidder or plan sponsor in a Stalking Horse Transaction, then the Backstop Lenders' shall receive no additional Backstop Fee on account of the unfunded Backstop Commitments.~~

(d)    It shall be an Event of Default (as defined below) if proceeds of the DIP Loans are used other than for the purposes as permitted under the DIP Documents and this ~~Interim~~Final Order, and in accordance with the Approved DIP Budget, subject to permitted variances as set forth in this ~~Interim~~Final Order and the DIP Documents.  Attached as **Exhibit B** hereto and incorporated herein by reference is a budget prepared by the Debtors and approved by the Required DIP Lenders in accordance with the DIP Credit Agreement (together with any

subsequent Budget approved from time to time in accordance with paragraph 4 of this ~~Interim~~Final Order, the "**Approved DIP Budget**").[87]

        (e)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to perform all acts and to make, execute, and deliver all instruments and documents and to pay all fees, expenses and indemnities (including all fees and expenses owed to the DIP Secured Parties under the DIP Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

        (1)    the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby;

        (2)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents), it being understood that no further approval of this Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents that are not material; *provided* that notice of any such amendments, waivers, consents or other modifications to or under the DIP Documents shall be provided to counsel to the Prepetition First Lien Lenders and counsel to Ankura not less than three (3) calendar days prior to the effectiveness thereof;

---

[87]   As used in this ~~Interim~~Final Order, "Budget" shall have the meaning ascribed to such term in the DIP Credit Agreement.

(3)    the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees, expenses, indemnity and other amounts referred to in the DIP Documents, including (x) all fees, expenses, indemnity and other amounts owed to the DIP Secured Parties and (y) all reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this ~~Interim~~<u>Final</u> Order (whether incurred before or after the Petition Date), including, for the avoidance of doubt, (a) Arnold & Porter Kaye Scholer LLP (as counsel), (b) Baker & McKenzie LLP (as counsel), (c) Seabury Capital Group LLC (as financial advisor), and (d) Womble Bond Dickenson (US) LLP (as Delaware bankruptcy counsel) to the DIP Lenders and DIP Agent (collectively, the "**DIP Professionals**");

(4)    the performance of all other acts required under or in connection with the DIP Documents.

(f)    ~~Upon entry of this Interim Order, such~~<u>The</u> DIP Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this ~~Interim~~<u>Final</u> Order for all purposes during the Cases, any subsequently converted Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Case.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents, or this ~~Interim~~<u>Final</u> Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform

24

Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted to or on behalf of the DIP Agent on behalf of any DIP Secured Parties, pursuant to the DIP Documents, the provisions of this ~~Interim~~Final Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code.

(g)    The DIP Guarantor hereby is authorized and directed to unconditionally guarantee, and ~~upon entry of this Interim Order~~ shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.    <u>Budget and Variance Reporting</u>.  On the final business day of every fourth calendar week following ~~entry of this Interim Order~~April 4, 2022, beginning with ~~the fourth full week following the Petition Date~~April 29, 2022 (or more frequently if determined by the Debtors), the Debtors will deliver to the DIP Agent (for distribution to the DIP Lenders), the Prepetition First Lien Lenders, and Ankura an updated Budget for the subsequent 13-week period, which shall be in form and substance satisfactory to the Required DIP Lenders and the Required Lenders under the Prepetition First Lien Credit Agreement.  The initial Approved DIP Budget or any subsequent Approved DIP Budget shall be deemed to constitute the "Approved DIP Budget" for purposes of this ~~Interim~~Final Order with the most recently delivered Budget constituting the "Approved DIP Budget," upon (i) approval by the Required DIP Lenders and the Required Lenders under the Prepetition First Lien Credit Agreement (which must be in writing, email being sufficient) or (ii) 5:00 p.m. (prevailing Eastern time) three (3) business days following delivery of such Budget if the Required DIP Lenders and the Required Lenders under

the Prepetition First Lien Credit Agreement have neither approved nor rejected the Budget.  Any Approved DIP Budget shall be promptly filed with this Court after either of the conditions in the preceding sentence have occurred.  In the event the conditions for the most recently delivered Budget to constitute an "Approved DIP Budget" are not met as set forth herein, the prior Approved DIP Budget shall remain in full force and effect.  ~~Commencing on the first full calendar week after the Petition Date, on or before 5:00 p.m. (prevailing Eastern time) on~~On Thursday of each week, the Debtors shall deliver to the DIP Agent (for distribution to the DIP Lenders), the Prepetition First Lien Lenders, and Ankura a budget variance report/reconciliation (the "**Approved DIP Budget Variance Report**"), setting forth in reasonable detail actual operating receipts and operating disbursements for the applicable Budget Period (as defined below) and all Budget Variances (as defined below), in each case, on both an individual line item basis and an aggregate basis, as compared to the projected amounts therefor set forth in the then applicable Approved DIP Budget, together with a statement set forth in Section 5.01(h) of the DIP Credit Agreement.  The Approved DIP Budget Variance Report shall include indications as to whether each variance therein is temporary or permanent and an explanation, in reasonable detail, of any material variance.  The Debtors' advisors shall hold weekly meetings with the DIP Lenders and the Prepetition First Lien Lenders and their respective advisors to discuss the applicable Approved DIP Budget Variance Report.  "**Budget Period**" shall mean the four-week period ~~following the first full calendar week after entry of this Interim Order~~beginning April 4, 2022 and each successive four-week period (*e.g.*, full calendar weeks 1 through 4 following entry of this ~~Interim~~Final Order shall be the first Budget Period and weeks 5 through 8 following entry of this ~~Interim~~Final Order shall be the second Budget Period).  The Debtors shall not permit the percentage variance with respect to (i) total projected operating disbursements in each then-

26

current Approved DIP Budget to exceed (a) 125% in week 1 of the applicable Budget Period, (b) 120% in week 2 of the applicable Budget Period, (c) 115% in week 3 of the applicable Budget Period, and (d) 110% in week 4 of the applicable Budget Period, each on an aggregate basis of total actual operating disbursements, and (ii) total projected operating receipts in each then-current Approved DIP Budget to be less than (a) 75% in weeks 1 and 2 of the applicable Budget Period and (b) 80% in weeks 3 and 4 of the applicable Budget Period on an aggregate basis of total actual operating receipts, in each case, for measuring the variance, tested weekly on a cumulative basis for the Budget Period under the then-current Approved DIP Budget (the "**Budget Variances**") (*i.e.*, in week 1 of each Budget Period, only week 1 variances are tested; in week 2 of each Budget Period, weeks 1 and 2 variances are tested on a cumulative basis; in week 3 of each Budget Period, weeks 1 through 3 variances are tested on a cumulative basis; and in week 4 of the applicable Budget Period, weeks 1 through 4 variances are tested on a cumulative basis); *provided* that each dollar of favorable variance in operating disbursements in any Approved DIP Budget Variance Report may be credited to operating receipts in the same Approved DIP Budget Variance Report for purposes of the weekly variance test.  All references in this ~~Interim~~Final Order and the DIP Documents to "Approved DIP Budget" shall mean the Approved DIP Budget as it is subject to the Budget Variances.

5.     <u>Access to Records</u>.  The Debtors shall provide the DIP Agent (for distribution to the DIP Lenders), the Prepetition First Lien Lenders, and Ankura with all reporting and other information required to be provided to the DIP Agent under the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to Debtors' counsel (email being sufficient) and subject to any limitation that the Debtors reasonably believe to be necessary to protect the fairness and

integrity of the sale process, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties, the Prepetition First Lien Lenders, and Ankura to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Secured Parties, the Prepetition First Lien Lenders, and Ankura shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

6.      **DIP Superpriority Claims**.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and without the need to file any proof of claim, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "**DIP Superpriority Claims**") with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order providing for such relief), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed

28

under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, ~~upon entry of a Final Order providing for such relief,~~ any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "**Avoidance Actions**"), all subject only to, and subordinated in all respects to, the Carve Out.

7.      DIP Liens.  As security for the DIP Obligations, effective and perfected upon the date of this ~~Interim~~Final Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Secured Parties of or over any DIP Collateral (as defined below), subject to (x) the DIP Permitted Encumbrances and (y) the Carve Out, the ~~following security interests and liens are~~Debtors hereby grant~~ed by the Debtors~~ to the DIP Agent~~,~~ (for the benefit of the DIP Lenders) the following security interests and liens (collectively, the "**DIP Liens**~~,~~" and~~,~~ all property on which the DIP Liens are granted, the "**DIP Collateral**"):

(a)      First Priority DIP Lien On Any Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens) unencumbered cash of the Debtors (whether

29

maintained with the DIP Agent or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests in or of any entity (including equity interests in subsidiaries of each Debtor), money, investment property, intercompany claims, claims arising on account of transfers of value from a Debtor to (x) another Debtor or (y) a non-Debtor affiliate incurred on or following the Petition Date, causes of action (other than Avoidance Actions), all products and proceeds of the foregoing (other than Avoidance Actions), proceeds and property recovered in respect of section 549 of the Bankruptcy Code (other than Avoidance Actions), and~~, upon entry of a Final Order providing for such relief,~~ all proceeds and property recovered in respect of Avoidance Actions.

(b)    <u>DIP Liens Priming the Prepetition Liens <ins>and Netherlands Liens</ins></u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all property of the Debtors that was subject to the Prepetition Liens, including, without limitation, the Prepetition Collateral (including Cash Collateral)<ins>, and the Netherlands Liens, including, without limitation, the Netherlands Collateral</ins>; *provided* that such liens shall be immediately junior to any DIP Permitted Encumbrances; *provided, further,* that, for the avoidance of doubt and notwithstanding

30

anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this ~~Interim~~Final Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing~~; provided, however, the foregoing shall not include proceeds and property recovered in respect of Avoidance Actions until entry of a Final Order providing for such relief~~.

8.    <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>.  Subject only to the Carve Out and the terms of this ~~Interim~~Final Order, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), solely for and equal in amount to the postpetition diminution in value of such interests (each such diminution, a "**Diminution in Value**"), resulting from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, is hereby granted the following (collectively, the "**First Lien Adequate Protection Obligations**"):

(a)    <u>First Lien Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the Petition Date (~~together~~collectively, the "**First Lien Adequate Protection Liens**"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral~~; provided, however, the foregoing shall not include~~

~~commercial tort claims against the Prepetition First Lien Secured Parties in their respective~~ ~~capacities as such and proceeds and property recovered in respect of Avoidance Actions until~~ ~~entry of a Final Order providing for such relief.~~  Subject to the terms of this ~~Interim~~Final Order, the First Lien Adequate Protection Liens shall be subordinate only to the (A) Carve Out, (B) the DIP Liens, ~~and~~ (C) First Lien Permitted Encumbrances that, in each case, are senior in priority to the Prepetition First Lien Loan Liens, and (D) solely with respect to the Netherlands First Priority Collateral and subject to paragraph 37 of this Final Order, the Netherlands Liens and Netherlands Adequate Protection Liens.  The First Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code).

(b)    First Lien Adequate Protection Superpriority Claims.  As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, allowed administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any Diminution in Value (the "First Lien Adequate Protection Superpriority Claims"), but junior to the Carve Out and the DIP Superpriority Claims.  Subject to the Carve Out and the DIP Superpriority Claims in all respects, the First Lien Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims against any of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c) ~~(upon entry of the Final Order~~

providing for such relief), 507(a), 507(b), 546(d), 726, 1113 or 1114 of the Bankruptcy Code. The Prepetition First Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the First Lien Adequate Protection Superpriority Claims under section 507(b) of the Bankruptcy Code granted hereunder unless and until the DIP Obligations have been indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents.

(c)    Adequate Protection Account.  As further adequate protection, the Debtors shall transfer an amount equal to seven (7) percent of each dollar of DIP Loans drawn to a segregated account in the name of MDHI. with Wells Fargo Bank, N.A. (the "**Adequate Protection Account**"), for the benefit of the Non-Consenting Prepetition First LienPatriarch Lenders solely to the extent of any Diminution in Value of the Non-Consenting Prepetition First LienPatriarch Lenders' interests in the Prepetition Collateral arising from the imposition of the priming DIP Liens on the Prepetition Collateral.  The funds on deposit in the Adequate Protection Account shall be referred to herein as the "**Adequate Protection Funds**".  The Adequate Protection Account, the Adequate Protection Funds, and the proceeds thereof shall be DIP Collateral; *provided* that the rights of the Non-Consenting Prepetition First LienPatriarch Lenders to the Adequate Protection Account, the Adequate Protection Funds, and the proceeds thereof shall be senior to the DIP Liens solely to the extent of any Diminution in Value of the Non-Consenting Prepetition First LienPatriarch Lenders' interests in the Prepetition Collateral arising from the imposition of the priming DIP Liens on the Prepetition Collateral.  The Debtors shall (i) continue to segregate and maintain the Adequate Protection Funds and (ii) not use, commingle, or further encumber the Adequate Protection Account or the Adequate Protection Funds.  The Debtors shall provide weekly reporting identifying the balance of the Adequate

Protection Account and the nature and amount of all deposits to or withdrawals from the Adequate Protection Account to the DIP Secured Parties and the Prepetition First Lien Secured Parties.  The Adequate Protection Funds shall be held in the Adequate Protection Account subject to the terms and conditions of this paragraph 8(c), until the earlier of (i) indefeasible payment in full of the DIP Obligations, which shall include the assumption or refinance of the DIP Facility, (ii) entry of a final order in favor of the plaintiff or the movant sustaining any Challenge (as defined below) to the mortgages, liens or security interests of the ~~Non-Consenting Prepetition First Lien~~Patriarch Lenders with respect to the Prepetition First Lien Loan Liens and Prepetition First Lien Obligations in any filed adversary proceeding or initiated contested matter under paragraph 11 of this ~~Interim~~Final Order (such a Challenge, a "**Successful Challenge**"), ~~or~~ (iii) the Challenge Period Termination Date if the expiration of the Challenge Period occurs without the filing of a Challenge with respect to the Patriarch Lenders, the mortgages, liens or security interests of the Patriarch Lenders, or the Prepetition First Lien Obligations held by the Patriarch Lenders, (iv) if any Challenge described in the preceding clause (iii) is filed, entry of a further order of this Court overruling such Challenge, (v) payment of the Cash Payment (as defined below) pursuant to paragraph 23(b) of this Final Order or distribution of Term Loan Proceeds (as defined below) pursuant to paragraph 23(d) of this Final Order, or (v) entry of a further order of this Court authorizing the release of the Adequate Protection Funds; *provided* that the Adequate Protection Funds shall be released from the Adequate Protection Account pursuant to clause (ii) in proportion with the portion of the Prepetition First Lien Obligations of the ~~Non-Consenting Prepetition First Lien~~Patriarch Lenders that are subject to the Successful Challenge; *provided further* that, for the avoidance of doubt, in the event the credit bid of the First Lien Agent of the Prepetition First Lien Obligations is the successful bid, the Adequate

34

Protection Funds may be paid to the Patriarch Lenders and credited to the Cash Payment, provided, however, that in no event shall the Patriarch Lenders be entitled to payment from the Adequate Protection Funds or otherwise in excess of the Cash Payment.  Upon release of the Adequate Protection Funds pursuant to the preceding sentence, the Debtors shall be authorized to use such funds for general corporate purposes subject to the terms and conditions of this ~~Interim~~Final Order.

(d)    Right to Seek Additional Adequate Protection.  This ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (i) the rights of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request; and (ii) subject to the terms of the Subordination Agreement, the rights of the Prepetition Noteholders to request adequate protection at any time or the rights of the Debtors or any other party to contest such request.

9.    Carve Out.

(a)    Priority of Carve Out.  Subject to the terms and conditions contained herein, each of the DIP Liens, DIP Superpriority Claims, Prepetition Liens, First Lien Adequate Protection Liens,  ~~and~~ First Lien Adequate Protection Superpriority Claims, Netherlands Adequate Protection Liens, and Netherlands Adequate Protection Superpriority Claims shall be subject and subordinate to the Carve Out.

(b)    Definition of Carve Out.  As used in this ~~Interim~~Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee (the "**U.S. Trustee**") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) to the extent payable or allowed at any time, whether

by ~~interim~~ order~~, procedural order,~~ or otherwise, but not to exceed the amounts set forth for each Professional Person (as defined below) in the Approved DIP Budget as of the delivery of the Carve Out Trigger Notice (as defined below), all unpaid fees and expenses (including any success or transaction fees owed to Moelis & Company LLC (the "**Investment Banker**"), to the extent payable pursuant to an order entered by this Court) (collectively, the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**~~,~~" and~~,~~ together with the Debtor Professionals, the "**Professional Persons**") at any time before the delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by this Court prior to or after delivery of such Carve Out Trigger Notice (the amounts set forth in the foregoing clauses (i) and (ii), collectively, the "**Pre-Carve Out Trigger Notice Cap**"); and (iii) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,250,000 incurred on and after the delivery by the DIP Agent of a Carve Out Trigger Notice (such date, the "**Trigger Date**"), to the extent allowed at any time, whether by ~~interim~~ order~~, procedural order,~~ or otherwise, less for each Professional Person the amount of any prepetition retainers received by any such Professional Person and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iii) ~~being~~ the "**Post-Carve Out Trigger Notice Cap**~~,~~" and~~,~~ together with the Pre-Carve Out Trigger Notice Cap, the "**Carve Out Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Required DIP Lenders) to the Debtors' lead restructuring counsel (Latham & Watkins LLP) and co-

restructuring counsel (Troutman Pepper Hamilton Sanders LLP), the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c) <u>Carve Out Reserve</u>.  Notwithstanding the occurrence of an Event of Default or conditions to borrowing or release of funds from the DIP Facility, and subject to the amounts set forth for each Professional Person in the Approved DIP Budget as of the delivery of such Carve Out Trigger Notice, on the day on which a Carve Out Trigger Notice is delivered by the DIP Agent as provided for herein (the "**Termination Declaration Date**"), unless otherwise set forth in the Carve Out Trigger Notice, the Carve Out Trigger Notice shall (i) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor or available in the Debtors' Accounts (including the Adequate Protection Funds in the Adequate Protection Account) to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees; *provided* that the Debtors shall only be obligated use cash on hand to fund such reserve, in the first instance, to the extent of the Debtors' cash balance in excess of $2,000,000, and (ii) also be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Facility (on a *pro rata* basis based on the then outstanding DIP Obligations) and/or request to release funds from the Debtors' Accounts, in an amount equal to the then unpaid amounts of the Allowed Professional Fees to the extent not funded after utilizing cash on hand in (i).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (x) constitute a demand to

US-DOCS\~~130906090.5~~131249657.14#125740274.v5

the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor or available in the Debtors' Accounts (including the Adequate Protection Funds in the Adequate Protection Account), after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap and (y) be deemed a request by the Debtors for DIP Loans under the DIP Facility (on a *pro rata* basis based on the ~~then~~ then-outstanding DIP Obligations) and/or request to release funds from the Debtors' Accounts in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) to the extent not funded utilizing cash on hand in (x). The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**," and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims. On the first business day after the DIP Agent delivers such notice to such DIP Lenders, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of an Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Obligations following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), each DIP Lender with an outstanding Commitment (as defined in the DIP Credit Agreement, on a *pro rata* basis based on the ~~then~~ then-outstanding Commitments) shall make available to the DIP Agent such DIP Lender's *pro rata* share with respect to such borrowing in accordance with the DIP Facility to the extent necessary to fund the Pre-Carve Out Amounts. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Pre-Carve Out Trigger Notice Cap (the "**Pre-Carve Out Amounts**"), but not, for the avoidance

of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the DIP Documents, or this ~~Interim~~Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserves, up to the applicable amount set forth in this paragraph, prior to making any payments to the DIP Agent or the Prepetition First Lien Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Documents or this ~~Interim~~Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition First Lien Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for

application in accordance with the DIP Documents.  Further, notwithstanding anything to the contrary in this ~~Interim~~Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) subject to the Approved DIP Budget, in no way shall the Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this ~~Interim~~Final Order, the DIP Facility, the Prepetition First Lien Loan Documents or the Prepetition Note Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superiority Claims, the Netherlands Adequate Protection Liens, the Netherlands Adequate Protection Superpriority Claims, any claims arising under section 507(b) of the Bankruptcy Code, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations ~~and~~, the Prepetition Secured Obligations~~.~~, and the Netherlands Claim.  For the further avoidance of doubt, the sources of funding for, and order of payment with respect to, the satisfaction of the Carve Out prior to other liens and claims as set forth in the preceding sentence, as between the Netherlands First Priority Collateral and other DIP Collateral, remains subject to further agreement of the parties or order of this Court.

(d)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  Except for funding the Carve Out Reserves as provided herein, none of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor cases (**"Successor Cases"**) under any chapter of the Bankruptcy Code.  Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this ~~Interim~~Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

10.    <u>Reservation of Rights of the DIP Secured Parties and Prepetition Secured Parties</u>. Subject in all cases to the Carve Out, notwithstanding any other provision in this ~~Interim~~Final Order or the DIP Documents to the contrary, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition First Lien Secured Parties or, subject to the terms of the Subordination Agreement, the Prepetition Noteholders to seek any other or supplemental relief in respect of the Debtors, including in the case of the Prepetition First Lien Secured Parties

41

the right to seek additional adequate protection at and following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the Carve Out and the claims and liens of the DIP Secured Parties granted under this Interim Final Order and the DIP Documents; (b) any of the rights of the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Prepetition Noteholders under the DIP Documents, the Prepetition First Lien Loan Documents, the Prepetition Note Documents, the Subordination Agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the DIP Secured Parties, the Prepetition First Lien Secured Parties or, subject to the terms of the Subordination Agreement, the Prepetition Noteholders to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Prepetition Secured Parties.  The delay or failure of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Final Order shall not constitute a waiver of any of the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties, nor should any such delay or failure enable any party to rely upon or in any way seek to assert any such delay or failure as a defense to any obligation owed by the Debtors to the DIP Secured Parties or the Prepetition Secured Parties.

      11.      <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims</u>.  <u>Subject to paragraph 37,</u> Tthe findings, stipulations, admissions, waivers, and

releases contained in this ~~Interim~~Final Order with respect to the Prepetition Liens ~~and~~, the

Prepetition Secured Obligations, the Netherlands Lien, and the Netherlands Claim, including the

Debtors' Stipulations and the Netherlands Stipulations (as defined below), shall be binding upon

the Debtors, the Prepetition Secured Parties, and the Netherlands, and any of their respective

successors and assigns in all circumstances and for all purposes, and the Debtors and the

Prepetition Secured Parties (as against each other) are deemed to have irrevocably waived and

relinquished all Challenges ~~(as defined below)~~ as of the Petition Date. Subject to paragraph 37,

~~T~~the findings, stipulations, admissions, waivers and releases contained in this ~~Interim~~Final Order

with respect to the Prepetition Liens ~~and~~, the Prepetition Secured Obligations, the Netherlands

Lien, and the Netherlands Claim, including the Debtors' Stipulations and the Netherlands

Stipulations, shall be binding upon the Debtors' estates and all other parties in interest, including

any Committee and any other person acting on behalf of the Debtors' estates (including any

chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the

Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other

fiduciary appointed as a legal representative of any of the Debtors or with respect to the property

of the estate of any of the Debtors), unless and to the extent that a party in interest with proper

standing granted by order of this Court (to the extent required) has filed an adversary proceeding

or initiated a contested matter under the Bankruptcy Rules (i) by no later than ~~seventy-five (75)~~

~~calendar days after entry of this Interim Order~~June 18, 2022, subject to further extension by

(a) written agreement of the Debtors and the Required Lenders under the Prepetition First Lien

Credit Agreement, in the case of the Prepetition First Lien Obligations and the Prepetition First

Lien Loan Liens, ~~and~~ by the Required Noteholders under the Prepetition Note Purchase

Agreement, in the case of the Prepetition Note Obligations and the Prepetition Note Liens, and

43

by the Netherlands, in the case of the Netherlands Claim and the Netherlands Lien; *provided, however*, that if a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee shall be the later of (x) the last day of the Challenge Period or (y) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected; or (b) an order of this Court obtained on notice and after a hearing (in each case, a "**Challenge Period.**" and, the date of expiration of each Challenge Period being, a "**Challenge Period Termination Date**"); (ii) seeking to avoid, object to, or otherwise challenge the findings in this InterimFinal Order and the Debtors' Stipulations regarding:  (a) the validity, enforceability, extent, priority, and perfection of the mortgages, security interests, and liens of the Prepetition First Lien Secured Parties and, the Prepetition Noteholders, and the Netherlands, as applicable; or (b) the validity, enforceability, allowability, priority, secured status, and amount of the Prepetition First Lien Obligations and, the Prepetition Note Obligations, and the Netherlands Claim, as applicable (any such claim, a "**Challenge**"); and (iii) in which this Court enters a final order in favor of the plaintiff or the movant sustaining any such Challenge in any such filed adversary proceeding or initiated contested matter.  The filing of a motion seeking standing to file a Challenge before the termination of the Challenge Period Termination Date, which attaches a proposed Challenge, shall toll the Challenge Period Termination Date only as to the party that filed such standing motion, and only with respect to the Challenges asserted by such party in connection with such standing motion, until such motion is resolved or adjudicated by this Court.  Subject to paragraph 37, Uupon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled):  (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate

representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) ~~except with respect to~~ the Prepetition ~~Secured Obligations owed to the Patriarch Lenders, the Patriarch Noteholders, and PPAS, solely in its capacity as agent for the Patriarch Lenders (but not for any other Prepetition Secured Parties), the Prepetition~~ First Lien Obligations ~~and~~, the Prepetition Note Obligations, <u>and the Netherlands Claim</u>, as applicable, shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases <u>to the extent provided in the Debtors' Stipulations and the Netherlands Stipulations, as applicable</u>; (c) the Prepetition First Lien Loan Liens ~~and~~, the Prepetition Note Liens, <u>and the Netherlands Lien,</u> as applicable, shall be deemed to have been, as of the Petition Date, legal, valid, binding, enforceable, non-avoidable and properly perfected liens and security interests in the Prepetition Collateral, not subject to recharacterization, subordination, or avoidance <u>to the extent provided in the Debtors' Stipulations and the Netherlands Stipulations, as applicable</u>; and (d) all of the findings, stipulations, admissions, waivers and releases contained in this ~~Interim~~<u>Final</u> Order, including the Debtors' <u>Stipulations and the Netherlands</u> Stipulations, as to the priority, extent, and validity of the claims, liens, and interests of the Prepetition First Lien Secured Parties ~~and~~, the Prepetition Noteholders, <u>and the Netherlands</u> shall be of full force and effect and forever binding upon the Debtors, their estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases. ~~If~~<u>Subject to paragraph 37, if</u> any Challenge is filed or initiated, the findings, stipulations, admissions, waivers and releases contained in this ~~Interim~~<u>Final</u> Order with respect to the Prepetition Liens ~~and~~, the Prepetition Secured Obligations, <u>the Netherlands Claim,</u> including the Debtors' Stipulations <u>and the</u>

45

Netherlands Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such findings, stipulations, admissions, waivers and releases were successfully challenged in accordance with this paragraph 11.

Nothing in this ~~Interim~~Final Order vests or confers on any person or entity, including, without limitation, any Committee, standing or authority to pursue any claims or causes of action belonging to the Debtors or their estates, including, without limitation, any Challenges, with respect to any of the Prepetition First Lien Loan Documents, the Prepetition Note Documents, the Prepetition Liens, ~~or~~ the Prepetition Secured Obligations~~.~~, the 2021 Judgment, the Netherlands Claim, or the Netherlands Lien. During the Challenge Period, ~~N~~notwithstanding anything contained herein, ~~the following are expressly preserved:  (i) the right of the State of the Netherlands to argue at the time of the Final Hearing that (a) it is the holder of an valid prepetition lien (the "Netherlands Lien"), and (b) it is entitled to adequate protection under sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of Diminution in Value,; and (ii) subject to Paragraph 11 of this Interim Order, including, without limitation, the Challenge Period~~subject to this paragraph 11, the rights of all parties other than the Prepetition Secured Parties, the Netherlands, and the Debtors to commence and prosecute any and all claims, causes of action and defenses, including claims for recharacterization or equitable subordination, with respect to any Prepetition Secured Obligations ~~(not solely those owed to the Patriarch Lenders, the Patriarch Noteholders, or PPAS)~~or the Netherlands Claim (except as otherwise provided in paragraph 37 of this Final Order) are expressly preserved.

12.    DIP Termination Date; Maturity Date.

(a)    On the DIP Termination Date (as defined below):  (i) all DIP Obligations shall be immediately due and payable, all Commitments shall immediately terminate, and the

46

Carve Out Reserves shall be funded as provided for in this ~~Interim~~Final Order; (ii) all authority to use Cash Collateral shall cease unless the Court orders otherwise prior to the expiration of the Remedies Notice Period~~;~~ (as defined below), *provided*, *however*, that during the Remedies Notice Period ~~(as defined below)~~, the Debtors may use Cash Collateral solely to fund the Carve Out as provided for herein and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved DIP Budget, subject to such variances as permitted in this ~~Interim~~Final Order or the DIP Credit Agreement; and (iii) upon expiration of the Remedies Notice Period, unless the Court orders otherwise, the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this ~~Interim~~Final Order.

(b)    On the Maturity Date:  (i) to the extent not terminated earlier, the Commitments of each DIP Lender shall terminate immediately and without further action; (ii) the DIP Borrower shall pay (in cash, unless the DIP Lender agrees to a different form of payment in its sole discretion) to the DIP Agent for the ratable account of the DIP Lenders the aggregate principal amount of all DIP Loans outstanding, together with all accrued and unpaid interest thereon, and all other DIP Obligations then due and payable; and (iii) notwithstanding the provisions of section 362 of the Bankruptcy Code, and subject to the applicable provisions of this ~~Interim~~Final Order, the DIP Agent and the DIP Lenders shall be entitled to immediate payment of the DIP Obligations.

13.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Documents, shall constitute an event of default (each, an "**Event of Default**"):  (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or

obligations under this ~~Interim~~Final Order; (b) the failure of the Debtors to satisfy any of the Milestones (as defined below) or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement.

14. <u>Milestones</u>. The Debtors shall satisfy the milestones (the "**Milestones**") set forth in Section 3 of the ~~RSA~~Restructuring Support Agreement dated as of March 30, 2022 (as in effect on the date hereof), unless waived or extended with the consent of the Required DIP Lenders or the DIP Agent.

15. <u>Rights and Remedies Upon Event of Default</u>.

(a) Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from this Court, but subject to the terms of this ~~Interim~~Final Order and the Remedies Notice Period, the DIP Agent (at the direction of the Required DIP Lenders) may declare (any such declaration ~~shall be referred to herein as~~, a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) a termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) a termination of the DIP Facility and the DIP Documents as to any future contractual obligation of the DIP Agent and the DIP Lenders thereunder, but without affecting any of the DIP Liens or the DIP Obligations, (iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice as provided for herein, and (v) subject to paragraph 12(a)(ii) of this ~~Interim~~Final Order, a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the "**DIP Termination Date**"). Any Termination Declaration shall not be effective until notice has

48

been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to Ankura, counsel to the Zohar Lenders, counsel to the Patriarch Lenders, counsel to ~~a~~the Committee (if appointed), and the U.S. Trustee.

        (b)    Without the need for any further notice (other than notice of a Termination Declaration as provided for herein) or order or application or motion to this Court, the automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties is hereby automatically modified so that five (5) Business Days after the DIP Termination Date or such later date as ordered by the Court prior to the expiration of such five (5) Business Day period (the "**Remedies Notice Period**"):  (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise any of its rights and remedies set forth in the DIP Documents and this ~~Interim~~Final Order and otherwise available at law, including to satisfy the DIP Obligations, DIP Superpriority Claims, and the DIP Liens, subject to the Carve Out; and (b) subject to the foregoing clause (a), the Prepetition First Lien Agent and the Required Lenders under the Prepetition First Lien Credit Agreement shall be entitled to exercise any of their rights and remedies set forth in the Prepetition First Lien Loan Documents and this ~~Interim~~Final Order and otherwise available at law with respect to the Debtors' use of Cash Collateral.  During the Remedies Notice Period, the Debtors, the Committee (if appointed), and/or any party in interest shall be entitled to seek an emergency hearing with this Court to be held within the Remedies Notice Period, including for the contested use of Cash Collateral. Except as set forth in this paragraph or otherwise ordered by this Court prior to expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall be deemed to have waived their right to, and shall not be entitled to, seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict

the rights and remedies of the DIP Secured Parties or the Prepetition First Lien Secured Parties under this ~~Interim~~Final Order.

16.    <u>Limitation on Charging Expenses Against Collateral</u>.    No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out) or the DIP Secured Parties or (b) ~~upon entry of a Final Order providing for such relief,~~ the Prepetition Collateral (except to the extent of the Carve Out) or the Prepetition Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Secured Parties, in the case of the DIP Collateral, and the Required Lenders under the Prepetition First Lien Credit Agreement, in the case of the Prepetition Collateral, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties.

17.    <u>Use of Cash Collateral</u>.    The Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties, for the purposes set forth in this ~~Interim~~Final Order and in accordance with the Approved DIP Budget (subject to permitted variances as set forth in this ~~Interim~~Final Order and the DIP Documents), from the date of this ~~Interim~~Final Order through and including the earlier of the Maturity Date and the DIP Termination Date, subject to paragraph 12(a) of this ~~Interim~~Final Order~~,~~ (a) in the event that the Maturity Date occurs as a result of the DIP Termination Date or a Termination Declaration, including, for the avoidance of doubt, the acceleration of the DIP Obligations pursuant to paragraphs 12(a)(i) or 15(a)(i) of this ~~Interim~~Final Order, or (b) in the case of the DIP Termination Date.  It shall be an Event of Default if Cash Collateral is used other than for the purposes set forth in this

~~Interim~~Final Order and in accordance with the Approved DIP Budget (subject to permitted variances as set forth in this ~~Interim~~Final Order and the DIP Documents).

18.    No Third Party Rights.  Except as explicitly provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

19.    Section 507(b) Reservation.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any Diminution in Value.  Nothing contained herein shall be deemed a finding by this Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any Diminution in Value.

20.    Insurance.  Until the DIP Obligations have been indefeasibly paid in full, in cash, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and in accordance with the DIP Documents.

21.    No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Secured Parties or the Prepetition Secured Parties to exercise rights and remedies under, as applicable, this ~~Interim~~Final Order, the DIP Documents, the Prepetition First Lien Loan Documents, the Prepetition Note Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

22.    Perfection of the DIP Liens and First Lien Adequate Protection Liens.  The DIP Agent and the Prepetition First Lien Agent (acting at the written direction of the Required

Lenders under or otherwise in accordance with the Prepetition First Lien Loan Documents) are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the DIP Agent or the Prepetition First Lien Agent (acting at the written direction of the Required Lenders under or otherwise in accordance with the Prepetition First Lien Loan Documents) choose to file such financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and subject to the Challenge Period, not subject to challenge, dispute, or subordination as of the date of entry of this ~~Interim~~Final Order.  If the DIP Agent or the Prepetition First Lien Agent (acting at the written direction of the Required Lenders under or otherwise in accordance with the Prepetition First Lien Loan Documents) determines to file or execute any financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or the Prepetition First Lien Agent, and the automatic stay shall be modified to allow such filings.  A certified copy of this ~~Interim~~Final Order may be filed with or recorded in filing or recording offices by the DIP Agent or the Prepetition First Lien Agent in addition to or in lieu of any such filings, and all filing offices are hereby authorized to accept such certified copy of this ~~Interim~~Final Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this ~~Interim~~Final Order.

23.     <u>Credit Bidding and Sale</u>.

(a)     To the fullest extent permissible under section 363(k) of the Bankruptcy Code, <u>but subject to paragraph 37 of this Final Order solely with respect to any Netherlands First Priority Collateral,</u> unless the Court for cause orders otherwise, the DIP Agent (at the direction of the Required DIP Lenders) shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the DIP Obligations in connection with any sale of property of the Debtors that constitutes DIP Collateral outside the ordinary course of business (to the extent permitted by this ~~Interim~~<u>Final</u> Order), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

(b)    ~~Upon entry of a Final Order providing for such relief, to~~To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of this Final Order solely with respect to any Netherlands First Priority Collateral, unless the Court for cause orders otherwise, the Prepetition First Lien Agent (acting under the Prepetition First Lien Loan Documents or as otherwise ordered by this Court or the Court in the chapter 11 cases of the Zohar Lenders) shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition First Lien Obligations and any First Lien Adequate Protection Superpriority Claims in connection with any sale of property of the Debtors that constitutes (i) Prepetition Collateral or (ii) to the extent subject to any First Lien Adequate Protection Liens, DIP Collateral, provided that, subject to the entry of a further order of this Court in accordance with paragraph 37 of this Final Order, the Prepetition First Lien Agent shall not have the right to credit bid in connection with any sale of the Netherlands First Priority Collateral, provided further, that the DIP Obligations have been, or will be pursuant to the Prepetition First Lien Agent's bid, indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents, outside the ordinary course of business (to the extent permitted by this ~~Interim~~Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.  Subject to the terms of this Final Order, including, for the avoidance of doubt, the Challenge Period (the rights under which are expressly preserved), in the event the credit bid of the First Lien Agent of the Prepetition First Lien Obligations is the successful bid, the (i) Patriarch Lenders shall receive, at closing of such sale, an amount equal to (x) the amount of the credit bid pursuant to section 3.2(a)(i) of the stalking horse asset purchase agreement (the "**Stalking Horse APA**") *multiplied* by (y) 0.07017

54

(the "**Cash Payment**") and (ii) the Zohar Lenders shall receive 100% of the equity (either directly or indirectly owned) in the Buyer (as defined in the Stalking Horse APA) (to be distributed among them pro rata based on their respective term loan holdings).  Under the Stalking Horse APA, the Cash Payment to the Patriarch Lenders shall be not less than $10,525,500 and not more than $12,630,600.  For the avoidance of doubt, if the Stalking Horse APA is amended and the credit bid amount pursuant to section 3.2(a)(i) of the Stalking Horse APA is increased, the Cash Payment shall be increased accordingly.

(c)     To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of this Final Order, unless the Court for cause orders otherwise, the Netherlands shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the value of any Netherlands First Priority Collateral as determined by the Court in accordance with paragraph 37 of this Final Order in connection with any sale of any Netherlands First Priority Collateral, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

(d)     Cash Sale.  Subject to the terms of this Order, including, for the avoidance of doubt, the Challenge Period (the rights under which are expressly preserved), in the event there is a sale to a cash bidder (whether in a sale pursuant to section 363 of the Bankruptcy Code, a confirmed Chapter 11 plan, or otherwise), the cash proceeds of the sale distributed on account of the Prepetition First Lien Obligations (the "**Term Loan Proceeds**") shall be distributed, at closing of such sale, as follows: (i) 7.017% of the Term Loan Proceeds to the Patriarch Lenders and (ii) 92.983% of the Term Loan Proceeds to the Zohar Lenders; provided that for the

55

avoidance of doubt, the cash proceeds of any such sale on account of the Netherlands First Priority Collateral shall be subject to paragraph 37 of this Final Order.

(e)    Consent to the Sale.  Subject to the terms of this Order, the Patriarch Stakeholders (as defined in the Stalking Horse APA) shall consent to, support and not object to relief in these Chapter 11 Cases or the chapter 11 cases of the Zohar Lenders (i) authorizing a sale of substantially all of the Debtors' assets free and clear of liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code or through a confirmed Chapter 11 plan (or the reorganization of the Debtors through a confirmed Chapter 11 plan with the same economic consideration to the Patriarch Lenders), (ii) authorizing the proposed credit bid sale transaction (whether in a section 363 sale or through a confirmed Chapter 11 plan) and distribution of equity in the Buyer (as defined in the Stalking Horse APA) (or its direct or indirect parent) to (a) MBIA and the Zohar III A-1 noteholders for Zohar II and Zohar III, respectively, in exchange for reduction of their claims under the applicable Zohar Indenture and (b) MBIA for Zohar I in accordance with the "Settlement Agreement" in the chapter 11 cases of the Zohar Lenders or (iii) approving a sale transaction (whether in a section 363 sale or through a confirmed Chapter 11 plan) to a third-party cash bidder provided that the Term Loan Proceeds are distributed in accordance with the terms set forth in this paragraph 23; provided, however, that notwithstanding the foregoing, if the Zohar Lenders do not consent to a sale to a third-party cash buyer, the Patriarch Lenders may join in the objections raised by the Zohar Lenders to such sale but may not advance any additional arguments of their own.

24.    Releases.

24.(a)    Release.   Each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of its predecessors, successors, and assigns, shall, to the maximum extent

56

permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the ~~DIP Agent and~~ Backstop Lenders (as defined in the DIP Credit Agreement) and the DIP Agent (all solely in their respective capacities as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations, the DIP Liens, and the DIP Documents, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Documents or this ~~Interim~~Final Order.

(b)      Subject to the terms of this Order, including, for the avoidance of doubt, the Challenge Period (the rights under which are expressly preserved), each of the Debtors, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever

57

release, remise, acquit, relinquish, irrevocably waive, and discharge any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof against the Patriarch Stakeholders (as such term is defined in the Stalking Horse APA) and each of their successors and assigns (in each case solely in their capacity as a successor and/or assign), and each of their respective current and former officers, directors, principals, employees, advisors, consultants, and other professionals, in each case solely in their capacity as such.

(c)      Subject to the terms of this Order (the rights under which are expressly preserved), each of the Patriarch Stakeholders, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof against the Debtors and each of their successors and assigns (in each case solely in their capacity as a

58

successor and/or assign), and each of their respective current and former officers, directors, principals, employees, advisors, consultants, and other professionals, in each case solely in their capacity as such; *provided, however*, for the avoidance of doubt, any and all claims of the Patriarch Stakeholders against the Zohar Debtors and their affiliates and of the Zohar Debtors against the Patriarch Stakeholders and their affiliates are expressly preserved, except as provided for in paragraph 11 hereof; *provided further however,* that the releases herein do not apply to any obligation that the Debtors may have to indemnify Lynn Tilton's defense costs, and any indemnity costs, incurred in the qui tam action captioned *United States ex rel. Marsteller v. Tilton, MDHI et al, Civ, No. 5:13-cv-00830-AKK* for which Lynn Tilton expressly reserves all rights; *provided further, however,* that nothing herein shall be deemed to be an agreement, acknowledgement, or stipulation by the Debtors as to the existence, validity, enforceability, or amount of any such indemnification claim and all rights, objections, and defenses of the Debtors and their estates with respect to any indemnification claim asserted by Lynn Tilton are expressly reserved.

25.    <u>Proceeds of Sale or Subsequent Financing</u>.

(a)    Subject to the Carve Out, in the event of any sale, lease, transfer, license or other disposition of property of the Debtors that constitutes DIP Collateral outside the ordinary course of business (to the extent permitted by this ~~Interim~~Final Order or any other order of this Court), the Debtors are authorized to and shall promptly pay, without further notice or order of this Court, such amount (if any) of net cash proceeds resulting therefrom no later than the business day following receipt of such proceeds, to the DIP Agent up to the amount which indefeasibly pays in full, in cash, the DIP Obligations.

(b)    Subject to the Carve Out, any First Lien Permitted Encumbrances and the indefeasible payment in full, in cash, of the DIP Obligations, and ~~except as ordered by this Court with respect to the Prepetition Secured Obligations owed to the Patriarch Lenders, the Patriarch Noteholders, and PPAS, solely in its capacity as agent for the Patriarch Lenders (but not for any other Prepetition Secured Parties), and~~ the Prepetition Liens securing such obligations, in the event of any sale, lease, transfer, license or other disposition of property of the Debtors that constitutes (i) Prepetition Collateral or (ii) to the extent subject to any First Lien Adequate Protection Liens, DIP Collateral, outside the ordinary course of business (to the extent permitted by this ~~Interim~~Final Order or any other order of this Court), the Debtors are authorized to and shall promptly pay, without further notice or order of this Court, such amount (if any) of net cash proceeds resulting therefrom no later than the business day following receipt of such proceeds, to Ankura and PPAS, as applicable, to be applied ~~according to the priorities in~~ accordance with the ~~Prepetition First Lien Loan Documents~~as set forth in paragraph 23(c) of this Final Order.

(c)     If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any subsequent cases obtains credit or incurs debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Documents or this ~~Interim~~Final Order at any ~~any~~time before the indefeasible repayment in full of the DIP Obligations and the termination of the Commitments under the DIP Facility, including subsequent to confirmation of any plan with respect to any or all of the Debtors, then (i) the outstanding Commitments, if any, shall be terminated and reduced to zero; and (ii) all proceeds from such credit or debt extension shall immediately be paid to the DIP Agent to repay the DIP Obligations.

26.     <u>Preservation of Rights Granted Under this ~~Interim~~Final Order</u>.

(a)     The DIP Obligations and the DIP Liens shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this ~~Interim~~Final Order or any provision hereof is reversed or modified on appeal, and any liens or claims granted to the DIP Agents or the DIP Lenders hereunder arising prior to the effective date of any such reversal or modification of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

(b)     In the event this ~~Interim~~Final Order or any provision hereof is reversed or modified on appeal, any liens or claims granted to the Prepetition Secured Parties hereunder arising prior to the effective date of any such reversal or modification of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein, and the Prepetition Secured Parties shall be entitled to the protections afforded in section 363(m) of the Bankruptcy

61

Code with respect to all uses of the Prepetition Collateral (including Cash Collateral) and all First Lien Adequate Protection Obligations.

(c)     Notwithstanding any order dismissing any of the Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, the Netherlands Adequate Protection Liens, the Netherlands Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this ~~Interim~~Final Order shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~Final Order until, as applicable, all DIP Obligations ~~and~~, First Lien Adequate Protection Obligations on account of the First Lien Adequate Protection Liens and the First Lien Adequate Protection Superpriority Claims, and the Netherlands Claim on account of the Netherlands Adequate Protection Liens and the Netherlands Adequate Protection Superpriority Claims, are indefeasibly paid in full, in cash, and such DIP Liens, DIP Superpriority Claims, First Lien Adequate Protection Liens, First Lien Adequate Protection Superpriority Claims, the Netherlands Adequate Protection Liens, and the Netherlands Adequate Protection Superpriority Claims and the other administrative claims granted pursuant to this ~~Interim~~Final Order, shall, notwithstanding such dismissal, remain binding on the Debtors, their estates and all parties in interest; and (y) to the fullest extent permitted by law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the provisions of this ~~Interim~~Final Order.

(d)     Except as expressly provided for in this ~~Interim~~Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted under this ~~Interim~~Final

Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral or Prepetition Collateral pursuant to section 363 of the Bankruptcy Code, or (iii) ~~upon entry of a Final Order providing for such relief,~~ the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or First Lien Adequate Protection Obligations.  The terms and provisions of this ~~Interim~~<u>Final</u> Order and the DIP Documents shall continue in these Cases, in any ~~s~~<u>S</u>uccessor ~~c~~<u>C</u>ases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties under this ~~Interim~~<u>Final</u> Order shall continue in full force and effect until, as applicable, the DIP Obligations and the Prepetition First Lien Obligations are indefeasibly paid in full, in cash.

(e)      Other than as set forth in this ~~Interim~~<u>Final</u> Order or as otherwise ordered by the Court, neither the DIP Liens nor the First Lien Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Cases or arising after the Petition Date, and neither the DIP Liens nor the First Lien Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551, and except as set forth in this ~~Interim~~<u>Final</u> Order~~-~~<u>,</u> the occurrence of any of the foregoing shall be an Event of Default.

27.     <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Prepetition</u>

<u>Collateral</u>.  Notwithstanding anything to the contrary set forth in this ~~Interim~~Final Order, other

than as consented to in writing by the Required DIP Lenders and the Required Lenders under the

Prepetition First Lien Credit Agreement, none of the DIP Facility, the DIP Collateral, the

Prepetition Collateral (including Cash Collateral) or the Carve Out or proceeds thereof may be

used:  (a) to investigate (including by way of examinations or discovery proceedings), initiate,

assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim,

counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense,

adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or

the Prepetition Secured Parties (each in their capacities as such), or any of their respective

affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial

advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission,

action, or other matter (including formal discovery proceedings in anticipation thereof),

including, without limitation, any so-called "lender liability" claims and causes of action, or

seeking relief that would impair the rights and remedies of the DIP Secured Parties or the

Prepetition Secured Parties (each in their capacities as such) under the DIP Documents, the

Prepetition First Lien Loan Documents, the Prepetition Note Documents, or this ~~Interim~~Final

Order, including, without limitation, for the payment of any services rendered by the

professionals retained by the Debtors or any Committee appointed in these Cases in connection

with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding,

application, motion, objection, defense, adversary proceeding, or other contested matter, the

purpose of which is to seek, or the result of which would be to obtain, any order, judgment,

determination, declaration, or similar relief that would impair the ability of any of the DIP

Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations or the Prepetition Secured Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations, the Prepetition Secured Obligations, or liens or security interests of the DIP Secured Parties or the Prepetition Secured Parties in the DIP Collateral or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties, or the respective liens on or security interests in the DIP Collateral or the Prepetition Collateral of the DIP Secured Parties or the Prepetition Secured Parties that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Secured Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests held by or on behalf of each of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations and the Prepetition Secured Obligations, as applicable; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition Secured Obligations, or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens, (y) any of the Prepetition First Lien Loan Liens or any other rights or interests of any of the Prepetition First Lien Secured Parties related to the Prepetition First

Lien Obligations or the Prepetition First Lien Loan Liens, or (z) any of the Prepetition Note Liens or any other rights or interests of any of the Prepetition Noteholders related to the Prepetition Note Obligations or the Prepetition Note Liens, *provided* that no more than $50,000 of the proceeds of the DIP Facility, the DIP Collateral, or the Prepetition Collateral (including Cash Collateral), in the aggregate, may be used by any Committee appointed in these Cases, if any, solely to investigate, within the Challenge Period, the claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the claims, liens, or interests held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Secured Obligations.

28.     <u>Conditions Precedent</u>.  Except as provided for in the Carve Out, no DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

29.     <u>Subordination Agreement.</u>  Pursuant to section 510 of the Bankruptcy Code, the Subordination Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition First Lien Loan Documents or any of the Prepetition Note Documents (i) shall remain in full force and effect, and (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties.

30.     <u>Expenses and Indemnification</u>.  The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of the DIP Professionals to the extent provided for in this ~~Interim~~<u>Final</u> Order promptly following ten (10) business days (the "<u>Review Period</u>") after the receipt by counsel for the Debtors, any Committee, and the U.S.

Trustee via electronic mail of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include reasonable detail, including a description of the matters worked on, a list of professionals who worked on the matter, the year of graduation from law school (for attorney professionals), their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and may contain redactions or modifications to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law,; *provided*, *however*, that the U.S. Trustee reserves the right to seek to obtain unredacted copies of such invoices and additional information after reviewing the invoices, to which the DIP Lenders and the DIP Professionals retain the right to object. Any expenses sought to be reimbursed shall be specified and broken out by type of expense. The rights of the Debtors, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, a Debtor, any Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the objections to the Disputed Invoiced Fees within the Review Period (to be followed by the filing with this Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the

67

submitting party of any hearing on such motion or other pleading).  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable and documented fees, costs, and expenses of the DIP Professionals, including the fees and expenses of counsel to the DIP Lenders and the DIP Agent, incurred on or prior to such date, which payment shall not be subject to the Review Period.

31.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this ~~Interim~~<u>Final</u> Order, including (subject to the provision of paragraph 11 of this ~~Interim~~<u>Final</u> Order) all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and other parties as expressly provided for herein.  In determining to make any loan under the DIP Documents, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~<u>Final</u> Order, the DIP Secured Parties and the Prepetition Secured Parties, in their capacities as such, shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

32.    <u>Limitation of Liability</u>.    In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~<u>Final</u> Order, the DIP Secured Parties and the Prepetition

Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this ~~Interim~~Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Zohar Lenders, or Ankura, as administrative and collateral agent with respect to the Prepetition First Lien Loans, any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

33.    <u>No Requirement to File Claim for DIP Obligations</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, the DIP Secured Parties shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request shall not affect the validity, priority, or enforceability of any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the rights, remedies, powers, or privileges of the DIP Secured Parties under any of the DIP Documents, this ~~Interim~~Final Order, or applicable law. The provisions set forth in this paragraph are intended solely for the purpose of administrative

convenience, and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

34.    No Requirement to File Claim for Prepetition Secured Obligations. Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, none of the Prepetition Secured Parties shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Secured Obligations, and the failure to file any such proof of claim or request shall not affect the validity, priority, or enforceability of any of the Prepetition First Lien Loan Documents or the Prepetition Note Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the rights, remedies, powers, or privileges of the Prepetition Secured Parties under the Prepetition First Lien Loan Documents or the Prepetition Note Documents, as applicable, this ~~Interim~~Final Order, or applicable law.   The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

35.    No Marshaling.  Notwithstanding anything in this ~~Interim~~Final Order or the DIP Documents to the contrary, (a) the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and the proceeds of the DIP Collateral shall be received and applied pursuant to this ~~Interim~~Final Order and the DIP Documents; and (b) ~~upon entry of a Final Order providing such relief,~~ the

Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or DIP Collateral.

36.     Equities of the Case.  ~~Upon entry of a Final Order providing for such relief, t~~The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

~~37.     Final Hearing.  A final hearing to consider the relief requested in the Motion on a final basis shall be held on April 25, 2022 at 9:00 a.m. (ET).  Any objections or responses to entry of the Final Order shall be filed on or before 4:00 p.m. (ET) on April 18, 2022, and shall be served on:  (a) proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), and Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (c) counsel to the Zohar Lenders and the Zohar Noteholders,~~

~~Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor (mnestor@ycst.com), Joseph M. Barry (jbarry@ycst.com) and Ryan M. Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders, the Patriarch Noteholders and PPAS, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com); (e) counsel to Ankura, Milbank, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); (f) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov); and (g) counsel to any Committee. In the event no objections to entry of the Final Order are timely received, this Court may enter the Final Order without need for any further notice or the Final Hearing.~~

37.    State of the Netherlands.    Subject to further Order of the Court and notwithstanding anything herein to the contrary:

(a)    Subject to the Challenge Period, the State of the Netherlands (the "**Netherlands**"), by stipulation and agreement of the Debtors, (i) shall be deemed to be the holder of a claim against the Debtors in an amount (exclusive of accrued interest) of not less than $16.1 million (the "**Netherlands Claim**"), less any recoveries on account of the 2021 Judgment (as defined below), and the Debtors shall be deemed to be indebted and liable, without defense, counterclaim, or offset of any kind, to the Netherlands in the full amount of the Netherlands Claim; (ii) shall be deemed to have recorded the Final Judgment on Mandate issued by the Arizona Court in favor of the Netherlands on August 3, 2021 (the "**2021 Judgment**"); and (iii) upon entry of this Final Order but subject to the Netherlands Lien Determinations (as defined

72

below), shall be deemed to have a lien (the "**Netherlands Lien**") by virtue of the Maricopa Recording on "all real property" (within the meaning of A.R.S. § 33.964.A) of MDHI, in Maricopa County, Arizona (the "**Netherlands Collateral**") (collectively, paragraphs 37(a)(i) through (iii) are referred to herein as the "**Netherlands Stipulations**").  Subject to paragraph 24(b) of this Final Order and otherwise notwithstanding anything herein to the contrary, the Debtors' rights to seek contribution with respect to the 2021 Judgment is hereby expressly reserved.

(b)      Subject to the Carve Out and the terms of this Final Order, the Netherlands shall be granted, as security for and solely to the extent of any Diminution in Value of the Netherlands' interests in any Netherlands Collateral, (A) additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the Petition Date on all DIP Collateral (collectively, the "**Netherlands Adequate Protection Liens**"); and (B) as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, and subject to the DIP Superpriority Claims, allowed administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any Diminution in Value of the Netherlands' interests in any Netherlands Collateral (the "**Netherlands Adequate Protection Superpriority Claims**"). Subject to the terms of this Final Order, including this paragraph 37, the Netherlands Adequate Protection Liens shall be subordinate only to (A) the Carve Out, (B) the DIP Liens, (C) liens senior by operation of law to the Netherlands Liens (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Netherlands Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected

after the Petition Date as permitted by section 546(b) of the Bankruptcy Code); and (D) with respect to the DIP Collateral other than any Netherlands Lien on Netherlands First Priority Collateral, the First Lien Adequate Protection Liens, the Prepetition First Lien Loan Liens, and the Prepetition Note Liens.  For the avoidance of doubt, the liens and claims set forth in this Final Order shall have the priorities set forth at **Exhibit C**.

        (c)    The extent, value and priority of the Netherlands Lien on the Netherlands Collateral, as well as the Netherlands' entitlement to any additional adequate protection (the "**Netherlands Lien Dispute**") shall be addressed in two phases as set forth herein. Unless otherwise agreed by and among the Debtors, the DIP Lenders, the Zohar Lenders, and the Netherlands, (i) the Netherlands shall file a pleading addressing the Phase One Issues (as defined below) on or before April 29, 2022 (the "**Netherlands Phase One Statement**"); (ii) responses, if any, to the Netherlands Phase One Statement shall be filed on or before May 6, 2022 (collectively, the "**Phase One Responses**"); and (iii) any reply to any Phase One Responses shall be filed by the Netherlands on or before May 9, 2022.  A hearing on the Phase One Issues shall be held on or before May 11, 2022 (the "**Phase One Hearing**").  Unless otherwise ordered by this Court or agreed by and among the Debtors, the DIP Lenders, the Zohar Lenders, and the Netherlands, (i) the Netherlands shall file a pleading addressing the Phase Two Issues (as defined below) on or before May 16, 2022 (the "**Netherlands Phase Two Statement**"), (ii) responses, if any, to the Netherlands Phase Two Statement shall be filed on or before May 23, 2022 (collectively, the "**Phase Two Responses**"), and (iii) any reply to any Phase Two Responses shall be filed by the Netherlands on or before May 24, 2022.  A hearing on the Phase Two Issues shall be held on or before May 25, 2022 (the "**Phase Two Hearing**" and together with the Phase One Hearing, the "**Netherlands Lien Determination Hearings**" and any determinations by the

Court at the Netherlands Lien Determination Hearings, the "**Netherlands Lien Determinations**").

(d)     At the Phase One Hearing, the Court shall address the validity, extent and priority of the Netherlands Lien, including (i) whether the Netherlands Lien is a valid and binding lien that arose by operation of Arizona law; (ii) whether and to what extent the Netherlands Lien properly attached to any real property of the Debtors, including any leasehold interests and related improvements owned by the Debtors in Maricopa County; and (iii) whether the Netherlands Lien is senior to the Prepetition Liens and all other relevant encumbrances (collectively, the "**Phase One Issues**").  At the Phase Two Hearing, the Court shall address (i) the value of any Netherlands First Priority Collateral and (ii) the Netherlands entitlement to any additional adequate protection with respect to Diminution in Value of the Netherlands Collateral as to which the Netherlands is determined to be senior in priority to the Prepetition Liens (the "**Netherlands First Priority Collateral**") and the amount and other terms of any such additional adequate protection (the "**Phase Two Issues**").

(e)     If it is determined at the Netherlands Lien Determination Hearings that (i) the Netherlands Lien is invalid for any reason, (ii) the Netherlands Lien has not properly attached to any real property of the Debtors, and/or (iii) any Netherlands First Priority Collateral is valued at zero dollars as of the Petition Date, the Netherlands Adequate Protection Liens and the Netherlands Adequate Protection Superpriority Claims granted by this Final Order shall be deemed void and of no effect retroactive to the Petition Date.  For the avoidance of doubt, the Netherlands Adequate Protection Liens and Netherlands Adequate Protection Superpriority Claims granted by this Final Order shall only survive pursuant to this paragraph 37(e) to the extent of the value of any Netherlands First Priority Collateral.

(f)    If the Netherlands Lien (or any portion thereof) is determined to be valid, properly attached and perfected, any Netherlands First Priority Collateral is determined to have a value greater than zero dollars, and the Netherlands Lien (or any portion thereof) is determined to be senior in priority to the Prepetition Liens, a supplemental order shall be entered (the **"Supplemental Adequate Protection Order"**) providing the Netherlands with additional adequate protection under sections 361, 362, 363 and 364 of the Bankruptcy Code solely for and equal in amount to the Diminution in Value arising from the imposition of priming DIP Liens on the Netherlands First Priority Collateral.  The Debtors, the DIP Lenders, the Zohar Lenders, and the Netherlands hereby reserve all rights with respect to the form and adequacy of any adequate protection proposed by the Debtors (in consultation with the DIP Lenders and the Zohar Lenders); provided that, for the avoidance of doubt, adequate protection in the form of funding the Full Cash Value Amount into the Netherlands Adequate Protection Account (each as defined below) in accordance with paragraph 37(g) of this Final Order shall be deemed to be adequate protection under sections 361, 362, 363 and 364 of the Bankruptcy Code.  Unless otherwise provided for in the Supplemental Adequate Protection Order, any such additional adequate protection granted thereunder shall be retroactive to the entry of this Final Order.

(g)    Notwithstanding anything to the contrary, the Netherlands shall be deemed adequately protected under sections 361, 362, 363 and 364 of the Bankruptcy Code if (i) cash in an amount equal to the value of Netherlands First Priority Collateral (as agreed to by the Debtors, the DIP Lenders, the Zohar Lenders, and the Netherlands or as determined by the Court) (the **"Full Cash Value Amount"**) is deposited into a segregated account in the name of MDHI with Wells Fargo Bank, N.A. (the "**Netherlands Adequate Protection Account**"); and (ii) the

Netherlands is granted an adequate protection lien on the Netherlands Adequate Protection Account that ranks senior to all other liens.

(h)    At closing of any sale of the Netherlands First Priority Collateral, whether involving a credit bid transaction or cash consideration (but not in connection with any transaction consummated under the plan of reorganization or liquidation), the Full Cash Value Amount shall be paid to the Netherlands and any Netherlands First Priority Collateral shall be transferred free and clear of all liens, claims and encumbrances to the purchaser pursuant to such sale.  Upon payment of the Full Cash Value Amount to the Netherlands, any adequate protection claims or adequate protection liens of the Netherlands shall be deemed fully satisfied and extinguished.  To the extent a transaction is consummated pursuant to a plan of reorganization or liquidation, the Netherlands Claim shall be entitled to receive the treatment provided for under such confirmed plan, and the Netherlands' rights with respect to any such plan are expressly reserved.  Notwithstanding the foregoing, the Netherlands shall retain its unsecured deficiency claim on account of the Netherlands Claim.

(i)    To the extent the Full Cash Value Amount is funded at or prior to any auction for the Debtors' assets (to the extent such assets include any Netherlands First Priority Collateral), then the Netherlands shall no longer retain its right to credit bid under paragraph 23(c) of this Final Order.  To the extent the Full Cash Value Amount is not funded at or prior to any auction for the Debtors' assets (to the extent such assets include any Netherlands First Priority Collateral), then the Netherlands shall retain its right to credit bid under paragraph 23(c) of this Final Order, and the DIP Lenders' right to credit bid under paragraph 23(a) of this Final Order shall be modified as follows:  in the event that the DIP Agent (at the direction of the Required DIP Lenders) seeks to credit bid any portion of the DIP Obligations to purchase any

77

Netherlands First Priority Collateral, the DIP Agent (at the direction of the Required DIP Lenders) shall deposit into the Netherlands Adequate Protection Account cash in an amount adequate to ensure that the balance of the Netherlands Adequate Protection Account is the lesser of (i) the Full Cash Value Amount and (ii) the face amount of any credit bid for any Netherlands First Priority Collateral made by the Netherlands.

(j)    Notwithstanding anything herein or in Section 6.02 of the DIP Credit Agreement to the contrary, the existence of any Netherlands Lien, or entry of a further order of this Court determining or recognizing that the Netherlands holds Netherlands First Priority Collateral, shall not constitute a default or Event of Default under this Final Order or the DIP Credit Agreement; provided however, nothing herein shall impair or prejudice the rights of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties under the DIP Documents and this Final Order, as applicable, with respect to any actions taken by any party to seek enforcement of, or exercise remedies with respect to, any Netherlands Lien (other than with respect to seeking adequate protection as set forth herein). For the avoidance of doubt, the Netherlands Lien shall not be a DIP Permitted Encumbrance or Permitted Lien (as defined in the DIP Credit Agreement).

(k)    Notwithstanding anything in this Final Order or the DIP Documents, (i) neither the DIP Lenders nor the Prepetition Secured Parties shall exercise any remedy with respect to the Netherlands Collateral, including under section 363(k) of the Bankruptcy Code, prior to resolution of the Netherlands Lien Dispute; (ii) the Debtors' rights to seek confirmation of a plan of reorganization, including under section 1129(b) of the Bankruptcy Code, are expressly preserved; and (iii) nothing herein shall impair, alter, or prejudice the Debtors' rights under the Bid Procedures and all such rights are expressly preserved, including the rights to

determine which parties are Qualified Bidders and whether any bid for the Debtors' assets constitutes a Qualified Bid (as defined in the Bid Procedures) and determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best; provided, however, that the Netherlands shall be deemed a Qualified Bidder solely for purposes of a credit bid of the Netherland Claim to purchase any Netherlands First Priority Collateral, which bid shall be deemed a Qualified Bid.

38.    Effect of this ~~Interim~~Final Order.    This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052, and shall take effect and be enforceable immediately upon execution hereof.

39.    Retention of Jurisdiction.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this ~~Interim~~Final Order.

**<u>EXHIBIT A</u>**

**DIP Credit Agreement**

# EXHIBIT B

## Approved DIP Budget

## EXHIBIT C[8]

## Lien Priority

|  | Netherlands First Priority Collateral | All Other DIP Collateral |
|---|---|---|
| 1. | Carve Out | Carve Out |
| 2. | DIP Liens | DIP Liens |
| 3. | Netherlands Liens and Netherlands Adequate Protection Liens | Prepetition First Lien Loan Liens and First Lien Adequate Protection Liens |
| 4. | Prepetition First Lien Loan Liens and First Lien Adequate Protection Liens | Prepetition Note Liens |
| 5. | Prepetition Note Liens | Netherlands Adequate Protection Liens |

## Claim Priority[9]

|  | Netherlands First Priority Collateral | All Other DIP Collateral |
|---|---|---|
| 1. | Carve Out | Carve Out |
| 2. | DIP Superiority Claims | DIP Superpriority Claims |
| 3. | Netherlands Claim and Netherlands Adequate Protection Superpriority Claims | Prepetition First Lien Loan Obligations and First Lien Adequate Protection Superpriority Claims |
| 4. | Prepetition First Lien Obligations and First Lien Adequate Protection Superpriority Claims | Prepetition Note Obligations |
| 5. | Prepetition Note Obligations | Netherlands Adequate Protection Superpriority Claims |

---

[8] To the extent there exists any conflict among the priorities as set forth in this Exhibit C and the Final Order, this Exhibit C shall govern and control.

[9] Claim Priority as set forth herein refers to payment priority with respect to the proceeds of Netherlands First Priority Collateral and all other DIP Collateral, respectively.