# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
                                                        :   Chapter 11
In re:                                                  :
                                                        :   Case No. 22-10263 (KBO)
MD HELICOPTERS, INC., et al.,¹                          :
                                                        :   (Jointly Administered)
             Debtors.                                   :
                                                        :
                                                        :
-------------------------------------------------------- x
```

**SUPPLEMENTAL DECLARATION OF ADAM B. KEIL IN SUPPORT OF MOTION OF
DEBTORS FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 361, 362,
363, 364, 503, 507 AND 552 (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING,
(B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(C) USE CASH COLLATERAL OF PREPETITION SECURED PARTIES AND
(D) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES
2002, 4001, 6003, 6004 AND 9014; AND (III) GRANTING RELATED RELIEF**

I, Adam B. Keil, make this declaration pursuant to 28 U.S.C. § 1746:

1.       I am a Managing Director at Moelis & Company LLC ("**Moelis**"), a global investment banking firm providing financial advisory services, including with respect to mergers and acquisitions, capital raising, and restructuring transactions.

2.       I submit this supplemental declaration (this "**Supplemental Declaration**") in further support of the *Motion of Debtors for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D)*

---

¹       The two Debtors in these cases are MD Helicopters, Inc. ("**MDHI**") and Monterrey Aerospace, LLC ("**Monterrey**"), and their address is 4555 E. McDowell Road, Mesa, AZ 85215.  The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088.  Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

*Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014; and (III) Granting Related Relief* (the "**DIP Motion**").[2]

3.      I have led the Moelis team acting as investment banker to the Debtors since July 2020.  I refer to my previously submitted declaration in support of the DIP Motion, dated March 30, 2022 [Docket No. 21] (the "**Original Declaration**"), for detailed information about my experience and qualifications as well as Moelis' expertise and involvement with the Debtors.

4.      Except as otherwise indicated, the statements in this Supplemental Declaration are based on my direct personal knowledge or views, my opinion based on experience, or on information that I have obtained from the members of the Debtors' management, Debtors' advisors, my review of relevant documents and/or employees of Moelis working directly with me and under my supervision.  I am not being specifically compensated for this testimony other than through payments that Moelis receives in its capacity as a professional retained by the Debtors; none of those payments are specifically payable on account of this testimony.  I am over the age of 18 years and am authorized to submit this declaration on behalf of the Debtors.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## The Debtors' Efforts To Secure DIP Financing

5.      As explained in my Original Declaration, the Debtors had limited options for DIP financing given that all of the Debtors' assets are encumbered, requiring the Debtors to either find a lender willing to provide unsecured or junior postpetition financing or prime the liens held by the Prepetition First Lien Lenders on an entirely non-consensual basis, potentially initiating a

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Motion and the *Declaration of Barry Sullivan, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19] (the "**First Day Declaration**"), as applicable.

#125801210 v1

priming fight.  On behalf of the Debtors, Moelis solicited proposals for postpetition financing, but did not receive any actionable DIP proposals before the Petition Date other than that of the DIP Lenders.  Thus, prior to the Petition Date, the Debtors and their advisors engaged in arm's-length negotiations with the DIP Lenders regarding the terms of the proposed DIP Facility.  The negotiations included extensive discussions with the Debtors' management and advisors, as well the exchange of several proposals and counterproposals on DIP Facility terms.  The Debtors obtained concessions from the DIP Lenders on key terms including the amount of financing available, economics, covenants, and case milestones.

6.     Following the entry of the Interim Order, the Debtors and their advisors continued to solicit proposals for DIP financing on terms superior to those offered by the DIP Facility. Moelis, at the direction of the Debtors, contacted 3 potential financing sources (2 new sources and 1 contacted prior to the entry of the Interim Order) in order to explore whether any alternative postpetition financing options were actionable.  Of the 2 new potential lenders that were contacted, only 1 executed a non-disclosure agreement, in addition to the one contacted prior to the Petition Date.  Each of the potential lenders that executed a non-disclosure agreement was offered access to confidential financial information and performed diligence regarding potential postpetition financing to replace the DIP Facility.  In addition, on behalf of the Debtors, Latham & Watkins contacted Patriarch Partners to explore potential postpetition financing, but no proposal was made by Patriarch.  Ultimately, none of the Debtors' outreach efforts yielded any alternative DIP financing proposals.  In particular, no party contacted by the Debtors during this outreach process agreed to provide DIP financing to the Debtors in the requisite amount (or at all) on an unsecured, junior lien, or otherwise non-priming basis.  Further, no potential lender was willing to propose financing to the Debtors on a priming basis if it would result in a priming fight (and the Prepetition

First Lien Lenders remained unwilling to consent to the Debtors' procurement of third party financing that would prime their liens).

7.      It is therefore my belief that the DIP Facility is the best (and the only) option for postpetition financing available to the Debtors under the circumstances.

**<u>Need For The DIP Facility</u>**

8.      As described in the First Day Declaration, a number of factors have destabilized the Debtors' business and threatened to further deteriorate the Debtors' liquidity.  The Debtors, with the assistance of their financial advisor, AlixPartners LLP, analyzed and quantified the Debtors' potential liquidity needs for a chapter 11 process.

9.      As described in the Orlofsky Declaration, it is crucial that the Debtors have access to the DIP Facility in order to have the funds necessary to run the sale process as contemplated.  Moreover, if the Final Order with respect to the DIP Motion is not approved at this time, the Debtors risk the occurrence of a number of potentially insurmountable obstacles.  For example, approval of the Final Order is a critical milestone under both the RSA and a necessary condition to the Debtors meeting their obligations under the Qui Tam Settlement Agreement.  Failure to meet this milestone, thus, not only threatens to breach the RSA but also puts the Debtors at risk of counterparties to the Qui Tam Settlement Agreement reevaluating the settlement which would be detrimental to the value of the Debtors' estates at this juncture of these Chapter 11 Cases.

10.      Additionally, entry of the Final Order is a condition of the Stalking Horse APA.  There can be no assurances that the Stalking Horse Bidder would be willing to close a transaction if the DIP Facility is not approved at this time, as the DIP Facility is an integral part of the Stalking Horse Bid.  Loss of the Stalking Horse could have detrimental consequences to the sale process resulting in significant loss of value.  It is also my understanding that, based on the authority

provided under the Interim Order, the Debtors have drawn $12.5 million from the DIP Facility. Without entry of the Final Order within 28 days of entry of the Interim Order, the DIP Lender would be able to call a default under the DIP Credit Agreement and, subject to the terms of the Interim Order, exercise rights and remedies, leaving the Debtors without sufficient cash to run a sale process or operate in the ordinary course of business through the pendency of these Chapter 11 Cases.

11.     Further, the Debtors are at a pivotal point in their sale process.  Failure to obtain entry of the Final Order will cause potential bidders uncertainty as to whether the Debtors will have sufficient funds to see the sale process through to consummation of a transaction and, as a result, may deter potential bidders from participating further in the process.

12.     As such, I believe the DIP Facility remains the Debtors' only viable option for DIP financing.  For the reasons set forth herein, the DIP Facility is necessary for the Debtors to facilitate their contemplated sale process and continue normal operations during the pendency of these Chapter 11 Cases, each as is necessary to preserve and enhance the value of their estates for the benefit of all stakeholders.  Thus, I believe that entry of the Final Order is necessary to enhance the value of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 22, 2022

_/s/ Adam B. Keil_____
Adam B. Keil