**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------- x
:
In re:                                     :         Chapter 11
:
MD HELICOPTERS, INC., *et al.,*[1]     :         Case No. 22-10263 (KBO)
:
Debtors.               :         (Jointly Administered)
:
:         **Re: D.I. 28, 194**
---------------------------------------------------- x

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING AN
AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO THE
STALKING HORSE AGREEMENT, (V) APPROVING PROCEDURES FOR THE
ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND
(VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession

(the "**Debtors**") for entry of an order (this "**Order**") (i) authorizing and approving the Bid

Procedures attached hereto as Exhibit 1 (the "**Bid Procedures**") in connection with the sale (the

"**Sale**") of substantially all of the Debtors' assets (the "**Assets**"), (ii) scheduling an auction and

hearing to consider the Sale of the Assets, (iii) approving the form and manner of notice thereof,

(iv) authorizing the Debtors to enter into the Stalking Horse Agreement (each as defined below),

(v) approving procedures for the assumption and assignment of executory contracts and unexpired

leases in connection with the Sale (collectively, the "**Assumed Contracts**"), and (vi) granting

---

[1]     The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their
address is 4555 E. McDowell Road, Mesa, AZ 85215.  The last four digits of MD Helicopters, Inc.'s
taxpayer identification number are 4088.  Monterrey Aerospace, LLC has not been assigned a taxpayer
identification number as of the date hereof.

[2]     Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings
ascribed to them in the Motion or the Bid Procedures, as applicable.  In the event there is a conflict
between this Order and the Motion, this Order shall control and govern.

related relief, all as more fully set forth in the Motion; and upon the Declarations and other testimony and evidence submitted by the Debtors in support of the Motion; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish good and sufficient cause for the relief granted in this Order, it is hereby:

**FOUND THAT**:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by this Court in connection with the Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.     The bases for the relief requested in the Motion are Sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.      Notice of the Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the offices of the attorneys general for the states in which the Debtors operate; (e) those creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (f) counsel to the Stalking Horse Bidder; (g) counsel to Ankura; (h) counsel to PPAS; (i) counsel to the Zohar Lenders; (j) counsel to the Patriarch Lenders; (k) counsel to the DIP Lenders; (l) the offices of the attorneys general for the states in which the Debtors operate; (m) all parties known by the Debtors to assert a lien on any of the Assets; (n) all parties entitled to notice pursuant to Local Rules 2002-1(b).

G.      Notice of the Motion, including the relief sought therein, and the Hearing was good and sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H.      The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Assumed Contracts, including notice of the proposed cure amounts, and (v) authorize the Debtors to enter into a Stalking Horse Agreement, in the exercise of the Debtors' reasonable business judgment.  The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.      The Bid Procedures attached hereto as Exhibit 1 are reasonable, appropriate and were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures are

US-DOCS\131368965.6#125520549 v8

reasonably designed to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest. The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.    The Debtors have demonstrated sound business justifications for entry into, and performance of pre-closing obligations under, that certain Asset Purchase Agreement, a copy of which is attached as Exhibit A to the Motion (the "**Stalking Horse Agreement**") by and among the Debtors and the Stalking Horse Bidder, which represents the highest or otherwise best offer the Debtors have received to date as a result of their efforts to market the Assets for sale.

K.    The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Agreement represents a reasonable exercise of the Debtors' sound business judgment.

L.    The Sale Notice, substantially in the form attached hereto as Exhibit 2, regarding the Sale of the Assets by Auction and Sale Hearing, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the Assets for Sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (vi) a description of the Sale as being free and clear of all liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain Assumed Liabilities disclosed in the Stalking Horse Agreement, and (viii) notice of the proposed assumption and assignment of Assumed Contracts to the Stalking

4

Horse Bidder (or such other Assumed Contracts to another Successful Bidder (as defined in the Bid Procedures) arising from the Auction, if any) and the rights, procedures, and deadlines for objecting thereto.  No other or further notice of the Sale shall be required.

M.       The Motion, the Sale Notice, the Assumption Notice, this Order, and the Assumption Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide any Assumed Contract Counterparties with proper notice of the intended assumption and assignment of their Assumed Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

N.       Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtors in accordance therewith shall constitute a Sale of the Assets, which Sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED as set forth herein.

2.       All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the Hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**A.       The Bid Procedures**

3.       The Bid Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved in their entirety.  The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order.  The Bid Procedures shall also govern

the terms on which the Debtors will proceed with the Auction and/or Sale pursuant to the Stalking Horse Agreement.

4.      The Stalking Horse Bidder shall be deemed a Qualified Bidder pursuant to the Bid Procedures for all purposes. The State of the Netherlands (the "**Netherlands**") shall be deemed a Qualified Bidder solely for purposes of a credit bid of the Netherland Claim to purchase any Netherlands First Priority Collateral (as such terms are defined in the Final DIP Order) in accordance with and subject to the terms of paragraph 14 of this Order, which bid shall be deemed a Qualified Bid.[3]

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

| Event | Date |
|---|---|
| Assumed Contract Objection Deadline | The deadline by which objections to the proposed assumption and assignment of any Contract, the proposed cure amount, if any, or adequate assurance of future performance by the Stalking Horse Bidder must be filed with the Court is May 11, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Assumed Contract Objection Deadline**"); *provided*, that, to the extent any Contract Counterparty is added to the Assumption Notice after the initial notice is served, such new Contract Counterparty shall have fourteen (14) days from the date of service of the Supplemental Contract Notice to object to the propose cure amount and assignment to the Successful Bidder. |
| Sale Objection Deadline | May 18, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Intention to Submit Qualified Bid Deadline | May 20, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Bid Deadline | June 3, 2022 at 4:00 p.m. (prevailing Eastern Time). |
| Auction | June 9, 2022 at 10:00 a.m. (prevailing Eastern Time). |
| Post-Auction Notice Deadline | As soon as reasonably practicable after closing the Auction, if any, and in any event not less than 24 hours after closing the Auction, the Debtors shall |

---

[3]     The "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief.*

| | |
|---|---|
| | file and serve a notice identifying the Successful Bidder and Back-Up Bidder (the "**Post-Auction Notice**"). |
| Post-Auction Objection Deadline | If the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be June 13, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Post-Auction Objection Deadline**"). |
| Sale Hearing | If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be June 17, 2022. |
| | If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be May 26, 2022. |

**B.      Entry into Stalking Horse Agreement**

6.      The Debtors' entry into, and performance of pre-closing obligations under, the Stalking Horse Agreement is hereby approved.  Upon entry of this Order, the Stalking Horse Agreement shall be binding on the parties thereto in accordance with its terms.

7.      The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; *provided* that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

**C.      The Auction**

8.      As further described in the Bid Procedures, if a Qualified Bid, other than the Stalking Horse Agreement, is received by the Bid Deadline, the Debtors will conduct the Auction at **10:00 a.m. (prevailing Eastern Time) on June 9**, **2022**, or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a

7

Qualified Bid is timely received.  The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

9.      If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agreement): (i) the Debtors may cancel the Auction, (ii) the Stalking Horse Agreement will be deemed by the Debtors to be the Successful Bid for the Assets, and (iii) the Debtors shall be authorized to seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

10.     Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) shall be entitled to make any Bids at the Auction.

11.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

12.     Each Qualified Bidder (including, for the avoidance of doubt, the Stalking Horse Bidder) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

13.     The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any Deposit other than as contemplated in the Stalking Horse Agreement.  To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the Final DIP Order solely with respect to any Netherlands First Priority Collateral,

unless the Court for cause orders otherwise, the Prepetition First Lien Agent (acting under the Prepetition First Lien Loan Documents or as otherwise ordered by this Court or the Court in the chapter 11 cases of the Zohar Lenders) shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition First Lien Obligations and any First Lien Adequate Protection Superpriority Claims in connection with any sale of property of the Debtors that constitutes (i) Prepetition Collateral or (ii) to the extent subject to any First Lien Adequate Protection Liens, DIP Collateral, provided that, subject to the entry of a further order of this Court in accordance with paragraph 37 of the Final DIP Order, the Prepetition First Lien Agent shall not have the right to credit bid in connection with any sale of the Netherlands First Priority Collateral, provided further, that the DIP Obligations have been, or will be pursuant to the Prepetition First Lien Agent's bid, indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents, outside the ordinary course of business (to the extent permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.[4]

14.     To the fullest extent permissible under section 363(k) of the Bankruptcy Code, but subject to paragraph 37 of the Final DIP Order, unless the Court for cause orders otherwise, the Netherlands shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the value of any Netherlands First Priority Collateral as determined by the Court in accordance with paragraph 37 of the Final DIP Order in connection with any sale of any Netherlands First Priority Collateral, outside the ordinary course of business (to the extent

---

[4]     Capitalized terms used in paragraph 13 and paragraph 14 but not otherwise defined shall have the meanings ascribed to them in the Final DIP Order.

permitted by this Final Order or any other order of this Court), whether pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan confirmed in these Cases, or otherwise.

15.     In the event of a competing Qualified Bid, all Qualified Bidders shall be entitled, but not obligated, to submit Overbids.

16.     Absent further order of this Court, any Potential Bidder shall be precluded from submitting any further bids if such Potential Bidder fails to deliver a Qualified Bid by the Bid Deadline.  Subject to the Debtors' selection of the Successful Bidder at the Auction, if an Auction occurs, upon the closing of the Auction, absent further order of this Court, all non-Successful Bidders shall be precluded from submitting any further bids and shall not have any further access to due diligence information, the members of the Debtors' management team, or the Debtors' employees.  For the avoidance of doubt, the Debtors, in their discretion, may (i) modify or waive the provisions of this paragraph 16, (ii) consider any Qualified Bid submitted after the applicable deadline set forth herein, and (iii) determine that such Qualified Bid is a higher or otherwise better offer for the Assets and declare such Qualified Bidder to be the Successful Bidder.

17.     The Debtors may: (i) determine which Qualified Bid or combination of Qualified Bids (including the Stalking Horse Agreement) is the highest or otherwise best offer; (ii) reject at any time before the entry of the Sale Order any Bid (other than the Stalking Horse Agreement) that, in the discretion of the Debtors, is (a)  inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bid Procedures, or (c) contrary to the best interest of the Debtors, their estates, their creditors, interest holders, or other parties in interest; and (iii) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders (other than the Stalking Horse Bidder) as the Debtors reasonably determine to be in the best interest of the Debtors' estates.

18.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

**D.     Assumption and Assignment Notices & Procedures**

19.     The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to Section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to Section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.  These Assumption Procedures shall govern the assumption and assignment of all of the Assumed Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Assumed Contracts.

20.     No later than two business days after entry of this Order, the Debtors shall serve via overnight delivery on all non-Debtor Assumed Contract Counterparties to any Assumed Contract (the "**Assumption Notice Parties**") that may be assumed by the Debtors and assigned to the Stalking Horse Bidder or other Successful Bidder after the results of the Auction, which notice shall be substantially in the form attached hereto as Exhibit 3 (a "**Assumption Notice**").  The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the

11

identity of the Stalking Horse Bidder (as assignee, if applicable), and (v) the Assumed Contract Objection Deadline (as defined below) and Post-Auction Objection Deadline (as defined below). The presence of an Assumed Contract on the Assumption Notice does not constitute an admission that such Assumed Contract is an executory contract or unexpired lease, and the presence of an Assumed Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Assumed Contract any time before such Assumed Contract is actually assumed and assigned pursuant to the Sale Order.

21.     Although the Debtors have informed the Court that they intend to make a good faith effort to identify all Assumed Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts and unexpired leases inadvertently omitted from the list of Assumed Contracts, or Successful Bidders may identify other executory contracts and/or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors have the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed to by the Debtors and the Successful Bidder, at any time after the service of the Assumption Notice and before the closing of a Sale, to (i) supplement the list of Assumed Contracts with previously omitted executory contracts or unexpired leases, (ii) remove Assumed Contracts from the list of executory contracts and unexpired leases ultimately selected as Assumed Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Assumed Contract. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the Assumed Contract Counterparties to such Assumed Contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the

US-DOCS\131368965.6#125520549 v8

list of Assumed Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assumed Contracts as was included in the Assumption Notice.

22.    To the extent any Contract Counterparty is added to the Assumption Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount through service of a Supplemental Assumption Notice, and that party shall have fourteen (14) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

23.    Objections, if any, to (i) the cure amount set forth on the Assumption Notice or (ii) the possible assignment of its executory contract or unexpired lease to the Stalking Horse Bidder including adequate assurance of future performance by the Stalking Horse Bidder (each, an "**Assumed Contract Objection**") **must** (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **May 11, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Assumed Contract Objection Deadline**"): (a) counsel for the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Suzzanne Uhland (suzzanne.uhland@lw.com), Adam S. Ravin (adam.ravin@lw.com), Brett M. Neve (brett.neve@lw.com) and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19801, Attn: David B. Stratton (david.stratton@troutman.com), David M. Fournier (david.fournier@troutman.com) and Evelyn

J. Meltzer (evelyn.meltzer@troutman.com); (b) counsel for the Stalking Horse Bidder, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com) and Allurie Kephart (akephart@ycst.com), (ii) Cadwalader Wickersham & Taft LLP, 200 Liberty Street, New York, NY 10281, Attn: Ingrid Bagby (ingrid.bagby@cwt.com), William Mills (william.mills@cwt.com), and Michele C. Maman (michele.maman@cwt.com), and (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Brian Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com); (c) counsel to the Zohar Lenders, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Ryan Bartley (rbartley@ycst.com); (d) counsel to the Patriarch Lenders and PPAS, Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Daniel F.X. Geoghan (dgeoghan@coleschotz.com), and Cole Schotz P.C., 500 Delaware Ave, Ste 1410, Wilmington, DE 19801, Attn: Norman L. Pernick (npernick@coleschotz.com) and G. David Dean (ddean@coleschotz.com); (e) counsel to the DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brian J. Lohan (brian.lohan@arnoldporter.com) and Jonathan Levine (jonathan.levine@arnoldporter.com), (ii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com) and Andrew Sagor (andrew.sagor@bakermckenzie.com), and (iii) Womble Bond Dickinson (US) LLP, 1313 N. Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (f) counsel to Ankura, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com), Eric K. Stodola (estodola@milbank.com), and Andrew Harmeyer (aharmeyer@milbank.com); and (g) the Office

of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov) (the "**Objection Notice Parties**").

24.     If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object (a "**Post-Auction Objection**") solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be **June 13, 2022 at 4:00 p.m. (prevailing Eastern Time)**[5] (the "**Post-Auction Objection Deadline**"), provided, however, that the deadline to object to the proposed cure amount shall not be so extended.

25.     If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection by the Assumed Contract Objection Deadline or a Post-Auction Objection by the Post-Auction Objection Deadline, then that party shall be forever barred from objecting to (i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), (iii) the related relief requested in the Motion, and (iv) the Sale.  Such party shall be forever barred and estopped from objecting to the cure amount, the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or the Successful Bidder, as applicable, for purposes of Section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse

---

[5]     If the Auction is cancelled, the Debtors will promptly file a Notice of Successful Bidder identifying the Stalking Horse Bidder as the Successful Bidder.

Bidder or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease.

26.    Where an Assumed Contract Counterparty to an Assumed Contract timely files an (i) Assumed Contract Objection asserting a higher cure amount than the amount listed in the Assumption Notice or (ii) Assumed Contract Objection or Post-Auction Objection, as applicable, objecting to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount (if any) to be paid under Section 365 of the Bankruptcy Code or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing or such later date as fixed by the Court.  To the extent an Assumed Contract Objection or Post-Auction Objection shall be pending as of the date of the closing of any Sale, the Assumed Contract subject to such objection shall be deemed assumed and assigned, as between the Debtors and the Successful Bidder, as of the closing of the Sale until such time as (i) the amount (if any) to be paid under Section 365 of the Bankruptcy Code or (ii) the Debtors' ability to assign the Assumed Contract to the Successful Bidder is determined by the Court.  Upon a determination by the Court (i) of the amount (if any) to be paid under Section 365 of the Bankruptcy Code with respect to any Assumed Contract, the Successful Bidder may elect to (a) pay such amount and have the Assumed Contract assigned to it or (b) remove such Assumed Contract as an Assumed Contract or (ii) that any Assumed Contract is nonassignable, such Assumed Contract shall be removed as an Assumed Contract.   Any Assumed Contract subsequently removed as an Assumed Contract, either in accordance with the preceding sentence or pursuant to an agreement with the contract counterparty, shall no longer be deemed assumed and assigned to the Successful Bidder, as between the Successful Bidder and the Debtors, as of the

16

date such Assumed Contract is removed as an Assumed Contract.  For the avoidance of doubt, no Government Contract may be assumed and/or assigned without: (i) the express written consent of the Government, (ii) the execution of a novation agreement applicable to the Government Contract, and (iii) the payment of all outstanding obligations and cure amounts arising under or related to such Government Contract.

27.    The payment of the applicable cure amount by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**E.    Notice of the Sale Process**

28.    The Sale Notice and the Assumption Notice in substantially the forms as annexed to this Order as Exhibit 2 and Exhibit 3, are hereby approved.

29.    Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov); (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c) counsel to the official committee of unsecured creditors, if one is appointed; (d) counsel to the Stalking Horse Bidder; (e) counsel to Ankura; (f) counsel to PPAS; (g) counsel to the Zohar Lenders; (h) counsel to the Patriarch Lenders; (i) all parties known by the Debtors to assert a lien on any of the Assets; (j) all entities reasonably known to have expressed an interest in a transaction with respect to any of the Assets during the past nine (9) months; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) all state and local taxing authorities with an interest in the Assets; (n) the offices of the attorneys general for the states in which the Debtors operate; (o) all other governmental agencies with an interest in the Sale and transactions

17

proposed thereunder; (p) the office of the secretary of state in each state in which the Debtors operate or are organized; (q) all environmental authorities having jurisdiction over any of the Assets; (r) all other parties known or reasonably believed to have asserted an interest in the Assets; (s) the counterparties to the Assumed Contracts (the "**Assumed Contract Counterparties**"); (t) the Debtors' insurance carriers; (u) all known creditors of the Debtors; (v) all known holders of equity interests in the Debtors; and (w) any party that has requested notice pursuant to Bankruptcy Rule 2002.

30.    As soon as practicable after the entry of this Order, the Debtors shall publish the Sale Notice, with any modification necessary for ease of publication, in *USA Today*, *The Arizona Republic*, and VerticalMag.com, the website of *Vertical Magazine*.   In addition, as soon as reasonably practicable, but in no event later than one (1) business day after entry of this Order, the Debtors will also post the Sale Notice and this Order on the website maintained by the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), located at https://cases.primeclerk.com/MDHelicopters.  Such publication notice as set forth in the preceding two sentences is reasonably calculated to provide notice of the Sale to interested parties whose identities are unknown to the Debtors.

F.    **The Sale Hearing**

31.    If the Debtors receive one or more Intention(s) to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be conducted on **June 17, 2022 at 9:00 a.m. (prevailing Eastern Time)**.  If the Debtors do not receive any Intention to Submit Qualified Bid by the Intention to Submit Qualified Bid Deadline, the Sale Hearing shall be **May 26, 2022 at 9:00 a.m. (prevailing Eastern Time)**.  The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the Sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtors are authorized to perform any obligation intended

18

to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto. The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

**G.     Objections to the Sale**

32.     Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court no later than **4:00 p.m. (prevailing Eastern Time) on May 18, 2022**; and (iv) be served upon the Objection Notice Parties; *provided* that, if the Successful Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract shall be the Post-Auction Objection Deadline.

33.      A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of Section 363(f) of the Bankruptcy Code.

**H.     Other Relief Granted**

34.     If and to the extent any Prepetition First Lien Lender or Ankura confirms in writing acceptable to the Debtors, in their sole discretion, that such Prepetition First Lien Lender or Ankura (as applicable) and their respective affiliates shall irrevocably cease to be a participant in the sale process, including as a participant in the Stalking Horse Bid (as applicable) and the Auction (if

any), and disclaim any right to submit further bids for the Assets, either directly or indirectly, alone or (to the extent authorized by the Bid Procedures) in combination with another bidder, the Debtors shall consult with such Prepetition First Lien Lender, in its capacity as a lender under the Prepetition First Lien Credit Agreement,, or Ankura, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement (as applicable), over the Sale of the Assets, implementation of the Bid Procedures and conduct of the Auction, including, but not limited to, any decisions to deviate from, waive or alter any of the provisions of the Bid Procedures and the selection of the Successful Bidder and Back-Up Bidder. For the avoidance of doubt, and notwithstanding the preceding sentence, the Debtors reserve their right in their reasonable business judgment to implement the Bid Procedures and conduct the Auction in any manner that will best promote the goals of the sale process.

35.    Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

36.    The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

37.    The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

38.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

39.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

40.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

**Dated: April 26th, 2022**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

US-DOCS\131368965.6#125520549 v8