# EXHIBIT 1

AMENDED COMMERCIAL LEASE

HUGHES HELICOPTERS, INC.

THIS AMENDED LEASE made this 22ⁿᵈ day of March, 1985, by and between the CITY OF MESA, a municipal corporation, and HUGHES HELICOPTERS, INC., a Delaware corporation, hereinafter respectively referred to as LESSOR and LESSEE, without regard to number or gender.

W I T N E S S E T H:

THAT WHEREAS, under date of March 28, 1983, the parties hereto entered into a Commercial Lease with respect to the parcel of property described on the document marked Exhibit "A", attached hereto and made a part hereof; and

WHEREAS, the parties have agreed to amend that lease to include additional land described on the document marked Exhibit "A-1", attached hereto and made a part hereof, and to amend the lease agreement in certain particulars; and

WHEREAS, the Lessor is willing to lease to the Lessee, and the Lessee desires to take and lease from the Lessor those certain portions of real property of the airport described herein for the purposes hereinafter set forth, subject to all of the terms and conditions of that certain Instrument of Transfer between the United States of America and the Reconstruction Finance Corporation and the

Scanned 12/21/10 gmc

-1-

Lessor herein, which instrument is recorded in Docket 270, at Pages 90 through 101, and filed in the office of the County Recorder of Maricopa County, Arizona, and as amended by Instrument of Release recorded in Docket 5984 at Pages 126 and 127, records of the recorder of Maricopa County, Arizona, which releases paragraph 4 of said original Instrument of Transfer.

NOW THEREFORE, in consideration of the mutual promises and conditions of the parties herein contained, it is agreed as follows:

1.  DEMISED PREMISES

The premises leased to Lessee are hereinafter referred to as the Demised Premises and are described on the documents marked Exhibit "A" and Exhibit "A-1", respectively, attached hereto and made a part hereof, and further described by attached legal descriptions. The approximate location of the Demised Premises is also outlined in red on the plat of Falcon Field, Marked Exhibit "B", which is also attached hereto and made a part hereof.

2.  TERM: OPTIONS TO EXTEND:

That the term of the Lease shall be for thirty (30) years, commencing on the 28th day of March, 1983, and ending on the 28th day of March, 2013. The Lessee shall have the option to extend the Lease for one (1) additional ten (10) year term and two (2) additional five (5) year terms following the initial thirty (30) year term by giving Lessor

six (6) months written notice of its intent to so extend.
Should Lessee not elect to exercise the option to extend the
Lease at the end of the initial term, or any extension
thereof, the Lease shall be terminated.

3.    USES OF THE DEMISED PREMISES

Lessee shall have the right to use the Demised
Premises for any lawful purpose directly related to its
manufacturing operations including, but not limited to:

1.    Fixed and rotary wing factory acceptance
and training flights.

2.    Operation of a company owned airline type
service operation.

3.    Factory acceptance facilities in
conjunction with the manufacture of the
Lessee's products.

4.    Installation of refueling facilities
provided they meet the City Code and that
the Lessee executes a separate Fuel
Agreement with Lessor.

Use of the Demised Premises by Lessee in violation of any
use authorized by this Section shall be an Event of Default.

4.    RENTAL

As the rental for the Demised Premises, the Lessee
agrees to pay to the Lessor the sum of $2,000.00 per year
per acre for the first five (5) years, $3,000.00 per year
per acre for the second five (5) years, $4,000.00 per year

-3-

per acre for the next ten (10) years, and thereafter the rental rate will be established at ten percent (10%) of the market value per acre per year. The market value will be established by the Real Estate Division of the City of Mesa and in the event the Lessee does not agree with the City's market value, a market value will be negotiated between the two parties. In the event that the two parties cannot agree on a market value, each party will name an appraiser, and the two appraisers will name a third appraiser, and the market value established by the three appraisers will be binding. The cost of the appraisers will be borne equally by the Lessee and Lessor. With respect to the property described on Exhibit "A", the rental has been paid through the 31st day of March, 1985. The rental at the rate $2,000.00 per acre per year for the property described on Exhibit "A-1" shall commence on the date this Amended Lease Agreement is executed by the Lessee, prorated from the date of execution to March 31, 1985, and the rental therefor shall be paid on the execution hereof. Thereafter, rental shall be paid annually in advance on or before the 1st day of April of each year, with the first rental payment for the two combined parcels described a Exhibit "A" and Exhibit "A-1" to be paid on April 1, 1985. The rental rate per acre for both the parcel described as Exhibit "A" and that described as Exhibit "A-1" will be increased to $3,000.00 per acre per year as of the 1st day of April, 1988, with

additional increases as set forth in this Section 4. Failure by Lessee to pay rents when such rents become due, and all costs payable by Lessee to Lessor under this Lease, shall be an Event of Default.

5.  OPTION TO PURCHASE

Lessee is granted an option to purchase the Demised Premises for a purchase price of $25,000.00 per acre payable in cash upon passage of title, subject to any limitations on the Lessor's right to sell as contained in the Instrument of Transfer referred to herein. The option granted herein shall expire at the end of the tenth year of this Lease Agreement. Lessee shall exercise its option by giving Lessor twelve (12) months prior written notice of its election to exercise the option. In the event the option is exercised, Lessor agrees to use its best efforts to obtain any and all required consents and/or releases from any applicable government agencies.

6.  TAXES AND FEES

Lessee also agrees to pay to Lessor with and in addition to the annual rental payments all privilege license taxes, sales taxes, and other governmental impositions imposed by any governmental body on the rentals received by the Lessor from Lessee during the term hereof.

The Lessee agrees to pay all taxes of every nature levied or assessed on the Demised Premises during the term hereof and all personal property of the Lessee's placed upon the Demised Premises, unless being contested in good faith.

-5-

7.    IMPROVEMENTS

Improvements  other  than  those  shown  on  the development  plan  attached hereto and made a part hereof as Exhibit "C", shall be subject to  the  approval  of  Lessor, which approval shall not be unreasonably withheld.

Lessee  agrees  to comply with the notification and review requirements  covered  in  Part  77  of  the  Federal Aviation  Regulations  prior  to  the  construction  of  any improvements, and prior to  construction  upon  the  Demised Premises,  or  in  the  event of any planned modification or alteration of any present or future building  or  structures situated on the Demised Premises.

Lessee shall conduct its construction operations so that such operations will  in  no  way  interfere  with  the normal operation and use of Falcon Field by Lessor and other persons and organizations entitled to use the same.

The Lessee agrees  that  all  construction  on  the premises  shall  comply with the Zoning, Building, Plumbing, Electrical, and Mechanical Codes of the City  of  Mesa,  and further agrees to secure all necessary permits in connection therewith  and  to  pay  the  required  fees  therefor.   In addition  thereto, the Lessee agrees to install and pay for, at its sole expense, all  necessary  paving  improvements  on the  Demised  Premises  necessary to provide for a dust free wearing surface in all traffic areas and after  installation of  all such improvements to maintain same in good condition at its sole expense.

-6-

Upon termination of this Lease, all building, structures, and other improvements placed on the Demised Premises by the Lessee shall become the property of the Lessor, subject to Section 26 hereof. Violation by Lessee of the covenants contained in this Section shall be an Event of Default.

8.  MECHANIC'S LIENS

Lessee agrees to keep the Demised Premises free of any mechanic's or materialman's liens or other liens of any kind or nature for work done, labor performed, or material furnished thereon at the instance or occasion of Lessee, and Lessee further agrees to indemnify and save harmless Lessor from and against any and all claims, liens, demands, costs, and expenses of whatsoever nature for any such work done, labor performed, or materials furnished. Failure by Lessee to keep the Demised Premises free from such liens as defined in this paragraph shall constitute an Event of Default.

9.  STORAGE OF EQUIPMENT AND MATERIAL

Lessee agrees that the Demised Premises shall not be used for outside storage of equipment or material. This provision does not apply to or preclude the Lessee from parking flyable aircraft and related ground service equipment on the Demised Premises, but does preclude the outside parking of aircraft being held for salvage purposes. Violation by Lessee of the covenants contained in this Section shall be an Event of Noncompliance.

-7-

10.  <u>PUBLIC LIABILITY INSURANCE</u>

As a condition precedent to the effectiveness of this Lease, Lessee shall place and maintain in full force and effect during the term of this Lease, a policy or policies of public liability and property damage insurance with a company or companies acceptable to Lessor with minimum coverage of $500,000.00 for death or bodily injury or loss sustained by any one person in any one occurrence, $1,000,000.00 for death or bodily injury or loss sustained by more than one person in any one occurrence, and $250,000.00 for loss by damage or injury to property in any one occurrence.  Lessee shall cause to be attached to said policy of insurance an endorsement reciting Clause 11 of this Lease.  The policy shall also either contain a provision providing for a broad form of contractual liability including leases, or there shall be attached thereto an endorsement providing for such coverage.  The policy shall further provide that the same shall not be cancelled until a ten (10) day written notice of cancellation has been served upon the Airport Director of Lessor. Lessee shall deliver said policy or policies of insurance or a certificate evidencing the above coverages to the Airport Director of Lessor for approval as to sufficiency.  Lessor's Airport Director's failure to disapprove said policy within fifteen (15) days of its submission shall constitute an approval of the policy or

policies submitted.  ==Lessor shall be named as an additional insured on all policies required by this clause.==

The placing of such insurance cannot be construed to be a limitation upon Lessee's liability or as a full performance on its part of the indemnification provisions of this Lease; Lessee's obligation being, notwithstanding said policy of insurance, for the full and total amount of any damage, injury, or loss caused by the negligence or neglect of Lessee connected with the operation under this Lease.

In the event Lessee fails to provide such insurance as required by this Section, Lessor may provide such policies of insurance and add the costs thereof to the rent, and such costs shall be payable by the Lessee when the next rent payment is due.

11.  HANGAR-KEEPER'S LIABILITY INSURANCE

In the event the Lessee intends to park aircraft on the Demised Premises, the Lessee shall maintain in full force for the term of this Lease a policy or policies of standard and in-flight hangar-keeper liability insurance from a company or companies acceptable to Lessor.

Said standard policy or policies shall have a minimum coverage of $100,000.00 for any one aircraft and $200,000.00 for loss in any one occurrence.

The in-flight hangar-keeper policy or policies shall have a minimum coverage of $100,000.00 for any one aircraft, or in any one occurrence.

-9-

Lessee shall deliver said policy or policies of insurance, or certificates evidencing the above coverages to the Airport Director for approval as to sufficiency. Lessor's Airport Director's failure to disapprove said policy or policies within fifteen (15) days of submission shall constitute an approval of the policy or policies submitted.

In the event Lessee fails to provide such insurance as required by this Section, Lessor may provide such policies of insurance and add the costs thereof to the rent, and such costs shall be payable by the Lessee when the next rent payment is due.

12. <u>HOLD HARMLESS</u>

Lessee shall indemnify and save harmless Lessor, its officers, agents and employees, from and against any and all claims, demands, loss or liability of any kind or nature which Lessor, its officers, agents, and employees may sustain or incur, or which may be imposed upon them or any of them for injury to, or death of, persons; or damage to property arising out of or in any manner connected with the negligence or lack of care of Lessee, its officers, agents or employees in their use of the Demised Premises, including the use of Falcon Field and its facilities.

13. <u>MAINTENANCE</u>

Lessee agrees to repair and maintain all improvements constructed on the Demised Premises in good

order and repair and to keep the Demised Premises in a neat, clean and orderly condition. This includes, but is not limited to, the prevention of the accumulation of any refuse or waste materials which might be or constitute a fire hazard or a public or private nuisance. Failure of Lessee to maintain the Demised Premises in accordance with this Section shall constitute an Event of Noncompliance.

14. <u>INSPECTION</u>

Lessor's Airport Director, or his authorized representative, shall have the right at all reasonable times to inspect the Demised Premises to determine if the provisions of this Lease are being complied with.

15. <u>NONEXCLUSIVE RIGHT</u>

Nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 1349(a), Title 49, of the United States Code.

16. <u>DEVELOPMENT OF LANDING AREA</u>

Subject to Lessee's right to quiet possession, as provided for herein, Lessor reserves the right to further develop or improve the landing area of the Airport as it sees fit regardless of the desires or views of Lessee and without interference or hindrance.

17. <u>USE OF PUBLIC AIRPORT FACILITIES</u>

Lessee is granted the nonexclusive use of all public airport facilities including, but not limited to,

taxiways, runways, aprons, navigational aids and facilities relating thereto for purposes of landings, takeoffs and taxiing of Lessee and Lessee's customers or visitors. All such use shall be in accordance with the laws of the United States of America, the State of Arizona, and the rules and regulations promulgated by their authority with reference to aviation and air navigation, and in accordance with all reasonable and applicable rules, regulations, and ordinances of Lessor now in force or hereafter prescribed or promulgated by ordinance or by law.

Lessor agrees, during the term of this Lease, to operate and maintain the airport and its public airport facilities as a public airport consistent with, and pursuant to, the Sponsor's Assurances given by Lessor to the United States Government under the Federal Airport Act.

Nothing contained herein shall be construed to prevent the City of Mesa from closing the landing area of the airport on special occasions from time to time at the discretion of the Lessor.

18. <u>LEASE SUBORDINATE TO AGREEMENTS WITH U.S.A.</u>

This Lease shall be subordinate to the provisions and requirements of any existing or future agreement between Lessor and the United States of America, subject to Lessee's right to quiet possession, required for the development, operation, or maintenance of the airport.

19.  <u>NON-DISCRIMINATION</u>

Lessee shall not, on the grounds of race, color  or national  origin,  cause  any  person  to  be  excluded from participation in, be denied the benefit of, or be  otherwise subject  to  discrimination  in  Lessee's  use of the leased premises  and  facilities;  provided,  however,  that  such undertaking  by  Lessee shall be subject to any requirements of the security regulations of the United States  Government as  such  regulations  relate to executors of contracts with the United States Government.

20.  <u>AFFIRMATIVE ACTION PROGRAM</u>

Lessee has adopted and filed with the United States Department  of  Labor an Affirmative Action Program relating to its Mesa facilities and  operations,  which  program  has been  approved  thereby.  Pursuant to Section 152.407(b)(1), CFR, Lessee is in compliance with the requirements of 14 CFR Part  152,  Subpart  E, with respect to the implementation of an affirmative action program.  Lessee shall continue during the  term  of  this  Lease to maintain an affirmative action program as required by 14 CFR Part 152, Subpart  E,  subject to  any  requirements  of  the  security regulations of the United  States  Government  as  such  regulations  relate  to executors of contracts with the United States Government.

21.  <u>UTILITIES</u>

Lessee  agrees that it will at all times during the term of this Lease pay all utilities of  every  nature used by

it on the premises before the charges therefor become delinquent. Lessee's failure to pay such charges shall be an Event of Noncompliance.

## 22. ASSIGNMENT-SUBLETTING

This Lease may not be assigned or sublet without the prior written consent of Lessor.

## 23. BILLBOARDS AND SIGNS

Lessee agrees not to construct or maintain upon the outside of any improvements on Demised Premises any billboards or advertising signs except those approved in writing by the Airport Director of Lessor. Construction of any billboards or signs in violation of this Section shall be an Event of Noncompliance.

## 24. ABANDONMENT

If Lessee shall abandon or be dispossessed by process of law or otherwise, any personal property belonging to Lessee and left on the Demised Premises ninety (90) days after such abandonment or dispossession shall be deemed to have been transferred to Lessor; and Lessor shall have the right to remove and to dispose of the same without liability to account therefor to Lessee or to any person claiming under Lessee.

## 25. TERMINATION BY LESSEE

If it should occur that during the term of this Lease any law or ordinance of general application relating to the use of the airport should come into effect, the terms

of which so restricts the use of which the leasehold premises can be put, that the Lessee is unable to use the Demised Premises in the manner contemplated herein, then Lessee may, upon first obtaining written consent from the holder of any encumbrance upon the Demised Premises, upon thirty (30) days written notice to Lessor, terminate this Lease. In the event of termination by Lessee under this clause, Lessee, in addition to the right of termination, shall have all rights and relief as provided by law.

26. <u>TERMINATION BY LESSOR</u>

Should the Federal Government or any of its agencies assume control of the airport or any portion thereof in a manner that would preclude Lessee from operating under the terms of this Lease, Lessor will, upon written request from Lessee, as Lessee may elect, cancel this Lease or extend the term of this Lease for the period of time Lessee's operation is so precluded and no rent shall accrue during said period.

If this Lease is cancelled under the provisions of this Section, Lessor will be obligated to pay to Lessee the then fair market value, taking into consideration the remaining lease term and the original cost of improvements, less depreciation at the rate of four percent (4%) per year from the date of completion, of all Lessee owned improvements located on the Demised Premises, and at such time all such improvements shall become the property of

-15-

Lessor.  In the event the Lessor should terminate this Lease under the provisions of this clause, Lessee shall have the right to lease a site similar in size to the Demised Premises and contiguous to Lessee's manufacturing facility with direct airport access on the same terms and conditions as contained in this Lease.

This right shall be effective if Lessee has faithfully performed (or cured all nonperformance in a timely manner) the terms and conditions of this Lease, and if land is available on Falcon Field for the development.

27.  <u>RESERVATIONS TO LESSOR</u>

The Demised Premises are accepted by Lessee subject to any and all existing easements or other encumbrances of record or disclosed by Lessor prior to execution of this Lease; and Lessor shall have the right to install, lay, construct, maintain, repair and operate such sanitary sewers, drains, storm water sewers, pipelines, manholes, connections; water, oil and gas pipelines; and telephone and telegraph power lines and such other appliances and appurtenances necessary or convenient to use in connection therewith, over, in upon, through, across and along the Demised Premises or any part thereof, as will not interfere with Lessee's operations hereunder and to enter thereupon for any and all such purposes.  Lessor also reserves the right to grant franchises, easements, rights of way and permits in, over, upon, along or across any and all portions

of the Demised Premises as Lessor may elect so to do, provided, however, that no right of the Lessor provided for in this paragraph shall be so executed as to interfere unreasonably with Lessee's rights hereunder, or impair the security of any secured creditor of Lessee.

Lessor and Lessee agree that any rights set forth by this clause shall not be exercised unless a prior written notice of sixty (60) days is given to the other party. However, if such right must be exercised by reason of emergency, then each party will give the other such notice in writing as is reasonable under the existing circumstances.

Lessor agrees that it will cause the surface of the Demised Premises to be restored to its original condition upon the completion of any construction. Lessor further agrees that should the granting of these rights temporarily interfere with the use of any or all of the Demised Premises by the Lessee, the rental shall be reduced in a proportion to the amount said interference bears to the total use of the Demised Premises.

There is hereby reserved to the Lessor, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein leased. This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any

-17-

aircraft used for navigation  or  flight  through  the  said airspace or landing at, taking off from, or operation on the Falcon Field Airport.

The Lessee, by accepting  this  Lease,  agrees  for itself, its successors and assigns that it will not make use of the Demised Premises in any manner which might  interfere with  the  landing  and  taking  off of aircraft from Falcon Field Airport or otherwise  constitute  a  hazard.   In  the event  the  aforesaid  covenant  is  breached,  the  Lessor reserves the right to enter upon the Demised Premises hereby leased  and  cause the abatement of such interference at the expense of the Lessee.

### 28.  WARRANTIES OF TITLE AND QUIET ENJOYMENT

Lessor covenants that Lessor is seized of the  real property  in fee simple subject only to such restrictions as evidenced by this Lease, and has full  right  to  make  this Lease  and  that  Lessee  shall  have  quiet  and  peaceable possession of the Demised Premises during  the  term  hereof subject to the terms and conditions of this Lease.

### 29.  EVENTS OF NONCOMPLIANCE

In  the event of a breach of a Lease covenant which gives rise to a declaration of an Event of Noncompliance, as hereinbefore  defined,  Lessor  shall give to Lessee written notice of such Event of Noncompliance.

Lessee shall have sixty (60) days from the  mailing date  of  the  notice  of Event of Noncompliance to cure, or

commence curing, the conditions giving rise to the declaration of an Event of Noncompliance, and if not cured within such sixty (60) day period, to continue necessary action to cure the breach of the Lease with reasonable diligence and complete necessary action within a reasonable time.

If, after the cure period provided for in this Section, Lessee has not cured or commenced curing the conditions giving rise to a declaration of an Event of Noncompliance, and in the event the conditions giving rise to a declaration of an Event of Noncompliance are not cured within the sixty (60) days period, if Lessee does not use reasonable diligence to complete curing such conditions within a reasonable time, then Lessor may enter upon the Demised Premises and cure or cause to have cured such violating conditions as gave rise to the declaration of the Event of Noncompliance. All costs incurred by the Lessor in curing such conditions shall be payable by Lessee when the next rental payment shall become due under this Lease.

30. EVENTS OF DEFAULT

In the event of a breach of a Lease covenant which gives rise to a declaration of an Event of Default, as hereinbefore defined, Lessor shall give to Lessee written notice of such Event of Default.

Lessee shall have sixty (60) days from the mailing date of the notice of Event of Default to cure, or commence

curing, the conditions giving rise to the declaration of an Event of Default, and if not cured within such sixty (60) day period, to continue necessary action to cure the breach of the Lease with reasonable diligence and complete necessary action within a reasonable time.

If, after the cure period provided for in this Section, Lessee has not cured or commenced curing the conditions giving rise to a declaration of an Event of Default, and in the event the conditions giving rise to a declaration of an Event of Default are not cured within the sixty (60) day period, if Lessee does not use reasonable diligence to complete curing such conditions within a reasonable time, then Lessor may, at its option, terminate and cancel this Lease.

31. **PARTIAL INVALIDITY**

If any term, covenant, condition or provision of this Lease is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

32. **MARGINAL CAPTIONS**

The various headings and numbers herein and the grouping of the provisions of this Lease into separate sections and paragraphs are for the purpose of convenience only, and shall not be considered a part hereof.

### 33.  WAIVER

The failure of Lessee  or  Lessor  to  insist  upon strict  performance  of  any  of  the  terms, conditions, or covenants herein shall not be deemed a waiver of any  rights or  remedies that either may have, and shall not be deemed a waiver of any subsequent breach or  default  of  the  terms, conditions or covenants herein contained.

### 34.  APPROACH PROTECTION

The  Lessor  reserves  the  right to take action it considers necessary to protect the aerial approaches of  the airport  against  obstruction,  together  with  the right to prevent Lessee from erecting or permitting to be erected any building  or  other  structure  on the airport which, in the opinion  of  the  Lessor,  would  constitute  a  hazard  to aircraft.

### 35.  NATIONAL EMERGENCY

This  Lease  and all the provisions hereof shall be subject to whatever right the United States  Government  now has  or  in  the  future  may  have or acquire affecting the control, operation,  regulation  and  taking  over  of  said airport  or the exclusive or nonexclusive use of the airport by the United States during the  time  of  war  or  national emergency.

### 36.  HOLDING OVER

In  the  event  Lessee shall hold possession of the Demised Premises after the term herein  created,  then  such

holdings shall be a tenancy from month to month only and governed by the same conditions and covenants as contained in this Lease.

37.  **NOTICES**

All notices given, or to be given by either party to the other, shall be given in writing and shall be addressed to the parties at the addresses hereinafter set forth or at such other address as the parties may be written notice hereafter designate. Notices and payments to Lessor, and notices to Lessee shall be addressed as follows:

To:

LESSOR                      LESSEE

Airport Director            Hughes Helicopters, Inc.
Falcon Field Airport        Att'n:  Executive Vice President
4800 Falcon Drive           and Chief Financial Officer
Mesa, AZ  85205             Culver City, CA  90230

38.  **AMENDMENTS TO BE IN WRITING**

This Lease sets forth all of the agreements and understandings of the parties and is not subject to modification except in writing.

39.  **SUCCESSORS IN INTEREST**

The covenants herein contained shall, subject to the provisions as to assignment, apply to and bind the successors and assigns of the parties hereto; and the parties hereto shall be jointly and severally liable hereunder.

40.  <u>FORCE MAJEURE</u>

If either party hereto shall be delayed or prevented from the performance of any act required hereunder by reason of acts of God, strikes, lockouts, labor troubles, inability to procure materials, restrictive governmental laws or regulations or other cause, without fault and beyond the control of the party obligated (financial inability excepted), performance of such act will be excused for the period of the delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, nothing in this Section shall excuse Lessee from the prompt payment of any rental or other charges required of Lessee hereunder except as may be expressly provided elsewhere in this Lease.

41.  <u>TIME</u>

Time is of the essence of this Lease.

CITY OF MESA, a municipal corporation

By_____
         City Manager

ATTEST:

_____
City Clerk

"LESSOR"

-23-

HUGHES HELICOPTERS, INC., a
Delaware corporation

By _Arthur M Layh_

Title _Vice President_

"LESSEE"

RECOMMEND FOR APPROVAL:

_Robert J Branch_
Airport Director


STATE OF ARIZONA,      )
                       :ss
County of Maricopa     )

        The foregoing Amended Lease was acknowledged before
me this _22_ day of _MARCH_____, 1985, by C. K. LUSTER,
and his signature attested thereto by DORTHE DANA, City
Manager and City Clerk, respectively, of the CITY OF MESA, a
municipal corporation, being thereunto duly authorized.

                       _Richard Rose_
                       Notary Public

My Commission expires:

My Commission Expires Nov. 9, 1987

-24-

STATE OF _ARIZONA_ )
                 :ss
County of _MARICOPA_ )

       The foregoing Amended Lease was acknowledged to before me this _22_ day of _MARCH_ , 1985, by _ARTHUR M. TAYLOR_ ,as _VICE-PRESIDENT_ of HUGHES HELICOPTERS, INC., a Delaware corporation, being thereunto duly authorized.

                                      Notary Public

My Commission expires:

My Commission Expires Nov. 9, 1987

Legal Description, Lot 7, Northwest Aviation Area

That portion of Section 3, Township 1 North, Range 6 East,
of the Gila and Salt River Base and Meridian, Maricopa
County, Arizona, more fully described as follows:

Commencing at the Northwest corner of said Section 3,
thence N.89°38'45"E., along the North line of said Section
3, a distance of 2099.71 feet; thence S.00°21'15"E., a
distance of 60 feet to the True Point of Beginning; thence
N.89°38'45"E., parallel to and 60 feet South of the North
line of said Section 3, a distance of 1196.54 feet; thence
S.50°45'08"W., a distance of 1045.03 feet; thence
N.39°14'52"W., a distance of 629.39 feet; thence
N.00°21'15"W., a distance of 154.29 feet; thence through a
curve to the right, with a central angle of 90°00'00", a
radius of 12 feet, and a tangent of 12 feet; a distance of
18.85 feet to the True Point of Beginning.

Reserving unto the Lessor, its successors and assigns, an
easement for public utilities over the North 15 feet and
the West 8 feet of the above described property.

Also known as Lot 7 of the NORTHWEST AVIATION AREA.

Exhibit A

That portion of Section 3, Township 1 North, Range 6 East, Gila and Salt River Base and Meridian, Maricopa County, Arizona, more fully described as follows:

Commencing at the Northwest corner of said Section 3; thence bear N 89° 38' 45" E a distance of 3290.05 feet; thence bear S 00° 21' 15" E a distance of 65.00 feet to the True Point of Beginning;

Thence bear S 50° 45' 08" W a distance of 1978.98 feet;
thence bear N 39° 14' 52" W a distance of 1596.47 feet;
thence bear N 89° 38' 45" E a distance of 2542.65 feet;
to the True Point of Beginning, containing 36.265 net acres, more or less.

EXCEPT FOR A PARCEL OF LAND MORE FULLY DESCRIBED AS  FOLLOWS:

That portion of Section 3, Township 1 North, Range 6 East, of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, more fully described as follows:

Commencing at the Northwest corner of said Section 3, thence N.89°38'45"E., along the North line of said Section 3, a distance of 2099.71 feet; thence S.00°21'15"E., a distance of 60 feet to the True Point of Beginning; thence N.89°38'45"E., parallel to and 60 feet South of the North line of said Section 3, a distance of 1196.54 feet; thence S.50°45'08"W., a distance of 1045.03 feet; thence N.39°14'52"W., a distance of 629.39 feet; thence N.00°21'15"W., a distance of 154.29 feet; thence through a curve to the right, with a central angle of 90°00'00", a radius of 12 feet, and a tangent of 12 feet; a distance of 18.85 feet to the True Point of Beginning.

Reserving unto the Lessor, its successors and assigns, an easement for public utilities over the North 15 feet and the West 8 feet of the above described property.

Also known as Lot 7 of the NORTHWEST AVIATION AREA.



Exhibit B



Exhibit C

# SURFACE ENGINEERING COMPANY

**CIVIL** • **SURVEY** • **STRUCTURAL**

8045 NORTH 12TH STREET, SUITE 140    •    PHOENIX, ARIZONA 85014    •    602 263-1173

DONALD E. SURFACE   PE

·. February 20, 1985

Hughes Parcel D
Southeast Corner of Greenfield & McDowell

SEC #2585



LEGAL DESCRIPTION                (PARCEL D)          (REVISED MARCH 1, 1985)

That portion of Section 3, Township 1 North, Range 6 East, Gila and Salt River Base
and Meridian, Maricopa County, Arizona, more fully described as follows:

    Commencing at the Northwest corner of said Section 3; thence bear N 89° 38' 45" E
a distance of 3290.05 feet; thence bear S 00° 21' 15" E a distance of 65.00 feet
to the True Point of Beginning;

    Thence bear S 50° 45' 08" W a distance of 1978.98 feet;
thence bear N 39° 14' 52" W a distance of 1596.47 feet;
thence bear N 89° 38' 45" E a distance of 2542.65 feet;
to the True Point of Beginning, containing 36.265 net acres, more or less.

LEGAL FOR P.U.E. OVER PARCEL "D" (HUGHES)


A strip of land 58 feet wide having a centerline described
as follows:

Commencing at the North quarter corner of Section 3,
Township 1 North, Range 6 East of the Gila and Salt River
Base and Meridian, Maricopa County, Arizona; thence South
89°38'45" West, a distance of 574.74 feet; thence South
00°21'15" East, a distance of 60.0 feet to the Point of
Beginning; thence continuing South 00°21'15" East, a
distance of 239.44 feet to a point; thence Southwesterly
along a curve to the left with a central angle of
51°06'23", having a radius of 425.0 feet and whose central
angle bears South 00°21'15" East, for a distance of 379.09
feet; thence South 50°45'08" West, a distance of 91.61 feet
to the Point of Ending.