# EXHIBIT 2

COMMERCIAL - FIXED BASE OPERATOR


THIS Lease, made this 1st day of June, 1983, by and between
the CITY OF MESA, a municipal corporation, and MADISON AVIATION, an
Arizona Corporation, 6117 E. Sage Drive, Scottsdale, Arizona 85253,
hereinafter respectively referred to as LESSOR and LESSEE, without
regard to number or gender.


W I T N E S S E T H :


THAT WHEREAS, Lessor owns certain real property known as
"FALCON FIELD," AND

WHEREAS the Lessor is willing to lease to the Lessee, and the
Lessee desires to take and lease from the Lessor a certain portion of
real property of the airport for the purposes hereinafter set forth,
subject to all of the terms and conditions of that certain Instrument
of Transfer between the United States of America and the Recon-
struction Finance Corporation and the Lessor herein, which instrument
is recorded in Docket 270, at Pages 90 through 101 and filed in the
Office of the County Recorder of Maricopa County, Arizona, and as
amended by Instrument of Release recorded in Docket 5984 at Pages
126 and 127, records of the Maricopa County, Arizona Recorder, which
releases paragraph 4 of said original Instrument of Transfer.

NOW Therefore, in consideration of the mutual promises and
conditions of the parties herein contained, it is agreed as follows:

1.  DEMISED PREMISES

The premises leased to Lessee are hereinafter referred to
as the Demised Premises and are described on Exhibit A, attached
hereto and made a part hereof.  The approximate location of the
Demised Premises is also outlined in red on the plat of Falcon Field,
marked Exhibit B, which is also attached hereto and made a part hereof.
The Demised Premises includes Parcels 3 and 4 as described by City of
Mesa Drawing A-19751.  The Demised Premises measures approximately
405 feet by 645.56 feet which is approximately 5.97 acres.

-1-

2.  TERMS

That the terms of the lease shall be for a period of 25 years, commencing on the 1st day of June, 1983, and ending on the 31st day of May, 2008.  This lease supersedes any and all other agreements between the parties.

3.  OPTION

The Lessor grants to the Lessee the option during the first ten (10) years of this lease to extend the lease at that point in time for a period of fifty (50) years total.  The option will not be granted by the Lessor unless the Lessee has submitted plans and specifications and schedules to build additional improvements on the Demised Premises bringing the total value to not less than $750,000. The beginning market values on the land in the new 50 year lease will start at the market values in effect in this lease when the option is exercised.  The new lease will contain all the same terms and conditions that will be in effect on this lease at the time the option is exercised.  If the option is not exercised by the Lessor prior to May 31, 1993, this option shall be cancelled.

4.  USES OF PROPERTY

Lessee shall have the right to conduct the following activities, all inclusive, and for no other purpose:

Construct hangars for rental to others.

Sale and storage of new and used aircraft, both rotary and fixed wing.

Sale of new and used aircraft parts, both rotary and fixed wing.

Sale of new and used avionics and other aircraft radio components.

Sale of new and used aircraft tools.

Operation of aircraft in all normal FBO operations including flight training, charter, fire suppression, ground school, with the exception of a scheduled airline operation.

Sale of fuel to aircraft based on the Demised Premises as well as aircraft under the direct control of the Lessee provided the Lessee executes a fuel agreement with the Lessor regarding payment of fuel flowage fees to Lessor.

-2-

Lessee will not be allowed to sell fuel to the public or
advertise fuel sales in any manner unless given this authority
by a separate fuel agreement executed with Lessor.

Car rental operation for the convenience of customers and
visitors.

Canteen machines for a small pilot snack bar.

Maintenance and modifications of new and used rotary and
fixed wing aircraft.

Radio repair shop.

And for no other reason.

5.    RENTAL

As the minimum rental for the leased premises, the Lessee
agrees to pay to the Lessor the sum of $250.00 per month plus four
percent Real Estate Tax until July 31, 1984, at which time the rental
rate will be increased to $27,253 annually plus four percent Real
Estate Tax.  Said minimum rental shall be payable annually in advance.
The first year's payment will be due on or before August 1, 1984,
and said rental shall be payable on the 1st of August each year
thereafter.  Lessee also agrees to pay to Lessor with and in addition
to the annual rental payments all privilege license taxes, sales taxes,
or other governmental impositions imposed by any governmental body on
the rentals received by Lessor from Lessee during the term hereof.

6.    RENTAL RATE ADJUSTMENT

The minimum rental rates outlined in clause 5 above are
subject to adjustment at five (5) year intervals, the first adjustment
to be due July 31, 1989.  July 31, 94    1-31-99    7/31/04

The rental rate shall at no time exceed a sum equal to the
beginning rate plus (four percent) times the number of years of the
lease term that have expired, nor shall the rental rate be less than
a sum equal to the beginning rate minus four percent times the number
of years of the lease term that have expired.

The adjusted total rental rates shall be determined in
the following manner:

A.    Six months prior to the termination of the five year
period, Lessor shall propose the rental rate for the next five year

-3-

period and the parties hereto may, by mutual agreement, change the rental rate. If agreement is not reached ninety days prior to the end of the five year period, Lessor and Lessee shall each select a qualified real estate appraiser, and the two chosen shall select a third qualified real estate appraiser. Lessor shall, upon selection of the appraisers, immediately fix a time and place for a conference between the parties and the appraisers. Said conference shall be for the purpose of agreeing upon the general information to be given the appraisers.

B.    The appraisers selected by Lessee and Lessor shall, within forty-five days after receiving their instructions, deliver a copy of their fully documented written appraisal of the then current fair market rental rate to the Lessee, Lessor, and the third appraiser. The third appraiser shall analyze said appraisals, conduct such investigations, interviews, and discussions with or without the other appraisers or either of them as he deems necessary.

C.    At a time not to exceed fifteen days after submission of the written appraisal and at a place the three appraisers shall name, the respective parties may have representatives appear and argue such appraisal matters as the parties deem appropriate. Within five days after such time, the appraisers shall make a final written determination of the then current fair market rental rate and/or per-centage of gross revenue.

D.    If the appraisers are unable to agree, then the final determination shall be made by the third appraiser.

E.    Lessee and Lessor shall pay the cost of the appraiser chosen by them and equally share the cost of the third.

7.    IMPROVEMENTS

Lessee will at its expense move the hangar currently located on Section 10, Parcel D, to the Demised Premises within twelve months of the execution of this Lease. Said movement includes the pouring of a new pad, bituminous parking aprons, new concrete and helipads as shown in the sketch submitted to the Airport Director dated March 16, 1983. Lessor will remove hangar pad and any other improvements vacated by Lessee from Section 10, Parcel D, after June 3, 1983.

Lessee agrees to comply with the notification and review requirements covered in Part 77 of the Federal Aviation Regulations

-4-

prior to the construction of the improvements described herein and prior to the construction of any future structure or building upon the Demised Premises, or in the event of any planned modification or alteration of any present or future building or structures situated on the Demised Premises.

Lessee shall conduct its construction operations so that such operations will in no way interfere with the normal operation and use of Falcon Field by Lessor and other persons and organizations entitled to use of same.

The Lessee agrees that all construction on the premises shall comply with the Zoning, Building, Plumbing, Electrical, and Mechanical Codes of the City of Mesa and further agrees to secure all necessary permits in connection therewith and to pay the required fees therefore.  In addition thereto, the Lessee agrees to install and pay for, at its sole expense, all necessary paving improvements on the Demised Premises necessary to provide for a dust free wearing surface in all traffic areas and after installation of all such improvements to maintain same in good condition at its sole expense.

Upon termination of this Lease, all buildings, structures, or other improvements placed on the Demised Premises by Lessee shall become the property of Lessor.

8.  MECHANICS LIENS

Lessee agrees to keep the Demised Premises free of any mechanics' or material man's liens or other liens of any kind or nature for work done, labor performed, or material furnished thereon at the instance or occasion of Lessee, and Lessee further agrees to indemnify and save harmless Lessor from and against any and all claims, liens, demands, costs, and expenses of whatsoever nature for any such work done, labor performed, or materials furnished.

9.  STORAGE OF EQUIPMENT AND MATERIAL

Lessee agrees that the Leased Premises will not be used for outside storage of equipment or material except during construc- tion.  This provision does not apply to or preclude Lessee from parking flyable aircraft on the Leased Premises, but does preclude the outside parking of aircraft being held for salvage purposes or aircraft awaiting major repair.

-5-

10. <u>PUBLIC LIABILITY INSURANCE</u>

As a condition precedent to the effectiveness of this Lease, Lessee shall procure and maintain in full force and effect during the term of this Lease, a policy or policies of public liability and property damage insurance from a company or companies authorized to do business in the State of Arizona with minimum coverage as follows. From June 1, 1983, until July 31, 1984, $100,000 for any one person injured, $300,000 for any one accident, and $25,000 for property damage. After August 1, 1984, the minimum coverage shall be $500,000 for death or bodily injury or loss sustained by any one person in any one occurrence, $1,000,000 for death or bodily injury or loss sustained by more than one person in any one occurrence, and $250,000 for loss by damage or injury to property in any one occurrence. Lessee shall cause to be attached to said policy of insurance an endorsement reciting the Hold Harmless paragraph of this Lease. The policy shall also either contain a provision providing for a broad form of contractual liability including leases, or there shall be attached thereto an endorsement providing for such coverage. The policy shall further provide that the same shall not be cancelled until a 10-day written notice of cancellation has been served upon the Airport Director of Lessor. Lessee shall deliver said policy of insurance or certified copy thereof to the Airport Director of Lessor for approval as to sufficiency. Lessor's Airport Director shall approve or disapprove said policy within fifteen days of its submission.

The procuring of such policy of insurance cannot be construed to be a limitation upon Lessee's liability or as a full performance on its part of the indemnification provisions of this Lease; Lessee's obligation being, notwithstanding said policy of insurance, for the full and total amount of any damage, injury, or loss caused by the negligence or neglect connected with the operation under this Lease. Lessor shall be named as additional insured.

11. <u>HANGAR-KEEPER'S LIABILITY INSURANCE</u>

In the event the Lessee intends to park aircraft on the Demised Premises, the Lessee shall maintain in full force for the

term of this lease a policy of policies of standard and ~~in-flight~~ hangar-keeper liability insurance from a company or companies authorized to do business in the State of Arizona.

Said standard policy or policies shall have a minimum coverage of $100,000 for any one aircraft and $200,000 for loss in any one occurrence.

The in-flight hangar-keeper policy or policies shall have a minimum coverage of $100,000 for any one aircraft, or in any one occurrence.

Lessee shall deliver said policy or policies of insurance, or certified copies thereof, to the Airport Director for approval as to sufficiency. Lessor's Airport Director shall approve or disapprove said policy or policies within fifteen (15) days of submission.

12. FIRE INSURANCE

Lessee shall maintain in full force and effect fire insurance with extended coverage on the demised premises to the extent of eighty percent (80%) of the insurable value of the buildings or other insurable improvements. All such policies of insurance shall provide for loss payable to the Lessee and the Lessor as their interests may appear, shall be in companies approved by the Lessor, and the Lessor shall be furnished with copies thereof. Failure to maintain such insurance in effect shall be a default within the meaning of Article 29 of this lease, and shall constitute grounds for termination of this lease.

13. HOLD HARMLESS

Lessee shall indemnify and save harmless Lessor, its officers, agents and employees, from and against any and all claims, demands, loss or liability of any kind or nature which Lessor, its officers, agents, and employees may sustain or incur, or which may be imposed upon them or any of them for injury to, or death of, persons; or damage to property arising out of or in any manner connected with the negligence of lack of care of Lessee, its officers,

-7-

agents or employees in use of the demised premises, including the use of Falcon Field and its facilities.

14. <u>DESTRUCTION OF PREMISES</u>

If the demised premises or any part thereof is damaged or destroyed by reason of any cause whatsoever, Lessee may either:

A.    Within thirty (30) days commence and diligently pursue to completion the repair or reconstruction of the demised premises, and this lease shall remain in full force and effect; or

B.    Terminate this lease upon thirty (30) days written notice.  Any insurance payments to cover said destruction will be pro-rated in a manner as established by the Lessor.

15. <u>MAINTENANCE</u>

Lessee agrees to repair and maintain all improvements constructed on the demised premises in good order and repair and to keep the said premises in a neat, clean and orderly condition.  This includes, but is not limited to, the prevention of the accumulation of any refuse or waste materials which might be or constitute a fire hazard or a public or private nuisance.  Lessee shall not be liable to Lessor for failure to make any repairs or for improper maintenance until after written notice from Lessor's Airport Director of the need for such repair or maintenance.  If, however, after what the Airport Director deems a reasonable time, Lessee fails to make such repair or maintenance, Lessor may cause to have such repair and maintenance made and add the cost thereof to the rent thereafter accruing.  If said costs are not paid promptly by Lessee, this lease shall be deemed to be in default, and Lessor shall be entitled to all legal remedies provided hereunder.

16. <u>INSPECTION</u>

Lessor's Airport Director, or his authorized representative, shall have the right at all reasonable times to inspect the subject premises to determine if the provisions of this lease are being complied with.

-8-

17. <u>NON-EXCLUSIVE RIGHT</u>

It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 1349, Title 49, of the United States Code.

18. <u>DEVELOPMENT OF LANDING AREA</u>

Lessor reserves the right to further develop or improve the landing area of the Airport as it sees fit regardless of the desires or views of Lessee and without interference or hindrance.

19. <u>USE OF PUBLIC AIRPORT FACILITIES</u>

Lessee is granted the non-exclusive use of all public Airport facilities including, but not limited to, taxiways, runways, aprons, navigational aids and facilities relating thereto for purposes of landings, take-offs and taxiing of Lessee's and Lessee's tenants' aircraft.  All such use shall be in accordance with the laws of the United States of America, the State of Arizona, and the rules and regulations promulgated by their authority with reference to aviation and air navigation, and in accordance with all reasonable and applicable rules, regulations, and ordinances of Lessor now in force or hereafter prescribed or promulgated by ordinance or by law.

Lessor agrees, during the term of this Lease, to operate and maintain the Airport and its public airport facilities as a public airport consistent with, and pursuant to, the Sponsor's Assurances given by Lessor to the United States Government under the Federal Airport Act.

Nothing contained herein shall be construed to prevent the City of Mesa from closing the landing area of the Airport on special occasions from time to time at the discretion of the Lessor.

20. <u>LEASE SUBORDINATE TO AGREEMENTS WITH U.S.A.</u>

This Lease shall be subordinate to the provisions and requirements of any existing or future agreement between Lessor and

-9-

the United States of America relative to the development, operation, or maintenance of the Airport.

21. <u>WAR OR NATIONAL EMERGENCY</u>

This Lease and all the provisions hereof shall be subject to whatever right the United States Government has affecting the control, operation, regulation and taking over of said Airport, or the exclusive or non-exclusive use of the Airport by the United States during the time of war or National emergency.

22. <u>NON-DISCRIMINATION</u>

A.    The Grantee assures that it will undertake an affirmative action program as required by 14 CFR Part 152, Subpart E, to insure that no person shall on the grounds of race, creed, color, national origin, or sex be excluded from participating in any employment activities covered in 14 CFR Part 152, Subpart E. The Grantee assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity covered by this subpart.  The Grantee assures that it will require that its covered suborganizations provide assurances to the Grantor that they similarly will undertake affirmative action programs and that they will require assurances from their suborganizations, as required by 14 CFR Part 152, Subpart E, to the same effect.

B.    That in the event of breach of any of the above non-discrimination covenants, Lessor shall have the right to terminate the lease, and to re-enter and repossess said land and the facilities thereon, and hold the same as if said lease had never been made or issued.

C.    Lessee shall furnish its accommodations and/or services on a fair, equal and not unjustly discriminatory basis to all users thereof and it shall charge fair, reasonable and not unjustly discriminatory prices for each unit or service; provided that the Lessee may be allowed to make reasonable and non-discriminatory discounts, rebates or other similar type of price reductions to volume purchases.

-10-

D.    Non-compliance with Provision C above shall constitute a material breach thereof and, in the event of such non-compliance, the Lessor shall have the right to terminate this lease and the estate hereby created without liability therefore or at the election of the Lessor or the United States, either or both said Governments shall have the right to judicially enforce Provisions A, B and C.

E.    Lessee agrees that it shall insert the above four provisions in any contract by which said Lessee grants a right or privilege to any person, firm or corporation to render accommodations and/or services to the public on the premises herein leased.

23.    RATES, RENTALS AND OTHER CHARGES

Lessee shall upon written demand of Lessor furnish Lessor with a schedule of all prices for each unit or service to be charged to the general public.

24.    MONTHLY REPORTS

Lessee shall, within fifteen (15) days after commencement of the terms of this Lease, submit a written report to Lessor's Airport Director listing all aircraft located on the Demised Premises. Said report shall be prepared on a form supplied by Lessor, and shall include aircraft make, model; registration number, owner's name, address, and telephone number.

Lessee further agrees that by the 10th day of each month he will submit a list showing any additions to or deletions from the above mentioned written report.

Lessee shall also submit a list of all Lessee's employees who are employed at Falcon Field within fifteen (15) days after the commencement of this Lease.  Said list shall be prepared on a form supplied by Lessor and include the employee's name, address and telephone number.  Any changes in this list shall be reported in writing to Lessor's Airport Director within five (5) days after the date such change takes place.

25. UTILITIES

Lessee agrees that it will at all times during the term of this agreement pay for all utilities of every nature used by it on the premises before the charges therefore become delinquent.

26. PROPERTY TAXES

The Lessee agrees to pay all taxes of every nature levied or assessed on the property herein described during the term hereof and all personal property of the Lessee's placed upon the leased premises.

27. LITIGATION

In the event either the Lessor or Lessee shall, without fault on its part, be made a party to any litigation commenced against the other party, then the other party shall pay the court costs of the party so being judged without fault together with a reasonable attorney's fee to be fixed by the court.

28. ASSIGNMENT-SUBLETTING

Lessee may sublet or assign this Lease to a corporation which is Lessee's principal stockholder or in which Lessee is the principal stockholder so long as Lessee remains personally liable thereon but any other mortgage, pledge, hypothecation, encumbrance, subletting, or assignment of Demised Premises or any part thereof shall first be approved in writing by Lessor, which shall not be arbitrarily withheld.

If the Lessee hereunder is a corporation or an unincorporated association or a partnership, the transfer, assignment or hypothecation of any stock or interest in said corporation, association, or partnership in the aggregate in excess of twenty-five percent (25%) shall be deemed an assignment within the meaning of this Lease.

A transfer or an assignment of any such stock or interest to a shareholder's or member's spouse, children or grandchildren is excepted from the provisions hereof.

Lessor shall not unreasonably refuse to grant such written consent. Any such transfer without said approval, whether voluntary

-12-

or involuntary, shall be void and shall confer no right of occupancy upon said assignee or purchaser.

Any document to mortgage, pledge, hypothecate, encumber, sublet or assign the Demised Premises or any part thereof shall incorporate directly or by reference all the provisions of this Lease.

Notwithstanding the provisions of the first paragraph of this clause, if requested by Lessee, Lessor agrees to execute its written consent to an assignment of this Lease to a trustee under a Deed of Trust (herein called "trust deed") for the benefit of a lender (herein called "encumbrancer"), upon and subject to the following covenants and conditions:

A. Said trust deed and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Lessor hereunder, except as herein otherwise provided;

B. In the event of any conflict between the provisions of this Lease and the provisions of any such trust deed, the provisions of this Lease shall control;

C. The prior written consent of Lessor shall not be required:

1. To a transfer of this Lease at foreclosure sale under the trust deed, judicial foreclosure, or an assignment in lieu of foreclosure, or

2. To any subsequent transfer by the encumbrancer if the encumbrancer is an established bank, savings and loan association or insurance company, and is the purchaser of such foreclosure sale;

provided that in either such event the encumbrancer forthwith gives notice to the Lessor in writing of any such transfer, setting forth the name and address of the transferee, the effective date of such transfer, and the express agreement of the transferee assuming and

-13-

agreeing to perform all of the obligations under this Lease,
together with a copy of the document by which such transfer was
made.

Any transferee under the provisions of subparagraph C-1
above shall be liable to perform the obligations of the Lessee
under this lease only so long as such transferee holds title to
the leasehold.  Any subsequent transfer of the leasehold hereunder
shall not be made without the prior written consent of the Lessor
and shall be subject to the conditions relating thereto as set forth
in the first paragraph of this clause.

D.  Upon and immediately after the recording of the
trust deed, Lessee, at Lessee's expense, shall cause to be recorded
in the office of the Recorder of Maricopa County, Arizona, a written
request executed and acknowledged by Lessor for a copy of any notice
of default and of any notice of sale under the trust deed as provided
by the statutes of the State of Arizona relating thereto.  Con-
currently with the execution of said consent Lessee shall furnish
to Lessor a complete copy of the trust deed and note secured thereby,
together with the name and address of the holder thereof.  No such
encumbrance shall be valid or effective unless and until Lessor shall
execute its written consent thereto as hereinabove provided.

Lessor agrees that it will not terminate this Lease
because of any default or breach hereunder on the part of Lessee if
the encumbrance under such deed of trust, within sixty (60) days
after service of written notice on the encumbrancer by Lessor of
its intention to terminate this Lease for such default or breach,
shall:

1.  Cure such default or breach if the same can be
cured by the payment or expenditure of money provided to be paid
under the terms of this lease; or if such default or breach is not
so curable, cause the trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps and proceedings

-14-

for the exercise of the power of sale under and pursuant to the
trust deed in the manner provided by law, and

2.   Keep and perform all of the covenants and
conditions of the Lease requiring the payment or expenditure of money
by Lessee until such time as said Leasehold shall be sold upon
foreclosure pursuant to the trust deed or shall be released or
reconveyed thereunder; provided, however, that if the holder of
the trust deed shall fail or refuse to comply with any and all of
the conditions of this paragraph, then and thereupon Lessor shall
be released from the covenant of forbearance herein contained.

Any notice to the encumbrancer provided for in this
paragraph may be given concurrently with or after Lessor's notice
of default to Lessee as hereinafter provided in Clause 30.

29.   DEFAULT IN TERMS OF THIS LEASE BY LESSEE

Should Lessee default in the performance of any covenant,
condition, or agreement herein contained and such default is not
corrected within thirty (30) days after written notice to it by
Lessor's Airport Director, Lessor may declare this Lease and all
rights and interest created thereby to be terminated.

30.   BILLBOARDS AND SIGNS

Lessee agrees not to construct nor maintain upon the
outside of any improvements on Demised Premises any billboards or
advertising signs except those approved in writing by the Airport
Director of Lessor.

31.   UNLAWFUL USE

Lessee agrees no improvements shall be erected, placed
upon, operated or maintained on the leasehold premises, nor shall
business be conducted or carried on thereon in violation of the
terms of this Lease, or any regulations, order of laws, statutes,
by-law or ordinance of any governmental agency having jurisdiction
thereover.

32.   ABANDONMENT

If Lessee shall abandon or be dispossessed by process

-15-

of law or otherwise, any personal property belonging to Lessee
and left on the premises sixty (60) days after such abandonment
or dispossession shall be deemed to have been transferred to Lessor;
and Lessor shall have the right to remove and to dispose of the
same without liability to account therefore to Lessee or to any
person claiming under Lessee.

33.  <u>TERMINATION BY LESSEE</u>

If it should occur that during the term of this Lease any
law or ordinance should come into effect, the term of which so
restricts the use of which the leasehold premises can be put, that
the Lessee is unable to use the leasehold premises in the manner
contemplated herein, then Lessee may, upon first obtaining written
consent from the holder of any encumbrance upon the Demised
Premises, upon thirty (30) days written notice to Lessor, terminate
this Lease.  In the event of termination by Lessee under this
clause, Lessee, in addition to the right of termination, shall
have all rights and relief as provided by law.

34.  <u>TERMINATION BY LESSOR</u>

In the event Lessor should require the Demised Premises
in connection with the future expansion and/or operation of the
Airport, Lessor may, upon ninety (90) days written notice, cancel
this Lease.  Should the Federal Government or any other governmental
agency assume control of the Airport or any portion thereof in a
manner that would preclude Lessee from operating under the terms
of this Lease, or should the City of Mesa alter their development
of the Airport from that shown on the attached Exhibit  <u>B</u>  in a
manner that would preclude Lessor from operating under the terms
of this Lease, Lessor will upon written request from Lessee cancel
this Lease or extend the term of this Lease for the period of time
Lessee's operation is so precluded and no rent shall accrue during
said period.

-16-

If this Lease is cancelled under the provisions of this clause, Lessor will be ogligated to pay to Lessee the then in place fair market value of all Lessee owned improvements located on the Demised Premises, and at such time all such improvements shall become the property of the Lessor.  Fair market value of the improvements in place shall be determined in the manner as set forth in this Lease Agreement.

In the event the Lessor should terminate this Lease under the provisions of this clause, Lessee shall have the right, as hereinafter set forth, to lease a site similar in size to the Demised Premises on the same terms and conditions as contained in this Lease.

This right shall be effective only if Lessee has faithfully performed all of the terms and conditions of this Lease, and if land is available on Falcon Field for the development.

35.  <u>RESERVATIONS TO LESSOR</u>

The leased premises are accepted by Lessee subject to any and all existing easements or other encumbrances; and Lessor shall have the right to install, lay, construct, maintain, repair and operate such sanitary sewers, drains, storm water sewers, pipelines, manholes, connections; water, oil and gas pipelines; and telephone and telegraph power lines and such other appliances and appurtenances necessary or convenient to use in connection therewith, over, in, upon through, across, and along the leased premises or any part thereof, as will not interfere with Lessee's operations hereunder and to enter thereupon for any and all such purposes.  Lessor also reserves the right to grant franchises, easements, rights of way and permits in, over, upon, along or across any and all portions of said leased premises as Lessor may elect so to do, provided,

however, that no right of the Lessor provided for in this paragraph shall be so executed as to interfere unreasonably with Lessee's operations hereunder, or impair the security of any secured creditor of Lessee.

Lessor agrees that any right as set forth by this clause shall not be exercised unless a prior written notice of sixty days is given to Lessee.  However, if such right must be exercised by reason of emergency, then Lessor will give Lessee such notice in writing as is reasonable under the existing circumstances.

Lessor agrees that it will cause the surface of the Demised Premises to be restored to its original condition upon the completion of any construction.  Lessor further agrees that, should the granting of these rights temporarily interfere with the use of any or all of the Demised Premises by Lessee, the rental shall be reduced in a proportion to the amount said interference bears to the total use of the Demised Premises.

There is hereby reserved to the Lessor, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein leased.  This public right of flight shall include the right to cause in said airspace any noise inherent in the opera-tion of any aircraft used for navigation or flight through the said airspace or landing at, taking off from, or operation on Falcon Field Airport.

The Lessee, by accepting this Lease Agreement, expressly agrees for itself, its successors and assigns, that it will not erect nor permit the erection of any structure or object nor permit the growth of any tree on the land leased hereunder above a ground level elevation of twenty-nine (29) feet.  In the event the aforesaid covenants are breached, the owner reserves the right to enter upon the land leased hereunder and to remove the offending structure or object and cut the offending tree, all of which shall be at the expense of the Lessee.

-18-

The Lessee, by accepting this lease agreement, agrees
for itself, its successors and assigns that it will not make use
of the leased premises in any manner which might interfere with
the landing and taking off of aircraft from Falcon Field Airport
or otherwise constitute a hazard.  In the event the aforesaid
covenant is breached, the Lessor reserves the right to enter upon
the premises hereby leased and cause the abatement of such inter-
ference at the expense of the Lessee.

36.  PARTIAL INVALIDITY

If any term, covenant, condition or provision of this
lease is held by a court of competent jurisdiction to be invalid,
void or unenforceable, the remainder of the provisions hereof shall
remain in full force and effect and shall in no way be affected,
impaired or invalidated thereby.

37.  MARGINAL CAPTIONS

The various headings and numbers herein and the grouping
of the provisions of this Lease into separate sections and para-
graphs are for the purpose of convenience only, and shall not be
considered a part hereof.

38.  WAIVER

The failure of Lessee or Lessor to insist upon strict
performance of any of the terms, conditions, or covenants herein
shall not be deemed a waiver of any rights or remedies that either
may have, and shall not be deemed a waiver of any subsequent breach
or default of the terms, conditions, or covenants herein contained.

39.  APPROACH PROTECTION

The Lessor reserves the right to take any action it
considers necessary to protect the aerial approaches of the airport
against obstruction, together with the right to prevent Lessee from
erecting or permitting to be erected, any building or other structure
on the airport which, in the opinion of the Lessor, would limit the
usefulness of the airport or constitute a hazard to aircraft.

-19-

40. <u>NATIONAL EMERGENCY</u>

This Lease and all the provisions hereof shall be subject to whatever right the United States Government now has or in the future may have or acquire, affecting the control, operation, regulation and taking over of said airport or the exclusive or non-exclusive use of the airport by the United States during the time of war or national emergency.

41. <u>PARTIES LIABLE</u>

The covenants and conditions herein contained shall apply to and bind the heirs, administrators, executors, successors and assigns of the parties thereto.

42. <u>HOLDING OVER</u>

In the event Lessee shall hold possession of the Demised Premises after the term herein created, then such holdings shall be a tenancy from month to month only and governed by the same conditions and covenants as contained in this Lease.

43. <u>NOTICES</u>

All notices given, or to be given, by either party to the other, shall be given in writing and shall be addressed to the parties at the addresses hereinafter set forth or at such other address as the parties may by written notice hereafter designate.  Notices and payments to Lessor, and notices to Lessee, shall be addressed as follows:

To: <u>LESSOR</u>

    Airport Director
    Falcon Field Airport
    4800 Falcon Drive
    Mesa, Arizona  85205

<u>LESSEE</u>

Bruce Madison
Madison Aviation
6117 E. Sage Drive
Scottsdale, ARizona 85253

44. <u>AMENDMENTS TO BE IN WRITING</u>

This Lease sets forth all of the agreements and understandings of the parties and is not subject to modification except in writing.

45. <u>SPECIAL CONDITIONS</u>

A.   By the execution of this Lease by both parties, said execution will automatically cancel the Lease between the two parties dated July 20, 1964, which terminates on July 19, 1984.

B.  Lessee agrees that it will begin removing its
present hangar facilities and all personal property from Section
10, Parcel D, on or before May 23, 1983.  The Airport Director has
the authority to extend this deadline to June 3, 1983, or later if
it is absolutely necessary.

C.  Lessee is required to move from Section 10,
Parcel D, prior to the termination of the Lease because of the
Lessor's desire to construct a parallel runway which requires said
hangar and facilities to be moved.  Therefore the Lessor agrees
to credit the Lessee with $101,563 of prepaid rent, including real
estate tax, as a full and complete settlement of requiring the
Lessee to move from Section 10, Parcel D, prior to the termination
of the Lease.  Said prepaid rent is credited as follows:

| | |
|---|---|
| 8-1-84 to 7-31-85 | $27,253 rent plus $1090 four percent tax for a total of $28,343. |
| 8-1-85 to 7-31-86 | $27,253 rent plus $1090 four percent tax for a total of $28,343. |
| 8-1-86 to 7-31-87 | $27,253 plus $1090 four percent tax for a total of $28,343. |
| 8-1-87 to 2-28-88 | $16,534 including four percent tax. |

On 3-1-88 the Lessee will be required to pay the rent from
3-1-88 to 7-30-88 in the amount of $11,810 which includes
the four percent tax.
This prepaid rent expires on February 28, 1988.

D.  Lessee will be allowed to move a portable trailer
and one other small portable building to the Demised Premises of
this Lease to be used during construction.  All such temporary faci-
lities must be removed from the Demised Premises by May 31, 1984.

E.  Lessor hereby agrees to waive the water and sewer
development fees as it would pertain to Parcels 3 and 4 in the
Falcon Field Northwest Aviation Area.

F.    The cost for all meters and utility connections for new facilities on the Demised Premises shall be borne by the Lessee.

G.    Any personal property left by Lessee on Section 10, Parcel D, after May 23, 1983, or a later date if extended, shall become the property of the Lessor and may be disposed of at Lessor's discretion.

46. <u>SUCCESSORS IN INTEREST</u>

The covenants herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of all the parties hereto; and all of the parties hereto shall be jointly and severally liable hereunder.

47. <u>FORCE MAJEURE</u>

If either party hereto shall be delayed or prevented from the performance of any act required hereunder by reason of Acts of God, strikes, lockouts, labor troubles, inability to procure materials, restrictive governmental laws or regulations, or other cause, without fault and beyond the control of the party obligated (financial inability excepted), performance of such act will be excused for the period of the delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, nothing in this Section shall excuse Lessee from the prompt payment of any rental or other charges required of Lessee hereunder except as may be expressly provided elsewhere in this Lease.

48. <u>TIME</u>

Time is of the essence of this Lease.

CITY OF MESA, a Municipal Corporation

By _____
C. K. LUSTER, CITY MANAGER

ATTEST:

CITY CLERK

-22-

By _____

BRUCE M. MADISON
MADISON AVIATION, LESSEE

RECOMMEND FOR APPROVAL:

_____
R. J. BRESNAHAN, AIRPORT DIRECTOR

STATE OF ARIZONA    )
                    ) ss
County of Maricopa  )

 The foregoing Lease Agreement was acknowledged before me this

____1st____ day of ____June____, 1983, by C. K. LUSTER and GRACE

M. COKELEY, the City Manager and Acting City Clerk, respectively, of the CITY OF

MESA, a municipal corporation, they being thereunto duly authorized.

_____
Notary Public

My Commission Expires:

_____

STATE OF ARIZONA    )
                    ) ss
County of Maricopa  )

 The foregoing Lease Agreement was acknowledged before me this

____th day of ____May____, 1983, by BRUCE M. MADISON, President,

Madison Aviation, he being duly authorized.

_____
Notary Public

My Commission Expires:

_____

-23-

1.  DEMISED PREMISES

      The premises leased to Lessee are hereinafter referred to
as the Demised Premises and are described on Exhibit A, attached
hereto and made a part hereof.  The approximate location of the
Demised Premises is also outlined in red on the plat of Falcon Field,
marked Exhibit B, which is also attached hereto and made a part hereof.
The Demised Premises includes Parcels 3 and 4 as described by City of
Mesa Drawing A-19751.  The Demised Premises measures approximately
405 feet by 645.56 feet which is approximately 5.97 acres.





NORTHWEST AVIATION AREA
FALCON FIELD
ADDRESSED
A PORTION OF THE NORTHWEST CORNER
OF SECTION 3, T.1N., R.6E., G & SRB & M
MARICOPA COUNTY, ARIZONA

EXHIBIT A

