# EXHIBIT 3



## COMMERCIAL LEASE

## McDONNELL DOUGLAS HELICOPTER COMPANY

THIS LEASE AGREEMENT, dated and effective as of October 1, 1986, by and between the CITY OF MESA, a municipal corporation ("Lessor") and McDONNELL DOUGLAS HELICOPTER COMPANY, a Delaware corporation ("Lessee"), hereinafter respectively referred to as Lessor and Lessee, without regard to number or gender.

### W I T N E S S E T H

WHEREAS, Lessor owns certain real property located in Maricopa County, Arizona, on which airport known as "FALCON FIELD" is erected (the "Airport"); and

WHEREAS, Lessor is willing to lease to Lessee, and Lessee desires to utilize those certain portions of the real property of the Airport described herein for the purposes hereinafter set forth, subject to all terms and conditions of that certain Instrument of Transfer between the United States of America and the Reconstruction Finance Corporation and Lessor, which instrument is recorded in Docket 270, at Pages 90 through 101, and filed in the office of the County Recorder of Maricopa County, Arizona, and as amended by Instrument of Release recorded in Docket 5984 at Pages 126 and 127, records of the recorder of Maricopa County, Arizona, which releases paragraph 4 of said original Instrument of Transfer; and

WHEREAS, Lessor and Lessee have entered into an amended Commercial Lease Agreement dated March 22, 1985, whereby certain property known as Parcels D-1 and D-2 adjacent to the Demised Premises



-1-

whereon Lessee intends to assemble and deliver commercial helicopters or military variations thereof, and

WHEREAS, the Demised Premises are necessary for the safe operation of helicopters from Parcels D-1 and D-2,

NOW, THEREFORE, in consideration of the mutual promises and conditions of the parties herein contained, it is agreed as follows:

1. DEMISED PREMISES: The premises leased to Lessee are hereinafter referred to as the "Demised Premises." The location of the Demised Premises is outlined in red and termed "Turf Movement Area" on the map of the Airport and Lessee's manufacturing facilities, marked Exhibit "A", which is attached hereto and made a part hereof. This parcel is also know as Parcel D-3 and consisting of approximately 4.132 acres with lot dimensions of 200 feet by 900 feet.

2. TERM: The term of the Lease shall commence on the 1st day of October, 1986, and end sixty (60) days after the date that Lessee delivers the last commercial helicopter or military version thereof assembled on the Parcels D-1 and D-2. *See Supplement dated 6-2-92 for chg.*

3. USES OF THE DEMISED PREMISES: Lessee shall utilize the Demised Premises for the purpose of taking off, landing, and hovering of helicopter aircraft only. All such activities shall be conducted in a manner which is safe and which does not interfere with the safe operation of aircraft using Runway 4L/22R. Use of the Demised Premises for any purpose or in any manner other than that stated above shall be an Event of Default.

4. RENTAL: As the rental for the Demised Premises, Lessee agrees to pay Lessor the sum of $2,000.00 per year per acre for the first five (5) years (10-1-86 - 9-30-91), $3,000.00 per year per acre for the second

-2-

(10-1-91 - 9-30-96)   (10-1-96 - 9-30-2006)

five (5) years, $4,000.00 per year per acre for the next ten (10) years, and thereafter the rental rate will be established at ten percent (10%) of the market value per acre per year. The market value will be established by the Real Estate Division of the City of Mesa and in the event the Lessee does not agree with the City's market value, a market value will be negotiated between the two parties. In the event that the two parties cannot agree on a market value, each party will name an appraiser, and the two appraisers will name a third appraiser, and the market value established by the three appraisers will be binding. The cost of the appraisers will be borne equally by the Lessee and Lessor. This annual rental shall be payable in advance, on or before the 1st day of October of each year hereafter, beginning on the 1st day of October, 1986.

    5.  TAXES AND FEES: Lessee also agrees to pay to Lessor all privilege Lease taxes, sales taxes, and other governmental impositions imposed by any governmental body on the cost of the maintenance or improvements paid by Lessee during the term hereof.

    Lessee agrees to pay all taxes of every nature levied or assessed on the Demised Premises during th term hereof and all personal property of the Lessee placed upon the Demised Premises, unless being contested in good faith.

    6.  IMPROVEMENTS: No improvements are permitted on the Demised Premises. The Lessee shall provide a dust free surface in all traffic areas in a manner approved by the City of Mesa.

    7.  STORAGE OF EQUIPMENT AND MATERIAL: Lessee agrees that the Demised Premises shall not be used for outside storage of equipment or material.

8. <u>PUBLIC LIABILITY INSURANCE</u>:  As a precedent to the effectiveness of this Lease, Lessee shall place and maintain in full force and effect during the term of this Lease, a policy or policies of public liability and property damage insurance with a company or companies acceptable to Lessor with minimum coverage of Five Hundred Thousand Dollars ($500,000.00) for death or bodily injury or loss sustained by any one person in any one occurrence, One Million Dollars ($1,000,000.00) for death or bodily injury or loss sustained by more than one person in any one occurrence, and Two Hundred Fifty Thousand ($250,000.00) for loss by damage or injury to property in any one occurrence.  Lessee shall deliver said policy or policies of insurance or a certificate evidencing the above coverage to the Airport Director of Lessor for approval as to sufficiency.  Lessor's Airport Director's failure to disapprove said policy within fifteen (15) days of its submission shall constitute an approval of the policy or policies submitted.  Lessor shall be named as an additional insured on all policies required by this clause.

The placing of such insurance cannot be construed to be a limitation upon Lessee's liability or as a full performance on its part of the indemnification provisions of this Lease; Lessee's obligation being, notwithstanding said policy of insurance, for the full and total amount of any damage, injury, or loss caused by the negligence or neglect of Lessee connected with the operation under this Lease.

Failure to maintain such insurance in effect shall be a default, and shall constitute grounds for termination of this Lease.

-4-

9. <u>HOLD HARMLESS</u>:  Lessee shall indemnify and save harmless Lessor, its officers, agents and employees, from and against any and all claims, demands, loss or liability of any kind or nature which Lessor, its officers, agents, and employees may sustain or incur, or which may be imposed upon them or any of them for injury to, or death of, persons; or damage to property arising out of or in any manner connected with the negligence or lack of care of Lessee, its officers, agents or employees in their use of the Demised Premises, including the use of the Airport and its facilities.

10. <u>MAINTENANCE</u>:  Lessee agrees to maintain the Demised Premises in a neat, clean and orderly condition.  Failure of Lessee to maintain the Demised Premises in accordance with this Section shall constitute an Event of Noncompliance.

11. <u>INSPECTION</u>:  Lessor's Airport Director, or his authorized representative, shall have the right at all reasonable times to inspect the Demised Premises to determine if the provisions of this Lease are being complied with.

12. <u>NONEXCLUSIVE RIGHT</u>:  Nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 1349(a), Title 49, of the United States Code.

13. <u>USE OF PUBLIC AIRPORT FACILITIES</u>:  Lessee is granted the nonexclusive use of all public airport facilities including, but not limited to, taxiways, runways, aprons, navigational aids and facilities relating thereto for purposes of landings, takeoffs and taxiing of Lessee and Lessee's customers or visitors aircraft.  All such use shall be in accordance with the laws of the United States

of America, the State of Arizona, the City of Mesa, and the rules and regulations promulgated by their authority with reference to aviation and air navigation, and in accordance with all reasonable and applicable rules, regulations, and ordinances of Lessor now in force or hereafter predescribed or promulgated by ordinance or by law.

Lessor agrees, during the term of this Lease, to operate and maintain the Airport and its public airport facilities as a public airport consistent with, and pursuant to the Sponsor's Assurances given by Lessor to the United States Government under the Federal Airport Act.

Nothing contained herein shall be construed to prevent the City of Mesa from closing the landing area of the Airport on special occasions from time to time at the discretion of the Lessor.

14. LEASE SUBORDINATE TO AGREEMENT WITH U.S.A.: This Lease shall be subordinate to the provisions and requirements of any existing or future agreement between Lessor and the United States of America, subject to Lessee's right to quiet possession, required for the development, operation, or maintenance of the Airport.

15. NON-DISCRIMINATION: Lessee shall not, on the grounds of race, color or national origin, cause any person to be excluded from participation in, be denied the benefit of, or be otherwise subject to discrimination in Lessee's use of the Demised Premises and facilities; provided, however, that such undertaking by Lessee shall be subject to any requirements of the security regulations of the United States Government as such regulations relate to executors of contracts with the United States Government.

16. <u>AFFIRMATIVE ACTION PROGRAM</u>: Lessee has adopted and filed with the United States Department of Labor an Affirmative Action Program relating to its Mesa facilities and operations, which program has been approved thereby. Pursuant to Section 152.407(b)(1), CFR, Lessee is in compliance with the requirements of 14 CFR Part 152, Subpart E, with respect to the implementation of an affirmative action program. Lessee shall continue during the term of the Lease to maintain an affirmative action program as required by 14 CFR Part 152, Subpart E, subject to any requirements of the security regulations of the United States Government as such regulations relate to executors of contracts with the United States Government.

17. <u>UTILITIES</u>: Lessee agrees that it will at all times during the term of this Lease pay all utilities of every nature used by it on the Demised Premises before the charges therefor become delinquent. Lessee's failure to pay such charges shall be an Event of Noncompliance.

18. <u>ASSIGNMENT-SUBLETTING</u>: This Lease may not be assigned or sublet except as a result of the merger or reorganization of Lessor into a corporation which owns or succeeds to substantially all of the stock or assets of Lessor.

19. <u>BILLBOARDS AND SIGNS</u>: Lessee agrees not to construct nor maintain any billboards or advertising signs except those approved in writing by the Airport Director of Lessor. Construction of any billboards or signs in violation of this Section shall be an Event of Noncompliance.

20. <u>ABANDONMENT</u>: If Lessee shall abandon or be dispossessed by process of law or otherwise, any personal property belonging to Lessee and left on the Demised Premises ninety (90) days after such

abandonment or dispossession shall be deemed to have been transferred to Lessor and Lessor shall have the right to remove and dispose of the same without liability to account therefor to Lessee or to any person claiming under Lessee.

21. <u>TERMINATION BY LESSEE</u>: This Lease may be terminated by the Lessee upon ninety (90) days written notice to the Lessor. In the event of termination by Lessee under this clause, Lessee shall deliver the property to the Lessor in the same condition as the Demised Premises was prior to the execution of this Lease.

22. <u>TERMINATION BY LESSOR</u>: Should the Federal Government or any of its agencies assume control of the Airport or any portion thereof in a manner that would preclude Lessee from operating under the terms of this Lease, Lessor will, upon written request from Lessee, cancel this Lease.

23. <u>RESERVATIONS TO LESSOR</u>: The Demised Premises are accepted by Lessee subject to any and all existing easements or other encumbrances of record or disclosed by Lessor prior to execution of this Lease; and Lessor shall have the right to install, lay, construct, maintain, repair and operate such sanitary sewers, drains, storm water sewers, pipelines, manholes, connections; water, oil and gas pipelines; and telephone and telegraph power lines and such other appliances and appurtenances necessary or convenient to use in connection therewith, over, in, upon, through, across and along the Demised Premises or any part thereof, as will not interfere with Lessee's operations hereunder and to enter thereupon for any and all such purposes. Lessor also reserves the right to grant franchises, easements, rights of way and permits in, over, upon, along or across

-8-

any and all portions of the Demised Premises as Lessor may elect so to do, provided, however, that no right of the Lessor provided for in this paragraph shall be so executed as to interfere unreasonably with Lessee's rights hereunder, or impair the security of any secured creditor of Lessee.

Lessor and Lessee agree that any rights set forth by this clause shall not be exercised unless a prior written notice of sixty (60) days is given to the other party. However, if such right must be exercised by reason of emergency, then each party will give the other such notice in writing as is reasonable under the existing circumstances.

Lessor agrees that it will cause the surface of the Demised Premises to be restored to its original condition upon the completion of any construction.

Subject to the right of prior approval granted to Lessee herein, there is hereby reserved to the Lessor, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein leased. This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any aircraft used for navigation or flight through the said airspace or landing at, taking off from, or operation of the Airport.

Lessee, by accepting this Lease, agrees for itself, it successors and assigns that it will not make use of the Demised Premises in any manner which might interfere with the landing and taking off of aircraft from the Airport or otherwise constitute a hazard. In the

-9-

event the aforesaid covenant is breached, Lessor reserves the right to enter upon the Demised Premises and cause the abatement of such interference at the expense of the Lessee.

24. <u>WARRANTIES OF TITLE</u>:  Lessor covenants to Lessor is seized of the real property in fee simple subject only to such restrictions as evidenced by this Lease, and has full right to make this Lease.

25. <u>EVENTS OF NONCOMPLIANCE</u>:  In the event of a breach of a Lease covenant which gives rise to a declaration of an Event of Noncompliance, as hereinbefore defined, Lessor shall give to Lessee written notice of such Event of Noncompliance.

Lessee shall have sixty (60) days from the mailing date of the notice of Event of Noncompliance to cure, or commence curing, the conditions giving rise to the declaration of an Event of Noncompliance, and if not cured within such sixty (60) day period, to continue necessary action to cure the breach of the Lease with reasonable diligence and complete necessary action within a reasonable time.

If, after the cure period provided for in this Section, Lessee has not cured or commenced curing the conditions giving rise to a declaration of an Event of Noncompliance, and in the event the conditions giving rise to a declaration of an Event of Noncompliance are not cured within the sixty (60) day period, if Lessee does not use reasonable diligence to complete curing such conditions within a reasonable time, then Lessor may enter upon the Demised Premises and cure or cause to have cured such violating conditions as gave rise to the declaration of the Event of Noncompliance.  All costs incurred by the Lessor in curing such conditions shall be payable by Lessee when the next rental payment shall become due under this Lease.

-10-

26. <u>EVENTS OF DEFAULT</u>: In the event of a breach of a Lease covenant which gives rise to a declaration of an Event of Default, as hereinbefore defined, Lessor shall give to Lessee written notice of such Event of Default.

Lessee shall have sixty (60) days from the mailing date of the notice of Event of Default to cure, or commence curing, the conditions giving rise to the declaration of an Event of Default, and if not cured within such sixty (60) day period, to continue necessary action to cure the breach of the Lease with reasonable diligence and complete necessary action within a reasonable time.

If, after the cure period provided for in this Section, Lessee has not cured or commenced curing the conditions giving rise to a declaration of an Event of Default, and in the event the conditions giving rise to a declaration of an Event of Default are not cured within the sixty (60) day period, if Lessee does not use reasonable diligence to complete curing such conditions within a reasonable time, then Lessor may, at its option, terminate and cancel this Lease.

27. <u>PARTIAL INVALIDITY</u>: If any term, covenant, condition or provision of this Lease is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

28. <u>MARGINAL CAPTION</u>: The various headings and numbers herein and the grouping of the provisions of this Lease into separate sections and paragraphs are for the purpose of convenience only, and shall not be considered a part hereof.

29. WAIVER:  The failure of Lessee or Lessor to insist upon strict performance of any of the terms, conditions, or covenants herein shall be be deemed a waiver of any right or remedies that either may have, and shall not be deemed a waiver of any subsequent breach or default of the terms, conditions or covenants herein contained.

30. APPROACH PROTECTION:  Lessor reserves the right to action it considers necessary to protect the aerial approaches of the Airport against obstruction, together with the right to prevent Lessee from erecting or permitting to be erected any building or other structure on the Airport which, in the opinion of the Lessor, would constitute a hazard to aircraft.

31. NATIONAL EMERGENCY:  This Lease and all the provisions hereof shall be subject to whatever right the United States Government now has or in the future may have or acquire affecting the control, operation, regulation and taking over of said Airport or the exclusive or nonexclusive use of the Airport by the United States during the time of war or national emergency.

32. NOTICES:  All notices given, or to be given by either party to the other, shall be given in writing and shall be addressed to the parties at the addresses hereinafter set forth or at such other address as the parties may by written notice hereafter designate. Notices and payments to Lessor and notice to Lessee shall be addressed as follows:

To:

| LESSOR | LESSEE |
|---|---|
| Airport Director<br>Falcon Field Airport<br>4800 Falcon Drive<br>Mesa, Arizona  85205 | McDonnell Douglas Helicopter Co.<br>Attn:  Director, Facilities<br>5000 East McDowell Road<br>Mesa, Arizona  85205 |

33. **AMENDMENTS TO BE IN WRITING**:  This Lease sets forth all of the agreements and understandings of the parties and is not subject to modification except in writing.

34. **SUCCESSORS IN INTEREST**:  The covenants herein contained shall, subject to the provisions as to assignment, apply to and bind the successors and assigns of the parties hereto; and the parties hereto shall be jointly and severally liable hereunder.

35. **FORCE MAJEURE**:  If either party hereto shall be delayed or prevented from the performance of any act required hereunder by reason of acts of God, strikes, lockouts, labor troubles, inability to procure materials, restrictive governmental laws or regulations or other cause, without fault and beyond the control of the party obligated (financial inability excepted), performance of such act will be excused for the period of delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, nothing in this Section shall excuse Lessee from the prompt payment of any rental or other charges required of Lessee hereunder except as may be expressly provided elsewhere in this Lease.

36. **TIME**:  Time is of the essence of this Lease.

RECOMMEND FOR APPROVAL:

*[signature: Robert J. Bresnahan]*
Robert J. Bresnahan
Airport Director

LESSOR:

CITY OF MESA, a Municipal Corporation

By: *[signature]*
C. K. Luster, City Manager

ATTEST: *[signature]*
City Clerk (Acting)

LESSEE:
McDONNELL DOUGLAS HELICOPTER COMPANY,
a Delaware Corporation

By: *[signature]*

Title: _____

STATE OF ARIZONA  )
                  ) ss
County of Maricopa )

The foregoing Lease was acknowledged before me this 10th day of April, 1987, by C. K. LUSTER, and his signature attested thereto by Michael T. Hutchinson City Manager and City Clerk, respectively, of the CITY OF MESA, a municipal corporation, being thereunto duly authorized.

*[signature: Beverly G. Collon]*
Notary Public

My Commission Expires:

4-19-88

**OFFICIAL SEAL**
BEVERLY G. COLLON
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires April 19, 1988

-14-

STATE OF ARIZONA    )
                   ) SS
County of Maricopa )

      The foregoing Lease was acknowledged before me this 8th day of April, 1987, by Dan J. DeLacy as Vice President, Administration of McDONNELL DOUGLAS HELICOPTER COMPANY, a Delaware corporation, being thereunto duly authorized.

                                                Patricia J. Hilgers
                                                Notary Public

My Commission Expires:
My Commission Expires May 20, 1990

-15-

EXISTING PLAN
MCDONNELL DOUGLAS HELICOPTER COMPANY
JANUARY 26, 1987

Exhibit A