# EXHIBIT 7

## LEASE AGREEMENT

This Lease Agreement made and entered into this first day of May 2017, by and between Mesa Industrial Center Complex, LLC, hereinafter referred as "Landlord" and M D Helicopters, Inc., an Arizona Corporation, hereinafter referred to as "Tenant".

### ARTICLE 1

### Leased premises

For the rent and upon the agreements contained in this Lease, Landlord leases to Tenant and Tenant rents from Landlord building unit No. 109, comprising an area of 9,152 square feet, at 5456 E. McDowell Rd., Mesa, Arizona

### ARTICLE 2

### Term of lease

The term of this lease shall be for a period of 63 months, beginning on July 1st 2017 Ending on September 30, 2022

### ARTICLE 3

### Rental

(a)   Tenant's obligation to pay rent shall begin on the commencement date of this Lease, July 1st 2017.

(b)   Rent for the period from July 1st to September 30th, 2017, shall be payable in equal monthly payments of sixty-eight hundred and sixty-four Dollars and 00/100 ($6,864.00) Dollars per month, payable on the first day of each month

(c)   Refund of expenses for common areas maintenance, common utilities, if any, taxes and insurance will be in addition to Rent and payable monthly.

(d)   Upon execution of this lease, a payment of Seventy-nine hundred and thirty-two dollars and 00/100 ($7,957.00) Dollars shall be made as security and not as pre-payment of the lease.. This security will be returned in full, without interest, fifteen (15) days after the termination of this lease, provided that the Tenant is not in default and provided that the Tenant surrenders the premises to the Landlord in the same conditions as when received, as per article 8 c.

1



## ARTICLE 4

### Taxes and Assessments

It is expressly agreed between Landlord and Tenant that this lease is a triple-net Lease, and that in addition to other payments herein provided and as part of the consideration, Tenant shall pay, during the term thereof, not less than fifteen (15) days before the date of delinquency, exhibiting to Landlord receipts or other proof of payment on demand, or if paid by Landlord, refund to Landlord, all taxes levied or assessed against the leased premises, consisting of buildings and improvements, all water charges, all assessments levied in connection with any improvement or irrigation project or district, and all other taxes, assessments or governmental charges of any kind levied or assessed against the leased premises, including rental taxes, if any. Tenant shall have the right in good faith, at its own cost and expense and in its own name, or in the name of the Landlord, to protest or contest, to seek to have reviewed, reduced, equalized or abated any tax or assessment by legal proceedings, or in such manner as it deems advisable. No protest, contest or other action, however, shall be maintained by Tenant after the time limited for the payment without penalty or interest of the tax assessment, unless Tenant shall have first paid the amount of such tax or assessment under protest, or shall have procured and maintained a stay of proceedings to enforce the collection thereof and shall have also provided for payment thereof, together with all penalties, interests, costs and expenses by deposit of any bond required by law to accomplish such stay.

## ARTICLE 5

### Personal Property Taxes, Utilities and Services

Tenant shall pay, throughout the term of this lease, and before delinquent, all heat, water, light, gas, power, waste removal and other services supplied to the leased premises, all personal property taxes and assessments levied or assessed upon property placed on the leased premises by either Landlord or Tenant, and all costs and charges arising out of any improvements, repairs and alterations made by Tenant in or upon the leased premises.

## ARTICLE 6

### Use of leased premises

The leased premises shall be used and occupied by Tenant for the purpose of assembly and maintenance of helicopters and related work, provided that such material and equipment shall not contain any explosive material or devices,



flammable or hazardous liquids or anything that could pose a fire, explosion or environmental hazard, other than small amounts of paint, cleaning solvents, adhesives and lubricants of the type used in aircraft manufacturing, repair and overhaul. No part of the leased premises shall be used for any other purpose or purposes without the written consent of Landlord, which consent shall not be unreasonably withheld. Tenant agrees to conduct its operation on the leased premises in compliance with all laws, ordinances, regulations, and orders of the United States, State of Arizona, County of Maricopa, City of Mesa and not to create or permit to exist thereon any nuisance.

No storage of equipment or material is permitted, outside of leased area.

## ARTICLE 7

### Additions or alterations by Tenant

Tenant shall have the right during the continuance of this lease, to make such interior alterations, changes and improvements to the premises, except structural alterations, changes or improvements, as may be proper and necessary for the conduct of Tenant's business and for the full beneficial use of the premises, provided Tenant shall pay all costs and expenses thereof, shall make such alterations, changes and improvements in a good workmanlike manner and in accordance with all applicable laws and building regulations, and shall, prior to the making of such alterations, changes and improvements, assure Landlord that payment for the same shall be made by the Tenant, and Tenant hereby completely and fully indemnifies Landlord against any mechanic's liens or other liens or claims in connection with the making of such alterations, changes and improvements. Any liens arising out of such alterations, changes and improvements shall be removed within thirty (30) days after the same have been filed. Any structural alterations or improvements made on the leased premises may be made only with the Landlord's prior written consent. If any such improvement or alteration is in the Landlord's opinion, detrimental to future rentals, they will be removed by Tenant at Tenant's expense at the end of the lease and the premises retuned to original condition. All such improvements and alterations shall become Landlord's property and part of the leased premises owned by the Landlord at the expiration of the term of this lease.

## ARTICLE 8

### Repair, maintenance and condition of the premises

(a)    Tenant acknowledges and agrees that the leased premises are in good condition and repair on the date of the commencement of this lease.

(b)    Tenant will keep in good order, condition and repair the premises and every part thereof, structural and non structural (whether or not such portion of the



premises requiring repair, or the means of repairing the same are reasonably or readily accessible to Tenant, and whether or not the need for such repairs occurs as a result of Tenant's use, any prior use, the elements or age of such portion of the premises), including without limiting the generality of the foregoing, all plumbing, heating, air conditioning, ventilating, electrical, lighting facilities and equipment within the premises, fixtures, interior walls, floors, windows, doors, plate glass and skylights located within the premises, and all landscaping, driveways, parking lots, fences and signs located on the premises, sidewalks and parkways adjacent to the premises. Landlord shall be responsible for the maintenance and repair of the structural walls, roof, and foundations.

(c)     On the last day of the term thereof, or any sooner termination, Tenant shall surrender the premises to Landlord in the same condition as when received, broom clean, ordinary wear and tear excepted. Tenant shall repair any damage to the premises occasioned by the removal of Tenant's trade fixtures, furnishing and equipment pursuant to paragraph (b), which repair shall include the filling and patching of holes and repair of structural damage.

(d)     If Tenant fails to perform Tenant's obligations under this article, Landlord may, at its option (but shall not be required to), enter upon the premises, after ten (10) days' prior written notice to Tenant, and put the same in good order, condition and repair, and the cost thereof, together with interest thereon at the rate of 10% percent per year shall become due and payable as additional rental to Landlord together with Tenant's next rental installment.

(e)     Except for the obligations of the Landlord specifically provided herein, it is intended by the parties hereto that Landlord have no obligation, in any manner whatsoever, to repair and maintain the premises or the non-structural obligations which are intended to be that of the Tenant under this paragraph. Tenant expressly waives the benefit of any statute nor or hereinafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this lease because of Landlord's failure to keep the premises in good order, condition and repair.

## ARTICLE 9

### Environmental Matters

During the term and occupancy of the Premises, Tenant agrees that it will not cause nor allow to be caused, on or about the Premises, any violation of the state and federal environmental laws, including but not limited to, Resource Conservation Recovery Act, 42 U.S.C. § 6901, et seq., the Comprehensive



Environmental Response Compensation & Liability Act (CERCLA, 42 U.S.C. § 9601, et seq.), the Arizona Water Quality Control Program (A.R.S. Title 49, Chapter 2), the Arizona Hazardous Waste Disposal Act (A.R.S. Title 49 Chapter 5), Underground Storage Tank Regulation Act (A.R.S. Title 49 Chapter 6) and/or any regulations promulgated pursuant thereto. Tenant agrees to hold Landlord harmless from any and all liability in connection with any violation of said laws for which Tenant is responsible.

## ARTICLE 10

### Insurance

(a)   Tenant will indemnify Landlord and save Landlord harmless from and against any and all claims, actions, damages, liability and expense in connection with the loss, damage or injury to persons or property occurring in, on or about the premises occasioned wholly or in part by any act or omission of Tenant, Tenant's agents, contractors, customers or employees.

(b)   Tenant will indemnify Landlord and save Landlord harmless from and against any and all claims, action, damages, liability and expense arising or based upon ownership of the premises.

(c)   Tenant shall at all times during the term of this lease, at its own expense, keep in full force and effect, public liability insurance in acceptable companies with minimum limits of $1,000,000.00 on account of bodily injury to or death of one person and $3,000,000.00 on account of bodily injuries to or death of more than one person as a result of any one accident or disaster and $100,000.00 on account of damage to property and shall evidence a policy or policies of such insurance, or certificate thereof, upon request by Landlord.

(d)   Landlord will obtain and keep in force during the term of this Lease at Tenant's expense a policy or policies of insurance covering loss or damage to the premises in the amount of the full replacement value thereof, as the same may exist from time to time, which replacement value is now $100.00 per square foot, but in no event less than the total amount of promissory notes secured by liens on the premises against all perils, including within the classification of fire, extended coverage, vandalism, malicious mischief, special extended perils (all risks) and sprinkler leakage. Said insurance shall provide for payment or loss thereunder to Landlord or to the holders of mortgage or deed of trust on the premises. If such insurance coverage has a deductible clause, Tenant shall be liable for the deductible amount. Tenant will be liable for the portion of the premium in direct proportion to the space occupied.



## ARTICLE 11

### Waiver of Subrogation

Landlord and Tenant each hereby waive any and all rights of recover against the other, or against the officers, employees, agents and representatives of the other, for loss of or damage to such waiving party or its property or the property of others under its control to the extent that such loss or damage is insured under any insurance policy in force at the time of such loss or damage. Tenant shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carrier or carriers that the foregoing mutual waiver of subrogation is contained in this lease.

## ARTICLE 12

### Assignment and Subletting

Tenant shall not have the right to assign or to sublet the premises without the prior consent of the Landlord, which consent shall not be unreasonably withheld, and further provided, that any such assignment or subletting shall not release Tenant from liability hereunder for the payment of rent or the performance of any other terms or conditions of the Lease.

## ARTICLE 13

### Damage or Destruction

(a)  In the event the leased premises are at any time damaged by fire or other casualty to an extent which does not render them substantially or wholly untenantable, Landlord shall diligently proceed to repair, restore or rehabilitate the same at Landlord's expense within a reasonable time, and Landlord shall be entitled to such possession of the leased premises as shall be necessary to accomplish such repairs, restoration and rehabilitation.

(b)  In the event the leased premises are made substantially or wholly untenantable by fire or other casualty, Landlord shall have the right to elect, by written notice to Tenant within thirty (30) days after said date to:

   1.   Terminate this Lease as of the date of the fire or other casualty; or

   2.   Diligently proceed to repair, restore or rehabilitate the leased premises at Landlord's expense within a reasonable time.



(c)    In the event the leased premises are substantially or wholly untenantable by fire or other casualty and the leased premises are to be repaired, restored and rehabilitated, the term of this Lease shall be extended by whatever period the leased premises are untenantable, and the rent shall be abated on a pro rata basis from the date of the fire or casualty until the date the leased premises are again tenantable.

(d)    Failure to complete any repairs, restoration or rehabilitation within a reasonable time for any cause beyond the control of the Landlord shall not constitute a breach of this lease and shall give the Tenant no other right or remedy other than the right of termination of this Lease by giving written notice to Landlord.

(e)    In the event of fire or other casualty, Landlord shall have no responsibility or liability for damages to property of Tenant or loss of business of Tenant caused by such fire or casualty, and Tenant hereby releases and waives on behalf of Tenant and any insurer of Tenant any claims against Landlord and any rights of subrogation of said insurers hereinbefore provided. Tenant shall have no interest in the proceeds of any insurance.

(f)    No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persist or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver, and that only for the time and to the extent therein stated. One or more waivers by Landlord shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition, or the consent to or approval by Landlord of any act of Tenant requiring Landlord's consent to or approval of any subsequent similar act by Tenant. Each term and each provision of this Lease performable by Tenant shall be construed to be both a covenant and a condition. No action required or permitted to be taken by or on behalf of the Landlord under the terms of the provisions of this lease shall be deemed to constitute an eviction or disturbance of Tenant's possession of the premises.

## ARTICLE 14

### Default

(a)    *Default by Tenant.*   The occurrence of one or more of the following events shall constitute a material default and breach of this Lease by Tenant:

1.    The vacating or abandoning of the premises by Tenant.

2.    The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when



7

due, where such failure shall continue for a period of three (3) days after written notice thereof from Landlord to Tenant.

3.    The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Tenant, other than described in paragraph (2) above, where such failure shall continue for a period of thirty (30) days after written notice from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commenced such cure within said thirty (30) day period and thereafter diligently pursues such cure to completion.

4.    The making by Tenant of any general assignment or general arrangement for the benefit of creditors.

5.    The filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed by Tenant, the same is dismissed within sixty (60) days).

6.    The appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days.

7.    The attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the premises or of Tenant's interest in this Lease, where such seizure is not discharged within thirty (30) days.

8.    The discovery by Landlord that any financial statement given to Landlord by Tenant, any assignee, any sub-tenant of Tenant, any successor-in-interest of Tenant or any guarantor of Tenant's obligation hereunder, and any of them, was materially false.

(b)    *Remedies.*  In the event of any such material default or breach by Tenant, Landlord may at any time thereafter, with or without notice or demand and without limiting Landlord in the exercise of any right or remedy which Landlord may have by reason of such default or breach:

1.    Terminate Tenant's right to possession of the premises by any lawful means, in which case this Lease shall terminate and Tenant shall immediately surrender possession of the premises to Landlord. In such event, Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default,



including but not limited to the cost of recovering possession of the premises; expenses of re-letting, including the necessary renovation and alteration of the premises; reasonable attorney's fees; and any real estate commission actually paid; the worth at the time of award by court having jurisdiction thereof of the amount by which the unpaid rent for the balance of the term after the time of such award exceeds the amount of such rental loss for the same period that Tenant proves could be reasonably avoided.

2.    Maintain Landlord's right to possession in which case this lease shall continue in effect whether or not Tenant shall have abandoned the premises. In such event, Landlord shall be entitled to enforce all Landlord's right and remedies under this Lease, including the right to recover rent as it becomes due hereunder.

3.    Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the State of Arizona.

(c)    *Default by Landlord.*    Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord and to the holder of any first mortgage or deed of trust covering the premises whose name and address shall have heretofore been furnished to Tenant in writing, specifying wherein Landlord has failed to perform such obligations; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance, then Landlord shall not be in default if Landlord commences performance within such thirty (30) day period and thereafter prosecutes the same to completion.

## ARTICLE 15

### Landlord's Warranty

Landlord hereby warrants that Tenant shall have and enjoy the quiet and peaceable possession, use and occupancy of the leased premises throughout the term of this Lease.

## ARTICLE 16

### Notices

Whenever it shall be required that any notice be given hereunder, the same shall be sufficiently served upon Tenant by depositing the same in the United



9

States registered or certified mail, postage prepaid, return receipt requested, and addressed to tenant at:

> MD Helicopters, Inc.
> 4555 E. McDowell Rd.
> Mesa, AZ 85215
> Attn: Director: Facilities & Maintenance

Or at such other address as Tenant may give Landlord in writing from time to time. Notice to Landlord under the provisions hereof shall be deposited in the United States registered or certified mail, postage prepaid, return receipt requested, and addressed to Landlord at:

> Mesa Industrial Center Complex, LLC.
> 16441 E. Sullivan Dr.
> Fountain Hills, AZ. 85268

Or at such other address as Landlord may give Tenant in writing from time to time. Any such notice shall be deemed given on the date after the mailing thereof.

## ARTICLE 17

### Lease Binding on Successors

The covenants and conditions herein contained shall apply to and bind the heirs, executors, administrators, successors and assigns of all parties hereto; and all the parties hereto shall be jointly and severally liable hereunder.

## ARTICLE 18

### Holding Over

If Tenant remains in possession of the premises or any part thereof after the expiration of the term hereof without the express written consent of the Landlord, such occupancy shall be tenancy from month to month and the rent for the first month shall be in the amount of the previous month rental plus 10% and will increase an additional 1%, each and every subsequent month.

## ARTICLE 19

### Subordination

This Lease, at Landlord's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation for security now or hereafter



10

placed upon the real property of which the premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof. Notwithstanding such subordination, Tenant's right to quiet possession of the premises shall not be disturbed if Tenant is not in default and so long as Tenant shall pay the rent and observe and perform all of the provisions of this Lease unless this Lease is otherwise terminated pursuant to its terms. If any mortgagee, trustee or ground lessor shall elect to have this Lease, prior to the lien of its mortgage, deed of trust, or ground lease, and shall give written notice thereof to Tenant, this Lease shall be deemed prior to such mortgage, deed of trust, or ground lease, whether this Lease is dated prior to or subsequent to the date of said mortgage, deed of trust or ground lease, or the date of recording thereof.

Tenant agrees to execute any documents required to effectuate such subordination or to make this Lease prior to the lien of any mortgage, deed of trust, or ground lease, as the case may be, and failing to do so within ten (10) days after written demand, does hereby make, constitute and irrevocably appoint Landlord as Tenant's attorney-in-fact and in Tenant's name, place and stead, to do so.

## ARTICLE 20

### Applicable Law and Construction

The laws of the State of Arizona shall govern the validity, performance and enforcement of this Lease. The validity or unenforceability of any provision of this Lease shall not affect or impair the other provisions.

**Landlord:**    Mesa Industrial Center Complex, LLC.

By: _____
John A. Ruzzier, Manager

**Tenant:**    M D Helicopters, Inc.

By: _____

## EXHIBIT "A"

### Monthly Payment Schedule of Rents

| Yearly period: | | | | Monthly rent: |
|---|---|---|---|---|
| From | 10/01/17 | through | 09/30/18 | $7,070.00 |
| From | 10/01/18 | through | 09/30/19 | $7,282.00 |
| From | 10/01/19 | through | 09/30/20 | $7,500.00 |
| From | 10/01/20 | through | 09/30/21 | $7,722.00 |
| From | 10/01/21 | through | 09/30/22 | $7,957.00 |

