# EXHIBIT 12

# FALCON HANGAR
# RENTAL AGREEMENT
## ("LEASE")

LESSOR: Falcon Hangar, LLC

DATE: May 22, 2017
HANGAR NO: **105** ("Premises")
AIRCRAFT MAKE:
COLOR:

LESSEE: MD Helicopters, Inc.

AIRCRAFT NUMBER:

MONTHLY RENTAL ("Rent"): $3,504.00 per month plus applicable taxes and all monetary obligations under this Lease (see paragraph 1)
SECURITY DEPOSIT: Equal to one month's rent.
DUE ON SIGNING: $7,086.84 One check in the amount of the first month's Rent ($3,582.84), a second check in the amount of the Security Deposit and the Insurance Certificate (see Paragraph 5)

COMMENCEMENT DATE: August 1, 2017. However, if Lessor is unable to deliver possession of the Premises to Lessee on the Commencement Date, this Lease shall not be void or voidable nor shall Lessor be liable to Lessee for any loss or damage resulting therefrom, but the Commencement Date shall be extended until such time as Lessor tenders delivery of possession of the Premises to Lessee ready for Lessee's use and occupancy, and the Termination Date shall be extended for a period equal to such delay.

TERM OF LEASE: Six (6) Months. Lessor may terminate the Lease immediately upon a default by Lessee.

Lessor holds a long term leasehold interest in certain hangars, office space, and other improvements located at the Falcon Field Airport which are a part of that development which is located at 4562 E. Mallory Circle, Mesa, Arizona 85215, (the "Project"), and Lessee desires to lease the above-numbered hangar in the Project, together with any office space therein (the "Premises") as shown on Exhibit A attached hereto.

Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises on the following terms and conditions:

1. **Rent.** Lessee agrees to pay to Lessor, without notice, offset or demand, the Rent set forth above, in advance on the first day of each calendar month during the term of this Lease, plus any applicable state or municipal transaction privilege taxes, and all monetary obligations thereon. In addition, Lessee shall pay all electricity costs for the Premises. The Security Deposit shall not be applied by Lessee to the last month's Rent due hereunder. Payments shall be made payable to: **Falcon Hangar, LLC**, and mailed to the attention of Kajima Development Corporation, 250 E. 1st Street, Suite 403, Los Angeles, CA 90012, or such other address as Lessor may designate by written notice to Lessee.

2. **Use.** Lessee shall use the Hangar for the sole purpose of (a) storing aircraft, aircraft parts, supplies, and accessories for the maintenance of stored aircraft as approved by Airport regulations; or (b) such other uses as may be approved in writing by the Lessor. Any office space located within the Premises shall be used solely for office purposes and the use and storage of only conventional office furniture, equipment and supplies. However, no aircraft or other property shall be stored therein except in compliance with the rules and regulations of the Falcon Field Airport Administration which is attached hereto as Exhibit B, as well as such rules, regulations and restrictions as may be posted by Lessor from time to time which is attached hereto as Exhibit C. This Agreement is solely for the leasing of space and no bailment shall be created hereunder.

1

2.15.17

3. **Compliance with Laws.** Lessee shall keep the aircraft and Premises locked at all times and shall abide by all applicable requirements of municipal, state and federal authorities now in force, or which hereafter may be in force, pertaining to the use of the Premises.

4. **Lessor's Right to Enter the Premises.** Lessor and its agents shall have the right to enter the Premises at such times as shall not unreasonably interfere with the Lessee's occupancy for the purpose of inspection of the Premises, complying with any law, regulation or order of any court or governmental authority, exercising any of Lessor's rights under this Lease or showing the Premises to prospective lessees.

5. **Insurance.** Lessee releases Lessor from all responsibility for damage to or theft of Lessee's property in the Premises, including but not limited to aircraft. It shall be Lessee's responsibility to insure against such risks. During the term of this Lease, Lessee shall take out and keep in force at its own expense, public liability and property damage insurance, naming Lessor and Lessee, against risks arising out of maintenance, use or occupancy of the Premises with limits of liability not less than $500,000.00 with respect to injury to any one person; $1,000,000.00 with respect to any one accident; and $500,000.00 with respect to property damage. Evidence of compliance with this requirement shall be delivered to Lessor prior to occupancy.

6. **Late Charges.** Lessee hereby acknowledges that late payment by Lessee of Rent will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor. Accordingly, if any Rent shall not be received by Lessor no later than on the 1st day of the month, then without any requirement for notice to Lessee, Lessee shall pay to Lessor a late charge equal to 10% of each such overdue amount or $100, whichever is greater. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of such late payment. Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's Default or Breach with respect to such overdue amount, nor prevent the exercise of any of the other rights and remedies granted hereunder.

7. **Interest.** Any monetary payment due Lessor hereunder, not received by Lessor when due as to scheduled payments including Rent or within 30 days following the date on which it was due for non-scheduled payments, shall bear interest from the date when due, as to scheduled payments, or the 31st day after it was due as to non-scheduled payments. The interest ("Interest") charged shall be computed at the rate of 10% per annum but shall not exceed the maximum rate allowed by law. Interest is payable in addition to the potential late charge provided for in Paragraph 6.

8. **Condition of Premises.** Except as may otherwise be agreed by a separate addendum executed by Lessor and Lessee, Lessee accepts the Premises AS IS and in its present condition. Lessee shall take good care of the Premises and shall, at Lessee's own cost and expense, make all repairs and shall maintain the non-structural portions of the Premises in good condition and state of repair. At the end or other expiration of the term hereof, Lessee shall surrender possession of the Premises in good and clean condition and in good repair, wear and tear from a reasonable use thereof excepted. In case of the destruction of or any damage to the Premises, caused by Lessee or by Lessee's agents, employees, guests, licensees, invitees, or successors, Lessee shall repair such damage and replace or restore any destroyed portions of the Premises, as speedily as possible, at Lessee's own cost and expense.

9. **Lessee Alterations.** Lessee shall make no alteration, repair, addition or improvement in, to or about the Premises (collectively, "Lessee Alterations"), without the prior written consent of Lessor. Lessor may impose such conditions to such consent as Lessor, in its discretion, may deem necessary or desirable, including, without limitation, (a) the right to approve the plans and specifications for any work, (b) the right

to require insurance reasonably satisfactory to Lessor in connection with such work, (c) the right to require security or a bond in an amount of up to 150% of the estimated completion cost of such work, (d) requirements regarding the time or times at which work may be performed and (e) the right to approve the contractor or contractors to perform Lessee Alterations, which approval shall not be unreasonably withheld. Lessee shall complete all Lessee Alterations in accordance with all applicable rules, regulations and requirements of governmental authorities and insurance carriers. If requested by Lessor, Lessee shall provide Lessor with copies of all contracts, receipts, paid vouchers, and any other documentation relating to the construction of any Lessee Alterations. Lessee shall promptly pay all costs incurred in connection with all Lessee Alterations and shall not permit the filing of any mechanic's lien or other lien in connection with any Lessee Alterations. If a mechanic's lien or other lien is filed against the Premises, Lessee shall discharge or cause to be discharged such lien within 10 days after Lessee receives notice of the filing thereof.

10. **Ownership of Lessee Alterations.** All fixtures, equipment, improvements and installations attached to, or built into the Premises at the commencement of or during the term of this Lease shall be and remain part of the Premises and be deemed the property of Lessor. Notwithstanding the foregoing, any property installed at the sole expense of Lessee ("Lessee's Property"), shall be deemed to be the property of Lessee and may be removed prior to the expiration of the term of this Lease, or within ten days after any earlier termination thereof, provided that Lessee shall repair, or shall reimburse Lessor upon demand for the cost of repairing any damage to the Premises caused by such removal. Any Lessee's Property, which shall not be so removed, shall be deemed to have been abandoned by Lessee. Notwithstanding the preceding two sentences, Lessee shall remove any of Lessee's Property (and repair or reimburse Lessor for the cost of repairing any resulting damage to the Premises occasioned by such removal) promptly upon Lessor's request for such removal.

11. **Damages.** The Lessor shall not be liable for any damage or injury which may be sustained by the Lessee or any other person, as a consequence of the failure, breakage, leakage, or obstruction of the plumbing, roof, drains, or the like or of the electrical, gas, sprinklers, air conditioning, heating and mechanical systems. In the event of any actual or alleged failure, breach or default hereunder by Lessor, Lessee's sole and exclusive remedy shall be for damages, recoverable solely against Lessor's interest in the Project and Lessee shall have no right to terminate this Lease prior to the expiration of the term set forth herein.

12. **Default.** Should Lessee at any time (a) be in default hereunder with respect to the payment of any monthly rent or other amounts payable by Lessee hereunder and such default continues for a period of three (3) days, (b) be in default in the prompt and full performance of any other of its promises, covenants or agreements herein contained and should such default or breach of performance continue for more than a reasonable time (in no event to exceed 30 days) after written notice thereof from Lessor to Lessee specifying the particulars of such default or breach of performance, (c) be in default by vacating or abandoning the Leased Premises, or (d) be in default under any other lease agreement with Lessor, then Lessor may treat the occurrence of any one or more of the foregoing events as a breach of this Lease, and in addition to any or all other rights or remedies of Lessor hereunder and by the law provided, Lessor shall have, at its option and without further notice or demand of any kind to Lessee or any other person: (i) the right to declare the term hereof ended and to re-enter and take possession of the Premises and remove all persons therefrom, and Lessee shall have no further claim thereon or hereunder; or (ii) the right without declaring this Lease ended to re-enter the Premises and occupy or lease the whole or any part thereof for and on account of Lessee and upon such terms and conditions and for such rent as Lessor may deem proper and to collect said rent and any other rent that may thereafter become due or thereafter to become due from Lessee and on account of such expenses of such subletting and other damages sustained by Lessor; and should such rental be less than that herein agreed to be paid by Lessee, Lessee agrees to pay such deficiency to Lessor in advance on the first day of each month and to pay to the Lessor forthwith upon any such reletting the costs and expenses Lessor may incur by reason thereof and should such rental be more than that herein agreed to be paid by Lessee, Lessor shall hold said sums interest free to be applied to future damages; or (iii) the right, even

3

*M.M*

though it may have relet the Premises, to thereafter elect to terminate this Lease and all of the rights of Lessee in or to the Premises. Lessor may apply the Security Deposit to the payment or performance of any of Lessee's obligations under this Lease, and upon receipt of notice from Lessor, Lessee agrees to restore the amount so used. Lessor shall not be required to keep the Security Deposit separate from its general funds, and Lessee shall not be entitled to interest on such deposit. Within 30 days following the end of the term of this Lease, the Security Deposit, less any amounts so applied by Lessor, shall be returned to Lessee with an itemization of the amount so used.

13. **Assignment and Subletting.** Lessee shall not, without the prior written consent of Lessor: (a) assign, sublet, mortgage, pledge, encumber or otherwise transfer this Lease, the estate granted hereby or any interest hereunder (or permit any of the foregoing, by operation of law or otherwise); or (b) permit or offer the Premises or any part thereof to be used for any purpose by any person other than Lessee (and Lessee's agents or business invitees).

14. **Hazardous Substances.** Lessee shall not (either with or without negligence) cause or permit the escape, disposal or release of any biologically or chemically active or other hazardous substances, or materials. Lessee shall not allow the storage or use of such substances or materials in any manner not sanctioned by law or by the highest standards prevailing in the industry for the storage and use of such substances or materials, nor allow to be brought into the Premises any such materials or substances except to use in the ordinary course of Lessee's business, and then only after written notice is given to Lessor of the identity of such substances or materials. The term "Hazardous Substances" as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Lessor to any governmental agency or third party under any applicable statute or common law theory. Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof. If any governmental agency shall ever require testing to ascertain whether or not there has been any release of Hazardous Substances, then the reasonable costs thereof shall be reimbursed by Lessee to Lessor upon demand as additional charges if such requirement applies to the Premises. In all events, Lessee shall indemnify Lessor in the manner elsewhere provided in this Lease from any release of Hazardous Substances on the Premises occurring while Lessee is in possession, or elsewhere if caused by Lessee or persons acting under Lessee. The within covenants shall survive the expiration or earlier termination of the Lease term.

15. **Indemnity.** Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's ground lessor and partners, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, the use and/or occupancy of the Premises by Lessee. If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense. Lessor need not have first paid any such claim in order to be defended or indemnified.

16. **Exemption of Lessor from Liability.** Lessor shall not be liable for injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or from other sources or places. Lessor shall not be liable for any damages arising from any act or neglect of any other tenant of Lessor nor from the failure of Lessor to enforce the provisions of any other lease in the Project.

4

Notwithstanding Lessor's negligence or breach of this Lease, Lessor shall under no circumstances be liable for injury to Lessee's business or for any loss of income or profit therefrom.

17. **No Right To Holdover.** Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration or termination of this Lease. In the event that Lessee holds over, then the Rent shall be increased to 150% of the Rent applicable immediately preceding the expiration or termination. Nothing contained herein shall be construed as consent by Lessor to any holding over by Lessee.

18. **Confidentiality.** Lessee hereby agrees that the terms and conditions of this Lease are strictly confidential and shall not be disclosed in any manner or form, directly or indirectly, under any circumstances, to any person or entity including existing and potential tenants at the Project. Lessee hereby acknowledges that in the event that Lessee breaches this provision, Lessor may pursue Lessee for its damages which may include the immediate termination of this Lease.

19. **Title 33 Provisions.** (i) LESSOR HAS A LIEN THE DATE THE RENT IS UNPAID; (ii) PROPERTY STORED IN THE PREMISES MAY BE SOLD TO SATISFY THE LIEN IF LESSEE IS IN DEFAULT; (iii) ANY INSURANCE PROTECTING THE PERSONAL PROPERTY STORED WITHIN THE PREMISES AGAINST FIRE, THEFT OR DAMAGE MUST BE PROVIDED BY LESSEE; and (iv) LESSEE SHALL DISCLOSE TO LESSOR ANY LIENHOLDERS OR SECURED PARTIES WHO HAVE AN INTEREST IN PROPERTY THAT IS OR WILL BE STORED IN THE PREMISES.

20. **Counterparts.** This Lease may be executed and delivered in any number of counterparts, each of which shall be considered an original and all of which, collectively, shall constitute a single agreement. If executed in counterparts, then upon execution by all parties, the Lease shall be fully operative upon the affixation of the last signature thereto. If executed in duplicate, each such duplicate shall be valid as an original document. No distinction shall be made between an originally-typed document and a machine-copied duplicate, provided that the duplicate contains the original signatures.

21. **Miscellaneous.** Time is of the essence. In the event of any action to enforce the terms of this Lease, the prevailing party shall be entitled to attorneys' fees and the reasonable costs of such action.

22. **Governing Law.** This Lease shall be governed by and construed in accordance with the laws of the State of Arizona.

**LESSOR:**

Falcon Hangar, LLC
By: KDC Falcon, LLC
By: Kajima Development Corporation
By: _____Hiroaki Iizawa_____
  Hiroaki Iizawa, President & CEO

**LESSEE:**

MD Helicopters, Inc.

By: _____
  Steve Acreman, Director, Production Support
Address: 4555 E. McDowell Road
  Mesa, AZ 85215
Office Phone: (480) 346-6201
Cell Phone: (480) 287-2610
E-Mail Address: steve.acreman2mdhelicopters.com

By: _____
  Mike Motahari, Chief Operating Officer
Cell Phone: (480) 286-1290
E-Mail Address: mike.motahari@mdhelicopters.com

5



Exhibit A — Falcon Hangar

## ADDENDUM TO LEASE AGREEMENT

This Addendum to Lease Agreement is dated May 22, 2017 ("Addendum"), by and between Falcon Hangar, LLC, a California Limited Liability Company ("Lessor"), and MD Helicopters, Inc. ("Lessee"), and is based on the following facts and circumstances:

### RECITALS

WHEREAS, Lessor and Lessee entered into that certain Lease dated May 22, 2017 ("Lease"), for Hangar Unit **105**, located at 4562 E. Mallory Circle, Mesa, Arizona ("Premises."),

NOW, THEREFORE, Lessor and Lessee hereby agree as follows:

1. Commencement Date. If Lessor is unable to deliver the Premises to Lessee within thirty (30) days after the Commencement Date, Lessee may terminate the Lease at its option.

2. Use. Lessee may also use the Premises for the manufacture of aircraft parts and components.

3. Late Charges. Lessee agrees to pay Lessor a late charge equal to five percent (5%) of each such overdue amount or $100, whichever is greater.

4. Lessee Alterations. Lessor's consent to Lessee Alterations shall not be unreasonably withheld. As to Lessee Alterations, Lessee shall not be required to post security or a bond in an amount of up to 150% of the estimated completion cost of such work.

5. Default. The time period for Lessee to be deemed in default under the Lease with respect to the payment of any monthly rent or other amounts payable by Lessee under the Lease is extended from three (3) days to five (5) days. Within a reasonable time not to exceed ten (10) days following the end of the term of this Lease, the Security Deposit, less any amounts so applied by Lessor, for the payment or performance of any of Lessee's obligations under this Lease, shall be returned to Lessee with an itemization of the amount so used.

6. No Right to Holdover. In the event that Lessee holds over, Rent shall be increased to 110% of the Rent applicable immediately preceding the expiration or termination of this Lease.

7. Option to Extend. Provided Lessee shall not then be in default under the provisions of this Lease, Lessee shall have four (4) options to extend ("Option to Extend") the initial term of this Lease for a six (6) month period ("Extension Term") upon the same provisions as are set forth herein, subject, however, to the provision for a rental increase as hereinafter set forth. Such Option to Extend shall be exercised by giving written notice to Lessor ("Lessee's Notice") not less than thirty (30) days prior to the expiration date of the initial term of this Lease. This Option to Extend granted to Lessee in this Lease is personal to

8.17.15

DocuSign Envelope ID: FA12CF03-21F8-425F-B31F-6342403D716B
Case 22-10263-KBO   Doc 246-12   Filed 05/13/22   Page 9 of 11

Lessee and may not be exercised or assigned, voluntarily or involuntarily, by, or to, any person or entity other than Lessee. This Option to Extend herein granted to Lessee is not assignable separate and apart from this Lease. In the event that at the time the Option to Extend is exercisable by Lessee, this Lease has been assigned, or a sublease exists as to fifty percent (50%) or more of the Premises, this Option to Extend shall be deemed null and void and Lessee, any assignee, or any sublessee, shall not have the right to exercise this Option to Extend. Lessee shall have no right to exercise this Option to Extend, notwithstanding any provision in the grant of the Option to Extend to the contrary, (a) if, at the time permitted for exercise of the Option to Extend, or at any time prior to the commencement of the Extension Term, Lessee shall be in default under any of the provisions of this Lease, or (b) in the event that Lessor has given to Lessee two or more notices of default under Section 12 of the Lease during the six (6) calendar months prior to the time Lessee intends to exercise the Option to Extend. Upon Lessor's receipt of Lessee's Notice, Lessor and Lessee shall discuss, in good faith, the new Rent for the Premises during such Extension Term. Notwithstanding the foregoing, the Rent shall not, during said Extension Term, be less than the Rent during the year immediately preceding the commencement of such Extension Term, and said Rent shall be payable in accordance with the same provisions as hereinabove set forth. If the parties have not agreed on the rental for such Extension Term on the foregoing basis within thirty (30) days after Lessor's receipt of Lessee's Notice, then Lessee's exercise of the Option to Extend shall be deemed rescinded, the Option to Extend shall be null and void and the term of this Lease shall expire at the expiration of the initial term set forth in the Lease.

8. <u>Conflicting Conditions.</u> All other terms and conditions of the Lease shall remain in full force and effect. In the event of any conflict between the terms and conditions of this Addendum and the terms and conditions of the Lease, this Addendum shall prevail.

**LESSOR:**

**Falcon Hangar, LLC**
By: KDC Falcon, LLC
By: Kajima Development Corporation

By: *Hiroaki Iizawa*
Hiroaki Iizawa, President & CEO

Date: 6/30/2017 | 3:31 PM PDT

**LESSEE:**

**MD Helicopters, Inc.**

By: _____
Steve Acreman, Director, Production Support

Date: 6/29/17

By: _____
Mike Motahari, Chief Operating Officer

Date: 6-29-2017

8.17.15

EXHIBIT C

RULES AND REGULATIONS
WHICH CONSTITUTE A PART OF THE LEASE

1. The sidewalks, entrances and taxiways shall not be obstructed or used for any purpose other than ingress and egress.

2. Nothing shall be attached to the outside walls or roofs of the Premises including but not limited to awnings, antennas, dish antennas and alarms without the prior written consent of the Lessor.

3. No sign, advertisement or notice shall be exhibited, painted or affixed by any Lessee on any part of, or so as to be seen from the outside of, the Premises without the prior written consent of the Lessor. In the event of the violation of the foregoing by any Lessee, Lessor may remove same without any liability, and may charge the expense incurred in such removal to the Lessee violating this rule.

4. The water and wash closets and other plumbing fixtures shall not be used for any purpose other than those for which they were constructed, and no sweepings, rubbish, rags or other substances shall be thrown therein. All damages resulting from any misuse of the fixtures shall be borne by the Lessee who, or whose servants, employees, agents, visitors or licensees shall have caused the same.

5. No Lessee shall mark, paint, drill into, or in any way deface any part of the Premises. No boring, cutting or stringing of wires or laying of linoleum or other similar floor coverings shall be permitted, except with the prior written consent of the Lessor, and as the Lessor may direct.

6. No cooking shall be done or permitted by any Lessee on the Premises. No Lessee shall cause or permit any unusual or objectionable odors to be produced upon or permeate from the Premises.

7. No Lessee shall occupy or permit any portion of his Premises to be occupied as an office for the possession, storage, manufacture or sale of liquor, narcotics, dope and tobacco of any form. The Premises shall not be used for lodging or sleeping or for any immoral or illegal purpose.

8. No Lessee shall make, or permit to be made any unseemly or disturbing noises or disturb or interfere with occupants of this or neighboring hangars or those having business with them, whether by the use of any musical instrument, radio, phonograph, unusual noise, or in any other way.

9. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by any Lessee, nor shall any changes be made in existing locks or the

mechanism thereof. Each Lessee must, upon the termination of his tenancy, restore to the Lessor all keys of the Premises, hangars and offices either furnished to, or otherwise procured by, such Lessee, and in the event of the loss of any keys so furnished, such Lessee shall pay to the Lessor the cost of replacing the same or of changing the lock or locks opened by such lost key if Lessor shall deem it necessary to make such change.

10. No water cooler, air conditioning unit or other similar apparatus shall be installed by any Lessee without the written consent of Lessor.

11. Upon five (5) days written notice, Lessor may amend, modify, alter change or terminate any of the foregoing Rules and Regulations as Lessor deems reasonably necessary.

INITIALS_DS

Lessor [ HI ]

INITIALS

Lessee *M.M*