# Exhibit A

**(Proposed Sale Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- x
                                                   :
In re:                                             :    Chapter 11
                                                   :
MD HELICOPTERS, INC., et al.,¹                     :    Case No. 22-10263 (KBO)
                                                   :
                  Debtors.                         :    (Jointly Administered)
                                                   :
                                                   :    Re: D.I. 28, 30
-------------------------------------------------- x
```

**ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (II) GRANTING RELATED RELIEF**

Upon the motion [D.I. 28] (the "**Motion**")² of the Debtors for entry of an order (this "**Sale Order**") under Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1 (a) approving the Sale of the Assets free and clear of all Interests (as defined below), (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (c) granting related relief; and the Court having entered the *Order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting*

---

¹ The two Debtors in these cases are MD Helicopters, Inc. ("**MDHI**") and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein), or if not defined therein, in the Motion or the Bidding Procedures Order (as defined herein).

*Related Relief* [D.I. 206] (the "**Bidding Procedures Order**"); and [●] or its Designated Purchaser

(as defined in the Asset Purchase Agreement) (collectively, the "**Buyer**") having been selected as

the Successful Bidder; and upon the Buyer and the Debtors having entered into that certain Asset

Purchase Agreement, dated as of [●], a copy of which is attached hereto as Exhibit A (as may be

amended, modified, or supplemented in accordance with the terms of this Sale Order and such

agreement, the "**Asset Purchase Agreement**"); and this Court having reviewed the Motion; and

this Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012; and the Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent

with Article III of the United States Constitution; and the Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

it appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and a hearing having been held to consider the relief requested in the

Motion (the "**Sale Hearing**"); and upon the declarations and other testimony and evidence

submitted by the Debtors in support of the Motion and the Sale;[3] and upon the record of the Sale

---

[3] The Declarations submitted in support of the Motion and the Transaction include: (i) the *Declaration of Adam B. Keil in Support of Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [D.I. 30]; (ii) [ ● ] (collectively, the "**Declarations**").

Hearing and all the proceedings before this Court; and after due deliberation thereon; and the Court

having determined that there is good and sufficient cause for the relief granted in this Sale Order,

**THE COURT HEREBY FINDS THAT:**[4]

### Jurisdiction, Final Order, and Statutory Predicates

A.       This Court has jurisdiction to hear and determine the Motion under 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the Debtors'

above-captioned Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.

B.       This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the

implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief sought in the Motion are Sections 105(a), 363

and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, and

9014, and applicable Local Rules.

### Notice of the Sale, Auction and the Cure Payments

D.       As evidenced by the affidavits and/or certificates of service filed with the Court,[5]

proper, timely, adequate, and sufficient notice of, *inter alia*, the Motion, the Bid Procedures, the

---

[4]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[5]    Such affidavits and/or certificates of service were filed by the Debtors at D.I. 132, 141, 199, 200, 201, 213, and [●].

3

Assumption Procedures, the Asset Purchase Agreement, the Auction, the Sale, the Sale Hearing, and all deadlines related thereto, has been provided in accordance with Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and in compliance with the Bidding Procedures Order, to all parties required to receive such notice.

E.    The Debtors served notice substantially in the form of the *Notice of Bid Procedures, Auction, Hearing, and Deadlines Relating to the Sale of Substantially All of the Assets of the Debtors* [D.I. 210] (the "**Sale Notice**") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules, published such notice in *USA Today, The Arizona Republic*, and VerticalMag.com, the website of *Vertical Magazine*, and posted the Sale Notice on the website maintained by the Debtors' claims and noticing agent.  Such publication of the Sale Notice conforms to the requirements of the Bidding Procedures Order and Bankruptcy Rules 2002(*l*) and 9008 and was reasonably calculated to provide notice to any interested party whose identity is unknown to the Debtors and to afford any such party the opportunity to exercise any rights related to the Motion and the relief granted by this Sale Order.  Service and publication of the Sale Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Assets, including the proposed sale of the Assets free and clear of all Interests (as defined below), the Debtors' entry into the Stalking Horse Agreement, the Sale, the Bid Procedures, the Auction, and the Sale Hearing.

F.    The Debtors served notice substantially in the form of the *Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction* [D.I. 219] (the "**Assumption and Assignment Notice**") on each Assumption Notice Party in accordance with the Assumption Procedures and the Bidding Procedures Order.  The service of

US-DOCS\131298106.8

the Assumption and Assignment Notice was sufficient under the circumstances and in full compliance with the Assumption Procedures and the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assumed Contracts or the Cure Costs. All counterparties to the Assumed Contracts have had an adequate opportunity to object to the assumption and assignment of the Assumed Contracts and the Cure Costs. Service of the Assumption and Assignment Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assumed Contracts in connection with the sale of the Assets and the related Cure Costs.

G.     [The Debtors served notice substantially in the form of the [*Notice of Successful Bidder and Back-Up Bidder with Respect to the Auction of the Debtors' Assets*] [D.I. [●]] (the "**Post-Auction Notice**") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. Service of the Post-Auction Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the conclusion of the Auction and the identity of the Successful Bidder and Back-Up Bidder.]

H.     The notice described in the foregoing paragraphs is due, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Bid Procedures, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Sale, and the entry of this Sale Order, and has been provided to all parties in interest. Such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object and to be heard, with respect thereto, and was provided in accordance with Sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, 9006, 9007, and 9014, and the applicable Local Rules.  Accordingly, no other or further notice with respect to such matters is necessary or shall be required.

## **Business Judgment**

I.        The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and authorization to close, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement and related documents (together with the Asset Purchase Agreement, the "**Transaction Documents**"), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Contracts (collectively, the "**Transaction**") pursuant to Sections 105, 363, 365, 1107, and 1108 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk of depreciation of the value of the Assets if the Transaction is not consummated promptly; (ii) the Asset Purchase Agreement and the Closing present the best opportunity and represent the best method to maximize the value of the Debtors' estates for the benefit of the Debtors, their estates, their creditors, and other parties in interest; (iii) the Purchase Price and other terms set forth in the Asset Purchase Agreement constitute the highest or otherwise best offer received for the Assets; and (iv)  unless the Transaction is concluded expeditiously, as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, the Debtors and their estates would receive significantly less value for all stakeholders.

## Good Faith of the Buyer; No Collusion

J.      The Buyer is purchasing the Assets in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and therefore is entitled to, and granted pursuant to paragraph 34 below, the full rights, benefits, privileges, and protections of that provision.  The Buyer and the Buyer Parties have otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Buyer and the Buyer Parties recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Buyer and the Buyer Parties complied with the provisions in the Bidding Procedures Order; (iii) the Buyer and the Buyer Parties agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all consideration to be provided by the Buyer and other material agreements or arrangements entered into by the Buyer in connection with the Transaction have been disclosed; and (v) the negotiation and execution of the Asset Purchase Agreement and Transaction Documents by and among the Debtors, the Buyer, and the Buyer Parties were at arm's length and in good faith.

K.      None of the Debtors, the Buyer, the Buyer Parties, any other party in interest, or any of their respective representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any entity in connection therewith.

## Marketing Process

L.      The Debtors conducted a sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order, and accordingly have

afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets. As demonstrated by the Motion, the Declarations, the testimony and other evidence submitted by the Debtors at the hearing on the Bid Procedures (the "**Bid Procedures Hearing**") and the Sale Hearing, and the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, under the circumstances, (a) the Debtors and Moelis & Company LLC, the financial advisor and investment banker to the Debtors, engaged in a robust marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bid Procedures; (b) the Debtors and their advisors conducted a fair and open sale process; and (c) the sale process, and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

### Highest or Otherwise Best Offer

M.    In accordance with the Bidding Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid and was eligible to participate in an auction for the Assets.

N.    The offer memorialized in the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Assets and represents a fair and reasonable offer to purchase the Assets under the circumstances of these Chapter 11 Cases.

O.    The Transaction described in the Asset Purchase Agreement was a material inducement for, and an express condition of, the Buyer's willingness to enter into the Asset Purchase Agreement, and will provide a greater benefit to the Debtors, their estates, and their creditors than in the absence of the Transaction.

### Credit Bid

8

P.     Pursuant to the Bid Procedure Order and Bid Procedures, applicable law, including Sections 363(b) and 363(k) of the Bankruptcy Code, and in accordance with the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [D.I. 205] (the "**DIP Order**"), the Prepetition First Lien Agent was authorized to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition First Lien Obligations in connection with the sale of the Assets as contemplated in the Asset Purchase Agreement, subject to the terms and conditions of the DIP Order.[6]  The Prepetition First Lien Agent (at the direction of the Prepetition First Lien Lenders) contributed the Prepetition First Lien Obligations constituting the Credit Bid to the Buyer in connection with the Transaction contemplated under the Asset Purchase Agreement.[7]  The Credit Bid, together with the other consideration constituting the Purchase Price, is valid and proper consideration pursuant to Sections 363(b) and 363(k) of the Bankruptcy Code, the Bidding Procedures Order, and the DIP Order.  No cause exists to limit the amount of the Credit Bid pursuant to Section 363(k) of the Bankruptcy Code or otherwise.

## No Fraudulent Transfer

Q.     The Asset Purchase Agreement and Transaction Documents were not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset

---

[6]   "**Prepetition First Lien Agent**" and "**Prepetition First Lien Obligations**" shall have the meanings ascribed to such terms in the DIP Order.

[7]   "**Prepetition First Lien Lenders**" shall have the meaning ascribed to such term in the DIP Order.

Purchase Agreement or parties to any of the Transaction Documents are consummating the Transaction with any fraudulent or otherwise improper purpose.  The Purchase Price for the Assets constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law.

## **Validity of Transfer**

R.     The Debtors have full corporate power and authority (i) to perform all of their obligations under the Asset Purchase Agreement and the Transaction Documents and (ii) to consummate the Transaction.  Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transaction or otherwise perform their obligations under the Asset Purchase Agreement or applicable Transaction Documents.

S.     As of the Closing, the transfer of the Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the Assumed Contracts, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Assets, free and clear of all Interests (as defined below) accruing or arising any time prior to the Closing, except as expressly set forth in the Asset Purchase Agreement.

## **Section 363(f) Is Satisfied**

T.     The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Transaction contemplated thereby if the sale of the Assets, including the assumption, assignment, and transfer of the Assumed Contracts to the Buyer, was not free and clear of all Interests of any kind or nature whatsoever (except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities), or if the Buyer or any of its Affiliates, past, present and future members or shareholders, lenders, subsidiaries, parents,

10

divisions, agents, representatives, insurers, attorneys, successors and assigns, or any of its or their respective directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (each, a "**Buyer Party**," and collectively, the "**Buyer Parties**") would, or in the future could, be liable for any of such Interests (except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities).

U.    The Debtors may sell or otherwise transfer the Assets free and clear of all Interests because, in each case, one or more of the standards set forth in Section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. The DIP Lenders and the Prepetition First Lien Agent (at the direction of the Prepetition First Lien Lenders) have consented to the Transaction pursuant to Section 363(f)(2). Pursuant and subject to the terms of the Prepetition Note Documents, including, without limitation, that certain Subordination Agreement, dated as of April 17, 2007, by and among the Purchasers (as defined in the Prepetition Note Purchase Agreement) and the Prepetition First Lien Agent, and those certain Amended and Restated Subordinated Security Agreements, dated as of May 31, 2011, by and among MDHI, as grantor, and each of the Purchasers, the Prepetition Noteholders are deemed to have consented to the Sale, including the transfer of the Assets free and clear of all Interests pursuant to Section 363(f)(2) of the Bankruptcy Code.[8] Those holders of Interests against the Debtors, their estates, or any of the Assets who did not object, or who withdrew their objections, to the Transaction or the Motion are deemed to have consented thereto pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests who did object fall within one or more of the other subsections of Section 363(f) and are adequately

---

[8]    "**Prepetition Note Documents**" and "**Prepetition Noteholders**" shall have the meanings ascribed to such terms in the DIP Order.

protected by the terms of this Sale Order, including, as applicable, by having their Interests, if any, attach to the proceeds of the Transaction attributable to the Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Assets immediately prior to consummation of the Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

V.    As used in this Sale Order, the terms "**Interest**" and "**Interests**" include all of the following, in each case, to the extent against or with respect to the Debtors, or in, on, or against, or with respect to any of the Assets: liens (including as defined in Section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in Section 101(5) of the Bankruptcy Code) ("**Claims**"), debts (as defined in Section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to, on or subsequent to the commencement of these Chapter 11 Cases, and in each case, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (a) mortgages, security deeds, deeds of trust, pledges, charges, security interests, levies, hypothecations, encumbrances, easements, servitudes, leases, subleases, licenses, rights-of-way, encroachments, restrictive covenants, restrictions on transferability, restrictions on assignability, voting, sale, transfer or other similar restrictions, rights of setoff and recoupment (except for setoffs validly exercised before the Petition Date), rights of

12

use or possession, conditional sale arrangements, deferred purchase price obligations, profit sharing interest, or any similar rights; (b) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff and recoupment (except for setoffs validly exercised before the Petition Date), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other entity, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (c) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (d) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights; (e) any rights under labor or employment agreements; (f) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "**ERISA**")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (g) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the

13

Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (xii) the WARN Act (29 U.S.C. §§ 2101, *et seq*.) or any state or other laws of similar effect; (h) any bulk sales or similar law; (i) any tax statutes or ordinances or other laws of similar effect, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets before the closing of a Transaction; (j) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not assumed; (k) any other Excluded Liabilities under the Asset Purchase Agreement; and (l) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

### Not a Successor; Not a Sub Rosa Plan

W.    The Buyer and the Buyer Parties are not, and shall not be deemed to, as a result of any action taken in connection with the Transaction: (1) be a successor to or a mere continuation or substantial continuation (or other such similarly situated party) to the Debtors or their estates

14

(except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities); or (2) have, *de facto* or otherwise, merged or consolidated with or into the Debtors. The Transaction, the Asset Purchase Agreement, and the Transaction Documents do not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtors.

**Assumption, Assignment and/or Transfer of the Assumed Contracts**

X.    The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Buyer, in each case in connection with the consummation of the Transaction, and (ii) that the assumption and assignment of the Assumed Contracts to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assumed Contracts being assigned to the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assumed Contracts are reasonable and enhance the value of the Debtors' estates.  Each and every provision of the documents governing the Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Assets, if any, has been or will be satisfied or are otherwise unenforceable under Section 365 of the Bankruptcy Code.  Any non-Debtor counterparty to an Assumed Contract that has not filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

Y.    To the extent necessary or required by applicable law, the Debtors (or the Buyer on behalf of the Debtors) have or will have as of the Closing: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing with respect to the Assumed Contracts, within the meaning of Sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided

15

compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  The respective amounts set forth on <u>Exhibit B</u> hereto (or any supplemental Assumption and Assignment Notice served in accordance with the Assumption Procedures or any order of the Bankruptcy Court) are the sole amounts necessary under Sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Contracts.

Z.        The promise of the Buyer to perform the obligations first arising under the Assumed Contracts after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assumed Contracts.  Any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assumed Contracts to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those non-Debtor counterparties to Assumed Contracts who did not object to the assumption, assignment, or transfer of their applicable Assumed Contract, or to their applicable Cure Cost, are deemed to have consented thereto for all purposes of this Sale Order.

<u>**Compelling Circumstances for an Immediate Sale**</u>

AA.     Time is of the essence in consummating the Transaction.  In order to maximize the value of the Assets, it is essential that the sale and assignment of the Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the

US-DOCS\131298106.8

Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and, sufficient cause having been shown, waives any such stay and expressly directs entry of judgment as set forth herein.   The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Asset Purchase Agreement.  The Buyer, being a good faith purchaser under Section 363(m) of the Bankruptcy Code, may close the Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the terms and conditions of the Asset Purchase Agreement.

BB.    The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**<u>General Provisions</u>**

1.    The Motion, and the relief requested therein, is granted and approved, and the Transaction contemplated thereby and by the Asset Purchase Agreement and Transaction Documents is approved, in each case as set forth in this Sale Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.    All objections to the Motion or the relief requested therein (including the assumption and assignment of Assumed Contracts to the Buyer and any Cure Costs related thereto)

17

that have not been withdrawn, waived, resolved, adjourned, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits. Those parties who did not object to the Motion or the entry of this Sale Order in accordance with the Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to Section 363(f)(2) of the Bankruptcy Code.

**Approval of Asset Purchase Agreement; Binding Nature**

4.      The Asset Purchase Agreement and the Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

5.      The consideration provided by the Buyer for the Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected by any person, or costs or damages imposed or awarded against the Buyer or any Buyer Party, under Section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the Transaction Documents and otherwise comply with the terms of this Sale Order, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the

US-DOCS\131298106.8

performance of their obligations as contemplated by the Asset Purchase Agreement and the Transaction Documents, in each case without further notice to or order of this Court.  The Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.  The Buyer shall not be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Transaction Document.  The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the Transaction and the provisions of this Sale Order.

7.      This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Assets, all non-Debtor parties to the Assumed Contracts, the Buyer, the Buyer Parties, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' cases.

### **Transfer of Assets Free and Clear of Interests; Injunction**

8.      Pursuant to Sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Assets, including, but not limited to, the Assumed Contracts, to the Buyer on the Closing in accordance with the Asset Purchase Agreement and Transaction Documents.  Upon the Debtors' receipt of the Purchase Price

19

and as of the Closing, such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets free and clear of all Interests of any kind or nature whatsoever (except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities) and shall vest the Buyer with all right, title and interest to and in such Assets subject only to the Permitted Liens and Assumed Liabilities set forth in the Asset Purchase Agreement.

9.     Notwithstanding anything to the contrary contained herein or in the Transaction Documents, upon the Closing of the Transaction, (a) the full amount of the DIP Obligations outstanding as of the Closing shall be assumed by the Buyer and (b) the Prepetition First Lien Obligations in an amount equal to the Credit Bid shall be deemed fully and finally satisfied.

10.     All such Interests shall attach solely to the proceeds of the Transaction with the same validity, priority, force, and effect that they now have as against the Assets, subject to any Claims and defenses the Debtors and their estates may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities) have been unconditionally released, discharged, and terminated in, on, or against the Assets (but not the proceeds thereof).  The provisions of this Sale Order authorizing and approving the transfer of the Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

11.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all entities holding Interests (except as set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities) are hereby forever barred, estopped, and

US-DOCS\131298106.8

permanently enjoined from asserting their respective Interests against the Buyer or any Buyer Party, and each of its or their respective property and assets, including, without limitation, the Assets.

12.     On and after the Closing, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on and against the Assets (but not the proceeds thereof) as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing, and without limiting the foregoing, the Buyer shall be authorized to file termination statements, mortgage releases or lien terminations in any required jurisdiction to remove any mortgage, record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code and other applicable law for the Buyer to file UCC and other applicable termination statements with respect to all security interests in, liens on, or other Interests in the Assets.

13.     On and after the Closing, the entities holding an Interest (other than a Permitted Lien or Assumed Liability as set forth in the Asset Purchase Agreement) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or have real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and

shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale

Order as of the Closing.  All entities that are in possession of any portion of the Assets on the

Closing shall promptly surrender possession thereof to the Buyer at the Closing.  Subject to the

terms, conditions, and provisions of the Asset Purchase Agreement, all entities that are in or come

into possession of any portion of the Assets are hereby forever prohibited and enjoined from taking

any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer

the Transferred Assets to the Buyers in accordance with the terms of the Asset Purchase

Agreement, the Transaction Documents, and this Sale Order.

14.    The transfer of the Assets to the Buyer pursuant to the Asset Purchase Agreement

and Transaction Documents does not require any consents other than specifically provided for in

the Asset Purchase Agreement or as provided for herein.

15.    On the Closing, this Sale Order shall be construed and shall constitute for any and

all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the

Assets and the Debtors' interests in the Assets acquired by the Buyer under the Asset Purchase

Agreement.  This Sale Order is and shall be effective as a determination that, on the Closing, all

Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing (other than

Permitted Liens and Assumed Liabilities as set forth in the Asset Purchase Agreement), shall have

been unconditionally released, discharged, and terminated to the fullest extent permitted by

applicable law, and that the conveyances described herein have been effected.  This Sale Order is

and shall be binding upon and shall govern the acts of all entities (including, without limitation,

all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state,

and federal, state, and local officials) who may be required by operation of law, the duties of their

office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order, the Asset Purchase Agreement, or any Transaction Document.

16.     The Buyer is hereby authorized, in connection with the consummation of the Sale, to allocate the Assets, including the Assigned Contracts, among its affiliates, agents, designees, assigns and/or successors, in a manner as the Buyer in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Assets, including the Assigned Contracts, to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded to the Buyer under this Sale Order, the Asset Purchase Agreement, and the Transaction Documents, and the Debtors shall cooperate and use commercially reasonable efforts as reasonably requested by the Buyer to effectuate any of the foregoing.

**Assumed Contracts; Cure Payments**

17.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption, assignment and transfer to the Buyer of the Assumed Contracts is hereby authorized and approved in full subject to the terms set forth below.

18.     Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign, and/or transfer each of the Assumed Contracts to the Buyer free and clear of all Interests (except as set forth in the Asset Purchase Agreement with respect to Permitted Liens

23

and Assumed Liabilities).  The payment of the applicable Cure Costs (if any), or the reservation

by the Debtors (or the Buyer on behalf of the Debtors) of an amount of cash that is equal to the

lesser of (i) the amount of any cure or other compensation asserted by the applicable counterparty

to such Assumed Contract as required under Section 365 of the Bankruptcy Code or (ii) the amount

approved by order of this Court as a reserve for such payment (such lesser amount, the "**Alleged**

**Cure Claim**") shall, pursuant to Section 365 of the Bankruptcy Code and other applicable law,

(a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the

Closing and (b) compensate, or provide adequate assurance of compensation, for any actual

pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of

the Closing, other than such payment or reservation, neither the Debtors nor the Buyer shall have

any further liabilities or obligations to the non-Debtor parties to the Assumed Contracts with

respect to, and the non-Debtor parties to the Assumed Contracts shall be forever barred, estopped

and permanently enjoined from seeking, any additional amounts or Claims that arose, accrued, or

were incurred at any time on or prior to the Closing on account of the Debtors' cure or

compensation obligations arising under Section 365 of the Bankruptcy Code.  The Buyer has

provided adequate assurance of future performance under the relevant Assumed Contracts within

the meaning of Section 365 of the Bankruptcy Code.

19.    To the extent any provision in any Assumed Contract assumed or assumed and

assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of

control" or similar provision) (a) prohibits, restricts, or conditions, or purports to prohibit, restrict,

or condition, such assumption or assignment or (b) is modified, breached, or terminated, or deemed

modified, breached, or terminated by any of the following: (i) the commencement of these

Chapter 11 Cases, (ii) the insolvency or financial condition of the Debtors at any time before the

closing of these Chapter 11 Cases, (iii) the Debtors' assumption or assumption and assignment (as applicable) of such Assumed Contract, or (iv) the consummation of the Transaction, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption or assignment, to modify, terminate, or declare a breach or default under such Assumed Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assumed Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to Sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

20.    All requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assumed Contracts free and clear of any Interest (other than Permitted Liens and Assumed Liabilities as set forth in the Asset Purchase Agreement), and each Assumed Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the Closing, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and, accordingly, the Debtors shall be relieved, pursuant to Section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.  The Debtors shall cooperate with the Buyer and use commercially reasonable efforts as reasonably requested by the

Buyer to effectuate the foregoing.  The Buyer shall have no liability arising or accruing under the Assumed Contracts on or prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order.

21.    To the extent a non-Debtor party to an Assumed Contract failed to timely object to a Cure Cost in accordance with the Bidding Procedures Order, such Cure Cost shall be deemed to be finally determined and any such non-Debtor party shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assumed Contract to which it relates.  Unless as otherwise set forth in this Sale Order or the Asset Purchase Agreement, the non-Debtor parties to the Assumed Contracts are barred from asserting against the Debtors, their estates, the Buyer and the Buyer Parties, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assumed Contracts arising or incurred prior to the Closing, other than the applicable Cure Costs, or taking any other action against the Buyer as a result of any Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contract.  Upon the payment of the applicable Cure Costs or the reservation of the Alleged Cure Claims, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assumed Contracts as of the Closing nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

22.    All counterparties to the Assumed Contracts shall be deemed to have consented to such assumption and assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assumed

Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

23.     Upon payment of the Cure Costs, no default or other obligations arising prior to the Closing shall exist under any Assumed Contract, and each non-Debtor party is forever barred and estopped from (a) declaring a default by the Debtors or the Buyer under such Assumed Contract, (b) raising or asserting against the Debtors or the Buyer (or any Buyer Party), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts, or (c) taking any other action against the Buyer or any Buyer Party as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contract, in each case in connection with the Transaction.  Each non-Debtor party is also forever barred and estopped from raising or asserting against the Buyer or any Buyer Party any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the closing of the Transaction other than the Cure Costs.

24.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Contract is an executory contract or unexpired lease under Section 365 of the Bankruptcy Code.

25.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assumed Contracts.

26.     To the extent an Assumed Contract Objection or Post-Auction Objection with respect to the Buyer's ability to provide adequate assurance of future performance shall be pending

as of the date of the Closing, and such objection has not been overruled in connection with entry of this Order, the Assumed Contract subject to such objection shall be deemed assumed and assigned, as between the Debtors and the Buyer, as of the Closing until such time as (i) the amount (if any) to be paid under Section 365 of the Bankruptcy Code or (ii) the Debtors' ability to assign the Assumed Contract to the Buyer is determined by the Court.  Upon a determination by the Court of the amount (if any) to be paid under Section 365 of the Bankruptcy Code with respect to any Assumed Contract, the Buyer may elect to (a) pay such amount and have the Assumed Contract assigned to it or (b) remove such Assumed Contract as an Assumed Contract.  Upon a determination by the Court that any Assumed Contract is nonassignable, such Assumed Contract shall be removed as an Assumed Contract.  Any Assumed Contract subsequently removed as an Assumed Contract, either in accordance with the preceding sentence or pursuant to an agreement with the contract counterparty, shall no longer be deemed assumed and assigned to the Buyer, as between the Buyer and the Debtors, as of the date such Assumed Contract is removed as an Assumed Contract.  Any amounts reserved pursuant to paragraph 18 of this Sale Order with respect to any Assumed Contract subsequently removed as an Assumed Contract shall be released from the reserve account and paid by the Debtors to the Buyer.

27.    Notwithstanding anything in this Sale Order, the Debtors may, pursuant to Section 2.5(d) of the Asset Purchase Agreement, (a) assume and assign an executory contract or unexpired lease not previously designated as an Assumed Contract after the date of this Sale Order, (b) remove Assumed Contracts from the list of executory contracts and unexpired leases ultimately selected as Assumed Contracts by the Buyer, and/or (c) modify the previously stated cure amount associated with any Assumed Contract by filing a supplemental Assumption Notice on the Court's docket designating such modifications and, with respect to the modifications set forth in clause (a)

28

and (c) of this Paragraph 27, serving the same on the counterparty to the contract(s) subject to such modifications.  If no objections are received with respect to the proposed Cure Cost or the assumption and assignment, as applicable, within fourteen (14) days from the date such notice is served, the Debtors may submit an order to the Court, under certification of counsel, authorizing the assumption and assignment of such contract to the Buyer; *provided*, *however*, that if the counterparty to such contract consents to the Cure Cost and assumption and assignment, the Debtors may submit an order to the Court prior to the end of such fourteen (14) day period, under certification of counsel indicating such consent.  Upon such assumption and assignment, such contract(s) shall be deemed an Assumed Contract for purposes of this Sale Order.  If an objection is received within fourteen (14) days from the date such notice is served and the parties are not able to resolve the dispute, the Court shall resolve the dispute at a hearing upon notice.

### Additional Injunction; No Successor Liability

28.     Effective upon the Closing and except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities, all persons and entities are forever barred, estopped, and permanently enjoined from asserting against the Buyer or any Buyer Party any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, or the Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover, (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order, (iii) creating, perfecting, or enforcing any Interest, (iv) asserting any right of subrogation, setoff or recoupment of any kind, (v) commencing or continuing any action in any manner or place, that

29

does not comply with or is inconsistent with the provisions of this Sale Order, other orders of this Court, the Asset Purchase Agreement, the other Transaction Documents or any other agreements or actions contemplated or taken in respect thereof, or (vi) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets in connection with the Transaction, in each case of (i) through (vi), as against the Buyer or any Buyer Party or any of its or their respective property or assets, including the Assets.

29.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing.

30.    To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Transaction.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transaction set forth in the Asset Purchase Agreement.

31.    Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Assets to Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order, and (b) with the ability of the

US-DOCS\131298106.8

Buyer to acquire, take possession of, use and operate the Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

32.     The Buyer and the Buyer Parties shall not be deemed, as a result of any action taken in connection with the Transaction contemplated by the Asset Purchase Agreement or the Transaction Documents, (i) to be a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, to the Debtors or their estates, (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (iii) to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (iv) to have a common identity with the Debtors, (v) to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), or (vi) to be held out to the public as a continuation of the Debtors or the Debtors' trade or business.

33.     Except as set forth in the Asset Purchase Agreement with respect to Permitted Liens and Assumed Liabilities, the transfer of the Assets, including, without limitation, the assumption, assignment, and transfer of any Assumed Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer or any Buyer Party having any liability, obligation, or responsibility for, or any Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee, or vicarious liability or any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any

31

obligations of the Debtors arising prior to the Closing, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment or otherwise. No Buyer or Buyer Party shall be deemed to have expressly or implicitly assumed any of the Debtors' liabilities (other than a Permitted Lien or Assumed Liability as set forth in the Asset Purchase Agreement). Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer, the Buyer Parties or the Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or recoupment, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Interests (other than a Permitted Lien or Assumed Liability as set forth in the Asset Purchase Agreement).

## **Good Faith**

34.     The Transaction contemplated by this Sale Order, the Asset Purchase Agreement, and Transaction Documents are undertaken by the Buyer and the Buyer Parties without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not alter, affect, limit, or otherwise impair the validity of the Transaction (including the assumption, assignment, and/or transfer of the Assumed Contracts), unless such authorization and consummation of the Transaction are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of Section 363(m) of the Bankruptcy Code.

US-DOCS\131298106.8

**[Obligations of the Back-Up Bidder]**

35.     The Back-Up Bid is hereby approved and is deemed open and irrevocable until two (2) Business Days after the Closing.  If Buyer fails to consummate the Transaction because of its failure to perform, the Debtors shall be authorized to consummate the Transaction with the Back-Up Bidder subject to the procedures set forth in the Bidding Procedures Order.

36.     In the event that the Debtors consummate the Transaction with the Back-Up Bidder as set forth herein, the Back-Up Bidder shall have the same protections as Buyer as set forth in this Order and shall acquire the Assets and assume liabilities in accordance with the Back-Up Bid and this Order subject to the procedures set forth in the Bidding Procedures Order.

**Other Provisions**

37.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Sale of the Assets to the Buyer (including the assumption and assignment by the Debtors of any of the Assumed Contracts), unless such authorization is duly stayed pending such appeal.  Accordingly, the Debtors are authorized and empowered to close the Transaction immediately upon entry of this Sale Order.

38.     The Buyer shall not be required, pursuant to Section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assumed Contracts to the extent not previously provided by the Debtors.

33

39.     Neither the Buyer nor the Debtors shall have an obligation to close the Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

40.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

41.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transaction.

42.     The Asset Purchase Agreement and Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors, without further notice to or order of this Court.  In the event of a material modification, amendment, or supplement, notice of any material modification, amendment, or supplement shall be provided to counsel to Ankura, counsel to PPAS, counsel to the Zohar Lenders, counsel to the Patriarch Lenders, and counsel to the DIP Lenders, each of whom shall have five (5) business days from the date of such notice within which to object in writing to material modifications, amendments, or supplements, and in the event of an unresolved objection, such material modifications, amendments, or supplements may only be entered into upon a further order of the Court, it being understood that non-material authorizations, amendments, waivers, consents, or other modifications will not be subject to the foregoing notice period of five (5) business days; *provided, further*, that the foregoing notice period of five (5) business days may be waived so long as counsel to each of the parties referenced in the immediately preceding proviso

34

consents in writing to such waiver (which writing may be via e-mail); *provided, further,* that any modification, amendment or supplement to the Asset Purchase Agreement or the Transaction Documents that is materially adverse to the Debtors shall not be made except pursuant to further order of the Court, by motion on notice to all parties entitled to notice under Local Rule 2002-1(b).

43.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) adjudicate disputes related to this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under Sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

44.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.    The Debtors are authorized to change their legal names, and file any necessary documents to effectuate such name changes, without further order of the Court.  Within three (3) business days of changing their names, the Debtors shall file a motion to change the case caption pursuant to Local Rule 9004-1(c).

46.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the

35

terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

47.    The failure to include or specifically reference any particular provision of the Asset Purchase Agreement or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

48.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall control and govern.

49.    To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall govern.

50.    The provisions of this Sale Order are non-severable and mutually dependent.

## **EXHIBIT A**

**Asset Purchase Agreement**

US-DOCS\131298106.8

**EXHIBIT B**

**Assumed and Assigned Contracts**

38

US-DOCS\131298106.8