# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :
MD HELICOPTERS, INC., *et al.*,[1]                               :  Case No. 22-10263 (KBO)
                                                                 :
                           Debtors.                              :  (Jointly Administered)
                                                                 :
                                                                 :  Objection Deadline: June 3, 2022
---------------------------------------------------------------- x

### DECLARATION IN SUPPORT OF EMPLOYMENT OF SIMPSON THACHER & BARTLETT LLP AS PROFESSIONAL UTILIZED IN ORDINARY COURSE OF BUSINESS

I, Harrison J. Frahn IV, declare that the following is true to the best of my knowledge, information and belief:

1. I am a partner at Simpson Thacher & Bartlett LLP, located at 2475 Hanover Street, Palo Alto, California 94304 (the "**Firm**"), which has been employed by the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") in the ordinary course of the Debtors' business and am duly authorized to make this Declaration on behalf of the Firm. The Debtors wish to retain the Firm to continue providing ordinary course services during these Chapter 11 Cases, and the Firm has consented to provide such services. This Declaration is submitted in compliance with the *Order Authorizing Employment and Payment of Professionals Utilized in Ordinary Course of Business* [Dkt. No. 181] (the "**OCP Order**").

2. Prior to the Debtors' bankruptcy filings, the Firm, through me, and members of the Firm, have since April 2021 represented and advised the Debtors as attorneys with respect to a broad range of aspects of the Debtors' businesses, including in connection with a pending matter

---

[1] The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

in the United States District Court for the Eastern District of California: *MD Helicopters, Inc. v. Aerometals, Inc. and Rex Kamphefner*, No. 2:16-cv-02249-TLN-AC.

3. The Debtors have requested, and the Firm has agreed, to continue to provide services to the Debtors pursuant to Section 327 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with respect to such matters. Additionally, the Debtors have requested, and the Firm proposes to render, legal representation in connection with the matter *MD Helicopters, Inc. v. Aerometals, Inc. and Rex Kamphefner*, No. 2:16-cv-02249-TLN-AC (E.D. Cal.) (the "**Engagement**").

4. In the ordinary course of business, the Firm maintains a database for the purpose of performing conflicts checks. The Firm's database contains information regarding present and past engagements.

5. To the best of my knowledge, formed after due inquiry, the Firm does not currently represent (and has not previously represented) any parties in interest (including creditors of the Debtors), the Office of the United States Trustee or any person employed by the Office of the United States Trustee with respect to the Debtors or matters related to the Engagement. Additionally, neither the Firm, nor any attorney or employee thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matters upon which the Firm is to be engaged (as disclosed in paragraph 12).

6. As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these Chapter 11 Cases.

7. Neither I nor any principal, partner, director, officer of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Firm.

8. The Firm intends to bill the Debtors for professional services rendered in connection with these Chapter 11 Cases, in accordance with the OCP Order, with such bill to include compensation for services based on the hourly rates set forth below, plus reimbursement of actual and necessary expenses and other charges incurred by the Firm. The Firm's current customary hourly rates, subject to change from time to time, vary depending on the assigned individual's position and seniority. The principal attorneys, paralegals, and other employees designated to represent the Debtors and their current standard rates are:

| Simpson Thacher & Bartlett LLP Professional: | Hourly Rate: |
|---|---|
| Harrison J. Frahn IV (Partner) | $1,830.00 |
| Nicholas Baker (Partner) | $1,540.00 |
| Hilary A. Soloff (Associate) | $1,115.00 |
| Rachel A. June-Graber (Associate) | $1,060.00 |
| Janie Marie Franklin (Paralegal) | $585.00 |
| Moshe Azoulai (Practice Support) | $550.00 |
| Thomas Kovoor (Litigation Support) | $470.00 |
| Office of the Managing Clerk | $235.00-600.00 |

9. The rates set forth above are subject to customary annual rate increases as of January 1st of each year to reflect economic and other conditions, as well as annual step-ups in rates for associates when they advance in class seniority. The Firm requests that effective January 1st and September 1st of each year, the aforementioned rates be revised to the regular hourly rates which will be in effect at that time. Such rates are the Firm's standard rates for work of this nature.

3

The rates are set at a level designed to fairly compensate the Firm for the work of its attorneys, paralegals, and other employees and to cover fixed and routine overhead expenses.

10. It is the Firm's policy to charge its clients in all areas of practice for all expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, legal and administrative services and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients.

11. No representations or promises have been received by the Firm, nor by any principal, partner, director, officer, or professional thereof, as to compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code. The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these Chapter 11 Cases.

12. The Debtors owe the Firm $74,158.90 for fees and expenses incurred prior to and unpaid as of the date these Chapter 11 Cases were commenced (the "**Petition Date**"). As of the Petition Date, the Firm held a prepetition retainer of $50,000.00. In the event the Firm's employment is authorized, the Firm will apply the outstanding retainer balance to its outstanding prepetition balance. The Firm understands that it must file a proof of claim for any unpaid prepetition fees and expenses, if any, unless the amount thereof is properly listed in the Debtors' schedules of liabilities and is not designated therein as contingent, unliquidated or disputed.

13. The Firm does not keep, in the ordinary course of business, time records in one-tenth-of-an-hour increments. The Firm keeps, in the ordinary course of business, time records in one-quarter-of-an-hour increments.

4

14. As of the Petition Date, the Firm was party to a services agreement with the Debtors. To the extent that such services agreement contains material terms which are not disclosed in the text of this Declaration, a copy of such agreement is attached as an exhibit to this Declaration.

15. The Firm understands that any compensation/reimbursement paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

16. The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors or other parties in interest in these Chapter 11 Cases, and upon conclusion of such inquiries, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 19, 2022

_____
Harrison J. Frahn IV
Hfrahn@stblaw.com
Simpson Thacher & Bartlett LLP
2475 Hanover Street
Palo Alto, California 94304
Telephone: (659) 251-5000
Facsimile: (650) 251-5002

# Simpson Thacher & Bartlett LLP

2475 HANOVER STREET
PALO ALTO, CA 94304

TELEPHONE: +1-650-251-5000
FACSIMILE: +1-650-251-5002

Direct Dial Number
+1-650-251-5065

E-mail Address
hfrahn@stblaw.com

BY EMAIL

April 14, 2021

Jeffrey S. Adamcik, Esq.
Deputy General Counsel and Secretary
MD Helicopters, Inc.
4555 E McDowell Rd
Mesa, AZ 85215
acarr@drivetrainadvisors.com

Dear Jeff:

       I am pleased to confirm that Simpson Thacher & Bartlett LLP ("we" or the "Firm") will represent and advise MD Helicopters, Inc. ("you" or the "Company") in connection with the lawsuit between the Company and Aerometals, Inc. and Rex Kamphefner, case number 2:16-cv-02249-TLN-AC pending in Federal Court for the Eastern District of California (the "Engagement"). We are required by law to send you this letter setting forth certain terms and conditions of our representation of the Company.

       From time to time, we may represent the Company in such other legal matters as the Company may request, including bank and private financings, securities and other capital markets transactions, mergers, acquisitions, dispositions, joint ventures, investigations, litigations, arbitrations and real estate, tax, intellectual property, employee benefits, and general corporate matters. The terms of this engagement letter will also cover such matters.

       Our client for purposes of the Engagement will be the Company and not its parent or affiliates or any of its individual officers, directors, employees or shareholders, unless we otherwise agree. If at the Company's request we agree to represent any of the Company's parents or affiliates, such engagement shall be subject to the terms of this engagement letter, unless we otherwise modify such terms. If at the Company's request we agree to represent any individuals, such as Company officers, directors, or employees, or if we are asked to represent shareholders of the Company, such representation shall be the subject of a new engagement letter.

NEW YORK  BEIJING   HONG KONG  HOUSTON  LONDON  LOS ANGELES  SÃO PAULO  TOKYO   WASHINGTON, D.C.

With respect to entities or persons affiliated with the Company, including entities owned by the Company and entities or persons that hold direct or indirect interests in the Company, it is our understanding that the Firm is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated entity or person in its individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so in writing. It is our understanding that if the Firm acts as counsel for any other entity as to which the Company then owns completely (directly or indirectly), or owns a majority of (directly or indirectly), the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this engagement letter, including the waivers contained herein, would apply to that entity as well.

We are committed to performing services for the Company to the best of our ability and with the independent professional judgment that an attorney owes to a client in accordance with the Rules of Professional Conduct of the State Bar of California (the "Rules of Professional Conduct") and the California Business and Professions Code (the "Business and Professions Code"; and together with the Rules of Professional Conduct, collectively, the "California Code"). You and we agree that the California Code shall be applicable to this engagement.

We do not disclose nonpublic information about our clients or former clients to anyone, except as permitted by law and the California Code. We will preserve the confidentiality of any confidential information that the Company provides to us in the course of our representing it and will not disclose or use any such information for the benefit of any other client. Conversely, we will not disclose to the Company or use on its behalf any information with respect to which we owe a duty of confidentiality to another client or person.

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of our Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that from time to time the Firm may represent clients in transactional matters, including, without limitation, representation of the Company's investors, lenders, borrowers, underwriters or financial advisors, and various other matters, including bankruptcy, litigation, arbitration and other adversarial proceedings, in which such clients' interests may be adverse to the Company or its affiliates. We ask that the Company, by countersigning this letter, waive any conflict that may inhere in our representation of other clients in such matters and agree not to seek to disqualify us from such representation, provided that such matters are not substantially related to any matter in which we represent the Company or such affiliate.

From time to time, the Firm may represent other clients seeking to acquire, make an investment in, or finance an acquisition of, or investment in, companies, securities or assets that the Company may also be considering for an acquisition or investment and with respect to which the Firm may be advising the Company. The lawyers at the Firm working

with the Company with respect to a prospective acquisition of, or investment in, a particular target company or its assets or securities (the "Target") will not participate in the concurrent representation of any other clients in connection with such acquisition, investment or financing with respect to such Target. It is our understanding that based on the foregoing, the Company has agreed to waive any conflict that may arise as a result of our representation of other clients in competitive situations as described above.

Our fees will be based on the time involved in the Engagement and our internal time charges. We will bill you at the applicable rate in effect as of the date any services are provided. In addition to our fees, we will bill the Company for items incident to the performance of our legal services. Unless special arrangements are otherwise made, fees and expenses of others will be billed directly to the Company and invoices from third parties may be forwarded to the Company for direct payment. We would expect ongoing reimbursement of our out-of-pocket expenses.

We will bill you for our professional services at such time as you and we arrange, which may be monthly or as we may otherwise agree. Please review our bills when you receive them so that any questions you may have are raised as quickly as possible. Our billing rates are based on the assumption of prompt payment and, accordingly, our statements are due upon receipt. We reserve the right to terminate our representation and charge late payment fees at any time if payment is not received within sixty days of the date of a statement. In the event we choose to terminate our representation, as permitted by the California Code, the Company agrees not to contest our withdrawal from any court or administrative proceeding. As set forth in Article 13 of the Business and Professions Code, the Company, in certain circumstances, will have the right to arbitrate fee disputes.

In certain transactions in which we represent the Company, the Company may request that a third party pay the bill for our services. Nevertheless, as our client the Company and not the third party shall be responsible for assuring that our fees and other charges are paid in a timely manner.

We hereby acknowledge receipt of the Company's $50,000.00 initial retainer payment to us (the "Initial Retainer Payment"). The Company's Initial Retainer Payment has been, and any future retainer payments will be, taken into our fee revenues and will not be held in a trust account. The amount of the Initial Retainer Payment was set to approximate our estimate of the fees and expenses to be accrued and unpaid between payment cycles, assuming the payment terms described above. Our estimate of expected fees and expenses may change based upon actual fees and expenses incurred or expected to be incurred, as applicable, and to that extent, the Company, by countersigning this letter, agrees to make additional retainer payments so that the aggregate retainer amount remains at or above our estimated fees and expenses expected to be accrued and unpaid between payment cycles. The Initial Retainer Payment, and any future retainer payments, will be applied against our final statement for this engagement or otherwise returned to you upon termination of our representation to the extent not applied to amounts then owing to us. Although the Company agrees to pay each of our statements for services upon receipt, we reserve the right to use any

part of the Initial Retainer Payment, or any future retainer payment, to satisfy a delinquent payment.

Any advice provided by us is for your benefit alone and must not be used or relied upon by third parties. The Firm's duty of care does not extend to third parties, except where such responsibility is accepted by us in writing.

You understand and agree that we may use cloud-based services to store client data, but will do so only to the extent that the stored data is at least as secure as the information in our current on-premise systems. This means (a) data will not be accessible by staff from the cloud services supplier unless required for the purpose of maintenance and support only, any access will be with prior permission only, and all activity will be logged; (b) data stored in the cloud will be protected using encryption; (c) all connections with the cloud-based solutions will be encrypted to a level that reflects the classification of the data being transmitted; (d) all compliance and regulatory requirements will be met with respect to the location (region, country) in which the data is physically housed; (e) we will ensure all suppliers understand our security requirements for client and personal data; (f) we will request that the cloud-based services providers agree that to the extent any client information or data is sought by subpoena, government request or otherwise, the service providers will promptly advise us of any such request; and (g) the contracts with all suppliers will contain either the right to audit the supplier or full access to a detailed independent audit at least once a year. If you require that we use a particular cloud storage provider that is not a preferred provider of the Firm, you agree that we assume no responsibility for the security of your data or the provider's security standards.

Please note that your instructing us or continuing to instruct us with respect to the Engagement or any other matters for which you retain us pursuant to the terms of the engagement letter will constitute your full acceptance of the terms set forth herein, including, without limitation, the waiver of conflicts provisions.

We will consider our attorney-client relationship to be terminated upon our completion of the services that you have retained us to perform. If you later retain us to perform further or additional services, our attorney-client relationship will be revived subject to the terms of this engagement letter, unless we then agree to modify such terms.

All records and files will be retained and disposed of in compliance with our policy in effect from time to time. It is not administratively feasible for us to advise you of the closing of a matter or the disposal of records. We recommend, therefore, that you maintain your own files for reference or submit a written request for your client files promptly upon conclusion of a matter.

You are encouraged to consult with other counsel of your choice on any of the terms of this letter, including the waiver provisions hereof.

This agreement shall be governed and interpreted in accordance with the laws of the State of California.

------------------

We look forward to working with you and your colleagues. If you have any questions about any of the arrangements detailed in this letter, please let us know.

Very truly yours,

Harrison "Buzz" Frahn

AGREED TO AND ACCEPTED BY:

MD Helicopters, Inc.

By: _____
Name: Jeffrey S. Adamcik