**Exhibit A**

1    JUDGE'S RULING
2         (Proceedings resumed at 2:02 p.m.)
3         THE COURT: Good afternoon, everyone. This is
4 Judge Owens. We are back on the record in MD Helicopters
5 and, in particular, I'm prepared to give my ruling on the
6 phase one issues.
7         Following the argument today the court was tasked
8 to answer three questions:
9         The first, whether the Netherlands, as a judgment
10 holder, has a valid and binding lien arising under Arizona
11 law that has properly attached to real property owned by the
12 debtors in Maricopa, Arizona.
13         Two, whether the debtors leasehold interest and
14 improvements thereon constitute the real property such that
15 the Netherlands lien would attach to them.
16         Three, if the answer to question two is yes
17 whether the Netherlands lien on the leasehold interest and
18 improvements is senior to any lien on the prepetition lenders
19 on such property.
20         No one contests that the answer to the first
21 question is yes. The Netherlands, as a judgment holder, has
22 a valid and binding lien under Arizona law that has properly
23 attached to real property owned by the debtors in Maricopa
24 County, Arizona. The state of the Netherlands obtained a
25 judgment in its favor from the Superior Court of Maricopa

1  County which was subsequently affirmed by the Arizona Supreme
2  Court.  It properly recorded the judgment in the real
3  property records of Maricopa County and, thus, pursuant to
4  Section 33.961-A of the Arizona revised statutes it has a
5  lien on the real property of the debtors in Maricopa County,
6  including any part of the real property as otherwise provided
7  by law.
8      The real issue for today then is question number
9  two, whether the debtor's leases of certain real property in
10 Maricopa County and certain improvements there on are the
11 debtors real property to which the Netherlands lien has
12 attached.  My conclusion is that they are not real property
13 and, therefore, the lien does not attach.
14     With this conclusion there is no need for me to
15 get to the question of -- excuse me, there is no need for me
16 to get to question three regarding the priority of liens.
17     With respect to the debtor's leases Arizona law
18 provides that they are personal property.  Specifically
19 Section 33-902(b) of the Arizona Revised Statutes provides
20 that "estates for years," like the debtor's leases, are of
21 chattels real.  As set forth by Black's Law Dictionary,
22 chattels real are a type of chattels along with, for example,
23 chattels personal.
24     Chattels are defined by Section 1-21530 of the
25 Arizona Revised Statutes as a type of personal property.

1  Accordingly, the judgment lien of the Netherlands could not
2  attach to the leases under Section 33-961(a) which only
3  permits judgment liens to extend to debtor's real property or
4  a part of that real property.
5           The court's interpretation of the plain language
6  of the Arizona Revised Statutes is buttressed by the 1957
7  Arizona Supreme Court's holding and analysis is <u>Harbel Oil</u>
8  <u>Company v. Steele</u> that can be found at 318 P.2d 359 on page
9  361.  There the court was tasked with determining whether an
10 assignment of a lease and sublease determined to be
11 instruments executed as security for a loan were real
12 property mortgages that did not allow for a summary
13 foreclosure, but rather required a court action.
14          In coming to its decision that the instruments
15 were mortgages of real property the Arizona Supreme Court
16 stated, on page 361, that:
17          "A leasehold estate for a term of years is an
18 interest in land capable of being transferred. It possesses
19 many characteristics of an ordinary chattel and has some
20 aspects of real property as it passes a present interest in
21 land."
22          Despite the foregoing, however, the court very
23 clearly held that estates for years are chattels real and
24 that chattels real are personal property.  Moreover, the
25 court also held that interest in real property are different

1  then real property.  Harbel Oil's ruling on these principals
2  is still good law and is mirrored by Sections 33-202 and 1-
3  215 of the Arizona Revised Statutes upon which my decision
4  relies.
5           The Netherland cites In Re Le Sueur's Fiesta
6  Store, Inc. found at 40 B.R. 160 and argues that the Le
7  Sueur's ruling supports a determination that leases of real
8  property are, in fact, real property of the lessee and not a
9  lessee's personal property.  I disagree.
10          The Bankruptcy Court in Le Sueur's tackled a
11 different issue then the character of a lease.  It
12 determined, under Arizona law, the proper place of filing to
13 perfect a security interest in a lease.  In answering that
14 question the court cited, approvingly, to the court in Harbel
15 Oil's statement that a lease transfers a present interest in
16 real estate and concluded for itself that a security interest
17 in a lease is an instrument; thus, effecting real property.
18 And that the proper location for perfection is a county
19 recorder's office pursuant to the Arizona statutes and not
20 with the Secretary of State.
21          In prescribing a proper process for the perfection
22 of security interests and lease hold interests the holding of
23 the Bankruptcy Court in Le Sueur's did nothing to change the
24 current statutorily prescribed character of leasehold
25 interests in Arizona as personal property.

1        The Netherlands attempt to include a leasehold
2   interest within the scope of "tenements and hereditaments" is
3   also unavailing.  The Netherlands appears to conflate a
4   leasehold interest in which a lessee or a tenant holds rights
5   with a lessor's or owner's interest in a lease as part of a
6   fee interest.  The Arizona cases that the Netherlands cite in
7   support of their position all involve the lessor's interest
8   in leases, not the lessee's leasehold interest and, thus, are
9   inapposite to the case at hand.  The Netherlands has not
10  cited any cases in which a lessee's leasehold hold interest
11  have been deemed to be a tenement or hereditament under
12  Arizona law.
13       Lastly, I reject the Netherlands contention that
14  Section 33-961 of Arizona Revised Statutes encompasses
15  leasehold interests because it provides for judgment liens to
16  attach to parts of real property.  Leases are not real
17  property and, therefore, cannot be a part of a real property.
18  They are personal property giving the lessee an interest in
19  real property and, as noted in Harbel Oil, interest in real
20  property are not the same as real property.
21       With respect to the improvements at issue I agree
22  with the debtors that the Netherlands lien cannot attach to
23  them because under Arizona law the improvements are either
24  real property owned by the City of Mesa during the term of
25  the lease or, alternatively, owned by MD Helicopters as its

personal property.  The default rule under Arizona law is that permanent structures upon leased premises and attached to realty are real property of the lessor.  That default, however, may be modified by clear and express language in a lease evincing in intent to treat the improvements as owned by the lessee. In such a case, however, the lessee would own the improvements as personal property.

These legal principals are fully explained by the Arizona Court of Appeals in <u>Maricopa County v. Novasic</u>, found at 473 P.2d 476, and <u>Cutter Aviation, Inc. v. The Arizona Department of Revenue</u>, found at 958 P.2d 1, as well as the Arizona Supreme Court's holding in <u>Marcos v. Texas</u> found at 251 P.2d 647.

The Netherlands does not object to these principals, but argues that if a lessee and lessor agree that a lessee is to own improvements, thus altering the default rule, the improvements can be held as the lessee's real property.  The Netherlands cites a series of cases on pages 22 and 23 of its reply brief to support this contention, but only one of them actually concluded as such and that case presents law and facts very different than those that have been presented to the court in this case.

In the 1969 case of <u>State v. Pioneer Citizens</u>, at 456 P.2d 422, the Supreme Court of Nevada held that a bank building built on a leased premises by a lessee bank was the

1 taxable real property of such bank during the duration of the
2 lease.  Under Nevada law the bank could not be taxed on its
3 personal property, but its real property was taxable.  So in
4 order for it to obtain valuable tax benefits the bank wanted
5 the building to be its real property for the duration of the
6 lease.  The county assessor assessed the building and
7 directed the bill to the lessor.
8         The question before the court was whether the bank
9 was entitled to have the building assessed to it as its real
10 property during the lease.  The court concluded in the
11 affirmative.  It examined the lease and determined that the
12 parties intended for the bank building to not become part of
13 the lessor's realty until the lease terminated.
14         Critically, in determining that the building was
15 the real property in the hands of the bank, the court looked
16 to the Nevada law which defined real estate as, among other
17 things, buildings for tax purposes.  Similar Nevada law has
18 not been cited to me in this case and the remainder of the
19 Netherlands cases contained analysis consistent with the
20 court's ruling today; in other words, that if a lessee were
21 to own improvements it would own them as personal property.
22         Even if this conclusion is wrong as a matter of
23 law, however, the lease terms at issue here share striking
24 similarities with those in Novasic and Cutter Aviation where
25 the courts both held that the improvements were owned by the

1   lessor.  The lease in Novasic strictly limited the uses to
2   which the tenant could apply to the building at issue and
3   prohibited the tenant from subleasing the building without
4   the lessor's consent.  Further, the tenant in Novasic was
5   required to provide insurance on the building that named the
6   lessor as insured and the lease provided that upon
7   termination of the lease the building became the property of
8   the city.
9           The same provisions in the Novasic lease were also
10  present in the Cutter Aviation leases.  The Cutter Aviation
11  leases limited the uses to which the improvements could be
12  put; require that the lessee's maintain insurance on the
13  improvements and designate the city as the named insured;
14  prohibited transfer or assignment of the leasehold interest
15  without the City's prior written consent; and upon
16  termination the improvements became the property of the city.
17          Just like the leases in Novasic and Cutter
18  Aviation the relevant leases here contain no language that
19  clearly and expressly provides that the improvements are to
20  be treated as being owned by the debtors.  In fact, the
21  leases contain the same provisions that lead the courts in
22  Novasic and Cutter Aviation to conclude that the improvements
23  were owned by the city.
24          For example, under the terms of the relevant
25  headquarters in Madison Hanger lease the debtors can use the

1  property and the improvements only for operation of
2  helicopter manufacturing and service operations.  They cannot
3  make further improvement without Mesa's consent.  It must
4  maintain insurance that is acceptable to the city and
5  designate them as named insured.  They cannot assign or
6  sublet the leases without prior written consent of the city.
7  And upon termination of the leases the improvements become
8  the property of the lessor.
9           The relevant provisions of the leases are Sections
10 3, 9, 7, 10 and 22 of the headquarters lease and Sections 4,
11 7, 10, 12, 28 of the Hanger lease.  These provisions are not
12 consistent with the rights of control and disposition which
13 are necessary features of ownership as made clear by the
14 court in Cutter Aviation.
15          The Netherlands points to Section 26 of the
16 headquarters lease and argues that this section grants MDHI,
17 effectively, a condemnation award upon involuntary
18 termination of the lease by Mesa.  The debtors dispute such
19 characterization contending that it is more appropriately
20 considered reimbursement for costs and compensation for
21 depriving MDHI of occupancy and use of the Mesa improvements
22 during the lease term.  If anything, even if the provision
23 has the meaning that the Netherlands urges, the other
24 provisions of the lease, contradictory to ownership, would
25 give rise to an ambiguity requiring this court to conclude

1  that the improvements belong to the City of Mesa.

2        The quitclaim deed to improvements presents a
3  similar issue.  The terms of the deed provide that the City
4  of Mesa transferred to the debtors all rights, title and
5  interest in the improvements, but subject to the terms and
6  conditions of the leases which indicate that the improvements
7  stay as property of the landlord.

8        If I am incorrect in my conclusion that the
9  quitclaim does not transfer ownership, however, its conflict
10 with the lease terms indicating that the lessor owns the
11 improvements give rise to an ambiguity cutting against a
12 finding that the debtors own the improvements.

13       In sum, there is an absence of clear and express
14 language in the leases that invents an intent to treat the
15 improvements a property of the debtors and, therefore, they
16 are owned by the city.  Accordingly, in light of the
17 foregoing, the court finds that the Netherlands lien, despite
18 being a valid lien that arose by operation of Arizona law and
19 recorded in the real property records of Maricopa County,
20 does not attach to the debtor's leasehold interests and
21 related improvements located in such county as the leases and
22 improvements are not real property of the debtors.

23       As I mentioned, this conclusion obviates the need
24 for the court to address any priority questions.  I think at
25 this point the parties should meet and confer on an

1  appropriate form of order consistent with the court's ruling
2  today and submit it under certification of counsel for my
3  consideration and entry.
4              Unless there's any questions I will direct the
5  parties to go ahead and negotiate a form of order, and you
6  can submit it under certification of counsel.  If any issues
7  arise in the papering of that order you're welcome to contact
8  Chambers and we can schedule a status conference on that form
9  of order.
10             Are there any questions?
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25