# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MD HELICOPTERS, INC., *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10263 (KBO)<br><br>(Jointly Administered)<br><br>**Re: D.I. 221, 258, and 303** |

## EMERGENCY MOTION FOR STAY PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007

The State of the Netherlands (the "Netherlands") appealed (the "Appeal") the *Order Resolving Netherlands Lien Dispute Under the Final DIP Order* [D.I. 303] (the "Order"), which embodied a May 26, 2022 bench decision (the "Ruling"), and hereby requests a stay pending Appeal ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

1. The Bankruptcy Court should grant a stay because the Order imposes significant and irreparable harm on the Netherlands and there is sufficient likelihood of success on the Appeal under the relevant Third Circuit standard. The Bankruptcy Court's Order and Ruling incorrectly held that the Debtors' leasehold interests and improvements were "personal," rather than "real," property, and, therefore, that the Netherlands Lien did not attach to anything owned by the Debtors. The direct

---

[1] The two debtors in these chapter 11 cases ("Chapter 11 Cases") are MD Helicopters, Inc. ("MDHI") and Monterrey Aerospace, LLC (with MDHI, the "Debtors"), and their address is 4555 E. McDowell Road, Mesa, AZ 85215.

consequence of the Court's decision on this unsettled issue of state law is to strip the Netherlands of all rights it has as a secured creditor under Arizona law, and likely reduce the value of its judgment against the Debtors to zero. There being no objective need for exigency, the Court should grant a stay in order to allow the District Court to consider and grant a motion to certify the issue to the Arizona Supreme Court so it can address this issue of Arizona law.

2. The Ruling misconstrues both the relevant judgment lien statute (the "Arizona Judgment Lien Statute") and the Arizona court decisions in *Harbel Oil* and *Le Sueur*,[2] which held that leasehold interests are capable of being characterized as both personal and real property because such interests "[possess] many characteristics of an ordinary chattel and [have] some aspects of real property as it passes a present interest in land." 318 P.2d 359, 361 (Ariz. 1957). The dual nature of leasehold interests aside, both Arizona courts nonetheless held that for leaseholds to be properly conveyed, such interests should be viewed as "real property" and any transfers recorded in the real property records.

3. The Netherlands respectfully submits that the reason for these holdings is so judgment liens can attach to these interests to protect creditors such as the Netherlands; filing these interests in the recorder's office would and could

---

[2] *Harbel Oil Co. v. Steele,* 318 P.2d 359 (Ariz. 1957); *In re Le Sueur's Fiesta Store, Inc.,* 40 B.R. 160, 162 (Bankr. D. Ariz. 1984).

serve no other purpose. *Id.* at 363. The Bankruptcy Court misconstrued these aspects of the Arizona rulings, and instead read them as holding that leasehold interests are exclusively "personal property." That was error.

4. In examining, in turn, whether the Netherlands Lien attached to the Mesa Improvements, the Bankruptcy Court erroneously held that such improvements are either real property owned by the City of Mesa, as lessor (*i.e.*, not Debtor property at all), or personal property in the Debtors' hands. The Bankruptcy Court found that nothing in the leases suggested that this default rule was contracted away such that the Debtors owned the Improvements as real property. But the Bankruptcy Court did not give adequate consideration to relevant lease agreements, the Debtors' own treatment of the Improvements in the Sale Process, and the Quitclaim Deeds, which conveyed the Improvements to the Debtors. Each of these factors shows an intent to contract around the default rule and to deem the Improvements to be "real property" that currently belong to the Debtors.

5. Because the Netherlands Lien has been deemed to attach to no Debtor assets, and because the Debtors and DIP Lenders will argue the Order eliminates their obligation to make the Auction Deposit required by Final DIP Order ¶ 37(i), the Netherlands will be irreparably harmed unless the *status quo ante* can be preserved while it pursues its appellate remedies. The Netherlands is entitled to a stay because (i) it is likely to succeed on the merits; (2) it will be irreparably injured

absent a stay; (3) issuance of the stay will not substantially injure the other parties; and (4) the public interest favors issuance of the stay to ensure that Arizona law is correctly construed for future application.

6. Here, all four factors favor issuance of a stay. As to the merits, the Netherlands has "a reasonable chance, or probability, of winning" on appeal. However, this is also a circumstance, under the Third Circuit's "sliding-scale" approach, where the scope of the harm to be suffered by the Netherlands if no stay is granted and the seriousness of the proper resolution of the issues on appeal for the public interest permit the issuance of stay upon demonstration of a lower "level" or "degree" of the likelihood of success factor.

7. **Irreparable Harm.** The Netherlands will be irreparably harmed if no stay is granted because its judgment lien will be deemed inoperative and it will thereby be stripped of the full value of its collateral. Barring a stay, these assets will soon be sold by the Debtors, along with substantially all the Debtors' other assets, as part of the Sale Process. Without stay relief, the proceeds from the Sale will not be used to satisfy the Netherlands Lien, and the Netherlands will see no recovery, and the Debtors proposed schedule will enable all this to happen before the Appeal can be heard or considered. Only a stay will prevent this.

8. **No Harm to Other Parties.** None of the other parties would be harmed if the relief requested by the Netherlands is granted. The Netherlands seeks

4

a limited stay that could be implemented if the Sale is permitted to proceed, as contemplated in the Final DIP Order, with an escrow or reserve established in an amount equal to the Netherlands Claim, with the full amount thereof, plus accrued interest, to revert to Debtors upon unsuccessful conclusion of the Appeal.  Neither the Debtors nor any of their secured creditors will be materially harmed if such process is put in place.

9. **Public Interest Served by Stay.** Lastly, the public interest would be served by a correct and logically consistent interpretation of Arizona law.  The key issue—whether the Netherlands Lien attaches to any debtor property—is a state law question for which there is no controlling decision applicable to the Arizona Judgment Lien Statute.  The Arizona Supreme Court should be given an opportunity to weigh in on the correct outcome.  For this reason, the Netherlands simultaneously seeks in the District Court certification of the issue directly to the Arizona Supreme Court.[3]  An expedited ruling from that Court on this and related issues will enable prompt resolution of the Appeal and guide further proceedings in these Chapter 11 Cases.

---

[3] A copy of the Netherlands' Emergency Motion for Order Certifying State Law Question to Supreme Court of Arizona [Dist. Ct. Dkt. No. 4) is annexed hereto as Exhibit A.

## BACKGROUND

### A. Debtors and Chapter 11 Cases

10. On March 30, 2022, the Debtors filed voluntary petitions commencing the Chapter 11 Cases. The Court granted, on an interim basis, a motion seeking approval of a debtor-in-possession financing facility (the "DIP Motion"). [D.I. 114.] The Debtors also filed a motion (the "Bid Procedures Motion") seeking approval of a process (the "Sale Process") for the sale of all or substantially all the Debtors' assets. [D.I. 28.]

11. The Debtors, the DIP Lenders, Prepetition Lenders, and the Netherlands thereafter agreed to material revisions to both the Final DIP Order and the Bid Procedures Order, which addressed certain of the Netherlands' objections and preserved the rest for future resolution in connection with a process to adjudicate the validity, extent and priority of the Netherlands Lien.

### B. Netherlands Claim and Judgment

12. The Netherlands had objected to the DIP Motion due to its potential impact on the Netherlands Judgment, which it had obtained in Netherlands, domesticated in Arizona Superior Court, and recorded in the amount of $15,539,198 in the Maricopa County Recorder's Office on August 3, 2021. (D.I. 221 Ex. C.). The Final DIP Order provided the value of the Judgment was at least $16.1 million (the "Netherlands Claim").

### C. Debtor Real Estate Assets

13. The Debtors' corporate headquarters and manufacturing facility is located in Mesa, Arizona, at an airport called "Falcon Field," and this facility occupies two million square feet and is located in Maricopa County, where the Netherlands Judgment was docketed. (D.I. 19 ¶ 24; D.I. 221 Ex. D.)

14. The Debtors lease the bulk of the land pursuant to the terms of a long-term ground lease from the City of Mesa (the "Mesa Ground Lease"), and under the terms of that ground lease and various Quitclaim Deeds, constructed and own the various improvements constructed on the land occupied by the Mesa facility (the "Mesa Improvements," and together with other leases for related facilities, the "Mesa Real Estate Assets").

15. In connection with the Sale Process, the Debtors propose to sell the Mesa Real Estate Assets under an Asset Purchase Agreement (the "APA"). (D.I. 28 ¶ 24.) The APA proposes to sell, among other assets, the Debtors' "Leased Real Property," which is defined to include "any real property leased, subleased or which any Seller has the right to use or occupy, pursuant to a Lease." (*Id.* § 3.2.)

### RELIEF REQUESTED

16. The Netherlands requests under Bankruptcy Rule 8007 a stay of the Order pending Appeal. The effect of this would be to leave the process in place under the Final DIP Order that would permit the Debtors' sale to proceed as

contemplated in the Final DIP Order, but would also preserve the *status quo ante* pending disposition of the Appeal.

**BASIS FOR RELIEF REQUESTED**

17. In determining whether to grant a stay pending appeal, courts within the Third Circuit consider: (1) whether the movant is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; and (4) where the public interest lies. *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

18. In seeking to address these factors, the Third Circuit has held that courts must "balance[e] them all" and "consider the relative strength of the four factors." *Revel*, 802 F.3d at 568; *Brady v. Nat'l Football League,* 640 F.3d 785, 789 (8th Cir. 2011); *see also* 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3954 (4th ed. 2008).

19. The "most critical" factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm—the latter referring to "harm that cannot be prevented or fully rectified" by a successful appeal. *Nken v Holder,* 556 U.S. 418, 434 (2009).

8

20. As to likelihood of success, as construed in the Third Circuit, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir.2011) (en banc). Thus, while it "is not enough that the chance of success on the merits be 'better than negligible,'" *Nken,* 556 U.S. at 434, the likelihood of winning on appeal need not be "more likely than not." *Singer Mgmt. Consultants,* 650 F.3d at 229; *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C.Cir.1977) (noting that trouble with "strict 'probability' requirement is [that] it leads to an exaggeratedly refined analysis of the merits at an early stage in the litigation.").

21. On the second factor, the applicant must "demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay]." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) (emphasis in text). While a reference to "likelihood" of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm the use of "likely" means more apt to occur than not. *See generally Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765, 788 (7th Cir.2011) (holding that for harm to be likely "there must be more than a mere possibility that harm will come to pass . . . but the alleged harm need not be occurring or be certain before a court may grant relief").

9

22. Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken,* 556 U.S. at 435. The court must weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities, thereby taking into account how a stay decision has "consequences beyond the immediate parties." *Roland Mach.,* 749 F.2d at 388.

23. However, in deciding how strong a case a stay movant must show, the Third Circuit has viewed favorably what is often referred to as the "sliding-scale" approach. *See Constructors Ass'n of W. Pa. v. Kreps,* 573 F.2d 811, 815 (3d Cir. 1978); *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.,* 501 F.2d 917 (3d Cir. 1974). Under it, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Mohammed,* 309 F.3d at 101 (quoting *Wash. Metro.,* 559 F.2d at 843). Stated another way, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor." *Roland Mach.,* 749 F.2d at 387.

24. Here, all four factors favor issuance of a stay. As to the merits, the Netherlands has, as set forth below, "a reasonable chance, or probability, of winning" on appeal. However, this is a circumstance, under the Third Circuit's

"sliding-scale" approach, where the scope of the harm to be suffered by the Netherlands if no stay is granted and the seriousness of the proper resolution of the issues on appeal for the public interest permit the issuance of stay upon demonstration of a lower "level" or "degree" of likelihood of success. *Mohammed,* 309 F.3d at 101 (quoting *Wash. Metro.,* 559 F.2d at 843).

## A. <u>Irreparable Harm</u>

25. The scope of the harm that will flow to the Netherlands if no stay is granted will be extraordinary and irreversible. Without a stay, the Netherlands will be irreparably harmed because the sale of the Mesa Real Estate Assets will go forward, and the Netherlands, as a secured creditor, will be stripped entirely of the value of its collateral. More specifically, without recognition of the Netherlands Lien, the Netherlands will not be able credit bid at the Auction in order to protect its collateral, the Mesa Real Estate Assets, against the credit bid right granted to the DIP Lenders under the Final DIP Order. The Mesa Real Estate Assets, along with substantially all of the Debtors' assets, will be sold and the Netherlands will receive none of the proceeds to which it would otherwise have been entitled under the Netherlands Judgment. All of these rights are core rights afforded secured creditors, the elimination of which rises to a constitutional violation. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982) ("The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation.")

(citing *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935)). The Netherlands' Appeal squarely implicates those constitutional rights.

26. Without stay relief, and the opportunity to challenge the Ruling on appeal, the Netherlands will once again be facing a zero recovery and find itself in a quandary that has clear constitutional dimensions. The Bankruptcy Code seeks to protect the expectations of secured parties in a number of ways. Adequate protection, under sections 361, 363, and 364 of the Bankruptcy Code, for example, is meant to insulate a secured creditor from the negative effects of a decline, or threatened decline, in the market value of its collateral as a result of the automatic stay or from the use, sale or lease of the collateral by the debtor in possession. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc's., Ltd.*, 484 U.S. 365, 372 (1988); *In re Energy Future Holdings Corp.*, 546 B.R. 566, 581 (Bankr. D. Del. 2016).

27. The legislative history makes clear that the protections afforded by the Bankruptcy Code to secured creditors are rooted in the Fifth Amendment protection of property interests; it is intended to ensure that secured creditors are not "deprived of the benefit of their bargain" simply because the debtor decided to file for bankruptcy. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 339. A secured creditor should receive the same measure of protection in bankruptcy that they would have received outside bankruptcy and their interest in the collateral should not be

12

harmed as a result of the Debtors' bankruptcy cases. *See In re Bobroff*, 32 B.R. 930, 932 (Bankr. E.D. Pa. 1983).

28. Here, if the Netherlands is effectively deprived of its appellate rights and relegated to status of an unsecured creditor—even though it holds what even the Bankruptcy Court recognized as a lien properly perfected under the Arizona Judgment Lien Statute—it will be harmed in a way material and irreparable enough to warrant the issuance of a stay pending appeal.

**B.    Public Interest Will Be Served**

29. Consideration of the public interest also weighs in favor of granting the requested limited stay pending appeal. The public interest would be served by a correct and generally applicable interpretation of Arizona Judgment Lien Statute, which is best determined by the Arizona Supreme Court.

30. Judgments, both domestic and foreign, are regularly recorded in the Maricopa and other Arizona County Recorder's offices, giving rise to liens the parameters of which should be clear to all parties whose claims are secured by such liens. No Arizona court has to date ruled on the precise issue that the Bankruptcy Court decided so confidently against the Netherlands in the Ruling. If, as the Bankruptcy Court suggests, no other reading of the Arizona Judgment Lien Statute is possible, notwithstanding contrary language in *Harbel*, *Le Sueur* and other cases, the Arizona Supreme Court should be given an opportunity to weigh in definitively

13

on the question. To make that possible, the Netherlands is simultaneously seeking in the District Court certification of the issue of the attachment of the Netherlands Lien directly to the Arizona Supreme Court. The Netherlands has sought expedited consideration of that certification motion (which the Debtors likewise oppose) and, at minimum, the Court should stay the Order to the allow the District Court to consider that motion.

C. **<u>Success on the Merits</u>**

31. In light of the foregoing irreparable harm and public interest considerations, the Netherlands can satisfy the likelihood of success prong of the Bankruptcy Rule 8007 standard, by demonstrating far more than the lower "level" or "degree" of probable success required by the Third Circuit's "sliding-scale" approach in such circumstances. The Netherlands has "a reasonable chance, or probability, of winning" because the Bankruptcy Court incorrectly held that under Arizona law both leasehold interests and any related improvement are personal property and, thus, not subject to the Arizona Judgment Lien Statute. *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir. 2011).

32. By so holding, the Bankruptcy Court ignored Arizona's application of its own law and statutes to embrace an alternate theory that portrayed a long-established manufacturing facility, comprised of several large buildings at an airport in Mesa, Arizona, as "personal property." Under Arizona law, the Mesa Leases and

Mesa Improvements are "real property" within the meaning of the Arizona Judgment Lien Statute[4].

33. The Bankruptcy Court committed multiple reversible errors, including, without limitation, the following:

> ➢ **Mesa Leases**. The Bankruptcy Court erred in accepting the Debtors' contention that the outcome turned on the "real property" vs. "chattel real" distinction. The distinction that the Bankruptcy Court embraced failed to consider that "chattel real" is a legal term that means "***a real-property interest***" less than a freehold or fee, like a leasehold estate." *See Black's Law Dict. (*11th ed. 2019) (emphasis added). The Bankruptcy Court held a "chattel real" is a synonym of "chattel" and thus personal property by ignoring the "real" portion of the legal term of art to support the conclusion that at "common law" the term "chattel real" has no distinct meaning and simply means "chattel" or personal property. (Ruling at 2:17-23.)

> ➢ The Bankruptcy Court also erred by ignoring the numerous court decisions that have adopted a purpose-focused approach to the real property /chattel real analysis. *See, e.g., Resol. Tr. Corp. v. Binford*, 844 P.2d 810, 819 (N.M. 1992) ("Due to the hybrid nature of leaseholds, the issue is not whether a leasehold interest is real or personal property in the abstract, but whether it is real or personal property for the issue at hand.").

---

[4] The Arizona Judgment Lien Statute (*i.e.,* section 33-961 of the Arizona Revised Statutes) provides that upon proper recording in the relevant county recorder's office of a judgment—like the Netherlands Judgment—such judgment "becomes a lien on the real property of the judgment debtor, *including any part of the real property of the judgment debtor as otherwise provided by law*." Ariz. Rev. Stat. 33-961(A) (emphasis added). The italicized language was added to the statute in 2015 and should have been accorded greater weight as language that expands the term "real property" in the Arizona Judgment Lien Statute beyond the strict-constructionist application given it in the Ruling.

- The Bankruptcy Court also incorrectly held that the Mesa Leases are not properly subject to the Netherlands Lien by failing to acknowledge that the Arizona Property Law defines "real property" as "coextensive" (e.g., not limited to) with, among other things, "tenements" and "hereditaments," which courts and other authorities have deemed to include "leasehold interests" and other lease-related rights. (Ruling at 5:1-12.)

- The Bankruptcy Court also erroneously rejected the contention that the Judgment Lien Statute includes leasehold interests and other lease-related rights within its scope by virtue of Section 33-961(A)'s last qualifying clause, which sweeps into the ambit of "real property" any "part of the real property of the judgment debtor as otherwise provided by law." Ariz. Rev. Stat. § 33-961(A). (Ruling at 5:1-12.) Based upon basic principles of statutory construction, this clause is best understood as intended to capture any real property-related rights that a judgment debtor may have that, for any reason, might not be unambiguously included within the term "real property." In short, the Arizona Judgment Lien Statute was broadened by the inclusion of this language.

- Finally, the Bankruptcy Court erred in failing to apply the Judgment Lien Statute to leasehold interests based on Section 33-202's definition of "estate for years" (*i.e.*, a leasehold interest) as "chattel real." "Chattel real" have, when circumstances warranted, been held to be "real property," and not "personal property," which has been most often the case when the perfection of liens in, the transfer of, or the execution upon chattel real has been at issue. The Arizona Judgment Lien Statute operates in much the same context, so there is every reason to treat chattel real, such as the Mesa Leases, as "real property" for purpose of the statute's application.

- **Mesa Improvements**. On the Mesa Improvements side, the Bankruptcy Court erred in accepting the Debtors' contention that either (i) the Mesa Improvements are owned by the City of Mesa in its capacity as lessor and, thus, are Mesa's real property; or (ii) the Mesa Improvements are owned by MDHI, but are, according to the Bankruptcy Court, necessarily "personal property" as a result, and thus not subject to the Netherlands Lien. (Ruling at 5:21-6:7.) The Bankruptcy Court erred in so finding for a number of reasons, not the

least of which is the fact that, in connection with the Sale Process, the Debtors are holding themselves out as the owner of, ***and claimed the ability and intention to sell***, MDHI's "Leased Real Property," which is defined to include "any buildings, fixtures and improvements located on or attached to such real property."

➢ The Bankruptcy Court failed to properly acknowledge that applicable precedent clearly permits lessor and lessee to allocate between themselves "ownership" of improvements during the term of lease. Here, such an assignment of "ownership" of the Mesa Improvements to MDHI was intended and fully implemented in quitclaim deeds.

➢ In this connection, any ambiguity as to MDHI's ownership of the Improvements is entirely eradicated by a combination of the Quitclaim Deeds and the Sale Process. In 2007, as the Bankruptcy Court acknowledged, Mesa executed quitclaim deeds purporting to convey to MDHI, among other things, all of its "right, title and interest in any and all buildings, structures, improvements, fixtures now or at any time hereafter situated on the Land." (D.I. 221 Ex. I; D.I. 246 Exs. 4, 5.) Similarly, in the context of the Sale Process, the Debtors are holding themselves out as the owners, and seeking to sell, both the Mesa Leases and the Mesa Improvements.

➢ Assignment of ownership of the Mesa Improvements to MDHI during the term of the Mesa Leases did not transform the Mesa Improvements into "personal property" that, by necessary implication, is not subject to the Netherlands Lien. This reasoning is inconsistent with a long line of cases that hold that, "[a]s a general rule, parties as between themselves, may, in their dealings with chattels annexed to, or used in connection with, real estate, fix on them whatever character, as realty or personalty, on which they may agree*." Marcos v. Texas Co.*, 251 P.2d 647, 649 (Ariz. 1952).

### D. <u>No Harm to Other Parties</u>

44. None of the other parties would be harmed if the relief requested by the Netherlands is granted. The Netherlands seeks a stay that would permit the Sale

17

to proceed as contemplated in the Final DIP Order pending conclusion of the Appeal, which would determine whether any escrowed funds would be paid to the Netherlands upon full adjudication of its claim or revert back to the Debtors should the Appeal be finally decided against the Netherlands.

45. Neither the Debtor nor any of its secured creditors will be materially harmed if such process is put in place. Under such circumstances, the "traditional stay inquiry" that "calls for assessing the harm to the opposing party" leads to the conclusion that issuance of a stay in the Netherlands' favor would not have "consequences beyond the immediate parties." *Revel.,* 802 F.3d at 569.

E. **No Bond Should be Required**

46. Bankruptcy Rule 8007(c) provides that the "district court, BAP, or court of appeals may condition relief on filing a bond or other security with the bankruptcy court." Fed. R. Bankr. P. 8007(c). No such bond should be required in this case.

47. The bond or security is intended to protect the opposing party or parties, which may include the bankruptcy estate generally, against loss that may be sustained as a result of a failed appeal. *See In re 160 Royal Palm, LLC*, No. 18-19441-EPK, 2019 WL 1224600, at *3 (Bankr. S.D. Fla. Mar. 14, 2019), *aff'd,* 600 B.R. 119 (S.D. Fla. 2019), *aff'd,* 785 F. App'x 829 (11th Cir. 2019); *In re Tribune Media Co.*, 973 F.3d 272, 281 (3d Cir. 2015). The posting of bonds in connection

with stays pending bankruptcy appeals is discretionary. *See In re Yormak*, No. 2:15-BK-04241-FMD, 2021 WL 5298533, at *4 (Bankr. M.D. Fla. Nov. 9, 2021) ("[A] bond under Rule 8007(a)(1)(B) is discretionary, not mandatory, and a bankruptcy court may enter a stay pending appeal without a bond").

48. Here, none of the other parties would be harmed if the stay requested by the Netherlands is granted. The Netherlands seeks a limited stay that applies only to the Mesa Real Estate Assets and could be fully implemented if the Sale is permitted to proceed as contemplated under the Final DIP Order, with Sale proceeds equal in value to the face amount of the Netherland Claims are set aside in an escrow account, with the full amount thereof, plus accrued interest, to revert to Debtors upon unsuccessful conclusion of the Appeal.

49. In addition, the Netherlands, as a sovereign state, should not be required to post a bond on comity principles and on the theory that it would not present a credit risk as to any damages caused to the appellees. *See Novenergia II – Energy & Env'l (SCA) v. Kingdom of Spain*, 18-cv-01148 (TSC), 2020 WL 417794, at *6 (D.D.C. Jan. 27, 2020) (noting that "courts in this Circuit generally have not required foreign sovereigns to post security" because of the presumption of solvency and compliance with court orders); *Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 118 n.10 (D.D.C. 2015) (same).

50. Pursuant to Bankruptcy Rule 8015(h), this Motion contains 4,691 words, excluding parts of the document exempted by Bankruptcy Rule 8015(g).

**WHEREFORE,** the Netherlands respectfully requests that the Court grant a stay pending appeal.

| | |
|---|---|
| Dated: June 2, 2022<br>Wilmington, Delaware | **DLA PIPER LLP (US)**<br><br>By: /s/ *R. Craig Martin*<br>R. Craig Martin (DE 5032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5700<br>Facsimile: (302) 394-2341<br>Email: craig.martin@us.dlapiper.com<br><br>-and-<br><br>Dennis O'Donnell (Admitted *Pro Hac Vice*)<br>James E. Berger (Admitted *Pro Hac Vice*)<br>Charlene C. Sun (Admitted *Pro Hac Vice*)<br>**DLA PIPER LLP (US)**<br>1251 Avenue of the Americas, 27th Floor<br>New York, New York 10020-1104<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br>Email: dennis.odonnell@us.dlapiper.com<br>   james.berger@us.dlapiper.com<br>   charlene.sun@us.dlapiper.com<br><br>*Attorney for State of the Netherlands* |