IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MD HELICOPTERS, INC., *et al.*,[1] | : | Case No. 22-10263 (KBO) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Re: D.I. 305 & 306 |

## DEBTORS' OBJECTION TO MOTION TO SHORTEN
## NOTICE WITH RESPECT TO MOTION FOR STAY PENDING APPEAL

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby submit this objection ("**Objection**") to the *Motion to Shorten Notice with Respect to Motion for Stay Pending Appeal* [D.I. 306] (the "**Motion to Shorten**") filed by the State of the Netherlands (the "**Netherlands**"). In support of this Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1. Through the Motion to Shorten, the Netherlands seeks a fire-drill briefing and hearing schedule on the *Emergency Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007* [D.I. 305] (the "**Stay Motion**"), which the Netherlands filed on June 2, 2022—a week after this Court issued its bench ruling on the first phase of the Lien Determination Process (as defined below). But there is no fire. Not only has the Netherlands failed to articulate any harm whatsoever that could befall it before a hearing on regular notice, it knew when it agreed to the schedule on the underlying dispute that there was a risk that it would

---

[1] The two Debtors in these cases are MD Helicopters, Inc. ("**MDHI**") and Monterrey Aerospace, LLC ("**Monterrey**"), and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MDHI's taxpayer identification number are 4088. Monterrey has not been assigned a taxpayer identification number as of the date hereof.

need to file a stay motion should it lose on such dispute and thus be subjected to the 14-day notice period set out under Rule 9006-1(c)(i) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

2. The Motion to Shorten does not provide any valid basis for shortening the already-brief 14-day notice period for the hearing on the Stay Motion (the "**Stay Hearing**"). In support of its position that such emergency relief is necessary, the Netherlands advances just one argument: absent such emergency stay relief, the sale of substantially all of the Debtors' assets (the "**Sale**") will go forward and "the proceeds from the Sale will not be used to satisfy" the Netherlands' judgment lien on the real property of MDHI (the "**Netherlands Lien**"). Mot. to Shorten ¶ 8. The proceeds from the Sale, however, will not be distributed until the Sale closes and that will not occur within the next 14 days. In fact, the hearing to approve the sale (the "**Sale Hearing**") will not be held until June 17, 2022—which is 15 days from the date on which the Netherlands filed the Stay Motion and the Motion to Shorten—and the earliest the Sale could conceivably close is weeks from the date on which this Court actually approves the Sale.[2]

3. In addition, the Motion to Shorten not only fails to identify any emergency, but also contradicts the agreed-upon schedule for the Lien Determination Process set out under the Final DIP Order (as such terms are defined below). Pursuant to that schedule—which was extensively negotiated and agreed upon by the Netherlands and the Debtors—had the Netherlands not lost on the first phase of the Lien Determination Process, the hearing for the second phase of the Lien

---

[2] Nevertheless, understanding the demands on this Court's time and the Netherlands' desire to have the Stay Motion heard before this Court has the opportunity to approve the Sale, the Debtors are amenable to having the Stay Motion heard just before the Sale Hearing on June 17, 2022—i.e. as the first item on the agenda that day—which counsel to the Debtors communicated to counsel to the Netherlands before the Netherlands filed the Motion to Shorten. The Netherlands, however, did not agree.

2
US-DOCS\132467111.6#126902695 v1

Determination Process would have been held on June 14, 2022. That is only two days shorter than the 14-day notice period required for the Stay Motion and only three days before the Sale Hearing. It is, to say the least, befuddling that what was once the agreed-upon timeline for determining the Netherlands' rights with respect to the Sale has turned into an emergency solely because the Netherlands did not get its way in the Lien Determination Process.

4. It was, of course, always a potential outcome that the Debtors would prevail at either phase of the Lien Determination Process, and the Netherlands expressly agreed on the consequences of such an outcome. And the Netherlands knew that, if it lost at either phase, it would potentially seek a stay pending appeal of the decision and the Debtors would in all likelihood proceed with the Sale on the timeline set forth in the Bid Procedures. Indeed, the fundamental agreement underpinning the heavily-negotiated Lien Determination Process was that—regardless of which party prevailed—all parties would benefit from obtaining certainty as to the Netherlands' rights in a manner that permitted the Sale to proceed along the timeline set forth in the Bid Procedures (as defined below), unimpeded by the lien dispute. But only now that the Netherlands did not get the ruling from this Court that it wanted, it asks this Court to expedite consideration of the Stay Motion, which in turn asks the Court to rewrite the parties' agreement in a manner that would be extraordinarily disruptive to the Sale process at this critical juncture—less than a week before the Auction scheduled for June 9, 2022. The Netherlands should not be permitted to blatantly interfere with the Sale just because a completely foreseeable outcome has occurred.

5. Against this backdrop, it is clear that there is no valid basis to deprive the Debtors of the full notice period to object to the Stay Motion. Accordingly, the Debtors respectfully request that this Court deny the Motion to Shorten and schedule the Stay Hearing as the first item on the

3
US-DOCS\132467111.6#126902695 v1

agenda for the date on which the Sale Hearing is scheduled (i.e., June 17, 2022) or some other date that complies with the 14-day notice requirement set out under Local Rule 9006-1(c)(i).

## BACKGROUND

### A. Chapter 11 Cases

6. On March 30, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended from time to time, the "**Bankruptcy Code**").

7. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

8. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

### B. The Auction and Sale

9. On the Petition Date, the Debtors filed a motion seeking authorization to establish bid procedures (the "**Bid Procedures**") with respect to a competitive sale and marketing process for substantially all of their assets and approval of the sale to MDH HoldCo, LLC (the "**Stalking Horse Bidder**") or such other buyer providing a higher or better offer for the assets [D.I. 28].

10. On April 26, 2022, this Court entered an order [D.I. 206], approving the Bid Procedures and timeline for the Sale, which contemplates that an auction for the assets will be held on June 9, 2022 (the "**Auction**") and the Sale Hearing will be held on June 17, 2022.

### C. The Final DIP Order and Netherlands Lien Dispute

11. On April 26, 2022, this Court entered a final order that, among other things, authorized the Debtors to obtain postpetition financing and use collateral (including cash

4

collateral) [D.I. 205] (the "**Final DIP Order**"). Pursuant to an agreement struck between the Netherlands and the Debtors, the Final DIP Order granted adequate protection superpriority claims and liens to the Netherlands to the extent such protection is needed and established a process to address certain disputes regarding the extent, value and priority of the Netherlands Lien (the "**Lien Determination Process**").

12. Specifically, the agreed-upon Lien Determination Process contemplated two phases of briefing. In the first phase, this Court was tasked with determining whether (i) the Netherlands Lien is valid, (ii) whether and to what extent any such lien attached to any real property of the Debtors, and (iii) whether any such lien is senior to all other encumbrances on the relevant collateral. If this Court were to conclude that the Netherlands has a valid and binding lien on the assets of MDHI that is senior to other encumbrances, the Lien Determination Process would proceed to the second phase at which this Court would be tasked with determining (i) the value of the collateral securing such lien and (ii) the Netherlands' entitlement to any additional adequate protection. Under paragraph 37(c) of the Final DIP Order, the first phase of the Lien Determination Process was to be heard on May 26, 2022, and the second phase of the Lien Determination Process was to be heard on June 14, 2022.

13. In accordance with the Lien Determination Process set out under the Final DIP Order, the Netherlands filed an opening phase one brief on May 2, 2022 [D.I. 221], the Debtors filed a phase one response brief on May 13, 2022 [D.I. 245], and the Netherlands filed a phase one reply brief on May 18, 2022 [D.I. 258].

14. On May 26, 2022, a hearing on the first phase of the Lien Determination Process was held. At the end of the hearing, this Court issued a bench ruling, holding that: (i) although the Netherlands Lien is a valid and binding lien on any real property owned by the Debtors in Maricopa

5

County, Arizona, the Netherlands Lien did not attach to such real property because the Debtors have none and thus is not secured by any collateral; and (ii) the second phase of the Lien Determination Process was not necessary.

15. On May 27, 2022, the Netherlands appealed this Court's ruling to the District Court for the District of Delaware (the "**District Court**") [D.I. 283].

16. On June 1, 2022, this Court entered an order memorializing the terms of its bench ruling [D.I. 303] (the "**Lien Order**").

17. On June 2, 2022, the Netherlands filed (i) with this Court the Stay Motion and the Motion to Shorten and (ii) with the District Court an emergency motion seeking an order certifying a question of law to the Supreme Court of Arizona [Civil Action No. 22-cv-00702 (RGA), D.I. 4] (the "**Certification Motion**").

## ARGUMENT

18. The Netherlands has not demonstrated the necessary exigencies to justify consideration of the Stay Motion on shortened notice. Local Rule 9006-1(c)(i) provides that "all motion papers shall be filed and served . . . at least fourteen days prior to the hearing date." Pursuant to Local Rule 9006-1(e), "[n]o motion will be scheduled on less notice than required by these Local Rules or the Fed. R. Bankr. P. except by order of the Court, on written motion (served on all interested parties) **specifying the exigencies justifying shortened notice**" (emphasis added).

19. Here, the Netherlands has not specified any legitimate exigencies that justify shortened notice. Its only purported justification is that the assets to which the Netherlands claims the Netherlands Lien attaches "will soon be sold by the Debtors as part of the Sale Process, and absent stay relief, the proceeds from the Sale will not be used to satisfy the Netherlands Lien." Mot. to Shorten ¶ 8. While the Netherlands states in paragraph 6 of the Motion to Shorten that

"[a]s explained more fully in the Motion for Stay, the Netherlands believes that sufficient cause exists to justify shortening the applicable notice period for the Motion for Stay," the Stay Motion does not make even a single mention of the need for a shortened notice period.[3]

20. The Netherlands' bare statement that the Debtors' assets "will soon be sold" falls woefully short of an exigency necessitating the emergency relief sought in the Motion to Shorten. That statement does not establish a cognizable exigency and is factually incorrect. By its own admission, the Netherlands concedes that it will only be harmed once the Sale is consummated and the proceeds from the Sale are distributed. But the Sale will not close and the proceeds from the Sale will not be distributed within 14 days from the date on which the Stay Motion was filed.[4] Indeed, the earliest the Sale could close is weeks after Court authorization thereof because there are numerous conditions that must be met for the Sale to close. For example, Article VIII of the Stalking Horse Asset Purchase Agreement (attached as Exhibit A to D.I. 28) entered into between the Debtors and the Stalking Horse Bidder, dated as of March 30, 2022 (the "**Stalking Horse APA**") sets forth such closing conditions, including that "Buyer shall have received or been issued all Permits necessary to replace the Excluded Permits." Such Permits include, among others, Federal Aviation Administration certificates, licenses from the Bureau of Alcohol, Tobacco, Firearms and Explosives, and registration statements from the U.S. Department of State, all of

---

[3] For the avoidance of any confusion, it should be noted that the Netherlands attached the Certification Motion that it filed with the District Court as Exhibit A to the Stay Motion, and the Netherlands attached to the Certification Motion a declaration from R. Craig Martin in support of the Certification Motion (the "**Certification Declaration**") stating that the Certification Motion must be heard on an emergency basis because Debtors will be holding the Auction on June 9, 2022 and the Sale Hearing to approve the results of the Auction is scheduled to be heard on June 17, 2022. The Netherlands, however, has not made any such assertion for the need to have the Stay Motion heard on an emergency basis. Even if the Netherlands had done so, such arguments would fail for the reasons set forth herein.

[4] Neither the June 9, 2022 Auction nor the June 17, 2022 Sale Hearing consummate the Sale and effectuate the distribution of proceeds therefrom; rather, they are only prefatory steps in a process that will take, at least, weeks.

which the Debtors expect may take a significant amount of time to obtain. For that reason, Section 10.1 of the Stalking Horse APA sets the outside termination date of the agreement as **August 27, 2022** (150 days from the date on which the agreement was signed). The fact that the Sale will not close for weeks, or possibly months, debunks the only justification that the Netherlands has put forth for the emergency relief it seeks in the Motion to Shorten.

21. The Netherlands has not identified any legitimate exigencies to justify the Motion to Shorten because there are none. This is made clear by the fact that the Netherlands willingly agreed to have the second phase of the Lien Determination Process heard on June 14, 2022. Considering that the Netherlands agreed to a timeline with an evidentiary hearing that would have impacted its rights with respect to the Sale only three days before the Sale Hearing, the Debtors are simply at a loss as to how the Netherlands would be prejudiced by having the Stay Motion heard three days later on June 17, 2022. There is simply nothing in the Motion to Shorten (or the Stay Motion) that suggests an alleged harm would occur to the Netherlands if the Stay Motion were heard on that date, before the Sale Hearing.

22. Even if there were legitimate exigence here (which, to be clear there are not), they would have been the result of the Netherlands' own making and cannot now be used to upend the Debtors' Sale process and Chapter 11 Cases. *Cf. Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 50 (1st Cir. 2021) ("We do not lightly grant emergency relief, especially 'where the 'emergency' is largely one of [plaintiff's] own making' and the relief sought would interfere with processes on which many others have reasonably relied.") (internal citation omitted); *In re Rosas*, No. 10-52571-C, 2010 WL 3075468, at *1 (Bankr. W.D. Tex. Aug. 4, 2010) ("The court is not obligated to grant relief for emergencies of the debtor's own making."). The reality is that the Netherlands' loss at the Lien Determination Process was entirely predictable.

US-DOCS\132467111.6#126902695 v1

In fact, the Netherlands expressly agreed on the consequences of such an outcome. Specifically, the Netherlands agreed that if this Court determined that the Netherlands Lien did not properly attach to any real property of the Debtors:

- the Netherlands adequate protection liens and claims "shall be deemed void and of no effect," Final DIP Order ¶ 37(e);

- the Netherlands shall not have the right to credit bid at the Auction, *id.* ¶ 23(c); and

- the right of the DIP Lenders (as defined in the Final DIP Order) to credit bid for the assets purportedly subject to the Netherlands Lien shall not be conditioned on setting aside cash equal to the value of the Netherlands' collateral, *id.* ¶ 37(i).

So the Netherlands was, of course, well aware that there was a chance that it would lose the dispute and seek a stay pending appeal. Yet, despite such awareness, the Netherlands failed to factor in the 14-day notice period. Thus, to the extent any exigency exists, it was created by the Netherlands. And now that the Netherlands has been disappointed by this Court's ruling, it is attempting to rush the Stay Hearing so as to catch the Debtors off guard and increase the chance of staying the Lien Order and upending the carefully-negotiated timeline of the Sale. The Netherlands should not be permitted to interfere with the Sale process and the Chapter 11 Cases simply because it failed to account for the 14-day notice period required for a stay hearing.

23. Finally, the Netherlands' assertion that shortening notice will "save time and money for all parties involved" and "conserve judicial resources" is fanciful. Mot. to Shorten ¶ 9. Nothing could be further from the truth. In addition to the Motion to Shorten and Motion for Stay filed in this Court, the Netherlands has also filed the Certification Motion on an emergency basis in the District Court seeking an order certifying questions of law to the Supreme Court of Arizona. If the Certification Motion is granted, the Netherlands intends to then seek a determination from the Supreme Court of Arizona on the certified questions on an expedited basis. *See*, *e.g.*, Cert. Dec. ¶ 5 ("it is imperative that all courts involved in the process—the Bankruptcy Court, the District

US-DOCS\132467111.6#126902695 v1

Court, and Arizona Supreme Court—proceed with expedition unless and until the Debtors change the auction schedule or provide appropriate assurances that some mechanism will be provided to protect the Netherlands' rights (which has not been proposed)"). In sum, if the Netherlands has its way, it will place an incredible demand on judicial resources by seeking emergency relief from three separate courts at a breakneck pace—all for an issue on which it has a very low chance of success.

24. In addition to the burden the Netherlands would place on the courts, the Netherlands would have everyone else—including the Debtors, their creditors, and the United States Trustee—needlessly rush to respond to the Netherlands' Stay Motion. Such a request wastes estate resources and, if granted, prejudices the Debtors because it will require them to rush a response to the Stay Motion instead of focusing their attention on maximizing the value of their assets for all constituents' benefit via the June 3, 2022 bid deadline and the June 9, 2022 Auction.

25. For the foregoing reasons, the Debtors respectfully request that this Court (i) deny the Motion to Shorten, (ii) set the Stay Hearing for June 17, 2022 or such other date that is in compliance with the 14-day notice requirement set out under Local Rule 9006-1(c)(i), (iii) set the deadline for parties-in-interest to object to the Stay Motion as 4:00 p.m. on the date that is seven (7) days prior to the Stay Hearing, and (iv) grant such other and further relief as this Court may deem just and proper.

**RESERVATION OF RIGHTS**

26. The Debtors expressly reserve the right to amend or supplement this Objection on any and all bases and to introduce evidence supporting this Objection at any hearing on the Motion to Shorten.

| | |
|---|---|
| Dated:, June 3, 2022<br>Wilmington, Delaware | /s/ Evelyn J. Meltzer |

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
Evelyn J. Meltzer (DE No. 4581)
Kenneth A. Listwak (DE No. 6300)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6566
Facsimile: (302) 421-8390
E-mail: david.stratton@troutman.com
  david.fournier@troutman.com
  evelyn.meltzer@troutman.com
  kenneth.listwak@troutman.com

- and -

**LATHAM & WATKINS LLP**

Suzzanne Uhland (admitted *pro hac vice*)
Adam S. Ravin (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*))
Tianjiao (TJ) Li (admitted *pro hac vice*)
Alexandra Marie Zablocki (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: suzzanne.uhland@lw.com
  adam.ravin@lw.com
  brett.neve@lw.com
  tj.li@lw.com
  alexandra.zablocki@lw.com

*Counsel for Debtors and Debtors-in-Possession*