IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MD HELICOPTERS, INC., *et al.*, | Case No. 22-10263 (KBO) |
| Debtors[1]. | (Jointly Administered) |

**DECLARATION OF DAHLE BULOSAN IN SUPPORT OF LIMITED OBJECTION
AND RESERVATION OF RIGHTS OF THE CITY OF HUNTINGTON BEACH
TO NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY
CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND
POSSIBLE ASSIGNMENT TO THE STALKING HORSE BIDDER OR SUCH OTHER
SUCCESSFUL BIDDER AT AUCTION [DOCKET NO. 219]**

I, Dahle Bulosan, declare:

1.      I am the Chief Financial Officer for the City of Huntington Beach (the "City"). The City is located in Orange County in the State of California. I have served as the City's CFO since March 2020 and I am a certified public accountant. I am over the age of 18. Each of the facts contained in this declaration is based on personal knowledge unless otherwise stated, and, if called as a witness, I could and would competently testify as to these facts.

2.      Any capitalized terms used but not defined herein, shall have the same meaning as is affixed to them in the City's limited objection and this declaration is made in support of the limited objection. The documents and exhibits referred to herein are maintained by the City in the ordinary course of the City's business at or near the time of the acts, conditions, or events to which they relate.

---

[1] The two Debtors in these cases are MD Helicopters, Inc. and Monterrey Aerospace, LLC, and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MD Helicopters, Inc.'s taxpayer identification number are 4088. Monterrey Aerospace, LLC has not been assigned a taxpayer identification number as of the date hereof.

2805391

3.      On or about June 18, 2021, the City entered into the Purchase Order with Debtor MD Helicopters, Inc. (the "Debtor"). A true and correct copy of the Purchase Order is attached hereto as **Exhibit 1**. The Purchase Order is for the purchase by the City from the Debtor of three new helicopters to be used by the City's Police Department. In addition, the Purchase Order provides for the sale/trade of three of the City's existing helicopters to be used as offsets/credits toward the purchase of the new helicopters (MD 530F helicopters). The estimated prices for the new helicopters in the Purchase Order are as follows, totaling $8,005,688 (after offsets/credits):

Helicopter 1: $3,254,515 purchase price less an estimated sale/trade in value of $585,000, plus an estimated brokerage fee of $17,550, less a 1% discount of $24,227.33 and plus an estimated tax of $252,224.99 for a total net price of $2,915,062.66.

Helicopter 2: $3,254,515 purchase price less an estimated sale/trade in value of $685,000, plus an estimated brokerage fee of $20,550, less a 1% discount of $24,227.33 and plus an estimated tax of $252,224.99 for a total net price of $2,818,062.66.

Helicopter 3: $3,254,515 purchase price less an estimated sale/trade in value of $1,235,000, plus an estimated brokerage fee of $25,050, less a 1% discount of $24,227.33, plus an estimated tax of $252,224.99 for a total net price of $2,272,562.66.

4.      As of the filing of this Limited Objection, the City has not received the three new helicopters from the Debtor but I am informed and believe based on discussions between the City and the Debtor that the helicopters are in the process of being assembled. However, I have not seen any documentation from the Debtor as to the status of completion of the helicopters. The Debtor has recently facilitated the sale/trade of one of the City's existing helicopters and the City received the sums of $480,000 from the Debtor (my understanding is that the Debtor in turn received the $480,000 from MD Australia on or about April 29, 2022) and $160,000 from MD Australia ("MD Australia") on or about June 1-2, 2022, for a total of $640,000. In exchange, the City shipped its existing helicopter to MD Australia on or about June 2, 2022. My understanding is that the Debtor is holding $40,000 from MD Australia that will need to be returned to MD Australia at the time of the sale of the City's second existing helicopter to MD Australia. One of

2805391

the City's two remaining helicopters planned to be sold to MD Australia was severely damaged in an accident on February 19, 2022. The third helicopter will be purchased without the sale/trade in of a helicopter. The City's one remaining helicopter has not yet been arranged for sale/trade pursuant to the Purchase Order.

5.     In addition, the City has sent equipment to debtor MD Helicopters, Inc. to install in the new aircraft that the Debtor is building for the City's Police Department, and the value of the City's equipment is approximately $780,000. The City's equipment in the possession of the Debtor is: (a) L3MX-10 IR camera (value of approximately $500,000); (b) Spectro Lab search light (value of approximately $60,000); (c) Technisonic Radio (value of approximately $95,000); and (d) Aerocomputers moving map system (value of approximately $125,000).

6.     Without receiving documents and information from the Debtor or the stalking horse bidder, the City is unable to ascertain: (1) whether the stalking horse bidder has the background and expertise to complete the manufacture and delivery of the police helicopters on a timely basis (or whether the stalking horse bidder has employed or contracted with persons or entities with such expertise and background); (2) whether the stalking horse bidder has the financial wherewithal to provide for any indemnification obligations that may arise pursuant to the terms and conditions of the purchase order; and (3) whether the stalking horse bidder has arranged for the insurance necessary pursuant to the Purchase Order or will do so prior to assumption and assignment of the Purchase Order. To the extent such documents are provided to the City, the City will promptly consider the qualifications of the stalking horse bidder as a counterparty in regard to the City's Purchase Order and will promptly provide written approval to the extent the City determines the stalking horse bidder is qualified. It is in the City's interests to proceed with the purchase of the helicopters but the City requires the assurance that the stalking horse bidder is qualified and will perform pursuant to the Purchase Order.

7.     The City needs to ensure that the stalking horse bidder has the expertise and background (or has employed or contracted with persons or entities with such expertise and background) to timely and competently complete the manufacture of and delivery of the new

helicopters to the City. To date, the Debtors and the stalking horse have not provided any documents or information to the City as to the stalking horse bidder's expertise and background qualifying it to manufacture and deliver police helicopters to the City (or employment of or contracts with persons or entities with such expertise and background). In addition, the *Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction* [Docket No. 219] (the "Counterparties Notice") does not provide for what occurs with respect to the City's equipment, which has a value of approximately $780,000 (described above) if the Debtor or the stalking horse bidder fail to perform under the Purchase Order, if there is a breach by the Debtor or the stalking horse bidder, or if the City terminates the Purchase Order under the terms and conditions of the Purchase Order.

8.      The Purchase Order (Exhibit 1 to this Declaration) includes indemnification obligations in Paragraphs 7 and 13 of its terms and conditions as follows:

> 7.      Supplier hereby agrees to protect, defend, indemnify and hold harmless City, its officers, elected or appointed officials, employees, agents and volunteers from and against any and all claims, damages, losses, expenses, judgments, demands and defense costs (including, without limitation, costs and fees of litigation of every nature or liability of any kind or nature) arising out of or in connection with Supplier's (or Supplier's subcontractors, if any) negligent (or alleged negligent) performance of this Agreement or its failure to comply with any of its obligations contained in this Agreement by Supplier, its officers, agents or employees except such loss or damage which was caused by the sole negligence or willful misconduct of City. City shall be reimbursed by Supplier for all costs and attorney's fees incurred by City in enforcing this obligation. Supplier will conduct all defense at its sole cost and expense and the City shall approve selection of Supplier's counsel. This indemnity shall apply to all claims and liability regardless of whether any insurance policies are applicable. The policy limits do not act as limitation upon the amount of indemnification to be provided by the Supplier. (12/09)

> …

> 13.      All goods and services provided shall comply with the current federal, state and local laws. Supplier shall defend, indemnify and hold harmless City, its officials, employees and agents from any loss, claim, cause of action, liability, cost or expense, including but not limited to fines, penalties, corrective measures, and attorney's fees City may sustain by reason of Supplier's failure to comply.

4

To the best of my knowledge, the Debtors and the stalking horse have not provided any documents or information to the City as to the stalking horse bidder's financial ability to satisfy any potential indemnification obligations under the Purchase Order.  To the best of my knowledge, the City has not received evidence of the stalking horse bidder's capitalization and/or guaranties sufficient to provide for future performance including but not limited to the indemnification obligations.

9.    The Purchase Order (Exhibit 1 to this Declaration) includes insurance obligations in Paragraph 27 of its terms and conditions as follows:

> 27.    Supplier shall comply with the requirements of City's current insurance resolution as to general liability, automobile liability, workers compensation and any other product/property insurance requirements.

To the best of my knowledge, the Debtors and the stalking horse bidder have not provided any documents or information to the City as to the stalking horse bidder's intent to comply with insurance requirements or financial ability to comply with insurance requirements upon assumption and assignment.

10.    The Purchase Order (Exhibit 1 to this Declaration) includes the requirement that the City provide written consent to any assignment or Transfer of the Purchase Order in Paragraph 15 of its terms and conditions as follows:

> 15.    The Supplier shall not sell, assign or transfer any obligations resulting from this Order without the specific written consent of the City's Purchasing Division.

To the best of my knowledge, the Debtors have not requested the written consent of the City and the City has not yet provided its written consent to the proposed assignment of the Purchase Order.  Written consent to the assignment is appropriate, because, among other things, the manufacture of helicopters (and in this case, helicopters for use by the City's Police Department) is a specialized area requiring specific expertise and background, and also the financial wherewithal to provide for any potential indemnification obligations.

11.    The City has reviewed its records and has confirmed that it was not served with a copy of the Counterparties Notice.  It is my understanding that the City, through its counsel,

2805391

notified the Debtors' counsel that it did not receive service of the Counterparties Notice.  It is my understanding that the Debtors' counsel agreed to extend the time for the City to file an objection to the Counterparties Notice as to issues related to adequate assurance of future performance through June 13, 2022 at 4:00 ET.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 10, 2022 at Huntington Beach, California.


DAHLE BULOSAN

2805391

# **<u>EXHIBIT 1</u>**



**PURCHASE ORDER**
**City of Huntington Beach**
**(714) 374-1569 / (714) 960-8878**
Billing Inquiries: (714) 374-1568
Please send invoices Attn: Account Payable
P.O. Box 784
Huntington Beach, CA 92648

Page: 1

This number must
appear on
Packages and Invoices

27204-OP

Date: 06/18/2021

Branch/Plant:    32140106

Supplier:
MD HELICOPTERS INC
4555 E MCDOWELL RD
MESA AZ 85215-9734

Ship To
CITY OF HB - POLICE DEPT
2000 MAIN ST
HUNTINGTON BEACH CA 92648-2702

| Order Date: | Delivery Date: | Buyer: | Freight: | Terms: |
|---|---|---|---|---|
| 06/18/021 | 06/18/2021 | TURQUOISE SCOTT | . | Net 30 (Override) |

Pricing, Specifications, Terms and Conditions all in accordance with RFP 2021-0504.

| LINE NUMBER | DESCRIPTION/SUPPLIER ITEM | QTY ORDERED | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1.000 | MD 530F-Helicopter 1<br>Total Includes<br>Section A: New Helicopter - $3,254,515.00<br>Section B: Estimated Sale/Trade-in Value - ($585,000.00)<br>Estimated Brokerage Fee - $17,550.00<br>1% Discount - ($24,227.33)<br>Estimated Tax - $252,224.99 | | EA | 0.00 | 2,915,062.66 |
| 2.000 | MD 530F-Helicopter 2<br>Total Includes<br>Section A: New Helicopter - $3,254,515.00<br>Section B: Estimated Sale/Trade-in Value - ($685,000.00)<br>Estimated Brokerage Fee - $20,550.00<br>1% Discount - ($24,227.33)<br>Estimated Tax - $252,224.99 | | EA | 0.00 | 2,818,062.66 |
| 3.000 | MD 530F-Helicopter 3<br>Total Includes<br>Section A: New Helicopter - $3,254,515.00<br>Section B: Estimated Sale/Trade-in Value - ($1,235,000.00)<br>Estimated Brokerage Fee - $25,050.00<br>1% Discount - ($24,227.33)<br>Estimated Tax - $252,224.99 | | EA | 0.00 | 2,272,562.66 |

| | |
|---|---|
| Order Subtotal | 8,005,688.00 |
| Sales Tax | 0.00 |
| Total Order | 8,005,688.00 |

TERMS AND CONDITIONS ON REVERSE
FORM A PART OF THIS ORDER

Serena Bubenheim, Principal Finance Analyst
City of Huntington Beach

**CITY OF HUNTINGTON BEACH**
**PURCHASE ORDER–STANDARD TERMS AND CONDITIONS**

1.   Issuance of this Purchase Order by City constitutes acceptance of Supplier's offer on the terms and conditions stated herein, unless expressly agreed in writing by the City's Purchasing Division, and forms a contract.

2.   Supplier's shipment of goods, commencement of any work, or performance of any service shall constitute acceptance by Supplier of this order and all of its terms and conditions. No additional terms or conditions stated by Supplier in acknowledging or otherwise accepting this order shall be binding upon the City unless specifically accepted in writing by the City. No oral agreements will be binding unless confirmed by a written revision to this Purchase Order

3.   City's obligation to pay the sum herein stated for any one fiscal year shall be contingent upon the City Council appropriating the necessary funds. If the City Council fails to appropriate the necessary funds for any fiscal year, then the Purchase Order shall terminate at no additional cost or obligation to City.

4.   Time is of the essence. If at any time Supplier believes that goods, materials, equipment, supplies ("item"), labor or services will not be made as scheduled, supplier shall immediately give written notice stating the cause of the delay to City.  Deliveries must be prepaid.  City will not accept COD shipments.

5.   City reserves the right at any time to make changes in drawings and specifications, in methods of shipment and packaging, and in place(s) of delivery. If necessary, there will be an equitable adjustment in price and time of performance mutually satisfactory to Supplier and City; but any claim by Supplier for such an adjustment must be made in writing within thirty (30) days after such change.

6.   Supplier warrants that the items delivered and the work or services performed shall conform to the specifications, drawings, samples or other description specified by City and shall be fit and sufficient for the purpose intended, merchantable, of good materials and workmanship, in good working order and free from defect or faulty workmanship for a period of at least ninety (90) days, after delivery. When defective items or faulty workmanship is discovered, Supplier shall provide all labor, materials, parts and equipment to correct such defect or make such replacement at no expense to the City. Defective items not meeting City's specifications shall be held for Supplier's instructions at Supplier's risk and; if Supplier so directs, will be returned at Supplier's expense.

7.   Supplier hereby agrees to protect, defend, indemnify and hold harmless City, its officers, elected or appointed officials, employees, agents and volunteers from and against any and all claims, damages, losses, expenses, judgments, demands and defense costs (including, without limitation, costs and fees of litigation of every nature or liability of any kind or nature) arising out of or in connection with Supplier's (or Supplier's subcontractors, if any) negligent (or alleged negligent) performance of this Agreement or its failure to comply with any of its obligations contained in this Agreement by Supplier, its officers, agents or employees except such loss or damage which was caused by the sole negligence or wilful misconduct of City.  City shall be reimbursed by Supplier for all costs and attorney's fees incurred by City in enforcing this obligation.  Supplier will conduct all defense at its sole cost and expense and the City shall approve selection of Supplier's counsel. This indemnity shall apply to all claims and liability regardless of whether any insurance policies are applicable. The policy limits do not act as limitation upon the amount of indemnification to be provided by the Supplier.(12/09)

8.   City reserves the right to terminate this Purchase Order, or any part of it, at any time even though Supplier is not in default.  On receipt of notice of termination, Supplier shall, unless such notice otherwise directs, immediately discontinue all work on the Purchase Order and deliver, if and as directed, to City all completed and partially completed items and work in process.  This section shall not limit or affect the right of City to terminate this Purchase Order immediately upon Supplier's breach.

9.   City reserves the right to terminate this Purchase Order or any part of it and reject delivery of items if delivery is not made when and as specified.  Supplier shall be charged for any direct losses, but not any consequential damages, sustained by City by reason of such delay or failure, except losses caused by a delay for reasons beyond Supplier's reasonable control.  Direct losses shall include any costs to City in excess of the Purchase Order price of obtaining items or services from other sources similar to those terminated or rejected.

10.   Supplier shall not substitute items without written approval of the City Purchasing Agent or designee.

11.   All license fees for City's use of patented or copyrighted items for items furnished under this Purchase Order shall be included in the Purchase Order price.

12.   In cases where a price subject to escalation has been agreed upon, all claims for such price escalation must be received by City within sixty (60) days after date of final shipment.  The price escalation shall be shown as a separate item on the invoice.  Unless an escalator clause has been shown as a specific part of this Purchase Order, Supplier shall not be entitled to reimbursement for costs incurred due to escalation.

13.   All goods and services provided shall comply with the current federal, state and local laws.  Supplier shall defend, indemnify and hold harmless City, its officials, employees and agents from any loss, claim, cause of action, liability, cost or expense, including but not limited to fines, penalties, corrective measures, and attorney's fees. City may sustain by reason of Supplier's failure to comply.

14.   Supplier shall keep confidential and not disclose or use in any way confidential business or technical information that the City may disclose in conjunction with this Purchase Order or Supplier may learn as a result of entering City property to deliver items or services or to perform work hereunder.

15.   The Supplier shall not sell, assign or transfer any obligations resulting from this Order without the specific written consent of the City's Purchasing Division.

16.   City's remedies herein are cumulative and additional to any other remedies at law or in equity.  The waiver of any breach of this Purchase Order shall not be deemed a waiver of any other subsequent breach.  City's failure to object to provisions contained in any communication from Supplier shall not be deemed an acceptance of such provisions or a waiver of the provisions of this Purchase Order.

17.   This Purchase Order shall not be amended, modified or rescinded, except by written agreement signed by the parties and expressly referring to this Purchase Order.

18.   Any indebtedness of Supplier to City may, at the City's option, be credited against amounts owing by City hereunder.

19.   Supplier shall furnish further itemization and breakdown of the Purchase Order price when requested by City.

20.   Supplier and its subcontractor(s) shall not discriminate against any person in the performance of this Purchase Order on the basis of race, religion, national origin, color, age, sex, sexual orientation, AIDS, HIV status, handicap or disability, and shall comply with applicable federal and state equal employment opportunity laws, ordinances, rules and regulations.

21.   Supplier shall comply with all applicable federal, state, and local laws, rules, regulations and ordinances pertaining to the subject matter hereof, and shall obtain all necessary licenses and permits related to the items, work or services.

22.   Supplier, its employees, and agents shall be considered independent contractors and not employees or agents of City.

23.   City's purchases are based on its actual needs and requirements.  City is obligated to purchase those items and those quantities that City needs and requires, regardless of any estimated quantities provided to the Supplier.

24.   The issuance of this Purchase Order does not make Supplier the exclusive supplier of items or services that are the subject of this Purchase Order.
THE FOLLOWING ADDITIONAL CONDITIONS APPLY WHEN SUPPLIER IS TO PERFORM WORK ON THE PREMISES OF CITY.

25.   If, during the work, Supplier allows any indebtedness or lien to accrue for labor, equipment or materials, which may become a claim against City, Supplier shall immediately pay such claim or indebtedness or cause such lien to be dissolved and discharged by giving a bond and, in case of failure to do so, City may withhold any money due to Supplier until such claim, indebtedness or lien is paid or may apply such money toward the discharge thereof; or City may, at its option, cancel this Purchase Order, take possession and control of the work, and complete the same or cause the same to be completed.  Supplier shall pay to City the difference between the Purchase Order price and the actual cost to City in completing or causing the work to be completed.

26.   Supplier shall perform the work at Supplier's own risk until the same is fully completed and accepted and shall, in case of any accident, destruction or injury to the work or items before final completion and acceptance, repair or replace the work or items so injured, damaged or destroyed, at Supplier's own expense and to the satisfaction of City.  When items are furnished by others for installation or erection by Supplier, Supplier shall receive, unload, store and handle same at site and become responsible therefore, as though such items were being furnished by Supplier under the Purchase Order.

27.   **Insurance.**  Supplier shall comply with the requirements of City's current insurance resolution as to general liability, automobile liability, workers compensation and any other product / property insurance requirements.

09-2194/Terms Conditions PO 09_30_10.doc
12/09