**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
In re:                                      :    Chapter 11
                                            :
MD HELICOPTERS, INC., et al.,¹              :    Case No. 22-10263 (KBO)
                                            :
             Debtors.                       :    (Jointly Administered)
                                            :
------------------------------------------------------- x    Re: D.I. 28, 206 & 256
```

## DEBTORS' REPLY IN SUPPORT OF THE SALE MOTION

The debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**") hereby submit this reply (the "**Reply**") in support of their Sale Motion² and in response

to (a) the *Limited Objection and Reservation of Rights of the Netherlands to the Sale* [D.I. 256]

(the "**Limited Objection**") and (b) the *Supplement to Limited Objection and Reservation of Rights*

*of the Netherlands to Entry of Sale Order* [D.I. 343] (the "**Supplemental Objection**" and, together

with the Limited Objection, the "**Objections**"), each filed by the State of the Netherlands (the

---

¹  The two Debtors in these cases are MD Helicopters, Inc. ("**MDHI**") and Monterrey Aerospace, LLC ("**Monterrey**"), and their address is 4555 E. McDowell Road, Mesa, AZ 85215. The last four digits of MDHI's taxpayer identification number are 4088. Monterrey has not been assigned a taxpayer identification number as of the date hereof.

²  The "**Sale Motion**" is the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [D.I. 28]. Capitalized terms not defined herein have the meanings ascribed to them in the Sale Motion.

"**Netherlands**").   In support of this Reply and of the Sale Motion, the Debtors rely upon the Declarations.[3]

## PRELIMINARY STATEMENT

1.      The Debtors filed these chapter 11 cases to facilitate a sale of substantially all of their assets (the "**Sale**") to MDH HoldCo, LLC (the "**Stalking Horse Bidder**") or such other higher and better bidder.  Despite having marketed their assets for six months prior to the Petition Date (as defined below) and having continued such marketing process after the Petition Date, the Debtors received no bids that met the requirements set forth in the Court-approved Bid Procedures (as defined below) ("**Qualified Bids**"), other than that of the Stalking Horse Bidder.  Accordingly, the Debtors cancelled the auction for their assets (the "**Auction**") in accordance with the Bid Procedures, declared the Stalking Horse Bidder to be the successful bidder, and now seek approval of the Sale to the Stalking Horse Bidder pursuant to the terms of that certain Asset Purchase Agreement, dated March 30, 2022, by and between the Debtors and the Stalking Horse Bidder (the "**Stalking Horse Agreement**").

2.      The Sale is the best outcome for the Debtors and their estates under the circumstances.  If approved and consummated, among other things, the Sale will result in the

---

[3]     The "**Declarations**" are (a) the *Declaration of Adam B. Keil in Support of Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [D.I. 30] (the "**Keil Declaration**"); (b) the *Supplemental Declaration of Adam B. Keil in Support of Debtors' (I) Objection to Emergency Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007 and (II) Sale of Substantially All of Debtors' Assets to the Stalking Horse Bidder Free and Clear of Liens, Claims, Encumbrances, and Interests*, filed contemporaneously herewith (the "**Supplemental Keil Declaration**"); and (c) the *Declaration of David Orlofsky in Support of Debtors' (I) Objection to Emergency Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007 and (II) Sale of Substantially All of Debtors' Assets to the Stalking Horse Bidder Free and Clear of Liens, Claims, Encumbrances, and Interests*, filed contemporaneously herewith (the "**Orlofsky Declaration**").

2

preservation of jobs for many of the Debtors' employees, the preservation of many of the Debtors' vendor and trade relationships, the assumption and assignment of numerous leases and executory contracts, and preservation of an ongoing business that will continue to manufacture cutting-edge helicopters.  Simply put, the Sale reflects the Debtors' sound business judgment, is a value-maximizing transaction, and is in the best interests of all their stakeholders.

3.      Against that backdrop, the Netherlands' Objections are the only objections to the Sale that remain outstanding.[4]  As this Court is aware, the Debtors and the Netherlands have a dispute (the "**Lien Dispute**") regarding the validity, extent, and priority of a judgment lien that the Netherlands asserts it has on the real property of MDHI (the "**Netherlands Lien**"), and the Netherlands agreed to a process to resolve such dispute (the "**Lien Determination Process**"), which this Court approved in the Final DIP Order.  While the Lien Determination Process was ongoing, on May 18, 2022, the Netherlands filed the Limited Objection, pursuant to which the Netherlands sought to preserve any rights it may have under the Bid Procedures Order (as defined below) until the Lien Determination Process was resolved.  Specifically, the Netherlands sought to (a) preserve the right to credit bid the amount of its claim against the Debtors (the "**Netherlands Claim**") to the extent such claim is secured, (b) receive payment in full of the Netherlands Claim to the extent such claim is secured, or (c) have the Netherlands Lien attach to the proceeds generated from the Sale.  The Limited Objection was submitted "pending this Court's resolution of the Phase One and Phase Two Issues" of the Lien Determination Process in recognition that if the Debtors prevailed in the Lien Dispute, the objections asserted in the Limited Objection would no longer be applicable.

---

[4]    The City of Huntington Beach [D.I. 341] and the Maricopa County Treasurer [D.I. 252] also have filed objections. The Debtors have reached agreements with both the City of Huntington Beach and the Maricopa County Treasurer to include language in the proposed form of Sale Order that will resolve each objection for purposes of the Sale Hearing (as defined below).

4.      This Court has now resolved the Lien Dispute.  The Court issued a bench ruling on May 26, 2022, in which it held that (a) the Netherlands Lien did not attach to any real property, because the Debtors have none and, thus, it is not secured by any collateral, and (b) the second phase of the Lien Determination Process was not necessary (such ruling, the "**Lien Ruling**").  The Court then memorialized the terms of the Lien Ruling in an order [D.I. 303] (the "**Lien Order**") entered on June 1, 2022.  As such, the Limited Objection preserved rights that, as this Court found, the Netherlands simply no longer has and thus, the objections asserted in the Limited Objection simply are no longer applicable.  In apparent recognition of this reality, the Supplemental Objection states that "[t]he Netherlands does not, as a general matter, object to approval of the Sale or entry of the Sale Order."  Supp. Obj. ¶ 1.

5.      The Netherlands now objects to (a) the requested waiver of the stay under Rule 6004 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and (b) to the form of proposed Sale Order with respect to certain relief the Debtors seek under Section 363(m) of the Bankruptcy Code.  The Debtors have agreed to withdraw the request for a waiver of the 14-day stay under Bankruptcy Rule 6004, as will be reflected in a revised proposed order granting the Sale Motion and approving the Sale (the "**Sale Order**"), which proposed order the Debtors intend to file in advance of the June 17 hearing to consider approval of the Sale Motion (the "**Sale Hearing**").  To be clear, the Debtors do not agree with the Netherlands' contention that a waiver of the Bankruptcy Rule 6004(h) stay is inappropriate here.  Nonetheless, the Debtors have agreed to withdraw the requested waiver in an effort to resolve outstanding objections in advance of the Sale Hearing in order to have as efficient a Sale Hearing as possible.

6.      To the extent the Netherlands objects to the provisions of the proposed Sale Order granting relief under Section 363(m) of the Bankruptcy Code, such objection should be overruled

for two reasons.  *First*, the Supplemental Objection is untimely as it was filed 26 days after the May 18, 2022 Sale Objection Deadline (as defined below).  The Netherlands has no excuse for its late-filed objection, as the relief the Debtors seek under Section 363(m) was included in the Sale Motion filed on March 30, 2022 and, as such, the Netherlands had 75 days' notice of the relief before filing the Supplemental Objection.  Further, the proposed Sale Order including the Section 363(m) finding has been on file since May 17, 2022.  To the extent that the Netherlands argues that intervening events with respect to the Lien Dispute (as defined below) should somehow excuse its late filed objection, any such argument is unavailing.  It was entirely predictable well before the Sale Objection Deadline that the Debtors could prevail on the Lien Dispute and the Netherlands would seek to exercise its appellate rights, and yet the Netherlands waited to raise its Section 363(m) concerns until four days before the Sale Hearing.

7.      *Second*, the evidentiary record supports a finding that the Stalking Horse Bidder is a good-faith purchaser entitled to the full protection of Section 363(m).  The Netherlands does not contest this fact.  Instead, the Netherlands seeks language in the Sale Order that would hardwire the effect of a Section 363(m) finding, including the ramifications on the Netherlands' appeal of the Lien Ruling and Lien Order, and potentially undermine the protections afforded to the Stalking Horse Bidder.  *See* Supp. Obj. ¶ 17.  However, it will ultimately be the task of a reviewing court to determine the effect of the Section 363(m) finding, and neither the parties nor this Court should attempt to usurp the reviewing court's role.

8.      Accordingly, to the extent the Netherlands' Objections remain outstanding, the Debtors request that the Court overrule such objections and enter the proposed Sale Order authorizing the Debtors to consummate the Sale to the Stalking Horse Bidder without any modifications of the proposed findings with respect to Section 363(m) of the Bankruptcy Code.

## BACKGROUND

**A.      Chapter 11 Cases**

9.      On March 30, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended from time to time, the "**Bankruptcy Code**").

10.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

11.      The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

**B.      The Sale**

12.      On the Petition Date, the Debtors filed a motion seeking authorization to establish bid procedures (the "**Bid Procedures**") with respect to a competitive sale and marketing process for substantially all of their assets and approval of the Sale to the Stalking Horse Bidder or such other buyer providing a higher or better offer for the assets [D.I. 28].

13.      On April 26, 2022, this Court entered an order [D.I. 206] (the "**Bid Procedures Order**"), approving the Bid Procedures and timeline for the Sale, which contemplates that the Sale Hearing will be held on June 17, 2022.  Pursuant to the Bid Procedures Order, (a) the deadline by which any interested entity may object to the Sale was May 18, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Sale Objection Deadline**"), (b) the deadline to submit an indication of interest setting forth a bidder's intention to submit a Qualified Bid ("**Intention to Submit Qualified Bid**") was May 20, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "**Intention to Submit Qualified**

6

**Bid Deadline**"), and (c) the deadline to submit Qualified Bids was June 3, 2022 at 4:00 p.m. (Prevailing Eastern Time) (the "**Bid Deadline**").

14.    While the Debtors received multiple Intentions to Submit Qualified Bid, the Debtors did not ultimately receive any Qualified Bids in advance of the Bid Deadline. Accordingly, on June 7, 2022, the Debtors filed the *Notice of Successful Bidder and Canceling of Auction* [D.I. 319] (the "**Cancelation Notice**"), informing this Court and the public that the Debtors did not receive any Qualified Bids by the Bid Deadline and, therefore, they were canceling the Auction in accordance with the Bid Procedures.

15.    On May 18, 2022, the Netherlands filed the Limited Objection, pursuant to which the Netherlands preserved any rights it may have under the Bid Procedures Order "pending this Court's resolution of the Phase One and Phase Two Issues."  Limited Obj. ¶ 4.  The Netherlands specified certain rights, such as (a) the right "to credit bid the full amount of the Netherlands Claims to purchase some or all of the Netherlands First Priority Collateral" under Section 363(k) of the Bankruptcy Code in accordance with the Final DIP Order and the Bid Procedures order, *id.* ¶¶ 5-6; (b) the right to either receive payment of "the Netherlands Claim in full . . . at or before the closing of such sale" or have the Netherlands Lien and the Netherlands Claim attach to the proceeds generated from the Sale in accordance with Section 363(f) of the Bankruptcy Code, *id.*; and (c) the right "to demand marshaling of assets as necessary to satisfy the Netherlands Lien and the Netherlands Claim," *id.* ¶ 9.  The Netherlands further objected to the Sale:

- should the Sale generate cash value less than the value of the Netherlands Claim and the Netherlands Lien and the Debtors not set aside additional cash to satisfy the Full Cash Value Amount (as defined in the Final DIP Order), *id.* ¶ 7; and

- to the extent the Debtors do not provide the Auction Deposit (as defined in the Final DIP Order), *id.* at ¶ 8.

16.     On June 13, 2022, the Netherlands filed the Supplemental Objection.   The Supplemental Objection states that "[t]he Netherlands does not, as a general matter, object to the Sale or entry of the Sale Order."  Supp. Obj. ¶ 1.  The Supplemental Objection (a) objects to the waiver of the 14-day stay under Bankruptcy Rule 6004(h) and (b) requests that the relief under Section 363(m) of the Bankruptcy Code that the Debtors seek under the proposed Sale Order not apply to the Lien Ruling or the Lien Order.

C.     **The Lien Determination Process**

17.     On April 26, 2022, this Court entered a final order that, among other things, authorized the Debtors to obtain postpetition financing and use collateral (including cash collateral) [D.I. 205] (the "**Final DIP Order**").  Pursuant to an agreement struck between the Netherlands and the Debtors, the Final DIP Order granted adequate protection superpriority claims and liens to the Netherlands to the extent such protection is needed and established a process to address certain disputes regarding the extent, value and priority of the Netherlands Lien (the "**Lien Determination Process**").

18.     On May 26, 2022, this Court held a hearing on the first phase of the Lien Determination Process.  At the end of the hearing, this Court issued the Lien Ruling, holding that: (a) although the Netherlands Lien is a valid and binding lien on any real property owned by the Debtors in Maricopa County, Arizona, the Netherlands Lien did not attach to such real property and, thus, is not secured by any collateral, because the Debtors own no real property; and (b) the second phase of the Lien Determination Process was unnecessary.

19.     On May 27, 2022, the Netherlands appealed this Court's ruling to the District Court for the District of Delaware (the "**District Court**") [D.I. 283].

20.     On June 1, 2022, this Court entered the Lien Order.

8

**REPLY**

I.    **THE NETHERLANDS' SUPPLEMENTAL OBJECTION SHOULD BE OVERRULED**

  A.    **The Supplemental Objection Is Untimely.**

21.    The Netherlands' Supplemental Objection is untimely and thus should be disregarded. *See In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 543 n.2 (Bankr. D. Del. 1998) ("The court deems the objections untimely and they will not be considered."). The Bid Procedures Motion, which was filed on March 30, 2022, specifically sought relief providing that the Stalking Horse Bidder is a good-faith purchaser entitled to the full protection of Section 363(m) of the Bankruptcy Code. *See* Bid Pro. Mot. ¶¶ 80-84. The Bid Procedures Order also established a May 18, 2022 deadline to object to the Sale Motion. Bid Procedures Order ¶ 5. Clearly aware of this deadline, the Netherlands filed an initial Limited Objection to the Sale on May 18, 2022, but did not make any mention of, much less object to, the relief sought under Section 363(m). The Netherlands' Supplemental Objection, which for the first time takes issue with the relief sought under Section 363(m) 75 days after receiving notice of the Sale Motion requesting such relief, is untimely and should be disregarded.

22.    Any contention by the Netherlands that changed circumstances resulting from the Lien Ruling should excuse the late-filed objection is without merit. It was entirely predictable before the Objection Deadline that the Debtors could prevail on the Lien Dispute and the Netherlands might find itself pursing appellate rights. Accordingly, the ongoing Lien Dispute cannot excuse an objection filed nearly one month after the Objection Deadline. Further, even taking into account the Lien Dispute, the Lien Ruling was issued on May 26, 2022, and yet the Netherlands waited another 18 days to file its Supplemental Objection, raising its issues with the

Section 363(m) relief for the first time mere days before the Sale Hearing.[5]   The Netherlands'

delay has left the Debtors with less than 48 hours to brief this issue.  Moreover, while the Debtors

believe that the evidentiary record in support of a Section 363(m) finding is strong, the

Netherlands' untimely objection has effectively deprived the Debtors of a realistic opportunity to

supplement that record with additional evidence of the Stalking Horse Bidder's good faith

throughout the sale process.

**B.      The Stalking Horse Bidder Is Entitled to the Full Protection of
Section 363(m) of the Bankruptcy Code.**

23.      Here, the Netherlands does not (nor could it) contend that the Stalking Horse Bidder

is anything short of a good-faith purchaser entitled to a good-faith finding under Section 363(m).

The Netherlands certainly does not cite to any evidence that would support such an argument

(which it does not make).  And given the extreme tardiness of its objection, there should be no

requirement for affirmative evidence on this point.  But even if there were, the evidentiary record

plainly establishes that the Stalking Horse Bidder has proceeded at every step of the sale process

in good faith and without collusion.[6]

---

[5]    To the extent the Netherlands relies on the June 13, 2022 Post-Auction Deadline established under the Bid
Procedures to argue that its Supplemental Objection is timely, such reliance is misplaced.  The Post-Auction
Objection Deadline applies only if the Stalking Horse Bidder was *not* named the Successful Bidder.   Bid
Procedures Order ¶ 5.  Because the Stalking Horse Bidder was the Successful Bidder, the Post-Auction Objection
Deadline is inapplicable.

Even if the Post-Auction Objection Deadline were applicable, it permitted objections solely on the basis of "(i) the
identity of the Successful Bidder or (ii) the ability of the Successful Bidder to provide adequate assurance of
future performance under the Assumed Contract."  *Id.*  The Supplemental Objection objects to the Sale on neither
ground.

[6]    Although the Bankruptcy Code does not define "good faith," courts have held a purchaser shows its good faith
through integrity of its conduct during the course of the sale proceedings finding that, where there is a lack of
such integrity, a good-faith finding may not be made.  *See, e.g., In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147
(3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale
involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take
grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir.
1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

#127188428 v1

24.     Although the Stalking Horse Bidder is an affiliate of the Zohar Funds, which in turn are affiliates of the Debtors, Alan Carr (the "**Director**") was appointed as the sole director for Debtor MDHI and the sole manager of Debtor Monterrey.[7]  Under the Zohar Timeline Order, the Director, as MDHI's Independent Fiduciary (as defined in the Zohar Monetization Order), is "responsible for conducting the sale process on behalf of the Portfolio Company [i.e., the Debtors]."[8]  The Debtors' management and advisors, at the direction of and in consultation with the Director, engaged in extensive arm's-length negotiations with the Stalking Horse Bidder regarding the Stalking Horse Agreement.  Keil Decl. ¶ 15.  During negotiations with respect to the Stalking Horse Agreement, and throughout the sale process, both the Debtors and the Stalking Horse Bidder were represented by separate, competent counsel.  The Director ultimately determined, in consultation with the Debtors' advisors, that the Stalking Horse Agreement represented the highest and best offer received for the assets.  Keil Decl. ¶ 13.

25.     The Stalking Horse Bidder agreed to subject its bid to a post-petition marketing process to afford the Debtors an opportunity to market-test the bid and attempt to secure a higher and better offer for the assets.  The Stalking Horse Bidder did so without the benefit of a break-up fee, expense reimbursement, or any other bid protections, demonstrating that the interests of the Zohar Funds and their creditors were aligned with those of the Debtors in ensuring that the Debtors were able to run a fulsome, competitive process that maximizes the value of the assets.  Keil Del. ¶ 14.  In furtherance of the sale process, Bardin Hill Investment Partners LP and MB Global

---

[7]  The Zohar Funds hold approximately 49.7% of MDHI's equity and hold approximately 93% of the Obligations under the Prepetition First Lien Credit Agreement.

[8]  The Zohar Monetization Order means the *Order in Aid of Implementation of the Global Settlement Agreement Approved in these Cases Establishing Certain Procedures for the Independent Director's Approval of Monetization Transactions and Related Relief* [D.I. 545] and the Zohar Timeline Order means the *Amended Order Establishing Certain Guidelines and Milestones in Furtherance of the Monetization Process for the Group A and Group B Portfolio Companies* [D.I. 1751].

#127188428 v1

Partners, LLC, each of which are participants in the Stalking Horse Bid, have provided debtor-in-possession financing that ensured the Debtors would have the liquidity required to run the competitive process contemplated in the Bid Procedures and close a value-maximizing transaction.

26.    There is absolutely no indication of any fraud or collusion between the Stalking Horse Bidder and other potential bidders or the Debtors.[9]  Accordingly, the Stalking Horse Bidder is a good-faith purchaser entitled to the full protection of Section 363(m) of the Bankruptcy Code.

27.    Again, the Netherlands does not contest that the Stalking Horse Bidder is entitled to a "good faith purchaser" finding under Section 363(m).  Instead, the Netherlands seeks the inclusion of language in the proposed Sale Order that would dictate the effect of the Section 363(m) finding in a manner that could undermine the very protections to which the Stalking Horse Bidder is entitled under statute.  The inclusion of such proposed language is unnecessary as the Section 363(m) findings in the Sale Order track closely to the language of the statute.  Further, any language qualifying the Section 363(m) findings could only serve to cause confusion and uncertainty, and thereby threaten the finality of the Sale Order that is foundational to the sale process and the Stalking Horse Bidders' willingness to transact on the terms set forth in the Stalking Horse Agreement.  *See Cinicola v. Scharffenberger*, 248 F.3d 110, 121-22 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale. . . . The provision's blunt finality is harsh but its certainty attracts investors and helps effectuate debtor rehabilitation."); *see also In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 ("Without [Section 363(m)], the risk of litigation would chill prospective bidders or push them to 'demand a steep

---

[9]    To the extent there is any deficiency in the evidentiary record, and the Debtors believe there is not, any such deficiency should be excused as it is entirely the fault of the Netherlands raising this argument months late and at the last minute.

discount.'") (quoting *In re River West Plaza-Chicago, LLC*, 664 F.3d 668, 671 (7th Cir. 2011));

*Krebs Chrysler-Plymouth v. Valley Motors*, 141 F.3d 490, 500 (3d Cir. 1998) ("[A]s we and other

courts have recognized, section 363(m) was created to promote the policy of the finality of

bankruptcy court orders, and to prevent harmful effects on the bidding resulting from the bidders'

knowledge that the highest bid may not end up being the final sale price."). Here, that outcome

would be particularly pernicious as the Stalking Horse Bidder did not receive notice that any party

would be challenging its entitlement to a Section 363(m) finding until after it was named the

Successful Bidder (and well after the Sale Objection Deadline should have surfaced any issues

with respect to the Section 363(m) finding), despite the Debtors providing notice to all parties

interest that they would be seeking such a finding on the first day of these Chapter 11 Cases.

28.    For each of these reasons, the Netherlands' request for the inclusion of additional

language in the proposed Sale Order qualifying the Section 363(m) finding should be overruled.

## II.    THE NETHERLANDS' LIMITED OBJECTION SHOULD BE OVERRULED BECAUSE THE NETHERLANDS IS AN UNSECURED CREDITOR.

29.    The Netherlands' initial Limited Objection objects to the Sale (a) under

Section 363(k) of the Bankruptcy Code in order to preserve the Netherlands rights to credit bid

and (b) under Section 363(f) of the Bankruptcy Code to preserve its right to either receive payment

of "the Netherlands Claim in full . . . at or before the closing of such sale" or have the Netherlands

Lien and the Netherlands Claim attach to the proceeds generated from the Sale in accordance with

Section 363(f) of the Bankruptcy Code. Based on the Supplemental Objection, which makes no

mention of Sections 363(k) or 363(f) and states that the Netherlands does not "object to approval

of the Sale," it appears the Netherlands has abandoned these objections. Indeed, the Netherlands

expressly states in the Limited Objection that it is seeking only to preserve rights "pending this

Court's resolution of" the Lien Dispute. Limited Obj. ¶ 4. Now that the Court has resolved the

#127188428 v1

Lien Dispute and found that the Netherlands does not have any of the rights it sought to preserve, the Limited Objection is no longer applicable.  The Netherlands, however, has not formally withdrawn the Limited Objection.  For this reason, the Debtors briefly address the objections to the Sale asserted in the Netherlands' initial Limited Objection.

30.    Section 363(k) of the Bankruptcy Code, which governs credit bidding for assets being sold pursuant to Section 363(b) of the Bankruptcy Code, provides that only a secured creditor may "credit bid" at a sale of estate property.  The Netherlands' Limited Objection purported to object to the Sale in order to preserve the Netherlands' rights to credit bid under Section 363(k) of the Bankruptcy Code.  But, as this Court held, the Netherlands is not a secured creditor and cannot credit bid.   Indeed, this Court ordered that "[b]ecause the Court has determined that the Netherlands Lien has not properly attached to any real property of the Debtors [and is therefore unsecured] as of the date hereof, the Netherlands shall not be entitled to credit bid for any of the Debtors' assets pursuant to Section 363(k) of the Bankruptcy Code."  Lien Order ¶ 5.  Because the Netherlands is an unsecured creditor with no right to credit bid, the Netherlands' Limited Objection to the Sale under Section 363(k) should be overruled.

31.    In the Limited Objection, the Netherlands also asserted an objection to the Sale under Section 363(f) of the Bankruptcy Code to preserve its right to either receive payment of "the Netherlands Claim in full . . . at or before the closing of such sale" or have the Netherlands Lien and the Netherlands Claim attach to the proceeds generated from the Sale in accordance with Section 363(f) of the Bankruptcy Code.  Limited Obj. ¶ 6.  The Netherlands, however, has no such rights because it does not have a property interest that is protected under Section 363(f) and, even if it did, the Debtors have still satisfied the requirements of that section.

32.     *First*, the Court ordered that "the Netherlands Lien did not attach to any property of the Debtors, including the Leases . . . and any improvements located on the leased premises, because as of the date hereof the Debtors do not own any real property, within the meaning of Ariz. Rev. Stat. § 33-961, in Maricopa, County."  Lien Order ¶ 1(b).  Put simply, the Netherlands does not have a lien that necessitates satisfaction, either prior to the Sale or from the proceeds of the Sale.

33.     *Second*, even if the Netherlands were a secured creditor (which it is not), the Debtors could still sell their assets free and clear of such interest in accordance with Sections 363(f)(4) and 363(f)(5) of the Bankruptcy Code.  Section 363(f)(4) of the Bankruptcy Code provides that the Debtors may sell property under Sections 363(b) or 363(c) of the Bankruptcy Code "free and clear of any interest in such property" if "such interest is in bona fide dispute."  The Netherlands Lien is in bona fide dispute as evidenced by the instant briefing and the fact that the Netherlands has appealed the Lien Order and the Lien Ruling to the District Court. *See, e.g.*, *In re Julien Co.*, 117 B.R. 910, 910 (Bankr. W.D. Tenn. 1990) (stating that even after court ruled on merits of dispute, if appeal were taken, interests would continue to be bona fide dispute, allowing further sales under Bankruptcy Code § 363(f)(4)).

34.     In addition, Section 363(f)(5) of the Bankruptcy Code provides that the Debtors may sell property under Sections 363(b) or 363(c) of the Bankruptcy Code "free and clear of any interest in such property" if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  Should the Netherlands be successful on appeal and the second phase of the Lien Determination Process, the Netherlands could be compelled to accept a money satisfaction of such interest.  In fact, the Netherlands has expressly requested money

15

satisfaction.  Thus, there is no basis to prevent the Sale free and clear in accordance with Section 363(f) of the Bankruptcy Code.[10]

## CONCLUSION

35.     For the reasons stated herein, the Debtors respectfully request that the Court overrule the Objections as set forth herein and enter the proposed order approving the Sale, granting the relief requested in the Sale Motion, including the relief sought with respect to Section 363(m) of the Bankruptcy Code, and such other relief as may be just and proper.

*[Remainder of page intentionally left blank.]*

---

[10] The Netherlands also asserts that "[i]n the event that the sale of substantially all of the Debtors' assets generates cash proceeds that are less than the value of the secured claims encumbering the assets, including the value of the Netherlands Claims and Netherlands Lien (as determined at the conclusion of the Phase II Hearing), and other cash is not made available to fund the Full Cash Value Amount (as defined in the Final DIP Order), the Netherlands objects the sale and requests that this Curt deny approval thereof under section 363 of the Bankruptcy Code."  Limited Obj. ¶ 7.  The Netherlands does not specify the legal basis for such objection because there is none.  Even if the Netherlands Lien attached to the assets to be sold, the Debtors are entitled to sell the assets free and clear of the Netherlands Lien, irrespective of whether the Sale generates cash proceeds sufficient to pay any Netherlands secured claim in full, as they have satisfied both Sections 363(f)(4) and (f)(5).

16

Dated: June 15, 2022
       Wilmington, Delaware    */s/ Kenneth A. Listwak*
                             TROUTMAN PEPPER HAMILTON SANDERS LLP

                             David B. Stratton (DE No. 960)
                             David M. Fournier (DE No. 2812)
                             Evelyn J. Meltzer (DE No. 4581)
                             Kenneth A. Listwak (DE No. 6300)
                             Hercules Plaza, Suite 5100
                             1313 N. Market Street, Suite 5100
                             Wilmington, DE 19801
                             Telephone:  (302) 777-6500
                             Facsimile:  (302) 421-8390
                             Email:  david.stratton@troutman.com
                                     david.fournier@troutman.com
                                     evelyn.meltzer@troutman.com
                                     kenneth.listwak@troutman.com

                             - and -

                             LATHAM & WATKINS LLP

                             Suzanne Uhland (admitted *pro hac vice*)
                             Adam S. Ravin (admitted *pro hac vice*)
                             Brett M. Neve (admitted *pro hac vice*)
                             Tianjiao (TJ) Li (admitted *pro hac vice*)
                             Alexandra M. Zablocki (admitted *pro hac vice*)
                             1271 Avenue of the Americas
                             New York, NY 10020
                             Telephone:  (212) 906-1200
                             Facsimile:  (212) 751-4864
                             Email:  suzanne.uhland@lw.com
                                     adam.ravin@lw.com
                                     brett.neve@lw.com
                                     tj.li@lw.com
                                     alexandra.zablocki@lw.com

                             *Counsel for Debtors and Debtors-in-Possession*

#127188428 v1