## EXHIBIT 1

**DOJ Settlement Agreement**

## DOJ SETTLEMENT AGREEMENT

This settlement agreement (the "DOJ Settlement Agreement") is entered into by and among the United States of America, acting through the United States Department of Justice ("DOJ") and on behalf of the United States Department of the Army (collectively, the "United States"); MD Helicopters, Inc. ("MDHI"), as a debtor and debtor in possession; and Relators Philip Marsteller and Robert M. Swisher ("Relator Marsteller" or "Relator Swisher," as applicable, and together, the "Relators"). Each of the foregoing is referred to herein as a "Party," and collectively, the "Parties."

## RECITALS

A.     MDHI is a corporation with its principal office in Mesa, Arizona, that, among other things, manufactures and sells helicopters to various purchasers, including the United States.

B.     On May 3, 2013, the Relators filed a *qui tam* complaint in the United States District Court for the Northern District of Alabama (the "Alabama District Court"), captioned *United States ex rel. Marsteller, et al. v. Tilton, et al.*, Civ. No. 5:13-cv-00830-AKK, against MDHI and other defendants on behalf of the United States under 31 U.S.C. § 3729 *et seq.* (the "Civil Action"). Although the United States declined to intervene in the Civil Action, it remains the real party in interest pursuant to 31 U.S.C. § 3730.

C.     In the Civil Action, the Relators alleged that MDHI and other defendants engaged in a fraudulent course of conduct, submitted false claims to the United States, and engaged in a conspiracy to submit false claims, in connection with the four contracts and the contract modification described below under the Foreign Military Sales ("FMS") program that were awarded to MDHI by the Army's Non-Standard Rotary Wing Aircraft Project Office, headquartered at the Redstone Arsenal in Huntsville, Alabama. More specifically, the Relators

alleged that MDHI engaged in such fraudulent conduct in connection with these four contracts and the modification by (i) misrepresenting its pricing data during the award process; and (ii) falsely representing that MDHI intended to comply with the mandatory disclosure provisions of FAR § 52.203-13 (also known as the Contractor Code of Business Ethics), which was incorporated by reference into the contracts.  The four contracts and the contract modification that were the subject of the Relators' allegations were:

1)      An FMS contract for the acquisition of six commercial rotary wing primary trainer helicopters, two corresponding Flight Training Devices, and critical spare parts, among other items, from MDHI that were to be provided to the Afghan Air Force, which contract was executed on March 10, 2011 (the "Afghanistan Trainer Contract");

2)      The modification of the Afghanistan Trainer Contract, which concerned the acquisition of contractor logistical support for the helicopters from MDHI, which contract was executed on September 1, 2011 (the "Afghanistan CLS Modification");

3)      A second FMS contract for the acquisition of two standard 500E helicopters and one command 500E helicopter from MDHI that were to be provided to the Republic of El Salvador, along with supporting materials and services, which contract was executed on December 9, 2011 (the "El Salvador Contract");

4)      A third FMS contract for the acquisition of twelve 530F helicopters from MDHI that were to be provided to the Saudi Arabia National Guard (SANG), which contract was executed on June 29, 2012 (the "SANG Contract"); and

5)      A fourth FMS contract which concerned the acquisition of two 600N helicopters that were to be provided to the Republic of Costa Rica, which was executed on December 3, 2012 (the "Costa Rica Contract").

The Costa Rica Contract, the Afghanistan Trainer Contract, the El Salvador Contract, and the SANG Contract shall be referred to herein as the "Contracts."

D.      The Relators' allegations described above in <u>Recital C</u> against MDHI relating to the Contracts and the Afghanistan CLS Modification shall be referred to herein as the "Covered Conduct."

E.      On August 23, 2021 (ECF #209), the Alabama District Court granted partial summary judgment for MDHI, dismissing all claims that MDHI (a) misrepresented its pricing data during the award process, (b) engaged in a conspiracy to submit false claims, or (c) violated the False Claims Act in connection with the Afghanistan Trainer Contract and Afghanistan CLS Modification.

F.      On September 2, 2021 (ECF #231), the Alabama District Court ordered the dismissal of MDHI's former Chief Executive Officer, Lynn Tilton ("Tilton") with prejudice.

G.      A jury trial in the Civil Action was conducted before the Honorable Abdul K. Kallon of the Alabama District Court.

H.      On September 24, 2021, the jury returned a unanimous verdict finding against MDHI on the remaining claims asserted in the Civil Action in regards to the El Salvador Contract, the SANG Contract, and the Costa Rica Contract.  However, the Alabama District Court has not entered a final judgment in this case in order to allow the parties to reach a mediated settlement of the dispute.

I.      On November 8, 10, and 29, 2021, MDHI, the Relators, and MDHI's insurers, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), and AIG Specialty Insurance Company ("AIG Specialty," and together with National Union, the "Insurers"), participated remotely in Court-ordered mediation before the Honorable Leo S. Papas (ret.).

J.      On January 31, 2022, MDHI, its secured lenders, and the Relators commenced a series of remote mediation sessions before the Honorable Christopher S. Sontchi.

K.      Those mediation sessions ultimately resulted in the Relators and MDHI executing the First Amended Memorandum of Understanding (the "MOU") on February 14, 2022.  The MOU, among other things:

    a.      Provided for certain settlement terms between the Relators and MDHI, subject to the approval of the DOJ, which did not participate in either mediation, was not a party to the MOU and is not bound by any of the terms in the MOU;

    b.      Provided that MDHI would work in good faith to effectuate a settlement agreement under which the Insurers would make payments totaling $21,500,000 (TWENTY-ONE MILLION FIVE HUNDRED THOUSAND DOLLARS) to be funded by the Insurers and paid in accordance with this DOJ Settlement Agreement.

    c.      Provided for the parties to the MOU to work in good faith to execute a restructuring support agreement (the "RSA") between and among the Relators, MDHI, the Insurers, and MDHI's majority secured lenders that consist of Zohar III, Corp. and its affiliated debtors and debtors in possession (collectively, the "Zohars") in those certain jointly administered Chapter 11 cases which are currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") bearing case number 18-10512.[1]

    d.      The United States is not a party to the MOU or the RSA and is not bound by any of the terms or provisions of the MOU or the RSA.

---

[1]    Those debtors consist of Zohar III, Corp. Zohar II 2005-1, Corp., Zohar CDO 2003-1, Corp., Zohar III, Limited, Zohar II 2005-1, Limited, and Zohar CDO 2003-1, Limited.

L.     On March 30, 2022, MDHI and Monterrey Aerospace, LLC ("Monterrey," and together with MDHI, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the Bankruptcy Court in order to attempt to effectuate a sale of substantially all of its assets pursuant to (i) Section 363 of the Bankruptcy Code (the "363 Sale") or (ii) confirmation of a plan of reorganization or a plan of liquidation (as applicable, the "Plan").

M.     The Debtors' jointly administered Chapter 11 cases (the "Bankruptcy Cases"), captioned *In re MD Helicopters, Inc., et al*. Case No. 22-10263 (KBO), are currently pending in the Bankruptcy Court.

N.     Contemporaneously herewith, the Relators, the Debtors, the Insurers, and Tilton, through their respective authorized representatives, are entering into a separate Insurer Settlement Agreement and Insurance Policy Buyback (the "Insurer Settlement Agreement," and together with this DOJ Settlement Agreement, the "Settlement Agreements") that, among other things, sets forth additional rights and obligations of the foregoing parties in connection with the settlement of the Civil Action.  The Insurer Settlement Agreement provides that the payment of $21,500,000 by the Insurers will resolve certain claims of MDHI arising from certain insurance policies described therein specifically relating to the Covered Conduct and that the Insurers' funds to make this payment do not constitute property of MDHI or Monterrey.  Through the Insurer Settlement Agreement and the DOJ Settlement Agreement, MDHI authorizes the Insurers to make this payment directly to the United States and the Relators on MDHI's behalf.

O.     This DOJ Settlement Agreement is neither an admission of liability by MDHI nor a concession by the United States or the Relators that the claims asserted in the Civil Action are not well founded.

NOW, THEREFORE, to avoid the delay, uncertainty, inconvenience, and expense of continued litigation, and in consideration of the mutual promises and obligations of this DOJ Settlement Agreement, the Parties agree and covenant as follows:

## **TERMS AND CONDITIONS**

1.      Consistent with the obligations set forth in the Insurer Settlement Agreement, MDHI shall (i) pay or cause the United States to be paid the "Insurer Settlement Payment" and (ii) pay the United States the "MDHI Settlement Payment," each as defined and described below, which payments collectively shall total $27,900,000 (TWENTY-SEVEN MILLION NINE HUNDRED THOUSAND DOLLARS), hereafter the "Settlement Amount," of which $27,900,000 (TWENTY-SEVEN MILLION NINE HUNDRED THOUSAND DOLLARS) is restitution.  These payments, as described below, shall be made by electronic funds transfer(s) pursuant to written transfer instructions that have been provided by the DOJ.  The Settlement Amount, consisting of the following two payments, shall constitute a settlement and compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

a)      Consistent with the obligations set forth in the Insurer Settlement Agreement, MDHI shall pay or cause the United States to be paid $19,040,000 (NINETEEN MILLION FORTY THOUSAND DOLLARS) (the "Insurer Settlement Payment") and payment of such amount shall occur no later than twenty-one (21) calendar days after the date upon which the Bankruptcy Court's entry of the Settlement Approval Order (as defined

below) becomes Final[2] (the date on which the Settlement Approval Order becomes Final, the "Settlement Effective Date").

    b)    MDHI shall pay the United States $8,860,000 (EIGHT MILLION EIGHT HUNDRED SIXTY THOUSAND DOLLARS) (the "MDHI Settlement Payment") on the MDHI Payment Date by electronic funds transfer.[3]

2.    The Relators shall receive the Insurer Statutory Fee Payment and the MDHI Statutory Fee Payment, each as defined and described below, which collectively shall total $3,600,000 (THREE MILLION SIX HUNDRED THOUSAND DOLLARS) and which hereafter will collectively be referred to as the "Statutory Fee Amount," to cover the Relators' reasonable expenses, attorneys' fees, and costs, pursuant to 31 U.S.C. § 3730(d)(2). These payments, as described below, shall be made by electronic funds transfer(s) pursuant to written transfer instructions that have been provided by the Relators. The Statutory Fee Amount shall be comprised of the following two payments:

    a)    Consistent with the obligations set forth in the Insurer Settlement Agreement, MDHI shall pay or cause the Relators to be paid $2,460,000 (TWO MILLION FOUR HUNDRED SIXTY THOUSAND DOLLARS) (the "Insurer Statutory Fee Payment") and payment of such amount shall

---

[2]  "Final" means a Settlement Approval Order that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, it has been resolved and no longer remains pending; *provided*, that the Settlement Approval Order shall not fail to be "final" solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order, as long as such a motion has not been actually filed; *provided, further*, that in the absence of a timely notice of appeal of the Settlement Approval Order, it becomes Final fifteen (15) calendar days after the date on which the Settlement Approval Order is entered.

[3]  "MDHI Payment Date" means the earlier of (i) the closing of the 363 Sale; (ii) the effective date of the Plan; and (iii) October 31, 2022.

occur no later than twenty-one (21) calendar days after the Settlement Effective Date.

    b)    MDHI shall pay the Relators $1,140,000 (ONE MILLION ONE HUNDRED FORTY THOUSAND DOLLARS) (the "MDHI Statutory Fee Payment") on the MDHI Payment Date by electronic funds transfer.

3.    MDHI shall file a motion (the "9019 Motion") with the Bankruptcy Court seeking entry of an order (the "Settlement Approval Order") approving the Settlement Agreements. The 9019 Motion and the proposed Settlement Approval Order shall be shared with the Parties and the Zohars at least two (2) business days in advance of filing in the Bankruptcy Court and shall be in a form reasonably acceptable to the parties who are the signatories to the Settlement Agreements.

4.    Conditioned upon the United States receiving the Insurer Settlement Payment, and as soon as feasible after receipt thereof, the United States shall pay $5,712,000 (FIVE MILLION SEVEN HUNDRED TWELVE THOUSAND DOLLARS) to the Relators by electronic funds transfer. Conditioned upon the United States receiving the MDHI Settlement Payment, and as soon as feasible after receipt thereof, the United States shall pay $2,658,000 (TWO MILLION SIX HUNDRED FIFTY EIGHT THOUSAND DOLLARS) to the Relators by electronic funds transfer. The foregoing two payments set forth in this <u>Paragraph 4</u> will collectively be referred to as the "Relators' Share."

5.    The Relators agree that, under this DOJ Settlement Agreement, there shall be no additional amount to be paid to the Relators other than the Statutory Fee Amount and the Relators' Share.

6.    Upon the United States' receipt of the full Settlement Amount, and upon the Relators' receipt of the full Statutory Fee Amount, without the need for any further action, the

Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, shall be deemed to have fully and finally released MDHI, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, corporate successors, assigns and current and former directors, officers (including but not limited to Tilton), agents, and employees, with prejudice from all claims, causes of action, complaints, suits, demands, damages, costs, expenses, liabilities, grievances, or other losses—whether known or unknown—that may exist as of the date of execution of this DOJ Settlement Agreement, including but not limited to, (a) any civil monetary claim the Relators have or may have individually for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729–33, (b) any claim for expenses or attorney's fees and costs under 31 U.S.C. § 3730(d), including the Statutory Fees, (c) any claim against the Zohars that are based on the Zohars' claims and interests in MDHI, including, without limitation, theories of recharacterization and equitable subordination of the Zohars' claims and interests in MDHI, and (d) any claim against ARK II CLO 2001-1, Limited and ARK Investment Partners II, L.P. (together, the "Patriarch Lenders") that are based on the Patriarch Lenders' claims and interests in MDHI, including, without limitation, theories of recharacterization and equitable subordination of the Patriarch Lenders' claims and interests in MDHI.  The Relators shall also refrain from referring, instituting, directing, or maintaining any administrative action seeking suspension, debarment, or exclusion of MDHI, its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, corporate successors, or current or former directors, officers (including but not limited to Tilton), agents, or employees under 48 C.F.R. subpart 9.4 for the Covered Conduct.

7.      Subject to the exceptions in Paragraph 8 below (concerning reserved claims) and Paragraph 15 below, and upon the United States' receipt of the full Settlement Amount in accordance with Paragraph 1 above, the United States shall be deemed to have released MDHI, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and corporate successors from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729–33; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801–12; the Truth in Negotiations Act, 10 U.S.C. § 2306a; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

8.      Notwithstanding the releases given above, or any other term of this DOJ Settlement Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this DOJ Settlement Agreement;

f.      Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due; and

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9.      The Relators and their respective heirs, successors, attorneys, agents, and assigns shall not object to this DOJ Settlement Agreement, but agree and confirm that this DOJ Settlement Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon the Relators' receipt of the Relators' Share, the Relators and their respective heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this DOJ Settlement Agreement and/or the Civil Action.

10.     MDHI waives and shall not assert any defenses that MDHI may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this DOJ Settlement Agreement bars any remedy that may be sought in such criminal prosecution or administrative action.

11.     MDHI fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that MDHI has asserted, could have asserted, or may assert in the

future related to the Covered Conduct or the investigation or prosecution thereof, including under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

12.     a.     Unallowable Costs Defined: all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of MDHI, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this DOJ Settlement Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this DOJ Settlement Agreement;

(3)     MDHI's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this DOJ Settlement Agreement (including attorneys' fees);

(4)     the negotiation and performance of this DOJ Settlement Agreement, the MOU, the RSA, the Insurer Settlement Agreement, or any other agreement related to the Civil Action or the Bankruptcy Cases;

(5)     the payments made by MDHI and on its behalf to the United States pursuant to this DOJ Settlement Agreement and any payments that MDHI may make to the Relators, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:   Unallowable Costs will be separately determined and accounted for by MDHI, and MDHI shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.     Treatment of Unallowable Costs Previously Submitted for Payment: within 90 days of the date of execution of this DOJ Settlement Agreement, MDHI shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by MDHI or any of its subsidiaries or affiliates from the United States. MDHI agrees that the United States, at a minimum, shall be entitled to recoup from MDHI any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the DOJ and/or the affected agencies, reserves its rights to audit, examine, or re-examine MDHI's books and records and to disagree with any calculations submitted by MDHI or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by MDHI, or the effect of any such Unallowable Costs on the amount of such payments.

13.     MDHI agrees to cooperate fully and truthfully with any United States' investigation of individuals and entities not released in this DOJ Settlement Agreement. Upon reasonable notice, MDHI shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. MDHI further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another person on its behalf.

14.     The Parties do not intend to hinder, delay, or defraud any entity to which MDHI was or became indebted on or after the date of any transfer contemplated in this DOJ Settlement Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

15.    If the Settlement Effective Date occurs and the payments contemplated herein are not paid (when they are due hereunder) or are avoided or recovered for any reason, the United States may rescind the releases in Paragraph 7 and bring any civil and/or administrative claim, action, or proceeding against MDHI for the claims that would otherwise be covered by the releases provided herein and the United States shall have an undisputed, noncontingent, non-dischargeable and liquidated allowed claim against MDHI in the amount of $108,900,000 (ONE HUNDRED EIGHT MILLION NINE HUNDRED THOUSAND DOLLARS), less any payments received and retained pursuant to Paragraph 1 of this DOJ Settlement Agreement.    Any civil and/or administrative claim, action, or proceeding commenced by the United States pursuant to this Paragraph is not subject to the "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power.    MDHI waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States pursuant to this Paragraph except to the extent such defenses were available on May 3, 2013.

16.    If any payments made to the United States are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts the United States paid to the Relators.    If amounts already paid by the United States to the Relators pursuant to Paragraph 4 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with the Bankruptcy Cases, notwithstanding the preceding sentence, the Relators shall, within thirty days of written notice from the United States to the undersigned Relators' counsel, return to the United States all amounts recovered from the United States.

17.     Upon the later of (a) the United States' receipt of the full Settlement Amount and (b) the Relators' receipt of the Statutory Fee Amount, as described above, the Relators and MDHI shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) and proposed Order, and the United States shall execute a notice to advise the Alabama District Court that it consents to the dismissal pursuant to 31 U.S.C. § 3730(b)(1) in accordance with this DOJ Settlement Agreement.  These filings shall provide for the dismissal of the Civil Action with prejudice and shall be in the forms attached hereto as Exhibits A and B; *provided, however*, that any such Stipulation or notice of consent shall be without prejudice to any claim the United States may bring pursuant to Paragraph 15 above.

18.     Except as provided in Paragraph 2 above (relating to the Statutory Fee Amount), each Party shall bear its own legal and other costs incurred in connection with the Civil Action and the preparation and performance of this DOJ Settlement Agreement.

19.     Each Party and signatory to the DOJ Settlement Agreement represents that such person freely and voluntarily enters into the DOJ Settlement Agreement without any degree of duress or compulsion.

20.     The DOJ Settlement Agreement is governed by the laws of the United States.  For purposes of construing the DOJ Settlement Agreement, the DOJ Settlement Agreement shall be deemed to have been drafted by all Parties to the DOJ Settlement Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.     This DOJ Settlement Agreement constitutes the complete agreement between the Parties related to the Covered Conduct.  The DOJ Settlement Agreement may not be amended except by written consent of the Parties.  If any part of the DOJ Settlement Agreement shall be deemed unenforceable, the remainder of the DOJ Settlement Agreement shall remain in full force

and effect; *provided*, *however*, that the portions deemed unenforceable shall not be so central to the DOJ Settlement Agreement as to deprive any Party of the benefits of its bargain.  Forbearance by the United States from pursuing any remedy or relief available to it under this DOJ Settlement Agreement shall not constitute a waiver of rights under this DOJ Settlement Agreement.  In the event of any conflict or inconsistency between any provision contained in this DOJ Settlement Agreement and any provision in the RSA, the MOU or the Insurer Settlement Agreement, the Parties agree that the language in this DOJ Settlement Agreement shall govern and control.

22.     The undersigned persons represent and warrant that they are fully authorized to execute this DOJ Settlement Agreement on behalf of the persons and entities indicated below.

23.     This DOJ Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This DOJ Settlement Agreement is binding on MDHI's successors, transferees, heirs, and assigns.

25.     This DOJ Settlement Agreement is binding on the Relators' successors, transferees, heirs, and assigns.

26.     All Parties consent to the United States' disclosure of this DOJ Settlement Agreement, and information about the DOJ Settlement Agreement, to the public.

27.     The effectiveness of this DOJ Settlement Agreement is subject to entry of the Settlement Approval Order and it becoming Final.

28.     The DOJ Settlement Agreement date of signature shall be the date of the last signatory to the DOJ Settlement Agreement.  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of the DOJ Settlement Agreement.

*[Signature pages follow]*

**THE UNITED STATES OF AMERICA**

DATED: 6/10/22    BY:

GLENN P. HARRIS
Trial Attorney

DATED: 6/9/2022    BY:

SARAH BLUTTER
Assistant United States Attorney
*Counsel for the United States*

*[Signature Page to DOJ Settlement Agreement]*

**MD HELICOPTERS ,INC.**

DATED: ___6/10/22___    BY: _____

ALAN CARR
*Sole Director of MD Helicopters, Inc.*

DATED: 6/10/22    BY: _____

ADAM S. RAVIN
Latham & Watkins LLP
*Counsel for MD Helicopters, Inc.*

*[Signature Page to DOJ Settlement Agreement]*

**RELATORS**

DATED: 6/2/22    BY: _____
                          PHILIP MARSTELLER

DATED: _____    BY: _____
                          ROBERT M. SWISHER

DATED: _____    BY: _____
                          JOSHUA M. RUSS
                          Reese Marketos LLP
                          *Counsel for Relators*

*[Signature Page to DOJ Settlement Agreement]*

**RELATORS**

DATED: _____    BY:
                             PHILIP MARSTELLER

DATED: 6/10/22    BY:

                             ROBERT M. SWISHER

DATED: _____    BY:

                             JOSHUA M. RUSS
                             Reese Marketos LLP
                             *Counsel for Relators*

*[Signature Page to DOJ Settlement Agreement]*

**RELATORS**

DATED: _____    BY: _____
                         PHILIP MARSTELLER


DATED: _____    BY: _____
                         ROBERT M. SWISHER

DATED: 6/10/22    BY: _____
                         JOSHUA M. RUSS
                         Reese Marketos LLP
                         *Counsel for Relators*

[*Signature Page to DOJ Settlement Agreement*]

**<u>EXHIBIT A</u>**

Stipulation of Dismissal

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. PHILIP MARSTELLER and ROBERT SWISHER, | ) ) ) | |
| | ) | |
| Plaintiffs/Relators | ) | |
| | ) | |
| v. | ) | No. 5:13-cv-00830-AKK |
| | ) | |
| LYNN TILTON, PATRIARCH PARTNERS, LLC MD HELICOPTERS, INC., and NORBERT VERGEZ, | ) ) ) | |
| | ) | |
| Defendants | ) | |

_____

## STIPULATED DISMISSAL AND REQUEST FOR WRITTEN CONSENT OF THE COURT

Plaintiffs/Relators Philip Marsteller and Robert Swisher and Defendant MD

Helicopters, Inc. (MDHI) hereby stipulate and agree, pursuant to Fed. R. Civ. P.

41(a)(1)(A)(ii), to the voluntary dismissal of this action as set forth below.

This dismissal shall be with prejudice to the Relators, and, with respect to the

United States, shall be with prejudice as to the rights of the United States only as to

the Covered Conduct, as that term is defined in the Settlement Agreement between

the United States, the Relators and MDHI, but, otherwise, shall be without prejudice

to the United States.  All other defendants have already been dismissed pursuant to

earlier Orders of the Court.

Because this is a *qui tam* action filed under the False Claims Act, 31 U.S.C.

§§ 3729-3733 ("FCA"), a dismissal can occur "only if the court and the Attorney

General give written consent to the dismissal and their reasons for consenting." *Id.*

§ 3730(b)(1).[4] *See Jallali v. Nova Se. Univ., Inc.,* 486 F. App'x 765, 767 (11th Cir.

2012) (consent requirement in § 3730(b)(1) applies to voluntary dismissals); *United*

*States ex rel. Carver v. Physicians' Pain Specialists of Alabama, P.C.*, No. CV 13-

0392-WS-N, 2017 WL 4873710, at *7 (S.D. Ala. Oct. 27, 2017) (same).

In the instant case, the United States, through the Department of Justice, has

stated that it will file its consent to this Stipulation separately.  Subject to the filing

of such consent, Relators and MDHI respectfully request the Court's consent to this

stipulated dismissal through the execution of the attached proposed Order.

Respectfully submitted on [DATE] by:

By: */s/ DRAFT Joshua M. Russ*          By: */s/ DRAFT J. Bradley Robertson*

Joel W. Reese (pro hac vice)            J. Bradley Robertson
joel.reese@rm-firm.com                  BRADLEY ARANT BOULT
Pete Marketos (pro hac vice)            CUMMINGS LLP
pete.marketos@rm-firm.com               1819 5th Avenue North
Adam C. Sanderson (pro hac vice)        Birmingham, AL 35203
adam.sanderson@rm-firm.com              Tel: 205-521-8188
Joshua M. Russ (pro hac vice)           Fax: 205-488-6188
josh.russ@rm-firm.com                   brobertson@bradley.com
Andrew O. Wirmani (pro hac vice)
andrew.wirmani@rm-firm.com

---

[4]    This FCA consent provision is reflected in this Court's Order of September 17, 2014, unsealing the case [ECF 18, at ¶6].

2

Brett S. Rosenthal (pro hac vice)
brett.rosenthal@rm-firm.com
Allison N. Cook (pro hac vice)
allison.cook@rm-firm.com
REESE MARKETOS LLP
750 N. St. Paul Street, Suite 600
Dallas, TX  75201

Gerald C. Robinson (pro hac vice)
MN Attorney ID# 0212787
HALULEN LAW PLLC
IDS Center, Suite 1650
Minneapolis MN 55402
Tel.: 612-605-4098
Fax: 612-605-4099
robinson@halunenlaw.com

Phillip E. Benson (pro hac vice)
MN Attorney ID #0394772
WARREN BENSON LAW GROUP
620 Newport Center. Dr., Ste. 1100
Newport Beach, CA 92660
Tel: (952) 955-3688
Fax: (858) 454-5878
philbenson@warrenbensonlaw.com

Dennis A Mastando
MASTANDO & ARTRIP LLC
301 Washington Street Suite 302
Huntsville, AL 35801
Tel:256-532-2222
Tony@mastandoartrip.com

*Counsel for Qui Tam Relators Philip
Marsteller and Robert Swisher*

Kimberly Bessiere Martin
BRADLEY ARANT BOULT
CUMMINGS LLP
200 Clinton Avenue West
Suite 900
Huntsville, AL 35801
Tel: 256-517-5155
Fax: 256-517-5255
kmartin@bradley.com

Charles A. Stewart III
Jonathan C. Hill
BRADLEY ARANT BOULT
CUMMINGS LLP
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
Tel: 334-956-7700
Fax: 334-956-7701
cstewart@bradley.com
rhill@bradley.com

Kristina A. Reliford
BRADLEY ARANT BOULT
CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37138
Telephone: (615) 252-3573
Facsimile: (615) 252-6380
kreliford@bradley.com

*Counsel for Defendant MD Helicopters,
Inc.*

## **CERTIFICATE OF AUTHORITY TO ATTACH E-SIGNATURE**

I, [NAME], hereby certify that I obtained authorization from J. Bradley Robertson, counsel for MDHI, to attach his e-signature to this filing.

Dated: XXXX XX, 2022                    /s/ [NAME]_____

## **CERTIFICATE OF SERVICE**

I hereby certify that on _____, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ [NAME]_____

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION
_____

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PHILIP MARSTELLER and ROBERT SWISHER,<br><br>          Plaintiffs/Relators<br><br>          v.<br><br>LYNN TILTON, PATRIARCH PARTNERS, LLC MD HELICOPTERS, INC., and NORBERT VERGEZ,<br><br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)     No. 5:13-cv-00830-AKK<br>)<br>)<br>)<br>)<br>)<br>) |

_____

**[PROPOSED] ORDER**

On [DATE], Plaintiffs-Relators Philip Marsteller and Robert Swisher and

Defendant MD Helicopters, Inc. (MDHI) have filed a Stipulated Dismissal and

Request for Written Consent of the Court of the dismissal of this action pursuant to

Rule 41(a)(1)(A)(ii) (Dkt. No. XXX).  The United States also filed a notice of

consent to this stipulated dismissal, and its reasons for consenting, on [DATE]

(Dkt. No. XXX), pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(1), which

requires the consent of the Attorney General and the presiding Court for such a

dismissal.  All other defendants have already been dismissed pursuant to earlier

Orders of the Court.  Pursuant to section 3730(b)(1), and good cause being shown therefor,

It is hereby **ORDERED** as follows:

1.    This Action is hereby dismissed;

2.    Such dismissal shall be with prejudice as to all claims of the Plaintiffs-Relators in this action and shall be with prejudice as to the United States' claims only as to the Covered Conduct, as that term is defined in the Settlement Agreement between the United States, the Relators and MDHI, and is, otherwise, without prejudice to the United States.

DONE this _____ day of _____, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

**<u>EXHIBIT B</u>**

United States' Consent to Stipulation of Dismissal

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. PHILIP MARSTELLER and ROBERT SWISHER, | ) ) ) ) | |
| Plaintiffs/Relators | ) ) | |
| v. | ) ) | No. 5:13-cv-00830-AKK |
| LYNN TILTON, PATRIARCH PARTNERS, LLC MD HELICOPTERS, INC., and NORBERT VERGEZ, | ) ) ) ) | |
| Defendants | ) ) ) | |

## <u>UNITED STATES' CONSENT TO STIPULATION OF DISMISSAL</u>

The United States of America ("United States") respectfully notifies the Court

that the Attorney General consents to the stipulation of dismissal of this action filed

by the Relators and Defendant MD Helicopters, Inc. (MDHI).  (ECF XXX.)  This

consent is based on the United States' understanding that all other parties have

already been dismissed, the dismissal is with prejudice to the rights of the United

States only as to the Covered Conduct, as that term is defined in the Settlement

Agreement between the United States, the Relators and MDHI, and is, otherwise,

without prejudice to the United States.  The United States consents to this dismissal

based on its determination that such a dismissal is commensurate with the public

interest and that the matter does not warrant the continued expenditure of government resources to pursue or monitor the action based on currently available information.

                                          Respectfully submitted,

Dated: _____2022       BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          PRIM F. ESCALONA
                                          United States Attorney

                                          */s/ Sarah Blutter*
                    By:    SARAH BLUTTER
                                          Assistant United States Attorneys
                                          1801 4th Avenue North
                                          Birmingham, Alabama 35203
                                          Tel: (205) 244-2119
                                          Email: sarah.blutter@usdoj.gov

                                          JAMIE ANN YAVELBERG
                                          MICHAL TINGLE
                                          GLENN P. HARRIS
                                          U.S. Department of Justice
                                          Civil Division
                                          Commercial Litigation Branch
                                          Civil Fraud Section
                                          175 N Street, NE
                                          Washington, D.C. 20002
                                          Tel.: (202) 305-4207
                                          Email: glenn.p.harris@usdoj.gov

                                          Counsel for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on _____, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Sarah Blutter_____